Dan Booth (MA Bar No. 672090)
BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
dbooth@boothsweet.com
(617) 250-8602
*Admitted Pro Hac Vice*

Michael Licari (SBN 265241)
D'EGIDIO LICARI & TOWNSEND, APC
5402 Ruffin Road, Suite 209
San Diego, CA 92123
mlicari@deltlaw.com
(619) 550-3011
*Local Counsel*

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DR. SEUSS ENTERPRISES, L.P.**, <br><br> Plaintiff, <br><br> v. <br><br> **COMICMIX LLC**; **GLENN HAUMAN**; **DAVID JERROLD FRIEDMAN** a/k/a **DAVID GERROLD**; and **TY TEMPLETON**, <br><br> Defendants. | Case No. 3:16-cv-02779-JLS-BGS <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** <br><br> Assigned to Hon. Janis L. Sammartino <br> United States District Judge <br><br> Hearing Date: August 31, 2017 <br> Hearing Time: 1:30 p.m. <br> Hearing Place: Schwartz Courthouse, <br> Courtroom 4A |

# TABLE OF CONTENTS

**Table of Contents**                                                             ii

**Table of Authorities**                                                          iii

**I.    Introduction and Procedural Background**                                   1

**II.   Applicable Legal Standard**                                               1

**III.  Statement of Material Facts**                                             2

**IV.   Argument**                                                                5

    **A. The Court may find both fair use and nominative fair use at this stage.**   5

    **B. Defendants' fair use defeats the copyright infringement claim.**           5

        **1.   The first factor weighs in favor of fair use.**                  7

        **2.   The second factor does not weigh against fair use.**            8

        **3.   The third factor weighs in favor of fair use.**                 9

        **4.   The fourth factor weighs in favor of fair use.**                10

        **5.   Weighed together in light of the purposes of copyright, the four factors favor fair use.**   16

    **C. Defendants' nominative fair use defeats all other claims.**               17

        **1.   DSE's books are not readily identifiable without its alleged marks.**   19

        **2.   Defendants' use of the alleged marks was reasonably necessary.**   21

        **3.   Nothing else suggests DSE sponsors or endorses *Boldly*.**       22

**V.    Conclusion**                                                              24

**Certificate of Service**                                                        25

## TABLE OF AUTHORITIES

**Cases**

*AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979)    18, 19

*Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913 (2d Cir. 1994)    12

*Application of Cooper*, 45 C.C.P.A. 923, 254 F.2d 611 (C.C.P.A. 1958)    21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)    1, 2

*Authors Guild, Inc. v. HathiTrust*, 902 F. Supp. 2d 445 (S.D.N.Y. 2012)    13

*Aviva United States Corp. v. Vazirani*, 902 F. Supp. 2d 1246 (D. Ariz. 2012)    21

*Aviva United States Corp. v. Vazirani*, 632 Fed. Appx. 885 (9th Cir. 2015)    21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)    1, 2, 22, 24

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
448 F.3d 605 (2d Cir. 2006)    8, 13, 16

*Blanch v. Koons*, 467 F.3d 244 (2d Cir. 2006)    10

*Cairns v. Franklin Mint Co.*, 292 F.3d 1139 (9th Cir. 2002)    18, 19, 20, 21

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994)    *passim*

*Cambridge Univ. Press v. Patton*, 769 F.3d 1232 (11th Cir. 2014)    12

*Castle Rock Entm't, Inc. v. Carol Publ'g Grp.*, 150 F.3d 132 (2d Cir. 1998)    14, 16

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,
109 F.3d 1394 (9th Cir. 1997)    14, 17

*Fisher v. Dees*, 794 F.2d 432 (9th Cir. 1986)    9

*Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156 (Fed. Cir. 2002)    20

*Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003)    8, 11

*Kienitz v. Sconnie Nation LLC*, 766 F.3d 756 (7th Cir. 2014)    17

*Konangataa v. ABC*, No. 16-cv-7382 (LAK),
2017 U.S. Dist. LEXIS 95812 (S.D.N.Y. June 21, 2017)    11

*Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*, 964 F.2d 965 (9th Cir. 1992)    12

*Mattel, Inc. v. MCA Records*, 296 F.3d 894 (9th Cir. 2002)    21

*Mattel Inc. v. Walking Mountain Prods.*, 353 F.2d 792 (9th Cir. 2003)    *passim*

MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED COMPLAINT          Case No. 16cv2779-JLS (BGS)

*New Kids on the Block v. News Am. Publ'g, Inc.*,
971 F.2d 302 (9th Cir. 1992) ............................................. 20, 21, 22

*Pac. & S. Co. v. Duncan*, 744 F.2d 1490 (11th Cir. 1984) ............. 15

*Papasain v. Allain*, 478 U.S. 265 (1986) ............................. 2

*Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701 (9th Cir. 2007) ... 11

*Playboy Enters., Inc. v. Teri Welles, Inc.*,
78 F. Supp. 2d 1066 (S.D. Cal. 1999) ............................. 19, 22

*Playboy Enters, Inc. v. Welles*, 279 F.3d 796 (9th Cir. 2002) ..... 18, 19, 20

*Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70 (2d Cir. 1997) ... 10

*Sandman v. Seajay Soc'y, Inc.*, 142 F.3d 194 (4th Cir. 1998) ......... 10

*Sega Enters. v. Accolade, Inc.*, 977 F.2d 1510 (9th Cir. 1992) ....... 10

*Seltzer v. Green Day, Inc.*, 725 F.3d 1170 (9th Cir. 2013) ....... *passim*

*SOFA Entm't, Inc. v. Dodger Prods.*, 782 F. Supp. 2d 898 (C.D. Cal. 2010) ... 15

*SOFA Entm't, Inc. v. Dodger Prods.*, 709 F.3d 1273 (9th Cir. 2013) ... 15, 16, 17

*Sony Computer Entm't Am., Inc. v. Bleem, LLC*,
214 F.3d 1022 (9th Cir. 2000) ............................................. 9

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ...... 2

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ............... 2

*Swatch Group Mgmt. Servs. v. Bloomberg LP*, 742 F.3d 17 (2d Cir. 2014) ... 12

*Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778 (9th Cir. 2002) ....... 20

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171 (9th Cir. 2010) ... 18, 20, 23

*Twin Peaks Prods. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366 (2d Cir. 1993) ... 15

*Ty, Inc. v. Publ'ns Int'l, Inc.*, 292 F.3d 512 (7th Cir. 2002) ....... 12, 16

*Triangle Publ'ns, Inc. v. Knight-Ridder Newspapers, Inc.*,
626 F.2d 1171 (5th Cir. 1980) ............................................. 9

*Williams v. Columbia Broad. Sys., Inc.*,
57 F. Supp. 2d 961 (C.D. Cal. 1999) ............................. 9

-iv-

**Statutes, Rules, and Constitutions**

17 U.S.C. § 101 ..................................................................................... 13, 14

17 U.S.C. § 107 ....................................................................................... 4, 5, 6

17 U.S.C. § 107(4) ...................................................................................... 10

California Business and Professions Code § 17200 ................................. 19

Fed. R. Civ. P. 12(b)(6) ....................................................................... 1, 5, 24

U.S. Const. art. I, § 8, cl. 8 ........................................................................ 16

U.S. Const. amend. I ................................................................................... 24

