Dan Booth (MA Bar No. 672090)
BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
dbooth@boothsweet.com
(617) 250-8602
*Admitted Pro Hac Vice*

Michael Licari (SBN 265241)
D'EGIDIO LICARI & TOWNSEND, APC
5402 Ruffin Road, Suite 209
San Diego, CA 92123
mlicari@deltlaw.com
(619) 550-3011
*Local Counsel*

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DR. SEUSS ENTERPRISES, L.P.**,<br><br>Plaintiff,<br><br>v.<br><br>**COMICMIX LLC**; **GLENN HAUMAN**; **DAVID JERROLD FRIEDMAN** a/k/a **DAVID GERROLD**; and **TY TEMPLETON**,<br><br>Defendants. | Case No. 3:16-cv-02779-JLS-BGS<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>Assigned to Hon. Janis L. Sammartino<br>United States District Judge<br><br>Hearing Date: August 31, 2017<br>Hearing Time: 1:30 p.m.<br>Hearing Place: Schwartz Courthouse, Courtroom 4A |

Defendants respectfully submit this reply in further support of their motion to dismiss. ECF No. 41. The motion is ripe for resolution because the material facts are not in dispute. As alleged, Defendants' unpublished book *Oh, the Places You'll Boldly Go!* ("*Boldly*") builds on elements of Dr. Seuss books in which Plaintiff Dr. Seuss Enterprises, L.P. ("DSE") claims rights. First Amended Complaint ("FAC"), ECF No. 39. *Boldly* is "a literary and pictorial 'mash-up'," "highly transformative" of *Oh, the Places You'll Go!* ("*Go!*") and other Dr. Seuss books, which "does not substitute for the original and serves a different market function than *Go!*." ECF No. 38 ("Order") pp. 7, 8, 12. Under the applicable copyright precedents, it constitutes fair use. DSE has not alleged any valid trademark rights or rebutted Defendants' showing that *Boldly* makes nominative fair use of its alleged marks. The uses are neither infringement nor unfair competition, and all claims must be dismissed.

**A.  The Court should dismiss the copyright claim on fair use grounds.**

Despite the Court's limited grant of leave to amend the trademark claims in the original complaint, Order p. 20, DSE sought to reinforce its copyright claim as well. See Memorandum in Support of Motion ("Mem."), ECF No. 41-1 pp. 1, 9, 12. DSE's copyright arguments rest almost entirely on its newly pleaded allegations. Opposition ("Opp."), ECF No. 43 p. 14 (citing FAC ¶¶ 21-22, 24-26, 46); see ECF No. 39-1 ¶¶ 21-22 (new), 24-26 (new), ¶ 46 (mostly new). But the amendments do not defeat Defendants' fair use rights. Weighing the four statutory factors "in light of the purposes of copyright," the Court should find that *Boldly* is fair use and dismiss the copyright claim. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994).

Under the first factor, DSE argues that questions about "Defendants' intent in creating" *Boldly* require discovery. Opp. p. 15. The correct inquiry concerns "the purpose and character of the use," not of the user. 17 U.S.C. § 107(1). See *Savage v. Council on Am.-Islamic Relations, Inc.*, No. C 07-6076 SI, 2008 U.S. Dist. LEXIS 60545, *13 (N.D. Cal. July 25, 2008) ("Plaintiff tries to conflate 'motive' with the purpose and character of the use, which is not permitted by the case law."). *Boldly*

-1-
DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
TO DISMISS THE FIRST AMENDED COMPLAINT                Case No. 16cv2779-JLS (BGS)

manifests its "transformative purpose." Order pp. 9, 10, 12. Discovery is not needed because "an allegedly infringing work is typically viewed as transformative as long as new expressive content or message is apparent" on its face. *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1177 (9th Cir. 2003). DSE argues that *Boldly* is "transformative only in the sense that it is an unauthorized derivative work"[1] and is only "a close adaptation of" *Go!*. Opp. p. 17. But as the Court found, *Boldly*'s "original writing and illustrations … transform *Go!*'s pages into repurposed, *Star-Trek*–centric ones." Order p. 8. It is "transformative" under fair use doctrine.

