1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT
9                    SOUTHERN DISTRICT OF CALIFORNIA
10

11   DR. SEUSS ENTERPRISES, L.P.,              Case No.:  16-CV-2779-JLS (BGS)

12                               Plaintiff,    **ORDER DENYING MOTION TO DISMISS**

13   v.

14   COMICMIX LLC; GLENN HAUMAN;               (ECF No. 41)
     DAVID JERROLD FRIEDMAN a/k/a
15   JDAVID GERROLD; and TY
16   TEMPLETON,

17                              Defendants.
18

19

20          Presently before the Court is Defendants' Motion to Dismiss, ("MTD," ECF No.

21   41).  Also before the Court is Plaintiff's Response in Opposition to the Motion to Dismiss,

22   ("Opp'n," ECF No. 43), and Defendants' Reply to Response to Motion to Dismiss,

23   ("Reply," ECF No. 44).  The Court previously vacated the hearing on the Motion to

24   Dismiss and took the matter under submission without oral argument pursuant to Civil

25   Local Rule 7.1(d)(1).  The Court then re-set oral argument for November 28, 2017 and

26   both Parties appeared at the hearing.

27   \ \ \

28   \ \ \

1

# BACKGROUND

## I.     Factual Background[1]

This lawsuit concerns two literary works, one of which is alleged to have infringed the other. Plaintiff Dr. Seuss Enterprises ("DSE") is the assignee and owner of various copyright registrations for and alleged trademark rights in the works of the late Theodor S. Geisel, better known under his pseudonym "Dr. Seuss."  One of Dr. Seuss's best-known books—and the one primarily at issue in this suit—is *Oh, the Places You'll Go!* ("*Go!*"). Defendants ComicMix LLC, Glenn Hauman, David Jerrold Friedman (a/k/a David Gerrold), and Ty Templeton created a Kickstarter campaign in order to fund printing and distribution of an allegedly infringing work, *Oh, the Places You'll Boldly Go!* ("*Boldly*"). Defendants all took part in the creation of *Boldly*.  *Boldly* combines aspects of various Dr. Seuss works with "certain characters, imagery, and other elements from *Star Trek*, the well-known science fiction entertainment franchise created by Gene Roddenberry." Plaintiff alleges that *Boldly* "misappropriates key elements" of *Go!* and four other Dr. Seuss books. Defendants contest this point, and prior to the threat of litigation noted on their Kickstarter page that:

> While we firmly believe that our parody, created with love and affection, fully falls within the boundary of fair use, there may be some people who believe that this might be in violation of their intellectual property rights.  And we may have to spend time and money proving it to people in black robes.  And we may even lose that.

Further, *Boldly*'s copyright page both states that "[t]his is a work of parody, and is not associated with or endorsed by CBS Studios or Dr. Seuss Enterprises, L.P.[,]" and includes the following text: "Copyright Disclaimer under section 107 of the Copyright Act 1976, allowance is made for 'fair use' for purposes such as criticism, comment, news reporting, teaching, scholarship, education, research, and parody."

_____

[1] The following factual background is from the Court's Prior Order (ECF No. 38) (internal citations omitted).

Upon learning of *Boldly* and the corresponding Kickstarter campaign, Plaintiff sent Defendants two letters over the span of approximately ten days asserting their exclusive rights in the relevant Dr. Seuss works. When Defendants did not respond to the first letter, Plaintiff on the same day sent a takedown notice to Kickstarter and a second letter to Plaintiff. Kickstarter disabled access to Defendants' campaign later that day.

Several weeks later Plaintiff's Counsel and Defendants' Counsel exchanged letters; Defendants argued their use of Dr. Seuss's intellectual property was fair, threatened suit, and advised Plaintiff that Defendants would send a counter-notice to Kickstarter to reinstate the *Boldly* campaign. Plaintiff commenced this suit shortly thereafter.

## II.   Procedural Background

Plaintiff filed a Complaint against Defendants for: (I) copyright infringement (pursuant to 17 U.S.C. § 101 *eq seq*); (II) trademark infringement (pursuant to 15 U.S.C. § 1125(a)); and (III) unfair competition (pursuant to Cal. Bus. and Prof. Code § 17200). ("Compl," ECF No. 1.) Defendants filed a Motion to Dismiss the Complaint. (ECF No. 8.) The Court granted in part and denied in part Defendants' Motion. ("Prior Order," ECF No. 38.) Specifically, the Court denied Defendants' Motion to Dismiss Plaintiff's claim of copyright infringement (Count I) and granted Defendants' Motion to Dismiss Plaintiff's claims of trademark infringement and unfair competition (Counts II and III). (*Id.* at 20.)[2] The Court also granted Plaintiff leave to amend its Complaint "regarding the second and third causes of action." (*Id.*) Plaintiff filed an Amended Complaint, ("FAC," ECF No. 39), and Defendants filed the present Motion to Dismiss.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure

---

[2] Pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page.

8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

### ANALYSIS

Defendants argue the Court may dispose of all of Plaintiff's claims "because the copyright claim cannot overcome Defendants' fair use and the remaining claims cannot overcome the nominative fair use defense." (MTN 10.)

4

## I.      Copyright Claim and Fair Use

In its Prior Order, the Court applied four non-exclusive factors in considering fair use:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

Prior Order 5 (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994); and 17 U.S.C. § 107). The Court found factor one to weigh in favor of Defendants, factor four to weigh in favor of Plaintiff (thus finding factors one and four to stand in equipoise), factor two to weigh slightly in favor of Plaintiff, and factor three to be neutral. (Prior Order 13.) Ultimately, the Court found "given the procedural posture of this motion and near-perfect balancing of the factors . . . without relevant evidence regarding factor four the Court concludes that Defendants' fair use defense currently fails as a matter of law." (*Id.*)[3]

---

[3] The Court did not grant Plaintiff leave to amend the copyright cause of action. Yet Plaintiff added information to the FAC regarding "Defendants' intent and [*Boldly*'s] harmful effect upon the relevant market" as relevant to the copyright claim (Count I). (Opp'n 22 (citing FAC ¶¶ 21–22, 24–26, 46).) Thus, the Court could strike Plaintiff's amendments made to the copyright claim. *See Jones v. Metro. Life Ins. Co.*, No. C–08–03971–JW (DMR), 2010 WL 4055928, at *6 (N.D. Cal. Oct. 15, 2010) ("[B]ased on its inherent powers, a court may strike material from the docket, including portions of a document, reflecting procedural impropriety or lack of compliance with court rules or orders.").

