Dan Booth (MA Bar No. 672090)
BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
dbooth@boothsweet.com
(617) 250-8602
*Admitted Pro Hac Vice*

Michael Licari (SBN 265241)
D'EGIDIO LICARI & TOWNSEND, APC
5402 Ruffin Road, Suite 209
San Diego, CA 92123
mlicari@deltlaw.com
(619) 550-3011

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DR. SEUSS ENTERPRISES, L.P.**,<br><br>Plaintiff,<br><br>v.<br><br>**COMICMIX LLC**; **GLENN HAUMAN**; **DAVID JERROLD FRIEDMAN** a/k/a **DAVID GERROLD**; and **TY TEMPLETON**,<br><br>Defendants. | Case No. 3:16-cv-02779-JLS-BGS<br><br>**DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT, WITH AFFIRMATIVE DEFENSES**<br><br>Assigned to Hon. Janis L. Sammartino<br>United States District Judge |

Defendants ComicMix LLC ("ComicMix"), Glenn Hauman ("Hauman"), David Gerrold ("Gerrold"), and Ty Templeton ("Templeton") (collectively "Defendants") hereby answer Plaintiff Dr. Seuss Enterprises, L.P.'s ("DSE") First Amended Complaint, ECF No. 39 ("Complaint"). Defendants deny each allegation in the Complaint not expressly admitted herein, and generally deny each allegation in the Complaint to the extent that it characterizes the unpublished book entitled *Oh, the Places You'll Boldly Go!* ("*Boldly*") as an "Infringing Work." Defendants further specifically respond to the Complaint's remaining allegations as follows.

## NATURE OF THE ACTION

1. Defendants deny that their use of the works of Theodor S. Geisel ("Geisel") is unauthorized, because it is authorized by the doctrines of fair use and nominative fair use and the First Amendment, among other grounds. Defendants admit the remaining allegations of the first sentence of Paragraph 1. Defendants lack enough information to admit or deny the remaining allegations of Paragraph 1 and therefore deny the allegations.

2. Defendants admit that without DSE's authorization, Gerrold wrote, Templeton illustrated, and Hauman edited *Boldly*, and that ComicMix ran a campaign on the crowdfunding website Kickstarter soliciting backers to finance the anticipated initial costs of printing and distributing *Boldly* ("the campaign"), and deny the remaining allegations of the first sentence of Paragraph 2. Defendants deny the allegations of the second and third sentences of Paragraph 2. Defendants deny the allegations of the fourth sentence of Paragraph 2; Defendants never received the $29,575 that backers pledged to ComicMix in the campaign ("the pledges"), as Kickstarter PBC remitted the pledges to the backers upon DSE initiating this action; and Andrews McMeel Publishing ("AMP"), after agreeing to publish *Boldly*, backed out once DSE accused ComicMix of infringement. Defendants admit the allegations of the fifth sentence of Paragraph 2. The allegations of the sixth and seventh sentences of Paragraph 2 are legal conclusions not requiring a response; to the extent that a response is required, Defendants deny the allegations.

## THE PARTIES

3. Defendants admit that DSE is a California limited partnership and that Geisel wrote and illustrated children's books under the pseudonym Dr. Seuss ("Seuss books"). Defendants lack enough information to admit or deny the remaining allegations of Paragraph 3 and therefore deny the allegations.

4. Defendants admit the allegations of the first sentence of Paragraph 4, except that ComicMix's principal place of business is now located at 71 Hauxhurst

DEFENDANTS' ANSWER TO
FIRST AMENDED COMPLAINT

Ave., Weehawken, New Jersey 07086. Defendants deny the allegations of the second sentence of Paragraph 4, as ComicMix is not marketing *Boldly* and has no intention to sell, reproduce, or distribute *Boldly* unless and until Defendants should prevail in this action.

5. Defendants admit the allegations of the first and second sentences of Paragraph 5. Defendants deny the allegations of the third sentence of Paragraph 5, as Hauman has no intention to sell, reproduce, or distribute *Boldly* unless and until Defendants should prevail in this action.

6. Defendants admit the allegations of the first sentence of Paragraph 6. Defendants admit that Gerrold is the author of *Boldly* and deny the remaining allegations of the second sentence of Paragraph 6. Defendants deny the allegations of the third sentence of Paragraph 6, as Gerrold has no intention to sell, reproduce, or distribute *Boldly* unless and until Defendants should prevail in this action.

7. Defendants deny that Templeton resides in Toronto, Ontario, admit that he resides in Mississauga, Ontario, and admit the remaining allegations of the first sentence of Paragraph 7. Defendants admit the allegations of the second sentence of Paragraph 7. Defendants deny the allegations of the third sentence of Paragraph 7, as Templeton has no intention to sell, reproduce, or distribute *Boldly* unless and until Defendants should prevail in this action.

## JURISDICTION AND VENUE

8. Defendants admit that the Complaint purports to set forth claims under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq*., and under the Federal Trademark Act of 1946, known as the Lanham Act, 15 U.S.C. § 1125(a). Defendants deny the allegations of Paragraph 8 to the extent that they are inconsistent with the other terms of the Complaint.

9. Defendants admit the allegations of Paragraph 9.

10. Defendants deny that they have planned, authorized, or facilitated any acts that constitute infringement, and admit the remaining allegations of Paragraph 10.

DEFENDANTS' ANSWER TO
FIRST AMENDED COMPLAINT

Case No. 16-cv-2779-JLS-BGS

11. Defendants deny that a substantial part of the events giving rise to DSE's claims arose in this District, and admit the remaining allegations of Paragraph 11.

## FACTUAL ALLEGATIONS

12. Defendants admit that Geisel began writing and illustrating Seuss books at least as early as 1937, wrote children's books under the pseudonym Theo. LeSieg ("LeSieg books"), and died in 1991. Upon information and belief, Defendants deny that Geisel illustrated or published LeSieg books, and deny that Geisel or DSE published Seuss books. Defendants lack enough information to admit or deny the remaining allegations of Paragraph 12 and therefore deny the allegations.

13. Defendants admit that Geisel wrote and illustrated Seuss books. The remaining allegations of Paragraph 13 are legal conclusions and aesthetic characterizations not requiring a response; to the extent that a response is required, Defendants lack enough information to admit or deny the remaining allegations and therefore deny the allegations.

14. Defendants lack enough information to admit or deny the allegations of Paragraph 14 and therefore deny the allegations.

15. Defendants admit that the ten books listed in Paragraph 15 are Seuss books. Defendants lack enough information to admit or deny the remaining allegations of Paragraph 15 and therefore deny the allegations.

16. The allegations of the first sentence of Paragraph 16 are legal conclusions not requiring a response; to the extent that a response is required, Defendants lack enough information to admit or deny the allegations of the first sentence of Paragraph 16 as to unspecified Seuss books and characters, and therefore deny the allegations. Defendants admit that the United States Copyright Office ("Copyright Office") has issued copyright registrations for Seuss books, and upon information and belief, deny the remaining allegations of the second sentence of Paragraph 16. Defendants admit that the Copyright Office has renewed copyright registrations for Seuss books; lack enough information to admit or deny the allegations that copyright

-4-

registrations for any Seuss books have been perfected, and that all such registrations are in full force, and therefore deny the allegations; upon information and belief, deny that any copyright registration for any character *per se* from a Seuss book has been issued, perfected, renewed, or is in full force; and deny all remaining allegations of the third sentence of Paragraph 16. Defendants admit that the Copyright Office has issued registration certificates for the copyrights for the Seuss books *How the Grinch Stole Christmas!* ("*Grinch*"), *The Lorax*, *Horton Hears a Who*, *The Sneetches and Other Stories* ("*Sneetches*"), and *Oh, the Places You'll Go!* ("*Go!*") that bear the numbers identified in Appendix A of the Complaint, and deny the remaining allegations of the fourth sentence of Paragraph 16. Defendants lack enough information to admit or deny the allegations of the fifth sentence of Paragraph 16 and therefore deny the allegations.

17. Defendants deny the allegations of Paragraph 17.

18. Defendants admit that DSE is the record owner of trademark registrations issued by the United States Patent and Trademark Office, including two for OH THE PLACES YOU'LL GO as a word mark—Trademark Registration No. 4,777,167 in connection with goods under International Class 24, and Trademark Registration No. 5,099,531 (the "'531 Registration") in connection with goods under International Class 9 including downloadable digital children's books and services under International Class 41—as well as Trademark Registration No. 4,984,301, for a design-plus-words mark that includes the wording OH, THE PLACES YOU'LL GO! 25TH ANNIVERSARY, in connection with goods under International Class 16. DSE's trademark registrations and applications speak for themselves, and Defendants deny the allegations in Paragraph 18 to the extent that they are inconsistent with the terms of those documents. Upon information and belief, Defendants deny that DSE uses the title of the Seuss book *Go!* as an identifier of source for books. Therefore, and because the source of a book (including a downloadable digital children's book) is its publisher or producer rather than its

-5-

author or the author's successor, and also because the title of a book (including a downloadable digital children's book) identifies that book rather than its source, Defendants deny the validity of the '531 Registration. Defendants lack enough information to admit or deny the remaining allegations of Paragraph 18 and therefore deny the allegations.