**Books, Treatises, and Other Authorities**

David Gerrold and Ty Templeton, *Oh, the Places You'll Boldly Go!*
(unpublished) ........................................................................................ *passim*

Pierre N. Leval, *Towards A Fair Use Standard*,
103 Harv. L. Rev. 1105 (1990) ................................................................. 17

*Mash-Up*, Merriam-Webster .......................................................................... 7

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
§ 6.14 (4th ed. 2017) .................................................................................... 20

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
§ 23.11 (4th ed. 2017) ..................................................................... 18, 22, 23

Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.05[A][4] ... 10, 12

Dr. Seuss, *Horton Hears a Who* (Random House 1955) ........................... 10

Dr. Seuss, *How the Grinch Stole Christmas!* (Random House 1957) ......... 10

Dr. Seuss, *The Lorax* (Random House 1971) ...................................... 10, 14

Dr. Seuss, *Oh, the Places You'll Go!* (Random House 1990) ............ *passim*

Dr. Seuss, *The Sneetches and Other Stories* (Random House 1961) ........ 10

MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED COMPLAINT           Case No. 16cv2779-JLS (BGS)

## I.      Introduction and Procedural Background

Defendants again respectfully move the Court for an order dismissing this action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The doctrines of fair use and nominative fair use protect Defendants and their book from all claims.

In its original complaint, Plaintiff Dr. Seuss Enterprises, L.P. ("DSE") pleaded counts of copyright infringement, trademark infringement, and unfair competition. Doc. 1. Defendants moved to dismiss. Doc. 8, 34, 36. The Court substantially narrowed the issues under the copyright count with an extensive fair use analysis; dismissed the latter two counts on nominative fair use grounds; and granted leave to amend the complaint as to only those two causes of action. Doc. 38 ("Order"). Taking liberties, DSE's first amended complaint seeks to bolster all three and adds a fourth causes of action, infringement of a registered trademark. Doc. 39 ("FAC").

The amendments are futile. Nominative fair use applies equally to all of DSE's alleged marks, obviates any likelihood-of-confusion analysis, and defeats all claims other than the copyright claim. That claim cannot survive DSE's new allegations. On balance the statutory fair use factors, including the few issues not resolved by the Order, weigh in favor of Defendants. Their book cannot have a negative effect on any market in which DSE might participate, and the purposes of copyright strongly support finding fair use and granting the motion to dismiss.

## II.      Applicable Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may assert by motion that the complaint "fail[s] to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). "The plausibility

MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT            Case No. 16cv2779-JLS (BGS)

standard … asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Factual pleadings "'merely consistent with' a defendant's liability" fall short. *Id.* (quoting *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). And "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasain v. Allain*, 478 U.S. 265, 286 (1986)).

"All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. … The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A "court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

## III.    Statement of Material Facts

The pertinent facts alleged in DSE's first amended complaint, taken as true for purposes of this motion, and those drawn from writings subject to judicial notice or incorporated in the first amended complaint by reference, are as follows.

The late Theodor S. Geisel, under the pseudonym Dr. Seuss, wrote and illustrated children's books that have sold more than 650 million copies. FAC ¶¶ 1, 12, 14. One of his best-known Dr. Seuss books is *Oh, the Places You'll Go!* ("*Go!*"). *Id.* ¶ 15.

Plaintiff DSE owns the copyrights and copyright registrations for, and alleged trademarks in, Dr. Seuss's books. *Id.* ¶¶ 1, 3, 16. It claims trademark rights in certain aspects of the books, namely: the title of *Go!*, a stylized font, and the books' illustration style. *Id.* ¶ 17. DSE's trademark registrations include one "for OH THE PLACES YOU'LL GO in connection with downloadable digital children's books, among other goods." *Id.* ¶ 18.

-2-

DSE produces "new original content, including books, animated and live-action television and film adaptations, theatrical and other works and consumer products." *Id.* ¶ 1. DSE oversees the publication of Dr. Seuss reissues, new editions, and posthumous releases. *Id.* ¶ 21. It has published books derivative of *Go!*. *Id.* ¶¶ 19, 22. It publishes authorized "Dr. Seuss works" by other authors and illustrators, some with covers that do not mention Dr. Seuss. *Id.* ¶¶ 21, 23. DSE also licenses its intellectual property for new works other than books: children's television series and a theme park attraction. *Id.* ¶ 24. DSE oversees licensing and merchandising of its intellectual property for consumer products, including "collaborations with other rights holders" called "authorized co-branding initiatives." *Id.* ¶ 25. "DSE's primary focus is to protect the integrity of the Dr. Seuss books while expanding beyond books into ancillary areas through this licensing program." *Id.* ¶ 26.

Defendants are comics publisher ComicMix LLC ("ComicMix"), its co-founder and vice-president Glenn Hauman ("Hauman"), author David Gerrold ("Gerrold"), and illustrator Ty Templeton ("Templeton"). *Id.* ¶¶ 4-7. ComicMix marketed, and each Defendant intended "to sell, reproduce, and distribute" a projected book written by Gerrold, illustrated by Templeton, and edited by Hauman, entitled *Oh, the Places You'll Boldly Go!* ("*Boldly*" or "the book"). *Id.* ¶¶ 2, 4-7, 28-31. Defendants ran a Kickstarter campaign to fund printing and distribution of *Boldly*. *Id.* ¶ 48; Doc. 8-5.[1] The campaign ran through September 30, 2016, raising nearly $30,000 in pledges for production costs toward a scheduled December 2016 publication. Doc. 8-5 pp. 1, 6; FAC ¶ 2. The campaign page called *Boldly* a "parody mash-up." See FAC ¶ 44.

> **Oh, The Places You'll Boldly Go!** is a parody mash-up from the mind that brought you "The Trouble With Tribbles" that brings together two of the most beloved creations in history in a joyous celebration that will inspire you to join the high fliers who soar to high heights!

---

[1] The complaint incorporates the Kickstarter campaign page by reference. FAC ¶¶ 44, 48-49. The page is subject to judicial notice. See Doc. 8-1 p. 4 n. 1, Doc. 8-3 ¶ 2, Doc. 33-1 ¶¶ 3-8, 10-11, 15-20.

MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT         Case No. 16cv2779-JLS (BGS)

Doc. 8-5 p. 2. A section of the page titled "Risks and challenges" explained:

> While we firmly believe that our parody, created with love and affection, fully falls within the boundary of fair use, there may be some people who believe that this might be in violation of their intellectual property rights. And we may have to spend time and money proving it to people in black robes. And we may even lose that.

*Id.* p. 5; FAC ¶ 49. DSE's attorneys sent cease-and-desist letters to Defendants on September 28 and October 7, 2016. FAC ¶¶ 50, 52. On October 7, 2016, DSE sent a takedown notice to Kickstarter, which disabled access to the campaign page. *Id.* ¶¶ 54, 55. DSE's attorneys sent Defendants a third cease-and-desist letter on October 25, 2016. *Id.* ¶ 56. On October 28, 2016, ComicMix's attorney sent a letter in response, explaining ComicMix's position that *Boldly* constitutes a parody, a mash-up, and fair use. *Id.* ¶¶ 44, 57; Doc. 8-8.[2] On October 31, 2016, ComicMix's attorney sent Kickstarter a counter-notice. FAC ¶¶ 57-58.