      The Court found that the second factor "weighs only slightly" in DSE's favor. *Id.* p. 9. Defendants argued that it should have no weight at all, on three grounds. First, "transformative use minimizes the weight given creative works under this factor." Mem. p. 8. DSE does not dispute it. Second, "'a Court must also consider the extent to which a work has been published.'" *Id.* (quoting Order p. 9 (internal quotation omitted)). While Dr. Seuss books "have been widely published," DSE argues that this "does not tip the scales back." Opp. p. 20. But with "millions of copies" published, "[t]he works' published nature supports the fairness of the use." *Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*, 780 F. Supp. 1283, 1293 (N.D. Cal. 1991), *aff'd*, 964 F.2d 965 (9th Cir. 1992); see also *Seltzer*, 725 F.3d at 1178. More than 650 million Dr. Seuss books have been sold. FAC ¶ 14. Their nature supports Defendants' fair use right to build upon them for the benefit of readers "who have already read and greatly appreciated *Go!* and Dr. Seuss's other works." Order p. 11. Defendants' third point under this factor is that a work like *Boldly* could not be created without some copying. Mem. pp. 8-9. DSE responds that "Defendants took far too much." Opp. p. 20. The Court has already disagreed. *Boldly* does not "copy more than is necessary to accomplish its transformative purpose." Order p. 9.

---

[1] DSE points to "the copyright owner's exclusive right to create 'derivative works,' 17 U.S.C. § 106(2)." Opp. p. 16. Fair use trumps that right, limiting "an author's rights to control original and derivative works." *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 95 (2d Cir. 2014) (citing 17 U.S.C. § 107).

For that reason, the Court also concluded that the third fair use factor does not weigh against Defendants. *Id.* pp. 9-10. DSE does not show that *Boldly*'s use of Dr. Seuss books is excessive. DSE maintains that the copying is "near-verbatim" and "wholesale." Opp. p. 21. Not so; the Court found *Boldly* copies no illustration in its entirety, and not more than necessary for its transformative purpose. Order p. 9. DSE notes that using "the heart" of a work—in fair use jurisprudence, a small but qualitatively important part[2]—may weigh against fair use. Opp. p. 22. *Go!* has no heart in the fair use sense, since no particular episode in its simple, episodic storyline is the most central. See ECF No. 8-1 p. 8. DSE contends that the "heart" of its books is whatever it alleges was copied: "key protected elements of" *Go!*, and "protected elements from other DSE works, including illustrations." Opp. p. 21; see FAC ¶ 35. Without greater specificity, that identifies the books' heart no better than "paragraphs" would identify the heart of a novel. This factor does not weigh against fair use even if "the whole work" is copied, heart and all, when that is "no more than is necessary." *Seltzer*, 725 F.3d at 1178.[3] Defendants' limited copying, for transformative purposes, weighs in favor of fair use. Mem. pp. 9-10.

The fourth factor also weighs in favor of fair use. As the Court determined, "*Boldly* does not supplant the market for *Go!* or the other relevant works," and "*Boldly* does not substitute for the original and serves a different market function than *Go!*." Order pp. 8, 11. Those findings should be decisive. "Where the allegedly infringing use does not substitute for the original and serves a 'different market

---

[2] See *Harper & Row, Publishers v. Nation Enters.*, 471 US. 539, 548, 564-65, 570 (1985) (finding that quotations totaling 300 to 400 words from President Ford's 655-page memoirs, discussing President Nixon's pardon, were "the heart of the book").

[3] Because *Seltzer* allows for copying entire works, the rule forbidding "near-verbatim copying" and "copying the images in their entirety" can no longer be good law. *Walt Disney Prods. v. Air Pirates*, 581 F.2d 751, 757-58 (9th Cir. 1978). DSE's contention that *Air Pirates* controls the third-factor analysis in this case, Opp. p. 20, must be mistaken. *Air Pirates* addressed the scope of copying allowed for parody, and the Court has found *Boldly* is a mash-up, not a parody. Order pp. 7-8.

function,' such factor weighs in favor of fair use." *Id*. p. 10 (quoting *Seltzer*, 725 F. 3d at 1179 (citing *Campbell*, 510 U.S. at 591)). So under *Seltzer*, without any consideration of other markets, the fourth factor must weigh in favor of fair use.