However, "the court may choose not to strike the pleading in the interests of judicial economy" even "when a pleading is improperly filed." *Manzano v. Metlife Bank N.A.*, No. CIV. 2:11–651 WBS DAD, 2011 WL 2080249, at *3 (E.D. Cal. May 25, 2011). "This is often true when leave to amend would have been granted had it been sought and when it does not appear that any of the parties will be prejudiced by allowing the change." *Id.* (citation omitted); *see also* 6 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1484 (3d ed. 2017) ("Permitting an amendment without formal application to the court under these circumstances is in keeping with the overall liberal amendment policy of Rule 15(a) and the general desirability of minimizing needless formalities."). As the case is still in the pleading stage and as Defendants have already addressed Plaintiff's amendments in their present Motion and did not request the Court strike the amendments, the Court finds the Parties will not be prejudiced if it considers Plaintiff's amendments. The Court therefore addresses Defendants' fair use claims.

### A. *Whether Defendants Are Shielded by the Fair Use Doctrine*

Defendants argue "[t]he allegations in the first amended complaint tilt further toward fair use." (MTN 11.)  Plaintiff argues the fair use defense still fails.  (Opp'n 22.)[4] Neither party alleges Plaintiff has provided any new information as to the copyright claim in its FAC besides information as to the forth fair use factor.[5]  Thus, the Court finds reason to alter its analysis regarding the first three factors.  (*See* Prior Order 8 (factor one weighs in favor of Defendant); *id.* at 9 (factor two weighs slightly in Plaintiff's favor); *id.* at 10 (factor three does not weigh against Defendants).)

### 1. *Factor Four: The Effect of the Use Upon the Potential Market*

Factor four considers the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. §107. In finding factor four weighed in favor of Plaintiff, the Court found Defendants to be "at a clear disadvantage under this factor's required analysis." (Prior Order 11.)  Plaintiff's Complaint alleged "[i]t is not uncommon for [Plaintiff] to license" its works and collaborate with "other rights holders."  (Compl. ¶ 32.) The Court accepted these allegations as true and found "a potential harm to Plaintiff's licensing opportunities is presumed." (Prior Order 11.)  But, the Court found this presumed harm was neutralized somewhat because *Boldly* "does not substitute for the original and serves a different market function than *Go!*. . . . *Boldly*'s market relies on consumers who have already read and greatly appreciated *Go!* and Dr. Seuss's other works, and who simultaneously have a strong working knowledge of the *Star Trek* series.  It is therefore

---

[4] Plaintiff also asserts Defendants' fair use defense is inappropriate for determination on a Rule 12(b)(6) motion.  (Opp'n 22.) The Court has found otherwise. (*See* Prior Order 6.)

[5] Defendants do point to information in the FAC that may be relevant to the first fair use factor, but argue the FAC "fails to alter" the Court's analysis as to t. (MTN 12.)  In the FAC, Plaintiff argues *Boldly* is not transformative because it "blatantly [takes] intellectual property from two rights holders and [calls] it a . . . 'mash-up[,]'" and argues *Boldly*'s commercial nature weighs against fair use. (MTN 12; FAC ¶ 44.) This is not a new argument.  The Court previously found *Boldly* to be transformative.  And the Court found although Defendants created their work for profit, which weighs against Defendants, this "weight is slight given the transformative nature of work."  (Prior Order 8.)  The FAC adds nothing that alters this analysis as to factor one.

unlikely that *Boldly* would severely impact the market for Dr. Seuss's works."  (*Id.*)  The Court found factor four to weigh in favor of Plaintiff.  (*Id.*)

> In analyzing the fourth factor the court must
>
> consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also 'whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market' for the original.  The enquiry 'must take account not only of harm to the original but also of harm to the market for derivative works.'

*Campbell*, 510 U.S. at 590 (internal citations omitted).  "[T]o negate fair use one need only show that if the challenged use 'should become widespread, it would adversely affect the *potential* market for the copyrighted work.'" *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 568 (1985) (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984)).

In the FAC, Plaintiff states it has published "books that are derivative of [*Go!*]" such as *Oh! The Places I'll Go*; *Oh, Baby! Go, Baby!*, and more.  (FAC ¶ 22.)  Plaintiff states it also publishes a series of "books written and illustrated by other authors and artists that are based upon and incorporate the Dr. Seuss Intellectual Property" such as *Oh, The Things You Can Do That Are Good for You!*, *There's No Place Like Space!*, *Oh, The Pets You Can Get!*, and more. (FAC ¶ 23.)  Plaintiff states "[n]otably, 'Dr. Seuss' does not appear on any of the [book] covers, and all of the covers include names of other authors, despite the fact

that these works are authorized by DSE and are recognized by the public as Dr. Seuss works."[6]  (*Id.*)

Defendants argue *Boldly* cannot cause any relevant market harm because Plaintiff's licensed collaborations listed in the FAC are not works of *Boldly*'s type.  (MTN 17.) Defendants argue Plaintiff has not licensed and would not license "any derivate work that creates a hybrid of Dr. Seuss's books with existing characters and imagery from a third party's entertainment franchise.  The first amended complaint does not give rise to a plausible claim that *Boldly* would cause any harm in any transformative market."  (*Id.* at 18.)  Defendants distinguish their mash-up from Plaintiff's licensed derivatives and argue none of the books published as part of Plaintiff's co-branding licensing program "are crossover works that integrate pre-existing characters or imagery from another entertainment franchise, such as *Star Trek*, with those of Dr. Seuss."  (*Id.* at 19.)