19. Defendants admit that *Oh, the Places I'll Go! by ME, Myself*, *Oh, Baby, the Places You'll Go!*, and *Oh, the Places I've Been! A Journal* are published books that are derivative of *Go!* and admit, upon information and belief, that their titles derive from the title of *Go!*. Defendants admit that *Oh! The Stories You'll Hear!* is a live-action production and, upon information and belief, admit that its title derives from the title of *Go!* and deny that it is a work that is otherwise derivative of *Go!*. The remaining allegations of Paragraph 19 are legal conclusions not requiring a response; to the extent that a response is required, Defendants deny that the title of a particular book or live-action production functions as a trademark for such works; upon information and belief, Defendants deny that the titles listed in Paragraph 19 are common law trademarks for the works bearing those titles; and Defendants lack enough information to admit or deny the remaining allegations and therefore deny the allegations.

20. The allegations of Paragraph 20 are legal conclusions not requiring a response; to the extent that a response is required, Defendants lack enough information to admit or deny the allegations and therefore deny the allegations.

21. Defendants admit that Seuss books have been published in anniversary editions, reissues, updated editions, and posthumous releases, and that *What Pet Should I Get?* was published under the Dr. Seuss pseudonym in 2015. Defendants lack enough information to admit or deny the remaining allegations of Paragraph 21 and therefore deny the allegations.

22. Defendants admit that *Oh, Baby! Go, Baby!*, *Oh, the Places I'll Go! by ME, Myself*, *Oh, Baby, the Places You'll Go!*, and *Oh, the Places I've Been! A*

*Journal* are books whose front covers are set forth below Paragraph 22 of the Complaint. Defendants deny that DSE published those books because, upon information and belief, they were published by Random House LLC ("Random House") and DSE is not a publisher. The remaining allegations of Paragraph 22 are legal conclusions not requiring a response; to the extent that a response is required, Defendants lack enough information to admit or deny the remaining allegations and therefore deny the allegations.

23. Defendants deny that DSE publishes several series including the Bright and Early series because, upon information and belief, the series is published by Random House and DSE is not a publisher; admit that the Bright and Early series includes Seuss books and works by other authors and illustrators; and deny the remaining allegations of the first sentence of Paragraph 23. Defendants deny that a series titled The Cat In The Hat Learning Library is a DSE series because, upon information and belief, it is published by Random House and DSE is not a publisher; admit that the series includes books written and illustrated by authors and artists other than Geisel; and lack enough information to admit or deny the other allegations of the second sentence of Paragraph 23 and therefore deny the allegations. Defendants admit the third and fourth sentences of Paragraph 23. The book covers set forth below Paragraph 23 speak for themselves, and Defendants deny the allegations in the fifth sentence of Paragraph 23 to the extent that they are inconsistent with those covers; and Defendants lack enough information to admit or deny the remaining allegations of the fifth sentence of Paragraph 23 and therefore deny the allegations.

24. Defendants lack enough information to admit or deny the allegations of Paragraph 24 and therefore deny the allegations.

25. Defendants lack enough information to admit or deny the allegations of Paragraph 25 and therefore deny the allegations.

DEFENDANTS' ANSWER TO
FIRST AMENDED COMPLAINT

Case No. 16-cv-2779-JLS-BGS

26. Defendants lack enough information to admit or deny the allegations of Paragraph 26 and therefore deny the allegations.

27. Defendants admit that *Boldly* is a book, that *Star Trek* is a science fiction entertainment franchise, and that Gene Roddenberry created the original *Star Trek* television series. Defendants deny that *Boldly* purports to be a mere amalgamation of Seuss books and elements of *Star Trek*, and deny the remaining allegations of Paragraph 27.

28. Defendants admit that Gerrold wrote the text of *Boldly* and deny the remaining allegations of Paragraph 28.

29. Defendants admit that Templeton illustrated *Boldly* and deny the remaining allegations of Paragraph 29.

30. Defendants admit that Hauman edited *Boldly* and deny the remaining allegations of Paragraph 30.

31. Defendants deny the allegations of Paragraph 31.

32. Defendants admit that, during the writing, illustration, and editing of *Boldly* and at all times relevant to this action, they each had access to *Go!* and that at least Templeton also had access to *Grinch*, *The Lorax,* and *Sneetches* when he illustrated *Boldly*. Defendants deny that any Defendant simply copied any Seuss books and deny the remaining allegations of Paragraph 32.

33. Defendants admit that DSE has not authorized or licensed their actions related to *Boldly*, and deny that such authorization or license was required.

34. Defendants admit that CBS Studios, Inc. ("CBS") owns intellectual property in *Star Trek*, admit that CBS has not specifically authorized or licensed their actions related to *Boldly*, deny that such authorization or license was required, and deny the remaining allegations of Paragraph 34.

35. Defendants deny the allegations of Paragraph 35.

36. Defendants deny the allegations of Paragraph 36.

DEFENDANTS' ANSWER TO
FIRST AMENDED COMPLAINT

37. Defendants admit that set forth below Paragraph 37 are the front cover and seven two-page spreads from *Boldly* alongside the front cover of *Go!* and seven two-page spreads from Seuss books (four from *Go!*, one from *Grinch*, and two from *Sneetches*). The books speak for themselves, and Defendants deny the allegations in Paragraph 37 to the extent that they are inconsistent with the books. Defendants deny all remaining allegations in Paragraph 37.

38. Defendants deny the allegations of Paragraph 38.

39. Defendants deny the allegations of Paragraph 39.

40. Defendants deny the allegations of Paragraph 40.

41. Defendants deny the allegations of the first, second, and third sentences of Paragraph 41. Defendants lack enough information to admit or deny the allegations of the fourth sentence of Paragraph 41 and therefore deny the allegations.

42. Defendants deny the allegations of Paragraph 42.

43. Defendants deny the allegations of Paragraph 43.

44. Defendants admit that *Boldly* includes two disclaimers on its second page, one of which states, in large type, the sentence quoted in Paragraph 44; that there is not a disclaimer on the front cover, back cover, or spine of *Boldly*; and that calling a work of fair use a parody or a mashup is not what makes it a work of fair use. Defendants deny all remaining allegations in Paragraph 44.

45. Defendants admit that *Boldly* is inspired by elements of certain Seuss books, and deny that they have merely copied such elements. Defendants lack enough information to admit or deny the allegation that those elements are protected by copyrights owned by DSE, and therefore deny the allegation. Defendants deny that any of their acts related to *Boldly* have been or will be without permission, infringing, or unauthorized because, upon information and belief, they are permitted and authorized by the doctrine of fair use, among other grounds, and therefore deny all remaining allegations of Paragraph 45.

DEFENDANTS' ANSWER TO
FIRST AMENDED COMPLAINT

46. Defendants lack enough information to admit or deny the allegations of the first three sentences of Paragraph 46 and therefore deny the allegations. Defendants admit that DSE has not authorized or licensed their actions related to *Boldly*, deny that such authorization or license was required, and deny the remaining allegations of the fourth sentence of Paragraph 46.

47. Defendants deny the allegations of Paragraph 47.

48. Defendants admit that ComicMix ran the campaign, that Hauman created and maintained the campaign page for *Boldly* on the website Kickstarter ("the campaign page"), and that the campaign page displayed pages from *Boldly*. Defendants deny that Gerrold and Templeton played any role in running the campaign, and deny that the campaign is ongoing. Defendants deny the remaining allegations of Paragraph 48.

49. Defendants admit that the text quoted in Paragraph 49 appeared on the campaign page under a "Risks and challenges" heading. A copy of the campaign page was attached as an exhibit to ComicMix's initial motion to dismiss and filed on the docket as ECF No. 8-5. The campaign page speaks for itself, and Defendants deny the allegations in Paragraph 49 to the extent that they are inconsistent with the campaign page. In particular, Defendants deny the allegation that they admitted "blatant and willful infringement" on the campaign page, which stated and reflected their genuine belief that *Boldly* constitutes fair use.

50. Defendants admit that DSE's counsel sent a letter to Defendants on September 28, 2016, and that, though *Boldly* was only partially drafted at the time and DSE's counsel had seen only the draft pages displayed on the campaign page, the September 28, 2016 letter asserted that *Boldly* violated DSE's rights. The September 28, 2016 letter speaks for itself, and Defendants deny the allegations in Paragraph 50 to the extent that they are inconsistent with the terms of the letter.

51. Defendants deny the allegations of Paragraph 51. On October 28, 2016, on behalf of ComicMix, undersigned counsel sent a letter in response to DSE's counsel.

-10-

52. Defendants admit that DSE's counsel sent a letter to Defendants on October 7, 2016. The October 7, 2016 letter speaks for itself, and Defendants deny the allegations in Paragraph 52 to the extent that they are inconsistent with the terms of the letter.

53. Defendants deny the allegations of Paragraph 53. On October 28, 2016, on behalf of ComicMix, undersigned counsel sent a letter in response to DSE's counsel.

54. Defendants admit that DSE's counsel sent a notice to Kickstarter PBC on October 7, 2016. A copy of the notice was attached as an exhibit to ComicMix's initial motion to dismiss and filed on the docket as ECF No. 8-6. The October 7, 2016 notice speaks for itself, and Defendants deny the allegations in Paragraph 54 to the extent that they are inconsistent with the terms of the notice.

55. Defendants admit that in response to the October 7, 2016 notice from DSE's counsel, on the same day, Kickstarter PBC disabled public access to the campaign page. Defendants deny the remaining allegations in Paragraph 55.

56. Defendants admit that DSE's counsel sent a letter to Defendants on October 25, 2016. The October 25, 2016 letter speaks for itself, and Defendants deny the allegations in Paragraph 56 to the extent that they are inconsistent with the terms of the letter.