*Boldly* "purports to be an amalgamation of the Dr. Seuss works and certain characters, imagery, and other elements from *Star Trek*, the well-known science fiction entertainment franchise created by Gene Roddenberry." FAC ¶ 27. The U.S.S. *Enterprise* from the *Star Trek* series occupies most of *Boldly*'s cover. *Id.* p. 12; Doc. 15 ("*Boldly*") p. 1.[3] The cover, title page, spine, and copyright page each credit *Boldly* as "by David Gerrold & Ty Templeton." *Boldly* pp. 1-2. The last page also credits Gerrold, Templeton, and Hauman. *Id.* p. 13. The copyright page bears a disclaimer that states, "This is a work of parody, and is not associated with or endorsed by CBS Studios or Dr. Seuss Enterprises, L.P." *Id.* p. 2; FAC ¶¶ 44, 77. A second disclaimer immediately below states, "Copyright Disclaimer under section 107 of the Copyright Act 1976, allowance is made for 'fair use' for purposes such as criticism, comment, news reporting, teaching, scholarship, education, research, and

---

[2] The complaint incorporates counsel's letter by reference. FAC ¶¶ 44, 57. The letter is subject to judicial notice. See Doc. 8-1 p. 5 n. 4, Doc. 8-3 ¶ 5.

[3] The Court has taken judicial notice of *Boldly*. Order p. 6 n. 1.

MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT          Case No. 16cv2779-JLS (BGS)

parody." *Boldly* p. 2. DSE alleges that *Boldly* "misappropriates key protected elements" of *Go!*, including "its title, story arc, characters, and illustrations," and of four other Dr. Seuss books, including their characters and illustrations. FAC ¶ 35.[4]

## IV.    Argument

DSE still fails to state a claim. The Court may dispose of all claims now, at the pleading stage, because the copyright claim cannot overcome Defendants' fair use and the remaining claims cannot overcome the nominative fair use defense. *Boldly* is neither infringing nor unfair and the action should be dismissed.

### A.  The Court may find both fair use and nominative fair use at this stage.

The Court should again consider and apply fair use and nominative fair use. Order pp. 6, 17-18. Both issues are appropriate for resolution under Rule 12(b)(6) where they appear on the face of the complaint and no material facts are in dispute, as ComicMix argued when it moved to dismiss the original complaint. Doc. 8-1 p. 13; Doc. 32 pp. 1-2. Defendants hereby incorporate those arguments as if fully stated herein. The first amended complaint squarely raises both issues, see FAC ¶¶ 44, 49, and shows that no material factual dispute remains.

### B.  Defendants' fair use defeats the copyright infringement claim.

The Court's fair use analysis left few issues remaining under the copyright claim. Order pp. 4-13. Congress set forth four non-exclusive statutory factors as especially relevant to consider in making fair use determinations, and the Court evaluated each:

(1)  the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2)  the nature of the copyrighted work;

(3)  the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4)  the effect of the use upon the potential market for or value of the copyrighted work.

---

[4] The Court has taken judicial notice of *Go!*. Order p. 6 n. 1. The Court deemed the other four Dr. Seuss books incorporated by reference in the complaint. *Id*. The new complaint also incorporates those four books by referring to them to the same extent.

MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT        Case No. 16cv2779-JLS (BGS)

*Id.* p. 5 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994); 17 U.S.C. § 107). Briefly, the Court found that "factors one and four … 'generally viewed as the most important factors' … currently stand in equipoise." *Id.* p. 13 (quoting *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1179 (9th Cir. 2013)). The first factor favored Defendants, as the Court found *Boldly* is "a highly transformative work that takes no more than necessary to accomplish its transformative purpose and will not impinge on the original market for Plaintiff's underlying work." *Id.* p. 12. Taking the allegations of market harm as true, the Court presumed "a potential harm to Plaintiff's licensing opportunities" and weighed the fourth factor for DSE. *Id.* p. 11. "Factor two weighs slightly in favor of Plaintiff, and factor three is neutral." *Id.*

The Court made further findings as it balanced the four factors "'in light of the purposes of copyright.'" *Id.* p. 11 (quoting *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 800 (9th Cir. 2003) (quoting *Campbell*, 510 U.S. at 578)). The Court recognized the significance of this case for "the emerging 'mash-up' culture where artists combine two independent works in a new and unique way." *Id.* p. 12. "[I]f fair use was not viable in a case such as this, an entire body of highly creative work would be effectively foreclosed." *Id.* The Court also found that "it would appear that the purposes of copyright favor Defendants, [although] that determination is also a close and unsettled call." *Id.* The Court ultimately denied the motion to dismiss, given its procedural posture and the "near-perfect balancing of the factors." *Id.* p. 13. "Specifically, without relevant evidence regarding factor four the Court concludes that Defendants' fair use defense currently fails as a matter of law." *Id.*

The Court should now resolve the remaining issues and find that *Boldly* is a fair use. The allegations in the first amended complaint tilt further toward fair use. Given the Court's initial findings, the second factor should not weigh against fair use and the third factor should weigh in favor. Under the fourth factor, market harm should not be presumed and cannot be shown. And the purpose of copyright, to foster creativity, further supports resolving the analysis in favor of fair use.

-6-

### 1.    The first factor weighs in favor of fair use.

Under the first factor, which considers "the purpose and character of the use," the Court asked "whether and to what extent the new work is 'transformative.'" Order p. 7 (quoting *Campbell*, 510 U.S. at 579). ComicMix detailed *Boldly*'s transformative purpose, character, and message at length. Doc. 8-1 pp. 10-16. Defendants hereby incorporate that analysis and argument about the first factor as if fully stated herein.

The Court found that *Boldly* is "a highly transformative work." Order p. 12. "Defendants' work is most appropriately termed a literary and pictorial 'mash-up.'" *Id.* p. 7. A mash-up is "'something created by combining elements from two or more sources: such as' underlying-work-specific 'characters or situations.'" *Id*. pp. 7-8 (quoting *Mash-Up*, Merriam-Webster)). While not concluding that *Boldly* qualifies as a parody, the Court found it "no doubt transformative. … the copied elements are always interspersed with original writing and illustrations that transform *Go!*'s pages into repurposed, *Star-Trek*–centric ones." *Id.* p. 8. Though "Defendants created their work for profit," this weighed against Defendants only slightly, since *Boldly* is transformative and "does not supplant the market for *Go!* or the other relevant Dr. Seuss works." *Id.* The Court found this factor weighs in favor of finding fair use. *Id.*

The latest complaint fails to alter that analysis. DSE adds an allegation that the cover of *Boldly* exemplifies "slavish copying," FAC ¶ 37 & p. 12, but the Court has seen that "*Boldly* changed the cover imagery and title to invoke *Star Trek*[.]" Order p. 15. DSE also now alleges that Defendants did not "create[] their own unique content and illustrations," and contends that "the act of blatantly taking intellectual property from two rights holders and calling it a parody or 'mash-up' does not transform infringement into parody or any other form of fair use." FAC ¶ 44.[5] As the

---

[5] Before DSE filed suit, Defendants called *Boldly* a "parody" and a "mash-up," both on the Kickstarter campaign page and in their counsel's October 28, 2016 letter to DSE. Doc. 8-5 p. 1; Doc. 8-8 pp. 2, 5. DSE now directly references and relies on those statements. FAC ¶ 44. Defendants therefore respectfully renew the request for judicial notice, as to both the campaign page and the letter. Doc. 8-2 pp. 2-3, 3-4.

MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT          Case No. 16cv2779-JLS (BGS)

Court recognizes, *Boldly* is a highly creative work in its own right: a "mash-up," "a completely unique work," "with original writing and illustrations." Order pp. 7-8. DSE's argumentative responses to the contrary are entitled to no credence. The first factor weighs strongly in favor of a finding of fair use.

### 2. The second factor does not weigh against fair use.

Recognizing that the second factor, the nature of the copyrighted work, "typically has not been terribly significant in the overall fair use balancing," the Court found it "weighs only slightly in [Plaintiff's] favor." Order p. 9 (quoting *Walking Mountain*, 353 F.3d at 803, and *Seltzer*, 725 F.3d at 1178). The Court should revisit the issue in light of the Order and find that the second factor should be given no weight.

Uses of creative works are less likely to be found fair, and Dr. Seuss's books are no doubt creative. *Id.* But transformative use minimizes the weight given creative works under this factor. See *Walking Mountain*, 353 F.3d at 803 (noting a creative copyrighted work is "typical of cases where there are infringing parodies"); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 612 (2d Cir. 2006) ("the second factor may be of limited usefulness where the creative work of art is being used for a transformative purpose"). Further minimizing that weight, "a Court must also 'consider the extent to which a work has been published.'" Order p. 9 (quoting *Seltzer*, 725 F.3d at 1178). "Published works are more likely to qualify as fair use because the first appearance of the artist's expression has already occurred." *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003). *Go!* has been published in multiple editions, languages, and formats, with *Go!*-derivative works and consumer goods. FAC ¶¶ 18, 21, 22, 24. Few books have been published to a greater extent.

The Court found, under the third factor, that *Boldly* does not "copy more than necessary to accomplish its transformative purpose." Order p. 9. That adds weight in favor of fair use under the second factor. Where a defendant "could not create [its work] without necessarily making some copies of the [plaintiff's work] … this factor 'neither supports nor hurts [defendant's] claim that a fair use defense is appropriate

MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT         Case No. 16cv2779-JLS (BGS)

here.'" *Sony Computer Entm't Am., Inc. v. Bleem, LLC*, 214 F.3d 1022, 1028 (9th Cir. 2000) (quoting *Triangle Publ'ns, Inc. v. Knight-Ridder Newspapers, Inc.*, 626 F. 2d 1171, 1176 (5th Cir. 1980)). The Court should find the second factor's weight is neutral or, alternatively, too insignificant to weigh against a finding of fair use.

### 3.   The third factor weighs in favor of fair use.

"The third factor looks to the quantitative amount and qualitative value of the original work used in relation to the justification for that use." *Seltzer*, 725 F.3d at 1178. The "extent of permissible copying varies with the purpose and character of the use." *Campbell*, 510 U.S. at 586-87. *Boldly* is a mash-up that uses no more than needed to conjure up and transform the originals. Order p. 9. "As long as the new work does not take more from the original work than is necessary to accomplish its purpose, this factor does not weigh against a determination of fair use." *Williams v. Columbia Broad. Sys., Inc.*, 57 F. Supp. 2d 961, 969 (C.D. Cal. 1999) (citing *Fisher v. Dees*, 794 F.2d 432, 439 (9th Cir. 1986)). When such reasonably proportionate use is transformative, it weighs in favor of fair use. *Walking Mountain*, 353 F.3d at 804.

The original complaint alleged that Defendants' "slavish copying … attempt[s] to recreate entire pages from the Dr. Seuss Books with meticulous precision." Doc. 1 ¶ 28; see *id.* ¶ 26 ("wholesale slavish copies"). The Court found to the contrary that *Boldly* copied no illustrations "in their entirety," but transformed each, and never copied "more than is necessary to accomplish its transformative purpose." Order p. 9. The first amended complaint repeats the allegation of "slavish copying" seven times, adding nothing to the Court's calculus. FAC ¶¶ 35, 37, 40, 42, 43, 76, 85.

The Court concluded that, as in *Seltzer*, "this factor does not weigh against Defendants." Order p. 10 (citing *Seltzer*, 725 F.3d at 1178). The Court should revisit the issue and find that this factor in fact weighs in favor of fair use. The third factor in *Seltzer* involved a distinct issue, the copying of a single drawing, which "unlike … a book manuscript … is not meaningfully divisible." 725 F.3d at 1178. DSE's five allegedly infringed books are divisible, page-by-page and book-by-book. *Go!*

-9-

was the main Dr. Seuss source work; otherwise Defendants drew on only one illustration from *How the Grinch Stole Christmas*, and one apiece from two stories in *The Sneetches* ("The Zax" and "The Sneetches"). See FAC ¶¶ 35, 37, pp. 13 (top), 14, (bottom), & 15 (top); Doc. 8-1 pp. 9, 15-16. DSE still has not identified any allegedly copied character or illustration from *The Lorax* or *Horton Hears a Who*. FAC ¶ 35; see Doc. 8-1 p. 9 n. 7, Doc. 32 p. 3 n. 8. With such limited copying for transformative purposes, the third factor is not neutral, but weighs in favor of fair use. See *Walking Mountain*, 353 F.3d at 803-04 (copying was not "verbatim" and extent was "justifiable in light of his parodic purpose and medium used"); *Blanch v. Koons*, 467 F.3d 244, 257-58 (2d Cir. 2006) (copying was selective and "reasonable when measured in light of his purpose"); *Sandman v. Seajay Soc'y, Inc.*, 142 F.3d 194, 206 (4th Cir. 1998) ("qualitatively and quantitatively substantial" copying was nonetheless "justified" and not more than necessary to accomplish the purposes of the uses). The Court should find that the third factor weighs in favor of fair use.

### 4. The fourth factor weighs in favor of fair use.

The fourth fair use factor concerns "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). It "accommodates the distinction between the copying of works in order to make independent creative expression possible and the simple exploitation of another's creative efforts." *Sega Enters. v. Accolade, Inc.*, 977 F.2d 1510, 1523 (9th Cir. 1992). "It requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also 'whether unrestricted and widespread conduct of the sort engaged in by the defendant … would result in a substantially adverse impact on the potential market' for the original." *Campbell*, 510 U.S. at 590 (quoting Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.05[A][4]). "This factor also considers any impact on 'traditional, reasonable, or likely to be developed markets.'" *Seltzer*, 725 F.3d at 1179 (quoting *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 81 (2d Cir. 1997)). "Where the allegedly infringing use does not substitute for

-10-

the original and serves a 'different market function,' such factor weighs in favor of fair use." *Id.* (quoting *Campbell*, 510 U.S. at 590). "A transformative work is less likely to have an adverse impact on the market of the original than a work that merely supersedes the copyrighted work." *Kelly*, 336 F.3d at 821.

*Boldly* is a transformative work, not a mere exploitation. Order p. 8. It "does not substitute for the original and serves a different market function than *Go!*." *Id.* p. 11. "Indeed, *Boldly*'s market relies on consumers who have already read and greatly appreciated *Go!* and Dr. Seuss's other works, and who simultaneously have a strong working knowledge of the *Star Trek* series. It is therefore unlikely that *Boldly* would severely impact the market for Dr. Seuss's works." *Id.* Yet the Court did not find that this factor weighs in favor of fair use at first blush; it took the allegations to be true, so some "potential harm to Plaintiff's licensing opportunities is presumed." *Id.* p. 18.