The Court's initial assessment of the fourth factor did not decide if any harm is plausible in any "traditional, reasonable, or likely to be developed markets." Order pp. 10-11 (quoting *Seltzer*, 725 F.3d at 1179); Mem. pp. 12-16; Opp. pp. 22. The first amended complaint answers that narrow question. Its sole allegation of copyright harm is that, while DSE has published works derivative of *Go*! and has licensed its copyrighted works and trademarks for use in new works in "collaborations with other rights holders," *Boldly* is unlicensed, "and thereby usurped DSE's licensing opportunities." FAC ¶ 46. That allegation of market effect is conclusory and circular. See Mem. pp. 11-12. And it is negated elsewhere in the complaint. DSE does not plausibly plead that mash-ups like *Boldly* could cause DSE cognizable market harm.

The proper inquiry concerns the effects of "works of *Boldly*'s type," that is, transformative mash-ups. Order p. 11. See *Mattel v. Walking Mountain Prods.*, 353 F.3d 792, 805 (9th Cir. 2003) ("we look … to the type of work itself in determining market harm"). Direct market substitution is not at issue; transformative "uses, by definition, do not serve as substitutes for the original work." *Authors Guild*, 755 F.3d at 99. DSE alleges that it "has published several books that are derivative of" *Go!*, but not that its derivatives are at all transformative of *Go!*. FAC ¶ 22. DSE also identifies the derivative licensing markets in which its licensing opportunities were allegedly usurped: for TV shows, a Universal theme park attraction and live-action production, and a wide range of "co-branding initiatives." *Id*. ¶¶ 24-25. All such "derivative works that are subject to [DSE's] copyright … unlike works of fair use— take expression for purposes that are not 'transformative.'" *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 143 (2d Cir. 1998). DSE does not allege that it creates or licenses transformative works based on the books, or that any of its licensed products are books. FAC ¶¶ 24-25; Mem. p. 14. Instead it strives "to protect

the integrity of the Dr. Seuss books." FAC ¶ 26. DSE's publishing programs are discrete from the "ancillary areas [served] through this licensing program." *Id.* Its licensing program, "expanding beyond books," does not include books. *Id. Boldly* could not impair, compete with, or usurp that ancillary licensing.

Because *Boldly* is transformative, it can have no plausible effect on DSE in a reasonably likely derivative licensing market. "[T]he market for potential derivative uses includes only those that creators of original works would in general develop or license others to develop." *Campbell*, 510 U.S. at 592. "A market harm for licensing revenues will only be recognized if the market is traditional, reasonable, or likely to be developed *and is not a protected transformative use*." *Bill Graham Archives, LLC v. Dorling Kindersley Ltd.*, 386 F. Supp. 2d 324, 333 (S.D.N.Y. 2005), *aff'd*, 448 F. 3d 605 (2d Cir. 2006) (emphasis added). When the defendants' use "clearly constitutes a transformative use … [the] plaintiff cannot prevent defendants from entering this fair use market." *Arrow Prods. v. Weinstein Co. LLC*, 44 F. Supp. 3d 359, 372 (S.D.N.Y. 2014) (granting motion to dismiss on fair use grounds). DSE has no cognizable licensing opportunities in the market for fair use works that transform Dr. Seuss books, so it cannot exclude Defendants from that market. Its allegation of usurped licensing opportunities can and should be disregarded.

The Court should declare that *Boldly* is fair use. All four factors support the finding, except perhaps the less significant second factor. DSE does not dispute Defendants' explanation that "the purposes of copyright," which guide the analysis, strongly support a fair use finding. Mem. pp. 16-17; Order pp. 11-12, 13. Contrary to those purposes, this lawsuit interferes with Defendants' fair use rights "to build upon their predecessors' works" and obstructs the publication of their own creative work.[4] *SOFA Entm't, Inc. v. Dodger Prods.*, 709 F.3d 1273, 1280 (9th Cir. 2013).

The Court should therefore dismiss the first cause of action.

---

[4] When DSE filed suit, causing the cancellation of all pledged sponsors and warding off all publishing and distribution deals, Defendants halted their plans to publish. See ECF No. 8-8 pp. 1, 2; ECF No. 33-1 ¶¶ 3-4, 12, 21.