Plaintiff argues it has in fact collaborated with others and created crossover works, such as through the creation of *The Wubbulous World of Dr. Seuss*, "a live action/puppet show produced by the Jim Henson Company featuring Dr. Seuss's well-known and beloved characters alongside new, Muppet-like characters created by The Jim Henson Company." (Opp'n 32; FAC ¶ 24.)  Plaintiff argues *Boldly* "is the kind of derivative work that DSE has the right to develop and could develop or license others to develop."  (Opp'n 33.)  The

---

[6]

  

(FAC ¶ 24.)

Court now analyzes the fourth fair use factor taking into account the Parties' arguments and the amendments in the FAC.

The first issue is whether the Court may presume market harm as it did in its Prior Order.  (*See* Prior Order 11 (finding a potential harm to Plaintiff's licensing opportunities is presumed).)  Defendants argue the Court cannot presume market harm here.  (MTN 16.)  Defendants are correct.  A court may presume market harm when the second work supersedes the original and "serves as a market replacement for it, making it likely that cognizable market harm to the original will occur." *Campbell*, 510 U.S. at 591.  But "when . . . the second use is transformative, market substitution is at least less certain, and market harm may not be so readily inferred." *Id.* at 591; *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1168 (9th Cir. 2007) (holding market harm cannot be presumed when the second use is "highly transformative").  The Court has previously found *Boldly* to be transformative.  (Prior Order 8).  The Court therefore does not presume market harm but analyzes the potential for market harm based on the allegations in the FAC.

Even without presuming market harm and analyzing this factor in the first instance, the Court finds the amendments in the FAC do not change its finding that factor four weighs in favor of Plaintiff.  "The market for potential derivative uses includes only those that creators of original works would in general develop or license others to develop." *Campbell*, 510 U.S. at 592.  Plaintiff's current literary licensing program involves allowing other authors to publish books based off of Plaintiff's books and even use Plaintiff's characters.  (*See supra* note 6).  Although these books may not be mash-ups like *Boldly*, there is a potential market for a literary mash-up involving Plaintiff's books; such a market would not be unlikely based on Plaintiff's past licensing programs.  Defendant's production of *Boldly* may result in an adverse impact on Plaintiff's derivative market and the Court therefore finds there is potential harm to the market for Plaintiff's derivative works.  Therefore, this factor weighs in favor of Plaintiff.

Thus, after again weighing the fair use factors, the Court finds Defendants' fair use defense fails as a matter of law.  The relevant information in the FAC regarding factor four,

if anything, shifts the balance more in Plaintiff's favor due to the allegations regarding potential market harm.  The Court denies Defendants' Motion to Dismiss Plaintiff's claim of copyright infringement.

## II.   Trademark and Corresponding Unfair Competition Claims

In its FAC, Plaintiff alleges it is the owner of various registered and common law trademark rights.  (FAC ¶ 17.)  Plaintiff claims trademark rights to (1) the title *Go!*; (2) "the stylized font used consistently on the front and back covers, spine, and title page of the Dr. Seuss books such that this use of the styled font has come to be recognized by consumers as a source identifier for Dr. Seuss," and (3) "the unique illustration style of the characters and backgrounds found throughout Dr. Seuss books" (collectively, the "Unregistered Dr. Seuss Marks").  (*Id.*)  Plaintiff also claims it owns trademark registrations.  (*Id.* ¶ 18.)  These registrations are for *Go!*; *Go!* 25th Anniversary, and a trademark in connection with downloadable digital children's books, among other goods (the "OTPYG E-Book Mark").  (*Id.*)  Finally, Plaintiff claims ownership of a family of common law trademarks deriving from the title of *Go!* (the "OTPYG Title Marks").  (*Id.* ¶ 19.)  The Unregistered Dr. Seuss Marks, the OTPYG E-Book Mark, and the OTPYG Title Marks are referred to collectively as the "Dr. Seuss Marks." (*Id.* ¶ 20.)

Plaintiff alleges causes of action against Defendant under 15 U.S.C. § 1114 with regard to the OTPYG E-Book Mark (*id.* ¶¶ 66–72); under 15 U.S.C. § 1125(a) with regard to the Dr. Seuss Marks (*id.* ¶¶ 73–81); and under the California Statutory Unfair Competition, Business and Professions Code with regard to the Dr. Seuss Marks.  (*Id.* ¶¶ 82–87.)[7]  In their Motion, Defendants argue Plaintiff's trademarks, "if valid," are not

---

[7] For the first time, Plaintiff alleges a Lanham Act Violation under 15 U.S.C. § 1114 for *Go!* (Trademark Registration No. 5,099,531) "in connection with downloadable digital children's books, among other goods, which . . . is referred to as the OTPYG E-Book Mark." (FAC ¶¶ 18, 66–72 (Count II).)  The Court finds it granted Plaintiff limited leave to amend and Plaintiff's addition of Count II exceeds the Court's Order.  "[W]here leave to amend is given to cure deficiencies in certain specified claims, courts have held that new claims alleged for the first time in the amended pleading should be dismissed or stricken." *DeLeon v. Wells Fargo Bank, N.A.*, No. 10–CV–01390–LHK, 2010 WL 4285006, *3 (N.D. Cal. Oct. 22, 2010); *see also Kennedy v. Full Tilt Poker*, No. CV 09–07964 MMM (AGRx), 2010 WL 3984749, * 1

infringed by Defendants' nominative fair use.  (MTN 23.)