57. Defendants admit that on October 28, 2016, on behalf of ComicMix, undersigned counsel sent a letter to DSE's counsel responding to their September 28, October 7, and October 25, 2016 letters to Defendants, and to the October 7, 2016 notice to Kickstarter PBC. A copy of the October 28, 2016 letter was attached as an exhibit to ComicMix's initial motion to dismiss and filed on the docket as ECF No. 8-8. The October 28, 2016 letter speaks for itself, and Defendants deny the allegations in Paragraph 57 to the extent that they are inconsistent with the terms of the letter.

58. Defendants admit the allegations of Paragraph 58.

DEFENDANTS' ANSWER TO
FIRST AMENDED COMPLAINT

Case No. 16-cv-2779-JLS-BGS

59. Defendants admit that CBS owns intellectual property in *Star Trek* and its counsel sent Defendants' undersigned counsel a letter on February 27, 2017. The February 27, 2017 letter speaks for itself, and Defendants deny the allegations in Paragraph 59 to the extent that they are inconsistent with the terms of the letter.

## COUNT I
### Copyright Infringement, 17 U.S.C. § 106
### (Against All Defendants)

60. In response to the allegations in Paragraph 60, Defendants incorporate the above responses as if fully set forth herein.

61. Defendants admit the allegations of the first sentence of Paragraph 61. Defendants lack enough information to admit or deny the allegations of the second sentence of Paragraph 61 and therefore deny the allegations.

62. Defendants deny the allegations of Paragraph 62.

63. Defendants deny the allegations of Paragraph 63.

64. Defendants deny the allegations of Paragraph 64.

65. Defendants deny the allegations of Paragraph 65.

## COUNT II
### Lanham Act Violation, 15 U.S.C. § 1114
### (Against All Defendants)

66. In response to the allegations in Paragraph 66, Defendants incorporate the above responses as if fully set forth herein.

67. Defendants admit that DSE is the record owner of the '531 Registration. The registration certificate speaks for itself, and Defendants deny the allegations in Paragraph 67 to the extent that they are inconsistent with the terms of the registration certificate. Defendants deny the validity of the '531 Registration.

68. Defendants lack enough information to admit or deny the allegations of Paragraph 68 and therefore deny the allegations.

69. Defendants deny the allegations of Paragraph 69.

70. Defendants deny the allegations of Paragraph 70.

DEFENDANTS' ANSWER TO
FIRST AMENDED COMPLAINT

Case No. 16-cv-2779-JLS-BGS

71. Defendants deny the allegations of Paragraph 71.

72. Defendants deny the allegations of Paragraph 72.

## COUNT III
### Lanham Act Violation, 15 U.S.C. § 1125(a)
### (Against All Defendants)

73. In response to the allegations in Paragraph 73, Defendants incorporate the above responses as if fully set forth herein.

74. Defendants lack enough information to admit or deny the allegations of Paragraph 74 and therefore deny the allegations.

75. Defendants deny the allegations of Paragraph 75.

76. Defendants deny the allegations of Paragraph 76.

77. Defendants deny the allegations of Paragraph 77.

78. Defendants deny the allegations of Paragraph 78.

79. Defendants deny the allegations of Paragraph 79.

80. Defendants deny the allegations of Paragraph 80.

81. Defendants deny the allegations of Paragraph 81.

## COUNT IV
### California Statutory Unfair Competition, Business and Professions Code § 17200
### (Against All Defendants)

82. In response to the allegations in Paragraph 82, Defendants incorporate the above responses as if fully set forth herein.

83. Defendants lack enough information to admit or deny the allegations of the first sentence of Paragraph 83 and therefore deny the allegations. Defendants admit that DSE has not authorized or licensed their use of any trademarks or variations thereon, and deny that such authorization or license was required.

84. Defendants deny the allegations of Paragraph 84.

85. Defendants deny the allegations of Paragraph 85.

86. Defendants deny the allegations of Paragraph 86.

87. Defendants deny the allegations of Paragraph 87.

-13-

DEFENDANTS' ANSWER TO
FIRST AMENDED COMPLAINT                    Case No. 16-cv-2779-JLS-BGS

# AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses without assuming or shifting the burden of proof on any such defenses that would otherwise rest on DSE. Defendants incorporate into these defenses the admissions of their above answer as if fully stated herein. Defendants reserve the right to supplement or amend this answer, including by supplementing the asserted defenses or asserting additional defenses, as warranted by facts revealed through investigation and discovery.

## FIRST AFFIRMATIVE DEFENSE
### Failure to State a Claim for Relief

1. DSE fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### Estoppel

2. DSE's claims are barred, in whole or in part, by the doctrine of estoppel.

## THIRD AFFIRMATIVE DEFENSE
### Unclean Hands

3. DSE's claims are barred, in whole or in part, by the doctrine of unclean hands.

## FOURTH AFFIRMATIVE DEFENSE
### Unjust Enrichment

4. DSE's claims are barred, in whole or in part, by the doctrine of unjust enrichment.

## FIFTH AFFIRMATIVE DEFENSE
### No Damages

5. DSE's claims are barred, in whole or in part, by DSE's lack of any actual damages. *Boldly* has never been published or sold and will not be published or sold unless and until Defendants should prevail in this action.

## SIXTH AFFIRMATIVE DEFENSE
### No Profits

6. DSE's claims are barred, in whole or in part, because Defendants have not derived any gains, profits, or advantages from *Boldly*. *Boldly* has never been

-14-

published or sold and Defendants will not publish or sell it unless and until they should prevail in this action. Defendants never received the pledges from the Kickstarter campaign, as Kickstarter PBC never disbursed the pledges to ComicMix, instead returning all pledges to the campaign backers in November 2016 upon DSE's filing of the initial complaint in this action.

## SEVENTH AFFIRMATIVE DEFENSE
## Injunctive Relief Not Warranted

7. DSE's claims are barred, in whole or in part, because DSE is not entitled to injunctive relief. *Boldly* has never been published or sold and will not be published or sold unless and until Defendants should prevail in this action. Any alleged injury to DSE is not immediate or irreparable, and DSE has an adequate remedy at law.

## EIGHTH AFFIRMATIVE DEFENSE
## Intervening Causes

8. To the extent that DSE suffered any injury, which Defendants expressly deny, any injuries and any damages that DSE sustained are the direct and proximate result of independent acts and omissions of third parties over which Defendants have no control, and Defendants are not liable for any such injuries or damages.

## NINTH AFFIRMATIVE DEFENSE
## Failure to Mitigate Damages

9. To the extent that DSE suffered any injury attributable to Defendants, which they expressly deny, DSE has failed to take the steps necessary to mitigate the damages sustained.

## TENTH AFFIRMATIVE DEFENSE
## No Willful Infringement

10. DSE's claims are barred, in whole or in part, because any infringement of its copyrights or trademarks, which Defendants expressly deny, was not willful. Defendants genuinely believe, and have believed at all material times, that any use of DSE's copyrights and trademarks was not infringement.

-15-

## ELEVENTH AFFIRMATIVE DEFENSE
### Insufficient Chain of Title

11. DSE's claims fail, in whole or in part, because DSE has not demonstrated a valid chain of title between Geisel and DSE for the copyrights in the Seuss books and any trademark rights pertinent to the Seuss books.

## TWELFTH AFFIRMATIVE DEFENSE
### Fair Use

12. DSE's claims of copyright infringement fail, in whole or in part, because all alleged use of the works in which DSE asserts copyright protection constitutes fair use. *Boldly* is a mashup that incorporates elements of Seuss books and elements of the original *Star Trek* television series in creative combination. It is a highly transformative work with a distinct function from the works it builds upon. *Boldly* uses no more of any Seuss book than necessary to serve its transformative content and purpose. If *Boldly* were available for sale, the market for Seuss books would benefit, spurred by renewed interest from onetime Seuss book-readers and *Star Trek* fans alike. Any cognizable negative effect of the use on the market for or value of the Seuss books, which Defendants expressly deny, would not be substantial, and would not outweigh the aspects of the use that make *Boldly* fair under the fair use doctrine. The purposes of copyright strongly support *Boldly*'s creative fair use.

## THIRTEENTH AFFIRMATIVE DEFENSE
### No Character Infringement

13. DSE's claims of copyright infringement fail, in whole or in part, to the extent that they are based on any allegedly infringing use of any character from the Seuss books because no such character appears in *Boldly*. Copyright law does not protect the general idea for a character. Further, such claims fail to the extent that they are based on the main character in *Go!*, who does not exhibit sufficient distinctive characteristics to warrant copyright protection, or any other similarly nondistinctive character.

## FOURTEENTH AFFIRMATIVE DEFENSE
### No "Story Arc" Infringement

14. DSE's claims of copyright infringement fail, in whole or in part, to the extent that they are based on DSE's allegation that *Boldly* misappropriates the "story arc" of *Go!*. Any element of the story arc of *Go!* that also appears in *Boldly* is generic and unprotected by copyright, or is otherwise not protected from use in *Boldly* under the copyright doctrines of merger, *scènes à faire*, and the idea/expression dichotomy.

## FIFTEENTH AFFIRMATIVE DEFENSE
### Copyright Misuse

15. DSE's claims of copyright infringement fail, in whole or in part, under the doctrine of copyright misuse. DSE improperly leveraged its copyrights to interfere with and obstruct publication of *Boldly*.

16. During the campaign's funding period, from August 30, 2016 through September 30, 2016, campaign backers pledged a total of $29,575 in pledges to finance the anticipated initial costs of printing and distributing *Boldly*. ThinkGeek, Inc. ordered 5,000 copies of *Boldly* from ComicMix contingent on delivery of at least 1,000 copies by November 11, 2016 and the balance in December 2016, in time for Christmas sales. In September 2016, AMP agreed to publish *Boldly*, with ComicMix acting as the book packager.