On a motion to dismiss, market harm is not presumed or taken as true unless plausibly pleaded. See *Konangataa v. ABC*, No. 16-cv-7382 (LAK), 2017 U.S. Dist. LEXIS 95812, *3 (S.D.N.Y. June 21, 2017) (granting motion to dismiss on fair use grounds; "there are no plausible allegations that would permit a conclusion that the effect of the use on the part of any of the defendants had any effect on any potential market for or any value of the copyrighted work"). A presumption of market harm "does not arise when a work is transformative." *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 724 (9th Cir. 2007) (citing *Campbell*, 510 U.S. at 591).

*Boldly* cannot cause any relevant market harm, as DSE does not and cannot plausibly participate in a market for transformative works like *Boldly*. The fourth factor favors fair use and the copyright claim should be dismissed.

The only market effect alleged in the original complaint was that DSE had not licensed *Boldly*. While DSE licenses new works, including in "collaborations with other rights holders … Defendants created [*Boldly*] without license or authorization from DSE, and thereby usurped DSE's licensing opportunities." Doc. 1 ¶¶ 24, 32; Order pp. 6, 11. The circular logic of terming the defendant's use a lost license must

-11-

be rejected as a basis for market harm, or "the fourth fair use factor would always favor the copyright holder." *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 930 n. 17 (2d Cir. 1994). "'[I]t is a given in every fair use case that plaintiff suffers a loss of a *potential* market if that potential is defined as the theoretical market for licensing the very use at bar.'" *Swatch Group Mgmt. Servs. v. Bloomberg LP*, 742 F. 3d 17, 34 (2d Cir. 2014) (quoting *Nimmer on Copyright* § 13.05[A][4]). But "Plaintiffs may not head off a defense of fair use by complaining that every potential licensing opportunity represents a potential market for purposes of the fourth fair use factor." *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1278 (11th Cir. 2014) ("licensing poses a particular threat that the fair use analysis will become circular").

The new complaint repeats and expands on that circular market-effect allegation. FAC ¶¶ 33, 46. The amendments chiefly seek to buttress that allegation and the copyright claim, though the Court gave DSE leave to amend only as to the trademark claims.[6] *Id.* ¶¶ 19, 21-26, 43, 44, 46. Instead of bolstering the copyright claim, DSE pleads itself out of court. DSE enumerates its licensed collaborations, and none are "works of *Boldly*'s type." Order p. 11. That type is a mash-up, "where artists combine two independent works in a new and unique way," specifically a transformative work that "combines into a completely unique work the two disparate worlds of Dr. Seuss and *Star Trek.*" *Id.* pp. 8, 12. *Boldly* is a complementary work, not a substitute for *Go!* or any work DSE could reasonably license. See *Ty, Inc. v. Publ'ns Int'l, Inc.*, 292 F.3d 512, 517-18 (7th Cir. 2002); *Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*, 964 F.2d 965, 969 (9th Cir. 1992) ("products that enhance, but

---

[6] Some of the market-effect–related amendments ostensibly amplify the complaint's trademark claims, by alleging that DSE's marks are distinctive source-identifiers, FAC ¶¶ 17-19, 23, or that Defendants' use of the marks misleads as to source or confuses consumers, *id.* ¶¶ 40-42, 44-46. These amendments speak to likelihood of confusion, so they facially fail to comply with DSE's leave to amend the complaint to cure its "lack of nominative-fair-use-opposition." Order p. 20. As the Court explained, *Boldly* does not explicitly mislead consumers, and likelihood-of-confusion arguments do not apply against nominative fair use. *Id.* pp. 15-16, 19 n. 4.

-12-

do not replace, copyrighted works" are not presumptively infringing). If published (see Doc. 33-1 ¶ 21), *Boldly* would be in a "fair use market"—a market for transformative uses. *Bill Graham Archives*, 448 F.3d at 615. Relevant market harm would entail "impairment to a traditional, as opposed to a transformative market." *Id.* at 614. *Boldly* can cause no such harm. "A use that 'falls within a transformative market' does not cause the copyright holder to 'suffer market harm due to the loss of license fees.'" *Authors Guild, Inc. v. HathiTrust*, 902 F. Supp. 2d 445, 463 (S.D.N.Y. 2012) (quoting *Bill Graham Archives*, 448 F.3d at 615), *aff'd in pertinent part*, 755 F.3d 87 (2d Cir. 2014).

DSE identifies no such licensed use, dispelling any hypothetical harm alleged. DSE does not dispute that *Boldly* is "an amalgamation of the Dr. Seuss works and certain characters, imagery, and other elements from *Star Trek*, the well-known science fiction entertainment franchise[.]" FAC ¶ 27. Non-party CBS Studios, Inc. owns *Star Trek*'s intellectual property. *Id.* ¶¶ 2, 34. DSE alleges that it has licensed "new works based upon, and incorporating" its copyrights and trademarks. *Id.* ¶ 46. But DSE does not, and cannot plausibly, allege that it has licensed or would license any derivative work that creates a hybrid of Dr. Seuss's books with existing characters and imagery from works from a third party's entertainment franchise. The first amended complaint does not give rise to a plausible claim that *Boldly* would cause any harm in any transformative market.

DSE alleges that it oversees new editions and reissues of Dr. Seuss works. FAC ¶ 21. That does not plausibly plead any relevant market harm because "*Boldly* does not supplant the market for *Go!* or the other relevant works." Order p. 8*; id.* p. 11.

DSE alleges that it has published "books that are derivative of [*Go!*]." FAC ¶¶ 19, 22. Those derivates include works by Dr. Seuss and other authors and illustrators in his books' style, and other books based on his intellectual property, such as books by Tish Rabe featuring Dr. Seuss's character The Cat in the Hat. *Id.* ¶ 23. Those are all derivative works as defined in 17 U.S.C. § 101, which, "unlike works of fair use

-13-

—take expression for purposes that are not 'transformative.'" *Castle Rock Entm't, Inc. v. Carol Publ'g Grp.*, 150 F.3d 132, 143 (2d Cir. 1998) (citing 17 U.S.C. § 101). They are therefore outside the fair use market for Defendants' mash-up book.

DSE further alleges that it licenses its copyrights and trademarks for new works that feature Dr. Seuss characters: a theme park attraction including a live-action show, several television series, and merchandise including "co-branding initiatives" like *Lorax*-themed sneakers and "co-branded collegiate bibs." FAC ¶¶ 24, 25, 46. A glut of DSE-branded merchandise includes "toys and games, children's apparel, young adult and adult apparel, puzzles and educational kits, home furnishings, cards and stationery, hats, bags, accessories, party supplies, art, collectibles, classroom materials, and fabrics." *Id*. ¶ 25. DSE's expansive product list notably omits any licensed transformative literary works. Modestly, DSE calls its publishing program robust, and its licensing and merchandising program extensive. *Id*. ¶¶ 21, 25. More than 650 million copies Dr. Seuss books have been sold, with the lion's share in the last 20 years, after Mr. Geisel's death. *Id*. ¶¶ 12, 14; *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1396 (9th Cir. 1997) ("approximately 35 million copies … in print worldwide" in 1997). DSE's vigorous derivative licensing work, without any licensing in the *Boldly* fair use market, indicates that DSE cannot enter that market. Its licensed goods are instead brand extensions in other media. FAC ¶ 26 (DSE "expanding beyond books into ancillary areas through this licensing program"). Unlike *Boldly*, none are crossover works that integrate pre-existing characters or imagery from another entertainment franchise, such as *Star Trek*, with those of Dr. Seuss. DSE does not allege that any of its "co-branding initiatives" is for a literary mash-up, combining elements of Dr. Seuss with elements of another copyright holders' existing underlying works. See Order pp. 7-8. Instead DSE strives to maintain Dr. Seuss's world as a unified, discrete entity: "DSE's primary focus is to protect the integrity of the Seuss books[.]" FAC ¶ 26. DSE's licensed derivatives are orthodox, sticking to Dr. Seuss canon, while mash-ups are inherently heterodox.