**B. The Court should dismiss the trademark and unfair competition claims.**

DSE does not deny that it bears the burden of establishing that the use of its alleged marks is not nominative fair use. See Mem. p. 18; *Toyota Motor Sales, Inc. v. Tabari*, 610 F.3d 1171, 1182-83 (9th Cir. 2010); J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23.11 at n.5.[5] DSE fails to sustain its burden.

**1. DSE has not pleaded trademark rights sufficient to support its claims.**

DSE alleges that it has trademark rights in *Go!*'s title, a font used on Dr. Seuss books, and the books' "style." FAC ¶¶ 17; Mem. p. 20. DSE can have no such rights.

> *Dastar* [*Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003)] held that trademark law cannot be used to obtain rights over the content of an artistic work; that would amount to an indefinite extension of a copyright. Titles of songs and movies cannot be copyrighted (see *Peters* [*v. West*, 692 F.3d 629, 635-36 (7th Cir. 2012)]; 37 C.F.R. § 202.1(a)); *Dastar* tells us not to use trademark law to achieve what copyright law forbids.

*Eastland Music Grp., LLC v. Lionsgate Entm't, Inc.*, 707 F.3d 869, 872 (7th Cir. 2013). A single book title does not function as a mark. "We expect a title to describe the underlying work, not to identify the producer." *Mattel, Inc. v. MCA Records*, 296 F.3d 894, 901 (9th Cir. 2002). "The title of a single book cannot be a trademark because it does not 'serve as a source identifier' that creates 'an association between the book's title (the alleged mark) and the source of the book (the publisher)." *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 944 F. Supp. 2d 830, 853 (C.D. Cal. 2012) (quoting *Herbko Int'l, Inc. v. Kappa Books*, 308 F.3d 1156, 1162-63 (Fed. Cir. 2002)). DSE cites to the contrary only dicta in cases where no book title trademark was alleged. Opp. pp. 8-9. Recognizing titles as marks would improperly extend copyright owners' power to restrain new publications long after their copyrights expire. *Dastar*, 539 U.S. at 33-34. "The policy against proprietary rights in the titles

---

[5] DSE cites several pre-*Tabari* decisions that placed the burden of proof for fair use on the trademark defendant. Opp. pp. 12-13. That rule as to burden of proof has been "effectively overruled." *Tabari*, 610 F.3d at 1183 (quoting *Miller v. Gammie*, 335 F. 3d 889, 893 (9th Cir. 2003) and citing 4 McCarthy § 23:11); see Mem. p. 18.

to single books therefor finds additional support in the interface with copyright law." *Herbko*, 308 F.3d at 1164; *In re Page Co.*, 47 App. D.C. 195, 196 (D.C. Cir. 1917). DSE's trademark registration for OH THE PLACES YOU'LL GO (see FAC ¶ 18, Opp. p. 9) does not alter the calculus because it was issued despite the Trademark Office's policy to refuse to register the title of a single creative work.[6] "In trademark terms, the registration is not absolute but is subject to rebuttal." *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002). It should be presumed invalid.

The Court should find that DSE's alleged marks in a variable font and illustration style are "too indefinite to be the subject of a valid trademark." *A. Leschen & Sons Rope Co. v. Broderick & Bascom Rope Co.*, 201 U.S. 166, 170 (1906); cf. *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1328-29 (Fed. Cir. 1999) ("Absent a specifically defined, color-definite, and *stable* visual appearance, an alleged trade dress cannot receive protection.") (emphasis in original). See Mem. p. 20.

DSE alleges a trademark in "the stylized font used consistently on the front and back covers, spine, and title page of the Dr. Seuss books." FAC ¶ 17; see *id.* ¶¶ 40, 76, 85 & Opp. p. 12. The book covers displayed in the first amended complaint disprove the alleged consistency. Compare the slender, linear lettering of *Oh, the Pets You Can Get!* and *There's No Place Like Space!*; the more bulbous, partly cursive, tightly kerned letters of *Oh, the Things You Can Do That Are Good For You!* (each, DSE alleges, "recognized by the public as Dr. Seuss works"); and the more broadly spaced and widely rounded letters on *Go!*. FAC ¶ 23 & pp. 9, 12. The letters and punctuation marks' shapes vary widely from cover to cover, and often within the same cover. DSE's *Oh, Baby! Go, Baby!* displays "Dr. Seuss" in distinct lettering on its upper-left and upper-right corners. *Id.* p. 8. Even within a given title, repeated