### A.   Whether Plaintiff's Asserted Trademarks Are Valid

Before addressing the issue of nominative fair use, the Court addresses Defendants' argument that Plaintiff does not have protectable trademark rights in the title or font or *Go!* or in Plaintiff's illustration style (i.e, the Unregistered Dr. Seuss Marks). (MTN 25; Reply 7–9.)[8]

In general, a claim under section 1125(a) is a federal claim for infringement of an unregistered mark.  *See S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 926 (9th Cir. 2014); 5 J. Thomas McCarthy, Trademarks and Unfair Competition § 27:14 (5th ed. 2017).  To succeed on a claim brought under section 1125(a), "a plaintiff must prove two basic elements: (1) it has a valid, protectable trademark, and (2) [the defendant's] use of the mark is likely to cause confusion."  *Zaffina*, 762 F.3d at 929 (internal citation omitted).  This first element is further "comprised of two sub-parts: the mark's protectability and the plaintiff's ownership of the mark."  *Id.*  Therefore, a plaintiff must prove that, (a) the mark is protectable; (b) plaintiff owned the mark; and (c) defendant's use of the mark is likely to cause confusion.  *See id.*  In nominative fair use cases, the court applies a different test to evaluate the likelihood of confusion, which "replaces" the normal likelihood of

_____

(C.D. Cal. Oct. 12, 2010) (noting that the court had stricken a third amended complaint because plaintiffs' new claims "exceeded the authorization to amend the court granted" and plaintiffs had not sought leave to add new claims as required by Rule 15).  The Court could therefore dismiss Count II on this basis.  *See, e.g.*, *Kouretas v. Nationstar Mortg. Holdings, Inc.*, No. 2:13–CV–02632–MCE–KJN, 2015 WL 1751750, at *2 (E.D. Cal. Apr. 16, 2015) (finding that the plaintiff's new claims should be dismissed as exceeding the scope of the court's order where the order provided "leave to amend as to" a specific claim, but "without leave to amend" as to the other claims).

However, again, the Court finds no prejudice to Defendants if the Court does not dismiss Count II as improperly pled, because Defendants could address Count II in the present Motion to Dismiss.  *See Manzano*, 2011 WL 2080249, at *3.  Plaintiff argues Defendants used the OTPYG E-Book Mark "in connection with the sale, offering for sale, distribution, or advertising" of *Boldly*.  (FAC ¶ 68.)  Plaintiff argues it believes Defendants will distribute *Boldly* in print and on the internet.  (*Id.* at ¶ 4.)  Defendants do not specifically address Count II in the Motion to Dismiss but argues the nominative fair use defense applies to registered and unregistered trademarks.  (MTN 24.)  Therefore, the Court analyzes the E-Book Mark along with Plaintiff's other claimed trademarks in the nominative fair use defense.

[8] Defendants do not appear to specifically contest the validity of the OTPYG E-Book Mark nor the family of common law trademarks (the OTPYG Title Marks).

confusion analysis.  *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175–76, 1182 (9th Cir. 2010).  *See supra* Section II.B.

### 1. *Whether* Oh the Places You Will Go! *is a Valid Trademark*

Plaintiff claims trademark rights in the title *Oh, the Places You'll Go!* because the title has obtained secondary meaning.  (Opp'n 15–16.)  Defendants argue the title of a book does not function as a trademark.  (Reply 7.)

The USPTO will not register the title of a single creative work, such as a book, movie or play, unless it has acquired distinctiveness. 1 Anne Gilson LaLonde, Gilson on Trademarks § 2.03 (Matthew Bender 2017 ed.); *see also In re Posthuma,* 45 U.S.P.Q.2d 2011, 2012–13 (T.T.A.B. 1998); *In re Hal Leonard Publ'g Co.,* 15 U.S.P.Q.2d 1574, 1576 (T.T.A.B. 1990); *In re Nat'l Council Books, Inc.,* 121 U.S.P.Q. 198, 198–99 (T.T.A.B. 1959).[9]

"Whether a mark is protectable depends on its degree of distinctiveness." *Zaffina*, 762 F.3d at 929.  The five traditional categories of distinctiveness include generic, descriptive, suggestive, arbitrary, and fanciful.  *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  Generic marks are not protectable, while marks that are suggestive, arbitrary, and fanciful are inherently distinctive and entitled to protection.  *Id.* Marks that are descriptive, however, are not inherently distinctive and are only protectable if the mark has acquired secondary meaning—that is, that the mark "has become distinctive of the applicant's goods in commerce."  *Id.* at 768 (citing 15 U.S.C. § 1052(f)).

Because most courts view book titles as descriptive, "something more is needed to protect titles under trademark law—namely, secondary meaning."  1 Charles J. Harder,

---

[9] Neither party appears to argue *Go!* is a series, but argue its validity as a "single book title." (Reply 7; *see* FAC ¶¶ 22, 23 (discussing books published by Plaintiff that are derivative of *Go!* and stating "DSE also publishes several series" such as The Cat In The Hat Learning Library—but not referring to *Go!* as a series).)  The Court therefore analyzes the title of *Go!* as a single book, rather than as a series.  In contrast to the title of a single book, the title of a series may be registered as a mark.  *See In re Scholastic Inc.*, 23 U.S.P.Q.2d 1774 (T.T.A.B. 1992) ((holding "The Magic School Bus" was registrable for a series of children's books, all of which had the mark as part of their title).