17. DSE's counsel sent letters to Defendants on September 28, October 7, and October 25, 2016, asserting that *Boldly* violates DSE's rights under the laws of copyright, trademark, and unfair competition, and demanding that Defendants cease and desist any use, publication, or distribution. For example, the October 25, 2016 letter characterized *Boldly* as "the Infringing Work," and asserted that any distribution of printed or electronic copies of *Boldly* "would constitute copyright infringement, and would also likely confuse consumers as to the source of the Infringing Work in violation of federal and state trademark and unfair competition laws." On those dates, DSE and its counsel could not have formed a good faith basis

-17-

to assert that *Boldly* was an infringement of DSE's rights because they had not yet seen, or asked to see, a copy of *Boldly*.

18. On October 7, 2016, DSE's counsel submitted a takedown notice to Kickstarter PBC, alleging infringement based on the *Go!* copyright. In direct response, that same day, Kickstarter PBC withdrew the campaign page from public view, suspended the campaign, and withheld distribution of the pledges. Also in response to DSE's assertions of infringement, AMP backed out of its agreement with ComicMix to publish *Boldly*. As of October 7, 2016, neither DSE nor anyone else had seen *Boldly* because Templeton had not yet finished illustrating it. As the basis of its takedown notice, DSE asserted indiscriminately that *Boldly* infringed its rights in *Go!*. DSE had no good faith basis to conclude, sight unseen, that *Boldly* was an infringement of *Go!* or any other Seuss book.

19. On October 28, 2016, ComicMix's counsel sent DSE's counsel a letter detailing grounds for ComicMix's position that *Boldly* constitutes fair use. The letter informed DSE that its infringement claims were unfounded and materially damaging to ComicMix, noting AMP's withdrawal and the suspension of the campaign, and that Kickstarter PBC's withholding of the pledges imperiled ComicMix's ability to timely fulfill ThinkGeek's order for 5,000 copies of *Boldly*.

20. In response, on October 28, 2016, DSE's counsel sent ComicMix's counsel an email requesting a copy of *Boldly*, stating that DSE "is willing to evaluate your assertions of fair use, but in order to do so, it is necessary to review a complete copy of the Infringing Work." ComicMix's counsel replied within a few minutes by sending DSE's counsel a copy of *Boldly* in PDF form.

21. Also on October 28, 2016, seeking reinstatement of the campaign page removed from public view, Hauman sent a counternotice to Kickstarter PBC stating that DSE's counsel had misidentified the campaign page as infringing.

22. DSE initiated this action on November 10, 2016. Because DSE filed suit, Kickstarter PBC returned all pledges to the campaign backers, and ComicMix was

DEFENDANTS' ANSWER TO
FIRST AMENDED COMPLAINT

Case No. 16-cv-2779-JLS-BGS

unable to print *Boldly* in time to fulfill ThinkGeek's order, provide copies to the campaign backers, or otherwise sell *Boldly* before Christmas 2016 as projected, so ComicMix halted its plans to publish *Boldly* pending resolution of this action.

23. DSE's limited copyright monopoly does not entitle it to exercise control over the fair use market for mashups or other transformative works.

24. DSE's attempt to exclude Defendants from the fair use market for mashups is contrary to public policy.

### SIXTEENTH AFFIRMATIVE DEFENSE
### Invalid Copyright Registration of *Go!*

25. DSE's claims of copyright infringement based on the book *Go!* fail, in whole or in part, because the copyright registration is invalid, improper, and unenforceable.

26. Random House published *Go!* on January 22, 1990. It was the last Seuss book published during Geisel's lifetime. *Go!* entered the weekly *New York Times* fiction best-sellers list upon publication and remained on the list for more than two years, topping the list on March 4, 1990. Upon information and belief, it has become his best-selling book, with more than 12,000,000 copies sold to date.

27. Tri-Star Pictures, Inc. ("Tri-Star") optioned the rights to produce a motion picture based on *Go!* and a story entitled "What Was I Scared Of?," which had appeared in *Sneetches*. Geisel and his wife Audrey Geisel (collectively "the Geisels"), who is now the president of DSE, executed an assignment of rights to Tri-Star dated as of September 7, 1990. The Copyright Office recorded the assignment. Document No. V2596P276 (recorded Nov. 26, 1990).

28. The Geisels applied to register the copyright in *Go!* in 1990, identifying themselves as the copyright claimants, and applied to supplement the registration in 1991. The Copyright Office issued both registrations. Reg. No. VA 430950 (registered October 19, 1990); Reg. No. VA 496201 (registered Aug. 26, 1991).

-19-

29. Pursuant to 17 U.S.C. § 409(9), both now and at the time the Geisels applied to register the copyright for *Go!* in 1990 and 1991, the registrant of a derivative work is required to identify "any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered." Upon information and belief, the application forms gave the Geisels notice of that requirement. Their applications, and the registration certificates issued based on their applications, identify 1989 as the date of creation for *Go!* and January 22, 1990 as the date of publication, and do not indicate that *Go!* is a derivative work or that any matter in *Go!* had been previously published or registered. Likewise, the copyright page in *Go!* states 1990 as the copyright date and does not note that *Go!* contains previously published work.

30. *Go!* is a derivative work. It incorporates a Geisel artwork published in the June 15, 1975 issue of the *New York Times Magazine* entitled, "The economic situation clarified: A prognostic re-evaluation" ("Economic Situation"). A copy of Economic Situation, as it appeared in that issue, is set forth below.

DEFENDANTS' ANSWER TO
FIRST AMENDED COMPLAINT

31. The Copyright Act of 1909 was in effect and governed works published in 1975, including Economic Situation. Pursuant to Section 3 of that Act, the copyright in a periodical gave the proprietor all rights therein. Securing the statutory copyright required registration and publication with a proper copyright notice, pursuant to Section 9 of the 1909 Act. Publication without the proper notice placed the work in the public domain, terminating the author's interest. Also, a copyright lasted for 28

DEFENDANTS' ANSWER TO
FIRST AMENDED COMPLAINT                          Case No. 16-cv-2779-JLS-BGS

years from the date it was secured, and could be renewed only during the final year of that term, for a second term of 28 years, pursuant to Section 23 of the 1909 Act. Section 7 of the 1909 Act provided that the publication of a derivative work

> … shall not affect the force or validity of any subsisting copyright upon the matter employed or any part thereof, or be construed to imply an exclusive right to such use of the original works, or to secure or extend copyright in such original works.

32. The copyright notice in the June 15, 1975 issue of the *New York Times Magazine* identifies only The New York Times Company as the proprietor of the issue's contents: "© 1975, The New York Times Co.  All rights reserved." The New York Times Company obtained a blanket copyright registration for that issue of the *New York Times*, and a renewal registration. Reg. No. B 37267 (registered June 15, 1975); Reg. No. RE 883493 (registered July 18, 2003). Its registration and renewal apply to the entire contents of the issue, including Economic Situation.

33. Geisel did not apply to register the Economic Situation copyright pursuant to 37 C.F.R. § 202.3(b)(11)(ii).

34. Geisel died before the end of the initial copyright term for the Economic Situation, so he had no opportunity to apply to renew its copyright. Neither Audrey Geisel nor DSE timely applied to renew the Economic Situation copyright.

35. Geisel included the Economic Situation artwork almost unaltered in *Go!*. The derivative page in *Go!* is virtually identical to the original Economic Situation artwork. Geisel made only insubstantial changes; he excluded Economic Situation's text, removed two of its figures and cropped out others, added the main character of *Go!* in place of the removed figures, and added some color. A copy of the page in *Go!* derived from Economic Situation is set forth below.

DEFENDANTS' ANSWER TO
FIRST AMENDED COMPLAINT



36. The copyright registration and supplemental registration for *Go!* do not alter or extend the terms that governed the copyright of Economic Situation in 1975. The copyright for *Go!* does not protect the matter derived from Economic Situation.

37. Upon information and belief, Economic Situation is a work made for hire and the New York Times Company, not DSE, owns the copyright.

DEFENDANTS' ANSWER TO
FIRST AMENDED COMPLAINT                          Case No. 16-cv-2779-JLS-BGS

38. The Geisels' applications to register the copyright of *Go!*, and to supplement the registration, failed to refer to the preexisting publication and registration of Economic Situation; to identify *Go!* as a derivative work; to limit the material claimed for registration to new matter; and to specifically exclude Economic Situation from the material claimed for registration. These failures were not inadvertent. Rather, they were knowing and material inaccuracies, made with the intent to defraud the Copyright Office.

39. The effective date of copyright registration for *Go!* is October 19, 1990, the date that the Copyright Office received a completed application, deposit copy, and the filing fee, pursuant to 17 U.S.C. § 410(d). Geisel understood the legal significance of the application's requirements long before October 19, 1990. By then, Geisel had submitted dozens of applications to the Copyright Office to register copyrights in other works. In his earlier Copyright Office filings, Geisel regularly identified previously published material and previous registrations, specifically limiting the copyrights claimed to new matter. For example, earlier that year, when applying to renew the copyright registration for *Dr. Seuss's Sleep Book*, Geisel duly noted that its contents were first published in *Publishers Weekly*. Reg. No. KK167916 (registered May 25, 1962); Reg. No. RE 464340 (registered Jan. 22, 1990). The Geisels were also well aware that Economic Situation was published in the June 15, 1975 issue of the *New York Times Magazine* and, upon information and belief, that the New York Times Company had registered the copyright in that issue.