-14-

DSE's interest in integrity and setting Dr. Seuss apart prevents its entry into an aftermarket for licensing reconfigured, hybridized works. Even if hybrid books like *Boldly* became widespread, they would not harm DSE in that aftermarket.

That is the only market in which DSE could claim market harm, since *Boldly* "will not impinge on the original market for Plaintiff's underlying work." Order p. 12. The relevant inquiry about potential licensing does not encompass "the licensing market for art in general." *Walking Mountain*, 353 F.3d at 805. Rather, the focus is on works similar to that of the defendant: "Forsythe's work could only reasonably substitute for a work in the market for adult-oriented artistic photographs of Barbie. *We think it safe to assume* that Mattel will not enter such a market or license others to do so." *Id.* at 806 (emphasis added). None of DSE's licensed works and collaborations are in the same market as *Boldly*. The only relevant market would be for licenses to secondary authors like Defendants who wish to use DSE's works in transformative combination with third-party works. *Id.* That licensing market for transformative uses is wholly hypothetical, and not a market DSE "would in general develop or license others to develop." *Campbell*, 510 U.S. at 592.

The fourth factor favors fair use when the secondary user's market is one that the copyright owner "could not possibly take advantage of," *Pac. & S. Co. v. Duncan*, 744 F.2d 1490, 1496 (11th Cir. 1984); or "simply had no interest in occupying," *Twin Peaks Prods. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1377 (2d Cir. 1993); or when "the notion that any such market could ever materialize is speculative at best," *SOFA Entm't, Inc. v. Dodger Prods.*, 782 F. Supp. 2d 898, 910 (C.D. Cal. 2010), *aff'd*, 709 F.3d 1273 (9th Cir. 2013). "Where the allegedly infringing use does not substitute for the original and serves a 'different market function,' such factor weighs in favor of fair use." *Seltzer*, 725 F.3d at 1179. The Court found as much: "*Boldly* does not substitute for the original and serves a different market function than *Go!*." Order p. 11. No issue of material fact remains. Evidence about DSE's derivative markets could not show harm in the Defendants' fair use market, in which

-15-

DSE has no plausible share. Defendants' use of Dr. Seuss's books "advances its own original creation without any reasonable threat to [DSE's] business model. Therefore the fourth factor also favors a finding of fair use." *SOFA Entm't*, 709 F.3d at 1280.

### 5. Weighed together in light of the purposes of copyright, the four factors favor fair use.

The four statutory factors are evaluated holistically, not algorithmically. *Ty, Inc.*, 292 F.3d at 522 ("the four factors are a checklist of things to be considered rather than a formula for decision"). "All are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell*, 510 U.S. at 578. "Depending on the particular facts, some factors may weigh more heavily than others." *Walking Mountain*, 353 F.3d at 800 (citing *Campbell*, 510 U.S. at 577-79). As shown above, all four factors weigh in favor of finding fair use here, except perhaps the second, least significant factor. On balance, that should more than suffice, especially as the purposes of copyright support the same finding.

The Court stated, "although it would appear that the purposes of copyright favor Defendants, that determination is also a close and unsettled call." Order p. 13. The Court may make that call now. That purpose is "[t]o promote the Progress of Science and Useful Arts." *Id.* p. 11 (quoting U.S. Const. art. I, § 8, cl. 8). "The ultimate test of fair use … is whether the copyright law's goal of promoting the Progress of Science and useful Arts would be better served by allowing the use than by preventing it." *Bill Graham Archives*, 448 F.3d at 608 (quoting *Castle Rock Entm't*, 150 F.3d at 141). Transformative uses "that build upon, reinterpret, and reconceive existing works" make such progress manifest. *Walking Mountain*, 353 F.3d at 799.

> [T]he benefits to the public in allowing such use—allowing artistic freedom and expression and criticism of a cultural icon—are great. Allowing [defendants'] use serves the aims of the Copyright Act by encouraging the very creativity and criticism that the Act protects.

*Id.* at 806. "The fair use doctrine is an integral part of copyright law precisely because it gives authors 'breathing space within the confines of copyright' to build

-16-

upon their predecessors' works." *SOFA Entm't*, 709 F.3d at 1280 (quoting *Campbell*, 510 U.S. at 579). When "'the quoted matter is used as raw material, transformed in the creation of new information, new aesthetics, new insights and understandings— this is the very type of activity that the fair use doctrine intends to protect for the enrichment of society.'" *Seltzer*, 725 F.3d at 1176 (quoting Pierre N. Leval, *Towards A Fair Use Standard*, 103 Harv. L. Rev. 1105, 1111 (1990)). Fair use "facilitate[s] a class of uses that would not be possible if users always had to negotiate with copyright proprietors." *Kienitz v. Sconnie Nation LLC*, 766 F.3d 756, 759 (7th Cir. 2014).

Mash-ups are one such class. As the Court recognizes, "if fair use was not viable in a case such as this, an entire body of highly creative work would be effectively foreclosed." Order p. 12. DSE's narrow view of fair use "would almost always preclude a finding of fair use under these circumstances." *Id.* Ultimately that would deplete entire genres of creative work across a wide range of media: literary/artistic mash-ups like *Boldly* and other postmodern literature, metafiction, fanfic, and slash fiction; in music, mash-ups, musique concrète, remixes, and hip-hop; in visual art, surrealism, dada, pop art, conceptual art, appropriation art, détournement, montage, and collage; video mash-ups and supercuts; video game mods, fangames, and fan patches; mashup web applications, open source software, and freeware; and more.

Mash-ups are inherently transformative, and *Boldly* is "highly transformative." *Id*. The fair use market for transformative uses that build on Dr. Seuss's books is not properly subject to DSE's control and does not require DSE's license. The book-reading public can sustain and be enriched by Dr. Seuss's original works, authorized derivatives, and third-party transformative works. In the interests of the market, artistic freedom, and free expression, that choice must be left up to the public. DSE's copyright claim "would stifle the very creativity which that law is supposed to foster." *Penguin Books*, 109 F.3d at 1399. The purposes of copyright strongly support a finding that *Boldly* is a creative, transformative, non-infringing fair use.