---

[6] Trademark Examination Guide 04-06: Registrability of Marks Used on Creative Works § IV.1 (Nov. 14, 2006), *available at* https://www.uspto.gov/trademarks/resources/exam/examguide4-06.jsp; Trademark Manual of Examining Procedure § 1202.08 (2015 ed.). While the title of a series of creative works may be registered as a mark, *id.*, *Go!* is not a series. See FAC ¶¶ 22, 23 (discussing other DSE series).

letters bear different forms, as with each *e, h, l,* and *o* on the cover of *Go!*. *Id.* p. 12. This mutable lettering is too divergent to entitle DSE to trademark protection.

DSE likewise fails to state a claim based on an amorphous, ostensibly "unique illustration style." FAC ¶¶ 17, 40, 41, 76, 85; see Mem. p. 20.[7] Trademark law, like copyright law, may protect a "specific artistic expression" like a specified design or logo, but not an "artistic style." *Hartford House Ltd. v. Hallmark Cards Inc.*, 846 F. 2d 1268, 1274 (10th Cir. 1988). "If the law protected style at such a level of abstraction, Braque might have prevented Picasso from selling cubist paintings in the United States." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 382 (2d Cir. 1997). DSE cites no cases holding that an artist's style, *per se*, may be exclusive or proprietary.[8] Opp. p. 8. Its trademark claims are all without basis.

**2. Finding nominative fair use is not inappropriate on any grounds.**

DSE argues that finding nominative fair use is "inappropriate" because *Boldly* is transformative. Opp. pp. 4, 5. The doctrine is readily applied to transformative works. *Walking Mountain*, 353 F.3d at 799-803, 806, 808 n. 14 ("the nominative fair use test—which, incidentally works well in a case like this"), 809-12; *Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120, 1141-43, 1152 (C.D. Cal. 1998); cf. *Arenas v. Shed Media US Inc.*, 881 F. Supp. 2d 1181, 1190-91, 1193-94 (C.D. Cal. 2011). DSE also opposes the defense where Defendants' use of DSE's alleged marks

---

[7] This purported trademark also fails insofar as DSE maintains that elements *within* Dr. Seuss books are marks *for* the books. Opp. pp. 7-8. Trademarks are external, distinct from the goods or products on which they are applied—a brand on cattle, not the horse itself. As a case cited by DSE notes, Lanham Act protection "does not extend to the corpus of the book, play, film, song, television show, or comic book." *Whitehead v. CBS/Viacom, Inc.*, 315 F. Supp. 2d 1, 13 (D.D.C. 2004); see Opp. p. 8.

[8] In one ill-fitting case that DSE cites, the defendants did "not dispute that the Cat's stove-pipe hat, the words 'Dr. Seuss,' and the title 'The Cat in the Hat' are widely recognized trademarks." *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F. 3d 1394, 1404 (9th Cir. 1997); see Opp. p. 8. By contrast, DSE now claims protection for an ostensibly "source-indicating whimsical, lyrical style," not any particular manifestation of that style as a design mark. FAC ¶ 23.

-8-
DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
TO DISMISS THE FIRST AMENDED COMPLAINT                Case No. 16cv2779-JLS (BGS)

ultimately served to describe their own book. Opp. pp. 4-5. "The nominative fair use analysis is appropriate where a defendant has used the plaintiff's mark to describe the plaintiff's product, *even if the defendant's ultimate goal is to describe his own product.*" *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002) (emphasis in original). "This is in fact the standard case of nominative fair use: Only rarely, if ever, will a defendant choose to refer to the plaintiff's product unless that reference ultimately helps to describe the defendant's own product." *Id.* at 1151 n. 8. DSE further suggests that the defense is improper where Defendants' title uses a non-identical mark: *Oh, the Places You'll Boldly Go!* rather than *Oh, the Places You'll Go!*. Opp. pp. 4-5. Nominative fair use is also proper in these circumstances. *MCA Records*, 28 F. Supp. 2d at 1141-43 (use of Barbie mark in song entitled "Barbie Girl"); *Applied Underwriters, LLC v. Lichtenegger*, No. 2:15-cv-02445-TLN-CKD, 2017 U.S. Dist. LEXIS 104535 (E.D. Cal. July 6, 2017).