<u>Entertainment Law & Litigation</u> § 6.10 (Matthew Bender 2017–2018 ed.).   "[I]t is well established that where the title of a movie or a book has acquired secondary meaning—that is, where the title is sufficiently well known that consumers associate it with a particular author's work—the holder of rights to that title may prevent the use of the same or confusingly similar titles by other authors."   *Rogers v. Gremaldi*, 875 F.2d 994, 997–98 (2d Cir. 1989); *see also Herbko Intern., Inc. v. Kappa Books, Inc.,* 308 F.3d 1156, 1162 n.2 (Fed. Cir. 2002) ("While titles of single works are not registrable, they may be protected under section 43(a) of the Lanham Act upon a showing of secondary meaning."); *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 269 (5th Cir. 1999) ("The descriptive nature of a literary title does not mean . . . that such a title cannot receive protection under § 43(a) … [F]or plaintiff to prevail under § 43(a), it must demonstrate (1) that its title has secondary meaning, and (2) that defendants' title is likely to confuse or mislead consumers . . . .").

"The test of secondary meaning for literary titles is essentially one of determining whether, in the minds of a significant number of people, the title in question is associated with a single source of the literary work." 2 McCarthy § 10:10.  In the Ninth Circuit, courts consider the following factors to determine whether a title has obtained secondary meaning: (1) direct consumer testimony; (2) survey evidence that consumers link the title in question to a particular source; (3) exclusivity, manner, and length of use of the title; (4) amount and manner of advertising; (5) amount of sales and number of customers; (6) established place in the market; and (7) proof of intentional copying by the defendant. *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999).

With little explanation, Plaintiff alleges that *Go!* is "distinctive and ha[s] acquired secondary meaning in the minds of the public, and [is] readily associated with Theodor S. Geisel, Dr. Seuss, and DSE."  (FAC ¶¶ 20, 74; Opp'n 17.)  Plaintiff provides general information regarding all Dr. Seuss books—the books have sold over 650 million copies worldwide and have been translated into more than a dozen languages.  (FAC ¶ 14.) Accepting Plaintiff's factual allegations as true, and at this stage of the proceedings, the

Court agrees with Plaintiff that the public would associate *Go!* with Dr. Seuss.  Thus, the Court finds that the title *Go!* may be protected under section 43(a) of the Lanham Act.

### 2.   Whether Plaintiff's Font Is a Trademark

Plaintiff alleges trademark rights in "the stylized font used consistently on the front and back covers, spine, and title page of the Dr. Seuss books."  (FAC ¶17.)  Stated more broadly in its Causes of Action, Plaintiff claims "Defendants' willful misappropriation of the stylized font that DSE uses consistently throughout the Dr. Seuss books" misleads and confuses customers.  (FAC ¶¶ 76, 85.)  As clarified by Plaintiff at oral argument, Plaintiff is claiming trademark rights in all fonts on the <u>covers</u> of <u>all</u> Dr. Seuss books, or also in the font used <u>within</u> the books.  Defendants argue the font on Plaintiff's books varies widely from cover to cover and the "mutable lettering is too divergent to entitle DSE to trademark protection."  (Reply 8–9.)  At this stage, the Court finds it unnecessary to determine whether Plaintiff may claim trademark rights in the fonts used on covers of books other than *Go!* or the font used within *Go!*.  The use of *Go!*'s title (the words of the title and the title's design on the book covers) will be addressed in the Court's analysis of the nominative fair use factors.  *See infra* Section II.B.  *See Toho Co. v. William Morrow & Co.*, 33 F. Supp. 2d 1206, 1211 (C.D. Cal. 1998) (holding that a publisher who used the trademark "Godzilla" as the title of a book about the movie-monster by the same name used more of the mark than was "reasonably necessary" where "the title [was] written in the distinctive lettering style used by [the trademark holder] and its licensees in their merchandising activities").)

### 3.   Whether Plaintiff's Illustration Style Is a Trademark

Plaintiff claims Defendants misappropriated "the unique illustration style and the characters and backgrounds found throughout Dr. Seuss books, that have come to be instantly recognized by consumers as source identifiers for Dr. Seuss."  (Opp'n 15.)  Defendant argues trademark law does not protect an artistic style.  (MTN 25; Reply 9.)

Most courts have held there is no trademark protection for the "style" of an artist. 1 McCarthy § 6.14.  Style is a matter more properly protected by copyright law.  *Id.*; *see*

14

*Galerie Furstenberg v. Coffaro*, 697 F. Supp. 1282, 1290 (S.D.N.Y. 1988) (holding the unique artistic style of Salvador Dali is not protected by trademark law; rather any protection available is through copyright law).

Plaintiff cited no authority to support its assertion that its general "style" is a protectable trademark.  Plaintiff only argues that the book can be subject to both trademark and copyright protection and that distinctive characters can qualify as trademarks.  (Opp'n 16.)  Plaintiff claims the Ninth Circuit has recognized Plaintiff owns trademark rights to "the character illustration of the Cat [in the Hat's] 'stove-pipe hat'." (Opp'n 16 (citing *Dr. Seuss Enters. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1396 (9th Cir. 1997)).)  But the illustration of the Cat's hat is different than the general "illustration style" and non-specific "characters and backgrounds found throughout" Plaintiff's books, in which Plaintiff asserts trademark rights now.  (Opp'n 15.)  And Plaintiff does not allege trademark rights in any specific character or background image in *Go!*[10]  The Court is not holding illustrations of specific characters within *Go!* are precluded from trademark protection, but at this stage of the proceedings and based on the information in front of the Court, the Court finds that Plaintiff's claimed general "illustration style" is not protectable.  *See Whitehead v. CBS/Viacom, Inc.*, 315 F. Supp. 2d 1, 13 (D.D.C. 2004) (holding that although titles of books have qualified as marks entitled to protection under section 1127 of the Lanham Act, the scope of the statute "does not extend to the corpus of the book, play, film, song, television show, or comic book." "Put simply, in the context of a literary work, the Lanham Act protects the distinctive source-distinguishing mark, not the work as a whole").

Therefore, in analyzing the nominative fair use arguments, the Court focuses on Plaintiff's allegations of Defendant's use of its title *Go!*, which will include the words and the appearance of the title as it appears on the cover of the book.