40. Geisel was born on March 2, 1904 and died on September 24, 1991. On October 19, 1990, he was 86 years old. Under the provisions of the Copyright Act then in effect, a renewal could be filed only in the 28th year after copyright was secured. Because the copyright registration for the June 15, 1975 issue of the *New York Times Magazine* became effective on that date, a copyright renewal for a contribution to that issue would have been premature before June 2002. He could neither file to renew the Economic Situation copyright himself nor ensure that the

DEFENDANTS' ANSWER TO
FIRST AMENDED COMPLAINT

New York Times Company would renew its copyright in the issue in which it was published. The Copyright Renewal Act of 1992, Public Law 102-307, which amended the Copyright Act by making copyright renewals automatic and renewal registration optional for works published between 1964 and 1977, was not enacted until June 26, 1992, after Geisel died.

41. In an attempt to secure the full Economic Situation copyright to his estate, Geisel included the work in *Go!* in slightly altered form, and purported to register the copyright for the entire book.

42. The copyright registration for *Go!* does not indicate that the book includes previously published material, so it appears to apply to the entire work, including the material previously published in the *New York Times Magazine*. By seeking to obtain and then obtaining a copyright registration effective in 1990 for *Go!* in its entirety, without specifically excluding the 1975 Economic Situation illustration, the Geisels improperly purported to extend Economic Situation's copyright by 15 years.

43. By October 19, 1990, the Geisels had negotiated the terms of an agreement assigning the film adaptation rights of *Go!* to Tri-Star. The copyright page in *Go!* had not disclosed that it is a derivative work based in part on Economic Situation. Upon information and belief, the Geisels knew that if their Copyright Office applications related to *Go!* had disclaimed Economic Situation as preexisting material, it would have raised concerns for Tri-Star about the New York Times Company's prior registration, the extent of the Geisels' control over the rights to *Go!*, and the effect of including Economic Situation in *Go!* on its copyright. Upon information and belief, hoping to sidestep such concerns and expedite their Tri-Star deal, the Geisels knowingly glossed over Economic Situation in their applications to register the copyright and to supplement the registration, improperly omitting any reference to the previously published and registered work.

44. Further, Defendants relied to their detriment on the inaccuracy of the registration. ComicMix did not dispute DSE's takedown notice on the grounds of

DEFENDANTS' ANSWER TO
FIRST AMENDED COMPLAINT

Case No. 16-cv-2779-JLS-BGS

invalidity, and did not contest Kickstarter PBC's suspension of the campaign or its return of all pledges to the campaign backers. ComicMix's decisions to allow these detrimental actions to pass without dispute relied on the validity of the erroneous registration issued to Geisel.

45. Pursuant to 17 U.S.C. § 411(b)(1), Geisel included inaccurate information on the application for copyright registration, knowing that it was inaccurate, and the Register of Copyrights would have refused registration if she had known of the inaccuracy. Therefore, the copyright registration for *Go!* is invalid and cannot support a claim of copyright infringement.

**SEVENTEENTH AFFIRMATIVE DEFENSE**
**Lack of Standing over *Go!***

46.  Defendants hereby incorporate the above ¶ 27 of their Sixteenth Affirmative Defense into this Paragraph as if fully stated herein.

47. DSE's claims of copyright infringement based on the book *Go!* fail, in whole or in part, because upon information and belief Tri-Star or another third-party, not DSE, owns the copyright to *Go!*, in whole or in part, including the right to make or authorize copies of *Go!* or derivative works based upon *Go!*, and the right to litigate any and all causes of action over the infringement of such rights.

48. The Geisels' September 7, 1990 assignment to Tri-Star granted more than the film rights. By its terms, the Geisels "irrevocably grant[ed], assign[ed], and transfer[red] to Tri-Star … [a]ll motion picture, television and all other ancillary and subsidiary rights in, to, and with respect to" *Go!*. The rights assigned included, "without limitation, all motion picture rights, literary, dramatic and/or musical writings and material contained therein, and all revisions, adaptations, dramatizations and translations thereof and additions thereto." Further, the Geisels granted, assigned and transferred to Tri-Star "[a]ny and all causes of action which [the Geisels] now ha[ve] or hereafter may have for any past, present or future

-26-

infringement or interference with any of the rights granted to [Tri-Star] in and to said material or the copyright thereof."

49. Upon information and belief, DSE is neither the owner nor the beneficial owner of the *Go!* copyright and lacks statutory standing to sue Defendants pursuant to 17 U.S.C. § 501(b).

## EIGHTEENTH AFFIRMATIVE DEFENSE
### Lack of Standing over "Economic Situation"

50. DSE's claims of copyright infringement based on the book *Go!* fail, in whole or in part, to the extent that DSE alleges infringement of artwork in *Go!* derivative of Economic Situation, because upon information and belief, the New York Times Company, not DSE, owns the Economic Situation copyright.

51. Defendants hereby incorporate the above ¶¶ 25-45 of their Sixteenth Affirmative Defense into this Paragraph as if fully stated herein. Defendants further state that Economic Situation was published in the *New York Times Magazine* more than fifteen years before Geisel included a derivative version of its artwork in *Go!* The blanket copyright notice in the issue of the *New York Times Magazine* that includes Economic Situation identifies the New York Times Company as the sole proprietor of copyright for its contents. The Copyright Office issued a blanket copyright registration for the issue to the New York Times Company.

52. Upon information and belief, DSE is neither the owner nor the beneficial owner of the Economic Situation copyright and lacks statutory standing to sue pursuant to 17 U.S.C. § 501(b).

## NINETEENTH AFFIRMATIVE DEFENSE
### Invalid Copyright Registration of *The Sneetches and Other Stories*

53. DSE's claims of copyright infringement based on the book *Sneetches* fail, in whole or in part, because the copyright registration is invalid, improper, and unenforceable.

54. DSE's claims of copyright infringement related to the book *Sneetches* are based on two of the stories therein, "The Sneetches" and "The Zax." Both stories are

-27-

derivative works. They are longer versions of stories by Geisel originally published in *Redbook* magazine under his Dr. Seuss pseudonym: "The Sneetches" in the July 1953 issue, and "The Zaks" in the March 1954 issue. The copyright notices in those issues identify only the magazine publisher, McCall Corporation, as the proprietor of the issues' contents. McCall Corporation obtained copyright registrations for both issues. Reg. No. B422528 (registered June 26, 1953); Reg. No. B460567 (registered Feb. 24, 1954). Its successor The Redbook Publishing Company obtained renewal registrations for the July 1953 and March 1954 issues of *Rebook*. Reg. No. RE 102805 (registered Oct. 5, 1981); Reg. No. RE 131699 (registered June 7, 1982).

55. Defendants hereby incorporate the above ¶ 31 of their Sixteenth Affirmative Defense into this Paragraph as if fully stated herein. Defendants further state that the Copyright Act of 1909 was effective in 1953, 1954, and 1961 when, respectively, "The Sneetches," "The Zaks," and *Sneetches* were published and Geisel obtained copyright registrations therefor.

56. Geisel, DSE, and Audrey Geisel did not separately apply to register the copyright in "The Sneetches" or "The Zaks" as originally published in *Redbook*, and did not file to renew the copyrights to those original versions of the stories. However, Geisel applied to renew, and received renewal registrations for, the copyrights in at least fifteen other stories published in *Redbook* under his Dr. Seuss pseudonym, including "Gustav the Goldfish," "If I Ran the Zoo," "Tadd and Todd," "Marco Comes Late," "How Officer Pat Saved the Whole Town," "Steak for Supper," "The Big Brag" "Horton and the Kwuggerbug," "The Rabbit, the Bear and the Zinniga-Zanniga," "Yertle the Turtle," "The Bippolo Seed," "Gertrude McFuzz," "The Strange Shirt Spot," "The Great Henry McBride," and "The Hoobub and the Grinch."

57. Geisel applied to register the copyright in *Sneetches* in 1961, and to renew that registration in 1989. Reg. No. A543386 (registered Sept. 1, 1961); Reg. No. RE 425704 (registered Jan. 17, 1989). In neither instance did Geisel inform the

Copyright Office that *Sneetches* is or contains derivative work, or that any of its stories had been previously published in *Redbook*. However, when Geisel applied to register the copyright in the Seuss book *Yertle the Turtle and Other Stories* in 1958, and when applying to renew the copyright in 1986, he duly informed the Copyright Office that *Redbook* had published its stories. Reg. No. A336186 (registered Apr. 24, 1958) ("Appl. states stories prev. pub. in Redbook Magazine."); Reg. No. RE 288967 (registered Mar. 3, 1986).

58. The copyright page in *Sneetches* states 1961 as the year of first publication and the copyright date, and states the copyright renewal date of 1989. It does not indicate that two of the stories in *Sneetches* were previously published.

59. Geisel's applications to register and renew the copyright of *Sneetches* failed to refer to the prior publication and registration of "The Sneetches" and "The Zaks"; failed to specifically exclude those stories from the matter to be registered; failed to limit the material for which he sought registration to new matter; and failed to identify *Sneetches* as a derivative work. These failures were not inadvertent. Rather, they were knowing and material inaccuracies, made with the intent to defraud the Copyright Office.

60. Geisel understood the legal significance of the application's requirements before he applied to register the copyright in *Sneetches* in 1961. By then, Geisel had submitted dozens of applications to the Copyright Office to register copyrights in other works. In his earlier applications, Geisel had regularly identified previously published material and previous registrations, specifically limiting the copyrights claimed to new matter. In particular, Geisel had identified stories previously published in *Redbook* when he applied to register the copyright in *Yertle the Turtle and Other Stores* three years earlier. Geisel was also well aware that "The Sneetches" and "The Zaks" had been published in *Redbook* and that McCall Corporation had registered the copyright in those issues.