-17-

## C.  Defendants' nominative fair use defeats all other claims.

DSE's alleged trademarks, if valid, are not infringed by Defendants' nominative use. A "nominative fair use … is, by definition, not infringement." *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175 (9th Cir. 2010). "The nominative fair use analysis is appropriate where a defendant has used the plaintiff's mark to describe the plaintiff's product[.]" *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1152 (9th Cir. 2002). The nominative fair use inquiry has three factors: "In cases where a nominative fair use defense is raised," a court asks "whether (1) the product was 'readily identifiable' without use of the mark; (2) defendant used more of the mark than necessary; or (3) defendant falsely suggested he was sponsored or endorsed by the trademark holder." *Tabari*, 610 F.3d at 1175–76 (quoting *Playboy Enters, Inc. v. Welles*, 279 F.3d 796, 801 (9th Cir. 2002)).

The "nominative fair use analysis … *replaces* the likelihood of customer confusion analysis set forth in *Sleekcraft*." *Cairns*, 292 F.3d at 1151 (emphasis in original) (distinguishing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)). Since it is a replacement test and not an affirmative defense, the plaintiff "must bear the burden of establishing that [Defendants'] use of the … mark was *not* nominative fair use." *Tabari*, 610 F.3d at 1182 (emphasis in original). "The Ninth Circuit has made it clear that a defendant who raises the nominative fair use issue need only show that it uses the mark to refer to the plaintiff's trademarked goods or services. The burden then reverts to the plaintiff to show a likelihood of confusion under the nominative fair use analysis." J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23.11 at n. 5 (4th ed. 2017) (citing *Tabari*).

Defendants hereby incorporate ComicMix's arguments related to nominative fair use, set forth in Doc. 8-1 pp. 2-3, 23-24 and Doc. 32 pp. 6-7, as if fully stated herein.

The Court dismissed DSE's trademark infringement and unfair competition claims on the basis of nominative fair use. Order p. 18 (citing Doc. 8-1 pp. 23-24). Despite DSE's extensive amendments, the new complaint calls for the same result.

-18-

MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT                Case No. 16cv2779-JLS (BGS)

DSE again alleges that it owns trademark rights in the title of *Go!*, a stylized font,[7] and "the unique illustration style of the characters and backgrounds found throughout Dr. Seuss books." Doc. 1 ¶ 17; FAC ¶17. DSE raises a new Lanham Act claim based on a registered OH THE PLACES YOU'LL GO trademark. FAC ¶¶ 18, 66-72. DSE also now alleges it has "a family" of trademarks in the titles of its *Go!*-derivative books and its "Oh! The Stories You'll Hear!" theme park show. *Id.* ¶ 19.

None of DSE's new allegations save its trademark and unfair competition claims. Nominative fair use can be made with images and visual references, not just names or descriptions. *Walking Mountain*, 353 F.3d at 810-11; *Cairns*, 292 F.3d at 1153-54. The analysis of nominative fair use does not differ for registered and unregistered marks. *See Playboy Enters. v. Teri Welles, Inc.*, 78 F. Supp. 2d 1066, 1077 (S.D. Cal. 1999), *aff'd in part, rev'd on other grounds in Welles*, 279 F.3d 796. Where a Lanham Act claim fails, so must an unfair competition claim under California Business and Professions Code § 17200 based on the same conduct. Order p. 38 (citing cases). DSE's allegation that it owns a family of marks deriving from the title of *Go!* speaks to the strength of the mark, which is a factor in the *Sleekcraft* test, but not in the nominative fair use test. DSE again alleges no use of its marks other than nominative fair uses, and it gives no new basis to avoid dismissal. *Boldly* uses the alleged marks to refer to Dr. Seuss's books as needed, and DSE cannot carry its burden to defeat any element of the nominative fair use test.

### 1. DSE's books are not readily identifiable without its alleged marks.

"To satisfy the first part of the test for nominative use, 'the product or service in question must be one not readily identifiable without use of the trademark.'" *Welles*,

---

[7] DSE now claims rights in a font "used consistently" on the books' covers, spines, and title pages. FAC ¶¶ 17, 40. Yet its trademark causes of action seem based instead on a typeface font for text employed *within* the books. *Id.* ¶¶ 76, 85 (alleging Defendants misappropriated the "font that DSE uses consistently *throughout* the Dr. Seuss books") (emphasis added). If so, to the extent that any cause of action is based on a font in which DSE does not allege trademark protection, it must be dismissed.

-19-

279 F.3d at 802 (quoting *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992)). The test asks "whether the [Defendants'] use of the mark was 'necessary' to describe their business." *Tabari*, 610 F.3d at 1180. It is satisfied when defendants "needed to communicate" their relationship with the plaintiff's goods, "and using the [plaintiff's] mark … accomplished this goal." *Id.*[8]

According to the first amended complaint, Dr. Seuss's books consist almost entirely of source-identifying DSE trademarks, from the title and font on the cover to the prose style and illustration style "found throughout" their contents. FAC ¶¶ 17, 23 (alleging DSE publishes books "by Dr. Seuss and other authors and illustrators whose works reflect the same source-indicating whimsical, lyrical style of Dr. Seuss's books"). That is not the law; trademarks are specific words and symbols in consistent form used to identify the source of goods, not the goods themselves, and not mutable "styles" of writing or drawing or freehand lettering. *See* Doc. 8-1 pp. 20-21; *McCarthy on Trademarks* § 6.14 at n. 21 (4th ed. 2017) ("Is there such a thing as trademark protection for the 'style' of an artist? Most courts have said no.") (collecting cases). And "the title of a single book cannot serve as a source identifier." *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1162 (Fed. Cir. 2002). Despite DSE's registration, a title is a presumptively invalid mark for books. *See Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 782-84 (9th Cir. 2002).

In any event, Defendants had no reasonable substitute for employing the aspects of the books in which DSE claims rights. *Boldly* is a transformative work that

---

[8] *See also New Kids*, 971 F.2d at 306 ("[M]any goods and services are effectively identifiable only by their trademarks. … Indeed, it is often virtually impossible to refer to a particular product for purposes of comparison, criticism, point of reference or any other such purpose without using the mark."); *Walking Mountain*, 353 F.3d at 812 ("Barbie would not be readily identifiable in a photographic work without use of the Barbie likeness and figure."); *Cairns*, 292 F.3d at 1153 ("Princess Diana's person is not readily identifiable without use of her *name*. … There is no substitute for Franklin Mint's use of Princess Diana's *likeness* on its Diana-related products.") (emphasis in original).

-20-

"combines into a completely unique work the two disparate worlds of Dr. Seuss and *Star Trek*." Order p. 8. That combination requires substantial identifiable elements from both worlds. *Boldly* cannot readily call *Go!* to mind without employing the most recognized terms and designs that identify it, from its title and font to aspects of its illustrations. Books are most readily identified by their titles—the function of a title is to "'identif[y] a specific literary work.'" *Mattel, Inc. v. MCA Records*, 296 F. 3d 894, 902 (9th Cir. 2002) (*quoting Application of Cooper*, 45 C.C.P.A. 923, 254 F. 2d 611, 615 (C.C.P.A. 1958)). Dr. Seuss's stylized font and illustration style, if protectable as trademarks, are also only readily identified by depiction. By necessity, to make transformative use of *Go!* and other Dr. Seuss works, *Boldly* treats Dr. Seuss's illustration style and the irregular, freehand lettering on the cover of *Go!* as visual points of reference.