**3. Each of the three factors of the nominative fair use test apply.**

Under the first factor of the nominative fair use test, DSE argues that *Boldly* could have readily identified the books "without using DSE's marks to do so." Opp. p. 6. DSE alleged that *Go!*'s title, a font used on and in Dr. Seuss books, and the books' "illustration style" are all trademarks. FAC ¶¶ 17; Mem. p. 20. In teasing out a kinship between *Go!* and the *Star Trek* universe, Defendants' mash-up could scarcely avoid using some of those alleged marks. The bare allegation that "Defendants could have created their own unique content and refrained from using Dr. Seuss indicia" does not make the use unfair. FAC ¶ 43. Unless trademark law forbids transformative use altogether—and it does not—some use must be allowed.

The second factor supports nominative fair use unless the use is more than reasonably necessary. DSE maintains that "nearly all of the artwork in [*Boldly*] is exact duplicates of Ted Geisel's original artwork." Opp. p. 10. The Court rightly found otherwise: "*Boldly* does not copy them in their entirety; each is infused with new meaning and additional illustrations that reframe the Seuss images from a

unique *Star-Trek* viewpoint." Order p. 9; Mem p. 22. In particular, DSE alleged that *Boldly* employs the same "stylized font that DSE uses consistently" on its book covers. FAC ¶¶ 17, 40. As shown above, DSE's indeterminate font cannot constitute a trademark. Even for "distinctive lettering," there is no rule that use cannot qualify as nominative fair use. Opp. pp. 9-10; see *SolarEdge Techs., Inc. v. Enphase Energy, Inc.*, No. 17-cv-04047, 2017 U.S. Dist. LEXIS 128237, *13-14 (N.D. Cal. Aug. 11, 2017) (nominative fair use of registered "stylized logo"). Rather, whether the amount of a stylized font used is reasonably necessary must be judged in light of the purpose of the work. *Aviva United States Corp. v. Vazirani*, 902 F. Supp. 2d 1246, 1264-65 (D. Ariz. 2012), *aff'd*, 632 Fed. Appx. 885 (9th Cir. 2015). A mash-up's purposes necessitate nominal use, and again, Boldly does not use "more than is necessary to accomplish its transformative purpose." Order p. 9; Mem. p. 22.

Under the third factor, "the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 2008). Beyond mere use of the alleged marks, see Opp. p. 12, DSE can identify no independent act that would suggest it sponsors or endorses *Boldly*. It is sufficient that "*Boldly* does not explicitly mislead as to its source or content." Order p. 16. Defendants' consistent disclaimers further reduce any possibility of confusion as to source. *Kassbaum v. Steppenwolf Prods.*, 236 F.3d 487, 493 (9th Cir. 2000); see Mem. pp. 23-24. DSE alleged that consumers could be confused by competitive sales, "where Plaintiff's books and Defendants' work could appear in commerce side by side on the shelves of bookstores and online." FAC ¶ 41; Opp. p. 11. The Ninth Circuit has specifically rejected the argument "that a nominative fair use defense is inapplicable where the use in question competes directly with that of the trademark holder." *New Kids*, 971 F.2d at 309. Absent some separate, wrongful act, nominative fair use applies.

The Court should therefore dismiss the second, third, and fourth causes of action.

Respectfully submitted,

DATED: August 24, 2017

| BOOTH SWEET LLP | D'EGIDIO LICARI & TOWNSEND, APC |
|---|---|
| */s/ Dan Booth* | */s/ Michael Licari* |
| Dan Booth | Michael Licari |
| *Admitted Pro Hac Vice* | *Local Counsel* |

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this August 24, 2017 I electronically filed the foregoing document by using the Court's ECF system, thereby causing a true copy thereof to be served upon counsel of record for each party to have appeared to date, as identified on the Notice of Electronic Filing.

/s/     Dan Booth