---

[10] Plaintiff does include side-by-side comparisons of pages of *Go!* and *Boldly* as examples of Defendant's attempt "to recreate entire pages from the Dr. Seuss Books with meticulous precision, and thereby infringe . . . the Dr. Seuss Marks." (FAC ¶ 37 (showing eight pages of the two books in side-by-side comparisons).) This provides no insight into whether Plaintiff claims trademark rights in any specific image or background.

### B. Whether Defendants Are Shielded By Nominative Fair Use

Nominative fair use "is a use of another's trademark to identify the trademark owner's goods or services."  4 McCarthy § 23.11 (the name "nominative use" exists because the use of the trademark "names" the real owner of the mark).  The nominative fair use analysis is appropriate where a defendant has used the plaintiff's mark to describe the plaintiff's product, even if the defendant's ultimate goal is to describe its own product. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002).  "The Ninth Circuit has made it clear that a defendant who raises the nominative fair use issue need only show that it uses the mark to refer to the plaintiff's trademarked goods or services.  The burden then reverts to the plaintiff to show a likelihood of confusion under the nominative fair use analysis."  4 McCarthy § 23.11 (citing *Tabari*, 610 F.3d at 1182–83).  The Ninth Circuit has also held that three elements are necessary to satisfy the nominative fair use analysis: "First, the product or services in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder."  *New Kids on the Block v. News Am. Pub. Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).

#### 1. Whether Nominative Fair Use is an Appropriate Defense in This Case

Before addressing the factors, the Court first addresses Plaintiff's argument that the nominative fair use defense is inappropriate here.  Plaintiff's argument is two-fold: (1) Defendants are not using Plaintiff's mark identically, but are using it in a transformative way; and (2) Defendants are using the mark to describe their own product, not Plaintiff's product.  (Opp'n 13.)

As to its first point, Plaintiff cites *E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1098 (9th Cir. 2008), where the plaintiff, the operator of the Play Pen Gentlemen's Club, filed a trademark violation against the defendant for using the plaintiff's mark in a video game.  The defendant asserted nominative fair use, but the court rejected this defense because defendant's use of the mark was not "identical" to the

plaintiff's mark; the real strip club was called "Play Pen" and the club depicted in the video game was called "Pig Pen." *Id.* at 1097–98. Further, defendant did not use the trademarked logo to describe plaintiff's strip club. *Id.* at 1099; *see also Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 802 (9th Cir. 2002) ("[W]hen a defendant uses a trademark nominally, the trademark will be identical to the plaintiff's mark, at least in terms of the words in question.").

Indeed, the fact that a defendant uses a plaintiff's mark at least almost identically is in fact the point of the nominative use defense. This is why the Ninth Circuit has instituted the test, replacing the likelihood of confusion test from *Sleekcraft*. *Welles*, 279 F.3d at 801 (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)). "[A]pplication of the *Sleekcraft* test, which focuses on the similarity of the mark used by the plaintiff and the defendant, would lead to the incorrect conclusion that virtually all nominative uses are confusing." *Id.*

The Court first notes that Plaintiff's position that Defendants do not use its mark "identically" contrasts the allegations in the FAC. In the FAC, Plaintiff alleges "Defendants have willfully misappropriated and used the Dr. Seuss Marks in [*Boldly*] . . . ." (FAC ¶ 38) and "Defendants have slavishly copied and used the Dr. Seuss Marks in their entirety in [*Boldly*] . . . ." (FAC ¶ 42). Further, the Court finds *Boldly*'s title is identical to *Go!*'s title, "at least in terms of the words in question." *Welles*, 279 F.3d at 802. It is illogical to read the authority to require the second use of a plaintiff's mark to be exactly identical as the first use for the nominative fair use defense to apply, as this would defeat the purpose of the test. How could a court analyze whether the defendant used more of the mark than was reasonably necessary (i.e., the second factor of the test) if the second use of the mark is identical in each instance? *See Mattell, Inc. v. Walking Mtn. Prods.*, 353 F.3d 792, 803, 812 (9th Cir. 2003) (finding defendant's use of plaintiff's mark to be "extremely

transformative" and finding the nominative fair use defense to apply).[11]  Here, *Boldly* uses the words of *Go!*'s title, in full, on its cover—the main addition, of course, is the word "Boldly."  (*See* Opp'n 9 (Plaintiff stating *Boldly* is a book "with a title nearly identical" to *Go!*).)  Thus, the Court finds that the nominative fair use defense is appropriate here.

As to its second point, Plaintiff argues Defendants "have taken DSE's marks, and used them or marks confusingly similar thereto to refer to their *own* work" and thus the nominative fair use test does not apply.  (Opp'n 12.)  But, "[t]he nominative fair use analysis is appropriate where a defendant has used the plaintiff's mark to describe the plaintiff's product, *even if the defendant's ultimate goal is to describe his own product.*"  *Cairns*, 292 F.3d at 1151.  "This is in fact the standard case of nominative fair use: Only rarely, if ever, will a defendant choose to refer to the plaintiff's product unless that reference ultimately helps to describe the defendant's own product."  *Id.*  For example, in *New Kids*, defendant publishing companies used the trademarked band name to publicize the defendants' telephone polls about the band "The New Kids on the Block."  971 F.2d at 304.  Defendants used the trademark "The New Kids," to describe the *plaintiff's* product, i.e., the band, but the defendants' ultimate goal was to describe their *own* products, i.e., telephone polls about the band.  Application of the nominative fair use analysis was appropriate.  Similarly, here, Defendants use the *Go!* mark to describe Plaintiff's book, but their ultimate goal is to describe their own book as a mash-up of *Go!* and Star Trek.  The Court finds the nominative fair use analysis is appropriate in the present case.[12]  The Court now addresses each factor of nominative fair use in turn.