DEFENDANTS' ANSWER TO
FIRST AMENDED COMPLAINT

61. Pursuant to 17 U.S.C. § 411(b)(1), Geisel included inaccurate information on the application for copyright registration, knowing that it was inaccurate, and the Register of Copyrights would have refused registration if she had known of the inaccuracy. Therefore, the copyright registration for *Sneetches* is invalid and cannot support a claim of copyright infringement.

### TWENTIETH AFFIRMATIVE DEFENSE
### Lack of Standing over *The Sneetches and Other Stories*

62. Defendants hereby incorporate the above ¶¶ 54-58 of their Nineteenth Affirmative Defense into this Paragraph as if fully stated herein.

63. DSE's claims of copyright infringement based on the book *Sneetches* fail, in whole or in part, to the extent that DSE alleges infringement of any matter therein that is derivative of "The Sneetches" or "The Zaks" as published in *Redbook*, because upon information and belief, McCall Corporation, not DSE, owns the copyright in those stories.

64. *Redbook* published "The Sneetches" and "The Zaks" more than seven years before Geisel included derivative versions of the stories in *Sneetches*. The blanket copyright notices in the issues of *Redbook* that include "The Sneetches" or "The Zaks" identify McCall Corporation as the sole proprietor of copyright for the contents. The Copyright Office issued a blanket copyright registration for those issues to McCall Corporation, and a blanket renewal registration for those issues to McCall Corporation's successor The Redbook Publishing Company.

65. Upon information and belief, DSE is neither the owner nor the beneficial owner of the copyright in "The Sneetches" or "The Zaks" as published in *Redbook*, and lacks statutory standing to sue over claims of infringement of those copyrights, or of copyrights in works derivative of those stories, pursuant to 17 U.S.C. § 501(b).

### TWENTY-FIRST AFFIRMATIVE DEFENSE
### No Infringement of *The Lorax* or *Horton Hears A Who!*

66. DSE fails to state a claim, in whole or in part, based on the books *The Lorax* and *Horton Hears A Who!* because it does not sufficiently specify any alleged

-30-

act of infringement of either book. DSE alleges only that *Boldly* "misappropriates key protected elements of *Horton Hears a Who* … [and] *The Lorax*… including without limitation characters and illustrations therefrom." DSE has not identified any such character, illustration, or other element of *The Lorax* or *Horton Hears A Who!* that it purports was infringed or misappropriated.

## TWENTY-SECOND AFFIRMATIVE DEFENSE
### *De Minimis* Use

67. DSE fails to state a claim, in whole or in part, based on the books *Sneetches*, *Grinch*, *Horton Hears A Who!*, and *The Lorax* because any alleged use by Defendants of copyright-protected elements or alleged trademarks found in those books is *de minimis*.

## TWENTY-THIRD AFFIRMATIVE DEFENSE
### No Likelihood of Confusion

68. DSE fails to state a claim, in whole or in part, because any alleged use of DSE's trademarks is not likely to cause confusion, deception, or mistake as to association, connection, sponsorship, endorsement, or approval by DSE.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE
### Nominative Fair Use

69. DSE fails to state a claim, in whole or in part, because any alleged use of DSE's trademarks constitutes nominative fair use.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE
### No False Designation of Origin

70. DSE's claims alleging a "false designation of origin" or "false endorsement" under the Lanham Act, 15 U.S.C. § 1125(a), fail, in whole or in part, because Defendants neither misattribute any DSE work as their own nor misattribute *Boldly* as DSE's work. The Lanham Act does not create a duty of express attribution.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE
### *Dastar* Preclusion

71. DSE's claims alleging a "false designation of origin" under the Lanham Act, 15 U.S.C. § 1125(a) fail, in whole or in part, because they conflict with the law

DEFENDANTS' ANSWER TO
FIRST AMENDED COMPLAINT

of copyright and are barred under *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). DSE is not the producer of *Boldly* so it cannot be the "origin" of *Boldly* within the meaning of the Lanham Act under *Dastar*.

72. Under *Dastar*, claims of unfair competition based on false or misleading representations as to the origin of the content of a communicative product are barred.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE
### Lanham Act Preclusion

73. DSE fails to state a claim under the California Business and Professions Code §§ 17200 *et seq.* to the same extent that it fails to state a claim under the Lanham Act. Such claims are substantially congruent. DSE's allegations under the California Business and Professions Code state no grounds beyond its allegations under the Lanham Act.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE
### Copyright Act Preemption

74. DSE's claims under the California Business and Professions Code §§ 17200 *et seq.* are preempted by 17 U.S.C. § 301(a).

## TWENTY-NINTH AFFIRMATIVE DEFENSE
### Invalid Trademark Registration for OH THE PLACES YOU'LL GO

75. DSE fails to state a claim, in whole or in part, based on United States Trademark Registration No. 5,099,531 (registered Dec. 13, 2016), for OH THE PLACES YOU'LL GO as a trademark in connection with "downloadable digital children's books," among other goods (the "'531 Registration").

76. *Oh, the Places You'll Go!* is the title of a Seuss book. Like the title of any single creative work, it does not function as a trademark. A book title denominates the book and does not indicate the source of the book. The primary significance of a book title to a potential consumer is the book itself, not the book's producer or publisher.

DEFENDANTS' ANSWER TO
FIRST AMENDED COMPLAINT

Case No. 16-cv-2779-JLS-BGS

77. Titles of books and similar works are not subject to copyright pursuant to 37 C.F.R. § 202.1(a). Any claim of trademark protection to a single book's title conflicts with the law of copyright and is barred under *Dastar*.

78. The United States Patent and Trademark Office has rightly and frequently refused registration to DSE when its applied-for mark is used only as the title of a single creative work, and does not function as a trademark to indicate the source of DSE's specified goods and distinguish them from others. DSE's trademark applications for which registration has been refused on those grounds, in whole or in part, include FOX IN SOCKS, App. No. 87,001,524 (refused Aug. 3, 2016; abandoned Mar. 2, 2017); DR. SEUSS'S ABC, App. No. 86,974,450 (refused Aug. 1, 2016; amended application limiting identified goods filed Feb. 1, 2017; registered as amended May 30, 2017); ONE FISH TWO FISH RED FISH BLUE FISH, App. No. 86,974,436 (same); YERTLE THE TURTLE, App. No. 86,973,387 (refused May 31, 2016; abandoned Jan. 4, 2017); THE CAT IN THE HAT COMES BACK, App. No. 86,973,385 (refused June 2, 2016; refused Dec. 13, 2016; amended application limiting identified goods filed June 13, 2017; non-final Office action July 6, 2017); THERE'S A WOCKET IN MY POCKET, App. No. 86,973,382 (refused June 1, 2016; refused in final Office action Dec. 5, 2016; request for reconsideration with amended identification of goods filed June 5, 2017; non-final Office action June 8, 2017; amended application limiting identified goods filed Dec. 8, 2017); MR. BROWN CAN MOO! CAN YOU?, App. No. 86,973,381 (refused June 2, 2016; refused in final Office action Dec. 5, 2016; request for reconsideration with amended identification of goods filed April 17, 2017; again refused in final Office action Nov. 16, 2017); OH THE THINKS YOU CAN THINK!, App. No. 86,973,380 (refused June 2, 2016; refused in final Office action Dec. 6, 2016; request for reconsideration with amended identification of goods filed June 5, 2017; non-final Office action June 8, 2017; response filed Dec. 8, 2017); GREEN EGGS AND HAM, App. No. 86,973,371 (refused May 26, 2016; refused in final Office

action Dec. 5, 2016; request for reconsideration with amended identification of goods filed June 5, 2017; non-final Office action June 8, 2017; response filed Dec. 8, 2017); and DR. SEUSS' HOW THE GRINCH STOLE CHRISTMAS! THE MUSICAL, App. No. 86,479,142 (refused Jan. 15, 2015; abandoned Aug. 14, 2015).

79. The '531 Registration was registered erroneously and is invalid.

80. Pursuant to 15 U.S.C. § 1119, the Court should order cancellation of the '531 Registration or otherwise rectify the register with respect to the registration.

**THIRTIETH AFFIRMATIVE DEFENSE**
**No Valid Trademark in Title of a Single Work**

81. Defendants hereby incorporate the above ¶¶ 76-77 of their Twenty-Ninth Affirmative Defense into this Paragraph as if fully stated herein.

82. DSE fails to state a claim, in whole or in part, based on its alleged common-law trademark rights in the title of *Go!* because the title of a single creative work is not a trademark.

**THIRTY-FIRST AFFIRMATIVE DEFENSE**
**No Valid Trademark in a "Stylized Font"**

83. DSE fails to state a claim, in whole or in part, based on the use of any alleged "stylized font."

84. Trademark law protects fonts only in the fixed, determinate form of a consistent logo. The variable freehand lettering styles on the covers, spines, and title pages of Seuss books do not constitute a consistent mark.

85. Pursuant to 37 C.F.R. § 202.1(a), mere variations of typographic ornamentation are not subject to copyright. Neither is typeface as typeface, pursuant to 37 C.F.R. § 202.1(e). Copyright law does not protect fonts per se. Any claim of trademark protection to a typeface conflicts with the law of copyright, so it is barred under *Dastar*.

DEFENDANTS' ANSWER TO
FIRST AMENDED COMPLAINT

Case No. 16-cv-2779-JLS-BGS

## THIRTY-SECOND AFFIRMATIVE DEFENSE
### No Valid Trademark in an "Illustration Style"

86. DSE fails to state a claim, in whole or in part, based on the use of any alleged "unique illustration style." The right to draw in a particular style or idiom does not require permission or license from another artist who draws in the same style or idiom.