### 2.    Defendants' use of the alleged marks was reasonably necessary.

The second question in the nominative fair use test is whether more of the mark was used than "reasonably necessary to identify the product." *New Kids*, 971 F.2d at 308. "[W]hat is 'reasonably necessary to identify the plaintiff's product' differs from case to case." *Cairns*, 292 F.3d at 1154. "Where, as in the present case, the description of the defendant's product depends on the description of the plaintiff's product, more use of the plaintiff's trademark is 'reasonably necessary to identify the plaintiff's product' than in cases where the description of the defendant's product does *not* depend on the description of the plaintiff's product." *Id.* Whether the amount of a stylized font used is more than reasonably necessary is judged in light of the purpose of the work. *Aviva United States Corp. v. Vazirani*, 902 F. Supp. 2d 1246, 1265 (D. Ariz. 2012), *aff'd*, 632 Fed. Appx. 885 (9th Cir. 2015).

*Boldly* uses any valid DSE trademarks only to the extent necessary for its transformative purpose. Transformative uses must draw from their sources, often substantially. *Boldly*'s creative effects legitimately depend on employing the terms and designs by which its subject is recognized. It was reasonably necessary to use

-21-

*Go!*'s full title and illustrations and fonts from Dr. Seuss's books to facilitate Defendants' transformative use.

DSE alleges that Defendants' use its alleged trademarks "in their entirety," particularly on *Boldly*'s front cover, back cover, spine, and title page, and that the use "exceeds any legitimate referential purpose for such use." *Id.* ¶ 42. DSE is contradicted by exhibits, and states a mere "legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Courts evaluating this second factor of nominative fair use may draw on the related, third factor of a copyright fair use analysis, which also considers the amount used or taken. See *Teri Welles, Inc.*, 78 F. Supp. 2d at 1089. The Court should apply its own fair use analysis to again find that *Boldly* "does not copy [the Dr. Seuss illustrations] in their entirety," and not "more than is necessary to accomplish its transformative purpose." Order p. 9. The Court should further find that including the full title of *Go!* in the title *Oh, the Places You'll Boldly Go!* was essential to the comic effect of combining it with *Star Trek*'s "famous, split-infinitive opening line." *Id.* p. 15. *Boldly* uses its hybrid title on its cover, spine, title page, and in the text, just one time apiece. *Boldly* pp. 1, 4. Its artwork and font uses were also reasonably necessary to its reformulation and recombination. *Boldly* could not clearly identify and transform *Go!* and other illustrated Dr. Seuss works without using aspects of their look. Defendants' use of the alleged trademarks was referential, not gratuitous, and was reasonably necessary.

### 3. Nothing else suggests DSE sponsors or endorses *Boldly*.

A nominative fair use "says nothing that expressly or by fair implication connotes endorsement or joint sponsorship." *New Kids*, 971 F.2d at 309. The last requirement of the test is that the defendant "must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *Id.* at 302. The "in conjunction" element requires something more than just the underlying use of the mark. See *McCarthy on Trademarks* § 23.11 at n. 23 (4th ed. 2017) ("in the author's view, the third factor should be viewed as asking whether, in addition to

-22-

mere use of the mark, defendant has engaged in some additional conduct that affirmatively suggests sponsorship or endorsement by the plaintiff"). DSE points to nothing but *Boldly* itself that could suggest DSE endorsed or sponsored Defendants. FAC ¶ 2 (alleging "Defendants, *via the Infringing Work* … mislead and deceive … as to DSE's approval, sponsorship, endorsement, or licensing of the Infringing Work.") (emphasis added); *id.* ¶¶ 39-40, 42, 46, 47. Use of the alleged marks alone underpins each trademark and unfair competition cause of action. *Id.* ¶¶ 69, 76, 85.

DSE alleges that *Boldly* does not by itself sufficiently deter any potential consumer confusion. FAC ¶¶ 41, 44. That inverts the test: "This element does not require that the defendant make an affirmative statement that their product is not sponsored by the plaintiff." *Walking Mountain*, 353 F.3d at 811. "Speakers are under no obligation to provide a disclaimer as a condition for engaging in truthful, non-misleading speech." *Tabari*, 610 F.3d at 1177. And the Court has already found that *Boldly* is not explicitly misleading as to source or content. Order pp. 15-16.

DSE cannot plead away its burden to show some additional act by Defendants that would suggest sponsorship or endorsement, and cannot satisfy its burden where Defendants took several affirmative steps to avoid such confusion. Though the third element requires no disclaimers, the suppressed book includes *two*, which make up more than half the text on the copyright page, and include the book's only mention of "Dr. Seuss" or DSE: "This is a work of parody, and is not associated with or endorsed by CBS Studios or Dr. Seuss Enterprises, L.P." *Boldly* p. 2.

DSE belittles that express disclaimer as "ineffective." FAC ¶¶ 44, 77. Yet Defendants did more. The terminated Kickstarter campaign connoted the opposite of endorsement. It characterized *Boldly* as "within the boundary of fair use" while alerting backers that intellectual property owners might disagree and sue: "While we firmly believe that our parody, created with love and affection, fully falls within the boundary of fair use, there may be some people who believe that this might be in violation of their intellectual property rights." *Id.* ¶ 49. DSE maintains that this

-23-

statement is an admission to "blatant and willful infringement." *Id.*; Doc. 1 ¶ 35; Doc. 22 p. 10. It was the opposite, and DSE's erroneous legal conclusion is not entitled to be taken as true. *See Twombly*, 550 U.S. at 555.

More to the point, the erroneous allegation contradicts any DSE argument that the campaign suggested sponsorship. Beyond the stated premonition that the book could be sued out of existence, the fact of the Kickstarter campaign indicated DSE was not backing Defendants. ComicMix turned to crowdfunding with a goal of raising $20,000 for an initial print run. FAC ¶¶ 48-49; Doc. 8-5 pp. 1, 5. Sponsorship from a publishing behemoth like DSE would have left no need to pass the hat online. DSE owns the copyrights in dozens of "iconic" books, "among the most popular children's books of all time," which have "sold over 650 million copies worldwide." FAC ¶¶ 14, 16. DSE produces television shows, motion pictures, and theatrical works, and oversees "a robust publishing program" and "an extensive licensing and merchandising program." *Id*. ¶¶ 1, 21, 25. DSE is simply out of Defendants' league, and they did nothing to suggest any affiliation.

First Amendment concerns weigh heaviest when such a literary powerhouse sues to suppress critical creative speech. DSE failed to state a trademark or unfair competition claim, and its unfair use of the law should proceed no further.

## V.    Conclusion

Therefore, ComicMix respectfully requests that the Court dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6).

-24-

MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT          Case No. 16cv2779-JLS (BGS)

Respectfully submitted,

DATED: July 14, 2017


BOOTH SWEET LLP                    D'EGIDIO LICARI & TOWNSEND, APC


/s/ Dan Booth                      /s/ Michael Licari

Dan Booth                          Michael Licari
Admitted Pro Hac Vice              Local Counsel

*Attorneys for Defendant ComicMix LLC*


## CERTIFICATE OF SERVICE


I hereby certify that on this July 14, 2017 I electronically filed the foregoing document by using the Court's ECF system, thereby causing a true copy thereof to be served upon counsel of record for each party to have appeared to date, as identified on the Notice of Electronic Filing.


/s/    Dan Booth

MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT        Case No. 16cv2779-JLS (BGS)