\ \ \

\ \ \

---

[11] Indeed, in *Welles*, Plaintiff used the trademarked term "playboy" and "playmate" but added words to the trademark—listing herself as "Playboy Playmate of the Year 1981."  *Welles*, 279 F.3d at 800.  Still, the Ninth Circuit evaluated the nominative fair use defense.

[12] The Court also disagrees with Plaintiff that the nominative fair use defense is ill-suited for a Rule 12 motion.  (Opp'n 13.)  This Court has previously held nominative fair use is appropriate for resolution under a Rule 12(b)(6) motion.  (Prior Order 17–18.)

1
2

>    *2. Factor One: Whether the Product In Question Is Readily Identifiable*
>    *Without Use of the Trademark*

3
4
5
6
7
8
9

To satisfy the first nominative fair use factor, "[the plaintiff's product] must be one not readily identifiable without the use of the trademark." *New Kids*, 971 F.2d at 308. This situation arises "when a trademark also describes a person, a place or an attribute of a product" and there is "no descriptive substitute for the trademark." *Welles*, 279 F.3d at 802 (citing *New Kids*, 971 F.2d at 306). The Ninth Circuit has alternatively stated the inquiry as whether a defendant's use of the plaintiff's mark was "'necessary' to describe" the defendant's work. *Tabari*, 610 F.3d at 1180.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Defendants meet this first factor under either alternative test. First, the mark describes Plaintiff's product, and there is no descriptive substitute for the title of the book. *See Cairns*, 292 F.3d at 1153 ("There is no substitute for Franklin Mint's use of Princess Diana's likeness on its Diana-related products. Nor is there a substitute for Franklin Mint's use of Princess Diana's likeness in its advertisements for these products." (emphases removed)); *Welles*, 279 F.3d at 802 (holding no descriptive substitute exists for Playboy's trademarks, and finding nominative fair use for Wells to identify herself as a "Playboy Playmate of the Year 1981" rather than "a nude model selected by Mr. Hefner's magazine" in 1981). Second, it is necessary for *Boldly* to use the mark. Because *Boldly* is a mash-up of the *Go!* and *Star Trek* universes, *Boldly* needs to utilize *Go!*'s title in order to reference the underlying Dr. Seuss work. "Indeed, it is often virtually impossible to refer to a particular product for purposes of comparison, criticism, point of reference or any other such purpose without using the mark." *New Kids*, 971 F.2d at 305; *see also Tabari*, 610 F.3d at 1180 ("[I]t's enough to satisfy our test for necessity that the Tabaris needed to communicate that they specialize in Lexus vehicles, and using the Lexus mark in their domain names accomplished this goal."). The Court finds the first nominative fair use factor is met.

27
\ \ \

28
\ \ \

16-CV-2779-JLS (BGS)

*3.  Factor Two: Whether Defendant's Use of the Mark Is More than*
*Reasonably Necessary to Identify Plaintiff's Product*

The second nominative fair use factor is met if the defendant uses no more of the mark than "reasonably necessary to identify the product." *New Kids*, 971 F.2d at 308. What is reasonably necessary to identify the plaintiff's product "differs from case to case." *Cairns*, 292 F.3d at 1154.  Specifically, where "the description of the defendant's product depends on the description of the plaintiff's product, more use of the plaintiff's trademark is 'reasonably necessary to identify the plaintiff's product' than in cases where the description of the defendant's product does *not* depend on the description of the plaintiff's product." *Id.*

Defendants argue they use any valid trademark "only to the extent necessary for its transformative purpose."  (MTN 26.)[13]   Plaintiff argues Defendants not only used Plaintiff's word mark, but also use the lettering and stylized font "that has come to be uniquely associated with DSE" and this far exceeds any legitimate referential purpose. (Opp'n 18.)[14]

In *Toho Co., v. William Morrow and Co.*, 33 F. Supp. 2d 1206, 1211 (C.D. Cal. 1998), the plaintiff sued the defendant book publisher for infringement of plaintiff's

---

[13] Defendants also point to the Court's Prior Order, where, in discussing the use of the illustrations within the books, the Court stated *Boldly* does not "copy more than necessary to accomplish its transformative purpose." (Prior Order 9.)  This finding does not apply to the use of the title trademark at issue.

[14]



(FAC ¶ 37.)

Godzilla character.  Plaintiff, the owner of the copyrighted character and the trademark name "Godzilla" alleged the cover of defendant's book featured an illustration of Godzilla and the trademarked name. *Id.* at 1209.  Defendant claimed nominative fair use.  In analyzing the second factor, the court found the factor "appears to derive from a concern that confusion as to affiliation may result if the defendant's use of the plaintiff's mark exceeds its legitimate referential purpose." *Id.*  The court found the cover of the book contained plaintiff's trademark in "bold orange lettering" and thus, defendant's use exceeded its legitimate referential purpose. *Id.; see also Tabari*, 610 F.3d at 1181 (finding the defendants did not satisfy the second factor because they "could adequately communicate their message without using the visual trappings of [Plaintiff's] brand.")

In *Welles*, 279 F.3d 796, plaintiff used defendant's Playboy trademark on her website (advertising herself as "Playmate of the Year 1981").  Plaintiff claimed nominative fair use.  *Id.* at 801.  The court found plaintiff satisfied the second element of the test because she used "only the trademarked words, not the font or symbols associated with the trademarks." *Id.* at 802; *see Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350, 352 (9th Cir. 1969) (allowing an auto shop to use the trademarked term "Volkswagen" on a sign describing the cars it repaired, in part because the shop "did not use Volkswagen's distinctive lettering style or color scheme, nor did he display the encircled 'VW' emblem"); *see also New Kids*, 971 F.2d at 308 n.7 ("[A] soft drink competitor would be entitled to compare its product to Coca–Cola or Coke, but would not be entitled to use Coca–Cola's distinctive lettering.").