87. Artistic works that express an artist's style in a fixed medium may be protected under copyright law, and specific designs that manifest an artist's style may be protected as design marks under trademark law. But neither copyright law nor trademark law protects the artistic style itself.

88. Copyright law recognizes a dichotomy between ideas and their expression, and protects only the latter. Extending trademark protection to a particular style of artistic expression would improperly extend trademark law into the area of copyright protection. *Dastar* bars such trademark claims.

## THIRTY-THIRD AFFIRMATIVE DEFENSE
### No Valid Trademark in the Contents of Creative Works

89. DSE fails to state a claim, in whole or in part, under the Lanham Act or the California Business and Professions Code, based on the communicative contents of any Seuss books, because the communicative contents of a creative work of artistic expression do not function as trademarks for the work. A trademark is a separate and distinct mark on or in connection with goods, not the goods themselves. The Seuss books and their contents, including at least their writing, illustrations, and any stylized fonts therein, are the goods themselves, not separate and distinct marks that serve to indicate the source or origin of the goods.

90. Under *Dastar*, claims of unfair competition based on false or misleading representations as to the origin of the content of a communicative product are barred.

DEFENDANTS' ANSWER TO
FIRST AMENDED COMPLAINT

Case No. 16-cv-2779-JLS-BGS

## THIRTY-FOURTH AFFIRMATIVE DEFENSE
### No Valid Trademark Except in Connection With Specific Identified Goods

91. DSE fails to state a claim, in whole or in part, under the Lanham Act and the California Business and Professions Code, to the extent that DSE has failed to specify goods to which its alleged unregistered or common-law trademarks pertain. Other than books, DSE alleges that it has common law trademark rights in "various goods," and that it owns trademarks used in connection with "other works." Those allegations are not sufficiently pleaded to identify any particular goods to which DSE's common-law trademark rights might pertain.

## THIRTY-FIFTH AFFIRMATIVE DEFENSE
### No Relief Based On Registration of OH THE PLACES YOU'LL GO

92. DSE fails to state a claim, in whole or in part, under the Lanham Act or the California Business and Professions Code, based on the '531 Registration because it issued on December 13, 2016, after DSE filed suit and after the Kickstarter campaign page was suspended from public view. Since before that date, Defendants have not used in commerce the trademark registered under the '531 Registration, or a confusingly similar copy or colorable imitation thereof, in connection with the sale, offering for sale, distribution, or advertising of *Boldly*. ComicMix is not marketing *Boldly* and has no intention to sell, reproduce, or distribute *Boldly* unless and until Defendants should prevail in this action.

93. DSE also fails to state a claim, in whole or in part, under the Lanham Act or the California Business and Professions Code, based on the '531 Registration to the extent that DSE has failed to mark goods with the statutory notice required under 15 U.S.C. § 1111. Defendants had no actual notice of the '531 Registration before June 22, 2017, when DSE filed its First Amended Complaint. DSE is not entitled to its profits, damages, or costs.

DEFENDANTS' ANSWER TO
FIRST AMENDED COMPLAINT

Case No. 16-cv-2779-JLS-BGS

## THIRTY-SIXTH AFFIRMATIVE DEFENSE
### Trademark Abandonment

94. DSE's claims under the Lanham Act and the California Business and Professions Code fail, in whole or in part, to the extent that DSE has abandoned its alleged trademarks. In its excessive licensing, DSE fails to exercise adequate quality control and has caused its alleged marks to lose trademark significance.

95. DSE asserts that parents and educators use Seuss books to teach community values. Anti-commercialism and anti-materialism are among the Seuss books' central themes, including in *Sneetches*, *The Lorax*, and *Grinch*. Geisel's treatment of those themes contributes significantly to the Seuss books' enduring popularity and any goodwill associated with the Seuss books.

96. *Sneetches'* titular story "The Sneetches" depicts the commercial exploitation of discrimination and artificial status symbols as a manufactured need. It is set in a society of Sneetches riven by a superficial symbol of caste and privilege, in which those who have a small star on their bellies discriminate against those without. Sylvester McMonkey McBean, the central character and villain in the Seuss book version, is a huckster who drains all of the Sneetches' money by charging those without stars three dollars each to use his "star on machine," then charging the star-bellied Sneetches ten dollars apiece to use his "star off machine" so they can continue to differentiate themselves.

97. *The Lorax* targets the environmental consequences of unchecked mass production and avarice. As described in a 1971 Random House advertisement, the book "tells the story of the greedy Once-ler, who disregards the Lorax's warning and chops down all the Truffle trees in order to make thousands and thousands of *Thneeds* — which everyone buys, but which nobody needs!" In particular, Thneeds are knitted products used as both apparel ("It's a shirt. It's a sock. It's a glove. It's a hat.") and home furnishings ("You can use it for carpets. For pillows! For sheets! Or curtains!").

98. *Grinch*, another parable, contrasts selfishness, materialism, and the commercialization of Christmas with the value of community and the Christmas spirit. Its villain, the misanthropic Grinch, decides to ruin Christmas for the cheerful Whos in Who-Ville. He disguises himself as Santa Claus and steals the Christmas trees and presents from the Whos' homes. The heist does not deter the Whos' holiday celebrations, and their caroling inspires the Grinch's epiphany: "'Maybe Christmas,' he thought, 'doesn't come from a store. Maybe Christmas … perhaps … means a little bit more!'" He returns the stolen property, and the community welcomes him to join in the Christmas feast.

99. Since Geisel's death in 1991, DSE has licensed and branded an ever-expanding glut of commercial products in collateral markets unrelated to books. Titles and illustrations derived from Seuss books have been applied to cellphone covers, dog pajamas, plastic key chains, tote bags, collegiate bibs, limited-edition sneakers, collectible ceramic cookie jars, and other tchotchkes. DSE's licensed deluge of chintzy branded goods systematically dilutes the anti-commercial and anti-materialistic themes central to the Seuss books and Geisel's reputation.

100. Many of DSE's licensed products and licensing practices are so contrary to Geisel's works as to inspire cognitive dissonance among consumers. On the Seussville website licensed by Random House Children's Books and DSE, the Products page (http://www.seussville.com/products/), depicts Geisel's Cat in the Hat character smiling beside a "SALE! A Star-Belly Sneetch for three dollars each" sign. DSE has licensed branded clothing and home furnishings in many branded varieties, not least those itemized in *The Lorax* as purposes of Thneeds, including *Grinch* pillowcases and sheets from Pottery Barn Kids, *Cat in the Hat*-themed carpets from Demco, *Go!*-themed curtain valances from Trend Lab, and branded apparel lines through Esprit, Intimo, and Target. DSE has licensed the production of fabric designs from Robert Kaufman Fabrics that depict characters from Seuss books, including a *Lorax*-derived "Thneed Factory" design. The Seuss books connote, for

their readers, the opposite of the overproduction and commercialization that these DSE-licensed goods embody.

101. In *The Tooth Book*, a LeSieg book about teeth and dental care, Geisel warned young readers, "Don't gobble junk like Billy Billings. They say his teeth have fifty fillings!" Undermining that message, since Geisel's death, DSE has often licensed titles, characters, character names, and illustrations from Seuss books for use in connection with fast-food chain menu items, candy products, and other commercial junk food items marketed to children.

102. DSE has also licensed a "Dr. Seuss pet fans collection" of pet accessories and toys with Petco (https://www.petco.com/shop/en/petcostore/brand/dr-seuss), including a two-pack of mice cat toys, one with a star-belly and one without; a "Seuss at Sea" program with Carnival Cruise Lines on dozens of its cruise ships (https://www.carnival.com/onboard/seuss-at-sea), where Dr. Seuss-themed merchandise is sold (https://www.carnival.com/FunShops/seuss-at-sea); and a "Seuss Landing" attraction at Universal's Islands of Adventure theme park, where Dr. Seuss-themed merchandise is sold at branded Dr. Seuss-themed stores, including the Mulberry Street Store ("Gizmos, Gadgets, Goodies Galore"), Dr. Seuss's All the Books You Can Read, and the Cats, Hats and Things boutique, while Dr. Seuss-themed foods are sold at branded outlets named after characters and foods found in Geisel's works, including Snookers & Snookers Sweet Candy Cookers snack shop, Fuddmuddler Bros. Popcorn stand, The Circus McGurkus Café Stoo-pendous! quick service stand, Hop on Pop Ice Cream Shop, Green Eggs and Ham Café, and Moose Juice Goose Juice ("sweets, treats, and drinks"). Upon information and belief, DSE's many extensions into commercial ventures that stray from the Seuss books' anti-commercial themes ultimately sap the goodwill associated with Geisel and DSE.

103. DSE's authorized co-branding initiatives include dozens of tie-in products and corporate sponsorships generated in connection with the DSE-licensed motion picture adaptations *Dr. Seuss' How the Grinch Stole Christmas!* (2000), *Dr.*

DEFENDANTS' ANSWER TO
FIRST AMENDED COMPLAINT

*Seuss' The Cat in the Hat* (2003), *Dr. Seuss' Horton Hears a Who!* (2008) and *Dr. Seuss' The Lorax* (2012).