Defendants not only use the words "Oh! The Places You'll Go!" in the title of *Boldly* but also use the exact font used by Plaintiff.  The look of the lettering is unquestionably identical on both books, down to the shape of the exclamation point.  This situation is similar to that in *Toho*.  The Court finds it was unnecessary for Defendants to use the distinctive font as used on *Go!* to communicate their message (i.e., that *Boldly* is a mash-

up of the *Go!* and Star Trek universes).[15]   The Court concludes Defendants have not satisfied this nominative fair use factor.

### 4.   *Factor 3: Whether Defendant Has Done Acts That Would Falsely Suggest Sponsorship or Endorsement by Plaintiff*

The third nominative fair use factor requires the user to do "nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *New Kids*, 971 F.2d at 308.   This factor is "viewed as asking whether, in addition to mere use of the mark, defendant has engaged in some additional conduct that affirmatively suggests sponsorship or endorsement by the plaintiff." 4 McCarthy § 23.11.   "For example, has the defendant gone beyond mere naming of the plaintiff's mark into affirmative claims or assertions which falsely suggest a connection with plaintiff?"   *Id.*   "This element does not require that the defendant make an affirmative statement that their product is not sponsored by the plaintiff." *Walking Mtn.*, 353 F.3d at 811.

Defendants argue they have done nothing to suggest Plaintiff sponsored *Boldly*, and use of the mark alone is not enough.  (MTN 28.)  Defendants also point to the disclaimer on the copyright page of *Boldly* which states that "[t]his is a work of parody, and is not associated with or endorsed by CBS Studios or Dr. Seuss Enterprises, L.P."  (MTN 28.) Plaintiff argues this disclaimer is ineffective because a consumer would not flip to the third page of the book to search for it.  (Opp'n 9.)  Plaintiff also argues "Defendants have misappropriated the asserted marks, and copied the stylized font DSE uses consistently on

---

[15] Defendants cite *Aviva USA Corp. v. Vazirani*, 902 F. Supp. 2d 1246 (D. Ariz. 2012) in arguing that the Court must consider the purpose of the work in analyzing this factor.  (Reply 11.)  That case is distinguishable.  There, the court found defendant satisfied the second nominative fair use factor even though defendant had used the "distinctive colors and font" of plaintiff's mark.  *Aviva*, 902 F. Supp. 2d at 1265.  However, the court noted defendant used the mark as part of the "very obvious negative commentary directed toward [plaintiff]" and this could not lead to confusion.  *Id.*  Defendant's use of plaintiff's logo (Aviva) was: "Aviva Uncovered: The Sad Truth about Aviva's Business Practices." *Id.* at 1252.  The court contrasted this from the use of "the stylized logo and distinctive coloring" in a "commercial or competitive manner." *Id.* at 1256.  Here, there is no obvious negative commentary of Plaintiff, or any negativity at all, on the cover of or within *Boldly*, and the Court already found "there is no question Defendants created their work for profit."  (Prior Order 8.)  Even when considering the purpose of *Boldly*, the Court finds Defendants have not satisfied this nominative fair use factor.

the front and back covers, spine, and title page of the Dr. Seuss books, in order to . . . falsely suggest that [*Boldly*] is sponsored or endorsed by DSE."  (Opp'n 20.)

The Court finds Defendants have done nothing in conjunction with the use of the mark to suggest a sponsorship or endorsement by Plaintiff.  (*See* Prior Order 16 (finding *Boldly* does not explicitly mislead as to its source or content).)  Using the mark is not enough.  Further, Defendants were not required to make a disclaimer to meet this factor, and they have done so anyway.  Thus, Defendants have satisfied this factor of nominative fair use.  *See Welles*, 279 F.3d at 803 ("In addition to doing nothing in conjunction with her use of the marks to suggest sponsorship or endorsement by [Plaintiff Playboy Enterprises], [Defendant] affirmatively disavows any sponsorship or endorsement. Her site contains a clear statement disclaiming any connection to [Plaintiff].")

In sum, because Defendants are not able to satisfy each factor of the nominative use defense, the Court finds Defendants' use of the mark is not shielded by the defense. Accordingly, the Court denies Defendant's Motion to Dismiss as to this regard.

## III.   Unfair Competition

As the Court held in its Prior Order:

The Ninth Circuit "has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994).  This means that if claims relying on the exact same factual conduct are validly dismissed under the Lanham Act, they should also be dismissed under California Unfair Competition law. *E.S.S. Entm't*, 547 F.3d at 1101 ("[T]he First Amendment[, *Rogers*] defense applies equally to ESS's state law claims as to its Lanham Act claim . . . ."); *Playboy Enters., Inc. v. Welles, Inc.*, 78 F. Supp. 2d 1066, 1076 n.4 (S.D. Cal. 1999) (fair use analysis is identical), *aff'd in part, rev'd on other grounds*, *Playboy Enters., Inc. v. Welles*, 279 F.3d 796 (9th Cir. 2002).

(Prior Order 19.) In the present case, the Court concludes Defendants are unable to prove each element of the nominative fair use defense; accordingly, the same result inures regarding Plaintiff's unfair competition claims. (*See* FAC ¶¶ 82–87 (alleging unfair

competition under California Business and Professions Code § 17200 with all supporting allegations regarding trademark rights).)

## CONCLUSION

Given the foregoing, the Court again cannot say as a matter of law that Defendants' use of Plaintiff's copyrighted material was fair.  The Court denies Defendants' Motion to Dismiss Plaintiff's claim of copyright infringement.  As to Plaintiff's trademark and unfair competition claims, the Court finds Defendants are unable to prove each element of nominative fair use.  Therefore, the Court denies Defendants' Motion to Dismiss Plaintiff's claims of trademark infringement and unfair competition.

**IT IS SO ORDERED.**

Dated:  December 7, 2017

Hon. Janis L. Sammartino
United States District Judge