104. The anti-commercial message of the *Grinch*'s epiphany was buried under the Christmastime marketing blitz around the motion picture adaptation. Co-branded goods sold though cross-promotion included, upon information and belief, more than 30 million Nabisco cookie and cracker boxes of many varieties, including Ritz, Triscuit, Wheat Thins, Oreo, Chips Ahoy!, Teddy Grahams, Honey Maid Grahams, and Cheese Nips; millions of cans of Sprite soda and bottles of Heinz ketchup; more than 50 million Hershey Foods branded products, customized candies, and candy dishes; more than 100 million boxes of Fruit Loops, Apple Jacks, Frosted Flakes, Corn Pops, Rice Krispies, Cocoa Krispies, and other Kellogg's cereals and snacks, promoted through television ads and the grinchbreakfast.com website; and kids' meals in more than 5,000 Wendy's restaurants. In connection with the film's release, Visa advertised its credit card as "the official card of Whoville," and hundreds of Toys "R" Us stores featured a dedicated "Whobilation Headquarters" retail promotion section.

105. In connection with the *Dr. Seuss' The Cat in the Hat* motion picture, Pepsi sponsored a "1, 2, 3, You Could Win a Shopping Spree!" promotional contest. In addition to Pepsi/Frito-Lay, corporate sponsors including Burger King, Hershey Foods, Jif, Kellogg, Kraft Foods, MasterCard, Procter & Gamble, and Smucker's participated in a co-branded marketing campaign for the motion picture. The film's website dubbed the corporate sponsors as "Cat Partners" and featured links to their tie-in products. The motion picture itself features extensive product placements for Ford cars. More egregiously, the motion picture, which premiered the year after Seuss Landing opened, includes a scene promoting the park. Sally, her brother, and the titular Cat in the Hat are shown hurtling down a CGI-animated slide. The boy shouts, "This is amazing! It's like a ride at an amusement park!" The Cat in the Hat responds, "You mean like at … Universal Studios." The CGI animation freezes; he

DEFENDANTS' ANSWER TO
FIRST AMENDED COMPLAINT

laughs, holds up a pair of brochures that prominently feature the words "Universal Studios," and says, "Cha-ching!" with a wink, over the sound of a cash register bell.

106. In connection with the *Dr. Seuss' Horton Hears A Who!* motion picture, L'Oreal Paris produced 300,000 bottles of branded, scented shampoos, such as "Horton's Whoberry" and "Kangaroo's MangaRoo," and International House of Pancakes ("IHOP") added tie-in menu items including "Who-Cakes" (an iridescent syrup-frosted pancake stack, with candies and chocolates inside, topped with M&Ms and a lollipop) and "Bezzelnut Splash" (a Sprite with floating cherry- and berry-flavored Jello cubes). The direct marketing company Valpak promoted the film and the IHOP tie-in menu on more than 40 million branded advertising mailer envelopes.

107. In a cross-promotion with the *Dr. Seuss' The Lorax* motion picture, DSE greenwashed Mazda's CX-5 sport utility vehicle in licensed advertisements touting the SUV as receiving "the only certified Truffula Tree Seal of Approval." Mazda was just one of almost 70 "Lorax approved" launch partners for the film, which was released along a bevy of *Lorax*-branded tie-in products ranging from Stonyfield Farms yogurts and disposable diapers from Seventh Generation to more sugary children's menu items at IHOP, including "Truffula Chip Pancakes" filled with rainbow sprinkles, "Kraft Mac 'N Cheese & Truffula Trees," and a "Rooty Tooty Bar-Ba-Looty Blueberry Cone Cake" (a pancake served in a waffle cone topped with a blueberry compote and sprinkled with powdered sugar).

108. DSE further muddies the legacy of Geisel's literary creations by passing off a profusion of poor imitations as "additional authorized Seuss books," many of which prominently feature the name "Dr. Seuss" and characters and illustrations from Seuss books. In both rate and quantity, DSE's licensing of derivative books based on Seuss books has far eclipsed Geisel's creation of the originals. DSE alleges that Geisel wrote and illustrated almost 60 Seuss books and LeSieg books over 53 years. DSE claims to own the copyrights in, and has authorized, at least 120 derivative books based on those Seuss books and Leseig books, not counting dozens

DEFENDANTS' ANSWER TO
FIRST AMENDED COMPLAINT

Case No. 16-cv-2779-JLS-BGS

of foreign language translations. Some of DSE's authorized derivative books are repackaged books, reissues, and adaptations that include some of Geisel's writing and illustrations. Others are simply knockoffs, in which authors and illustrators other than Geisel employ elements of his writing and illustrations.

109. DSE's authorized repackaged books mislead consumers because they are not Seuss books or LeSieg books but bear prominent indicia associated with those books. Books such as *Seuss-isms!*, *Seuss-isms for Success*, and *Pop-Up On Pop* are marketed as "By Dr. Seuss," on their front covers, spines, and advertising, while less prominently disclosing that the works are mere adaptations.

110. DSE's authorized knockoff books, not written or illustrated by Geisel, confuse consumers as to authorship by prominently featuring characters, logos, illustrations, and other indicia associated with the Seuss books and LeSieg books. For example, the front cover of *Oh, Baby! Go, Baby!* displays the pseudonym Dr. Seuss three times—four, counting the tag "With Seussian stuff to pull, spin, and fluff!"—without naming its author and illustrator. The front cover of the forthcoming *Dr. Seuss's Book of Colors* (Random House 2018) displays the Dr. Seuss pseudonym twice and his Cat in the Hat character twice, again not naming its author or illustrator. The front cover of *Dr. Seuss's Do You Like Green Eggs and Ham?* (Random House 2010) displays the Dr. Seuss pseudonym three times, with several illustrations derived from Seuss books. None of those books' front covers names its authors or illustrators. Amazon lists the author of each as "Seuss" or "Dr. Seuss." Random House's website markets *Dr. Seuss's Book of Colors*, *Dr. Seuss's Book of Animals*, and *Seuss-isms* as simply "Books by Dr. Seuss." DSE's licensed uses and marketing techniques intentionally confuse and mislead consumers into mistaking these books for books Geisel wrote and illustrated himself.

111. To the extent that DSE's allegedly infringed marks can function as trademarks, which Defendants expressly deny, they have lost their significance as trademarks as a result of DSE's course of conduct. DSE's volume of licensing,

-42-

merchandising, and marketing of extraneous products is detrimental to qualities of the Seuss books that consumers consider integral, and has severed any connection consumers might have perceived between DSE and any goodwill associated with the Seuss books. Consumers do not view DSE as the source of the Seuss books, but as a purveyor of spin-off products that debilitate the books' integral anti-commercial and anti-materialist messages.

### THIRTY-SEVENTH AFFIRMATIVE DEFENSE
### First Amendment

112. DSE's claims are barred, in whole or in part, by the First Amendment. Its intellectual property rights do not outweigh the freedom of expression guaranteed by the First Amendment.

113. *Boldly* is a creative, artistic work protected by the First Amendment.

114. Any use in *Boldly* of a trademark in which DSE has rights is relevant to *Boldly*'s artistic expression and purpose.

115. Any use in *Boldly* of a trademark in which DSE has rights does not explicitly mislead consumers as to *Boldly*'s source or its contents.

116. *Boldly* is a mashup that creatively combines elements of Seuss books and of the original *Star Trek* television series. Its title expressly distinguishes, and is not confusingly similar to, the title of *Go!*. It invokes both the title of *Go!* and the "to boldly go" split-infinitive from the opening sequence of the *Star Trek* series, referring to both to ultimately suggest the contents of the book. The title of *Boldly* describes or alludes to its characteristics, and does not serve to identify the book's source. In particular, the title of *Boldly* does not identify DSE (or CBS) as the book's source.

117. Under *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), as applied in the Ninth Circuit, DSE's claims under the Lanham Act are barred.

118. Further, DSE's claims under the Copyright Act are barred by the fair use doctrine, which operates as a safety valve to ensure that copyright enforcement will

DEFENDANTS' ANSWER TO
FIRST AMENDED COMPLAINT

not impinge on the right of free expression. All alleged use of DSE's allegedly copyright-protected works constitutes fair use, and cannot support a claim consistent with First Amendment principles.

### PRAYER FOR RELIEF

WHEREFORE, Defendants deny that DSE is entitled to any relief prayed for in its Complaint, and requests that the Court:

A. Deny all relief prayed for in the Complaint;

B. Dismiss with prejudice the Complaint and every claim therein;

C. Enter judgment in favor of Defendants and against Plaintiffs;

D. Request that the Register of Copyrights advise the Court whether the inaccurate information included on the applications for copyright registration for *Oh, the Places You'll Go!* and for *The Sneetches and Other Stories*, if known, would have caused the Register of Copyrights to refuse registration;

E. Order the cancellation of United States Trademark Registration No. 5,099,531 (the "'531 Registration") pursuant to 15 U.S.C. § 1119;

F. Award to Defendants their full costs incurred in this action, including reasonable attorney's fees, pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117(a), and interest thereon to the full extent allowed by law; and

G. Grant such other and further relief as the Court deems just and proper.

DEFENDANTS' ANSWER TO
FIRST AMENDED COMPLAINT

Case No. 16-cv-2779-JLS-BGS

Respectfully submitted,

DATED: December 22, 2017


BOOTH SWEET LLP                      D'EGIDIO LICARI & TOWNSEND, APC


*/s/ Dan Booth*                       */s/ Michael Licari*


Dan Booth                             Michael Licari
*Admitted Pro Hac Vice*               *Local Counsel*


*Attorneys for Defendants*


## CERTIFICATE OF SERVICE


I hereby certify that on this Friday, December 22, 2017 I electronically filed the foregoing document by using the Court's ECF system, thereby causing a true copy thereof to be served upon counsel of record for each party to have appeared to date, as identified on the Notice of Electronic Filing.


/s/     Dan Booth

DEFENDANTS' ANSWER TO
FIRST AMENDED COMPLAINT                          Case No. 16-cv-2779-JLS-BGS