UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. SEUSS ENTERPRISES, L.P., <br><br> Plaintiff, <br><br> v. <br><br> COMICMIX LLC; GLENN HAUMAN; DAVID JERROLD FRIEDMAN a/k/a JDAVID GERROLD; and TY TEMPLETON, <br><br> Defendants. | Case No.: 16-CV-2779-JLS (BGS) <br><br> **ORDER DENYING DEFENDANTS' MOTION FOR ISSUANCE OF REQUEST TO THE REGISTER OF COPYRIGHTS** <br><br> (ECF No. 57) |

Presently before the Court is Defendants' Motion for Issuance of Request to the Register of Copyrights, ("MTN," ECF No. 57-1). Also before the Court is Plaintiff's Opposition to the Motion, ("Opp'n," ECF No. 69), and Defendants' Reply in Support of the Motion, ("Reply," ECF No. 74).

Defendants filed their Motion pursuant to 17 U.S.C. § 411(b)(2). Defendants allege Plaintiff's copyright applications for *Oh, the Places You'll Go!* ("*Go!*") and *The Sneetches and Other Stories* ("*Sneetches*") are based on inaccurate information. Defendants request the Court "request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse

1

registration." (MTN 7 (quoting 17 U.S.C. § 411(b)(2)).)

**BACKGROUND**

Dr. Seuss, aka Theodor Seuss Geisel, wrote children's books between 1937 and 1990. Dr. Seuss also wrote and illustrated stories published in *Redbook* magazine in the 1950s, including "The Sneetches" in the July 1953 issue and "The Zax" in the March 1954 issue. (MTN 9.)[1] The copyright notices in these two issues of *Redbook* identify the publisher, McCall Corporation ("McCall"), as the proprietor of the copyrights. (ECF No. 57-4.) Defendants allege Dr. Seuss did not separately obtain a copyright registration for either story or renew the copyright for either story. (MTN 9–10.)[2]

One of Dr. Seuss's books at issue in the present Motion is *The Sneetches and Other Stories* which was published in 1961. The first two stories in the book are "The Sneetches" and "The Zax" which Defendants allege are derivative works "substantially based on the stories published in *Redbook* in July 1953 and March 1954, with more illustrations and with the texts revised and expanded." (*Id.* at 10.) Nothing on the copyright page of the *Sneetches* references the *Redbook* stories. (*Id.*) When Dr. Seuss applied to register the copyright for *Sneetches*, he did not inform the Copyright Office of the *Redbook* stories. (*See* ECF No. 57-7 (copyright application for *Sneetches*).)[3] Dr. Seuss also did not inform the Copyright Office of the stories when he renewed the application for *Sneetches* in 1989. (MTN 11.) In contrast, as Defendants note, when Dr. Seuss registered for a copyright in *Yertle the Turtle and Other Stories* three years after he registered *Sneetches*, he stated on the application: "Approximately one-third of the illustrations in this volume are new and the text of the three stories (previously published in Redbook Magazine and copyrighted) has been slightly changed throughout." (*See* ECF No. 57-9, at 1.)

---

[1] Pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page.
[2] Plaintiff has proven otherwise, as discussed herein.
[3] At the time, line 5 of the application stated: "If any substantial part of this work has been previously published, give a brief general statement of the new matter in this version. New matter may consist of compilation, translation, abridgment, editorial revision, and the like, as well as additional text or pictorial matter." Dr. Seuss left this line blank. (*See* ECF No. 57-7.)

Another short work written by Dr. Seuss is "The economic situation clarified: A prognostic re-evaluation" (hereinafter, "Economic Situation"), first published in the June 15, 1975 issue of *The New York Times Magazine*. The New York Times obtained a copyright for the collective work as the owner, (ECF No. 57-10), and obtained a renewal registration in the collective work in 2003. "Economic Situation" is a short work printed on a background image. The image, with changes, appears in *Go!* (*See* MTN 12, 14 (artwork compared).) When Dr. Seuss applied to the Copyright Office to register the copyright in *Go!*, he did not reference "Economic Situation" in the application.

## LEGAL STANDARD

A certificate of registration from the Copyright Office constitutes "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). "To rebut the presumption [of validity], an infringement defendant must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement." *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011). A defendant may rebut the presumption of validity by showing evidence that the certificate of registration contains inaccurate information that: (1) was included with knowledge that it was inaccurate; and (2) would have caused the Register of Copyrights to refuse registration. 17 U.S.C. § 411(b)(1). "[I]nadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement." *Urantia Found. v. Maaherra*, 114 F.3d 955, 963 (9th Cir. 1997). "Absent intent to defraud and prejudice, inaccuracies in copyright registration do not bar actions for infringement." *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984).

In a case where inaccurate information as described in § 411(b)(1) is alleged, "the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(2).

# ANALYSIS

## I. Plaintiff's Argument

Plaintiff argues there is no inaccuracy in the applications for *Sneetches* or *Go!* because material from the prior works comprised insignificant portions of the books and Plaintiff was not required to disclose reuse of Dr. Seuss's own prior creations. (Opp'n 7.) Plaintiff argues Defendants did not prejudicially rely on the alleged omissions and argues Dr. Seuss did not fraudulently conceal the prior works from the Copyright Office. (*Id.*)

### A. *"The Sneetches"* and *"The Zax"*

Plaintiff agrees the Dr. Seuss wrote these two stories and that they were published in *Redbook*. Plaintiff agrees that McCall was the copyright owner and obtained copyright registrations for both issues. But in 1956, McCall assigned to Dr. Seuss the copyright to these two works. (Opp'n 8; *see* ECF No. 69-8.)

Plaintiff agrees that Dr. Seuss registered the *Sneetches* book in 1961 and agrees that Line 5 of the application was left blank. (Opp'n 9.) Plaintiff also notes that the illustration at issue in the instant case (i.e., the illustration from *Sneetches* that Plaintiff states is used by Defendants in Defendants' book) was not in the *Redbook Sneetches* story nor the *Redbook* Zax story. (*Id.*) Plaintiff agrees Dr. Seuss did reference other *Redbook* stories in his copyright applications for other books such as *Yertle the Turtle and Other Stories*, but Plaintiff argues the copyright for each book "presents its own unique set of facts regarding whether a 'substantial part' of the prior work was used." (*Id.* at 21.)

### B. *"Economic Situation"*

Plaintiff agrees that Dr. Seuss wrote "Economic Situation" and that the New York Times Company obtained copyright registration in the collective work in 1975 as the owner and a renewal copyright in 2003. (*Id.*) But, Plaintiff states Dr. Seuss owned the copyright in "Economic Situation" at the time *Go!* was registered for copyright in 1990. Plaintiff states "'Economic Situation' was a contribution to a collective work, and under 17 U.S.C. § 201(c) of the 1976 Act, Dr. Seuss, as the author and contributor of the work, was deemed to be the sole copyright owner in 'Economic Situation.'" (*Id.*) *See* 17 U.S.C. § 201(c)

("Copyright in each separate contribution to a collective work is distinct from copyright in the collective work as a whole, and vests initially in the author of the contribution.").

Plaintiff agrees one of the illustrations in *Go!* is "based upon" an illustration in "Economic Situation." (Opp'n 9.) Plaintiff does not dispute that Dr. Seuss filed an application in 1990 to register the copyright in *Go!* and the copyright was issued. Plaintiff agrees the copyright application for *Go!* did not disclose "Economic Situation." (*Id.* at 10.)[4]

In sum, Plaintiff did not disclose the prior works (the *Redbook* stories and "Economic Situation") in the applications for the books *Sneetches* and *Go!*. But, Plaintiff makes various arguments why Defendants' Motion should be dismissed. The issue is twofold: (1) were the copyright registrations for *Sneetches* and *Go!* based on inaccurate information, and if so, (2) is there evidence of prejudice to Defendants or of an intent to defraud the Copyright Office by Plaintiff?

## II. Were the Applications Inaccurate?

Plaintiff argues the registrations for the two books were accurate, and that "[a] registrant was not obligated to disclose in an application that the work makes use of a portion of a prior work of the same author." (Opp'n 14.) Plaintiff also argues the prior works are not a substantial part of the later works.

### *A. The Sneetches and Other Stories*

The Court first analyzes the copyright application for the *Sneetches* book.

#### *1. Same Author vs. Third Party*

The law is somewhat divided as to whether the author is required to disclose prior works on a copyright application even if those prior works were created by the author himself. Under 17 U.S.C. § 409(9), "[t]he application for copyright registration . . . shall

---

[4] Plaintiff also does not dispute that in 1991, "Dr. Seuss filed an application to correct the copyright claimants shown in the registration for *Go!*" changing the claimant from the Geisels to the Geisels as Trustees of a Trust Agreement. (Opp'n 10.) The Copyright Office thereafter issued a corrected registration.

5

include . . . in the case of a compilation or derivative work, an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered." Some courts have held disclosure is not required if the prior work was created by the same author. The court in *Frank Betz Associates, Inc. v. J.O. Clark Construction, LLC*, No. 3:08-cv-159, 2010 WL 2253541, at *11 (M.D. Tenn. May 30, 2010), held "[t]he issue raised by § 409(9) is whether and to what extent the derivative design incorporates elements designed by someone else." Where the evidence indicates that plaintiff created derivative designs based on its own original designs, "the concerns that § 409(9) raises are not implicated." *Id.* Similarly, the court in *Robert L. Stark Enterprises, Inc. v. Neptune Design Group, LLC*, No. 1:16 CV 264, 2017 WL 1345195, at *9 (N.D. Ohio Apr. 12, 2017), stated "[t]o the extent defendant owns a valid copyright in [the prior] plans, the Court finds that on the facts of this case, the failure to disclose the plans as pre-existing material when registering later works, standing alone, would not invalidate the subsequent registration." The court reasoned, "[a]s the copyright would have simply incorporated plans created by defendant, its failure to identify those plans as pre-existing materials does not implicate Section 409(9) of the Copyright Act." *Id.*; *see also Dorchen/Martin Assocs., Inc. v. Brook of Cheboygan, Inc.*, No. 11-10561, 2012 WL 4867608, at *6 (E.D. Mich. Oct. 15, 2012) (finding that the plaintiff was the author of the prior plan, which was used to create the new plan, and "[t]o deny Plaintiff protection for that plan, simply because it failed to identify an earlier version it created and incorporated, would contravene the purpose of rule 409(9)").

In contrast, other courts and scholars have held the opposite. *See Lennar Homes Tex. Sales & Mktg., Ltd. v. Perry Homes, LLC*, 117 F. Supp. 3d 913, 925 (S.D. Tex. 2015) ("Even if the registrant owns both the derivative work and the underlying work, § 409(9) still requires disclosure."); *see also* William F. Patry, Patry on Copyright § 17:112 (2015) (stating it is "incorrect that applications need not disclose in Space 6 [of the copyright application] that the work is a derivative work if the preexisting work is also owned by the applicant"). Indeed, as explained in this treatise:

> The purpose of disclosure on Space 6 is twofold: to permit the Copyright Office to determine whether the new material is sufficient to support the derivative registration, and to place on the public record a clean separation of the original, preexisting work from the derivative work so that copyright in the original work is not impermissibly extended through successive registrations for undisclosed variations.

*Id.* Further, the current edition of the Compendium of U.S. Copyright Office Practices states "[t]he U.S. Copyright Office has a longstanding practice of precluding previously published material from a claim in a collective work or derivative work, even if the author of the collective work or derivative work is the author of the previously published material and owns all of the rights in that material." U.S. Copyright Office, Compendium of U.S. Copyright Office Practices, § 1008.2 (3d ed. 2017) (hereinafter "Compendium").[5]

The Court agrees with the latter determinations. The purpose of the statute requiring disclosure is better served when disclosure is made whether the previously published material was copyrighted and/or written by the author or by a third party.[6] It is immaterial whether Dr. Seuss or another party owned the copyrights for the *Redbook* stories and "Economic Situation." But, this finding does not resolve Plaintiff's Motion, and the Court now must determine whether the prior works should have been disclosed on the copyright application for the *Sneetches* book.

### 2. *Substantiality*

Plaintiff states the book *Sneetches* has 245 lines of poetry, and 22 of these draw measure from the *Redbook* stories "The Sneetches" and "The Zax" and the illustrations in the stories are different than those in the book. (Opp'n 16.) Indeed, in piece-mailing the

---

[5] The Compendium is a manual published by the Copyright Office and provides guidance to copyright applicants and others regarding practices and principles of copyright law. The interpretation of copyright law in the compendium is "entitled to judicial deference if reasonable." *Batjac Prods. Inc. v. GoodTimes Home Video Corp.*, 160 F.3d 1223, 1231 (9th Cir. 1998).

[6] *See also* Compendium, Glossary (defining "unclaimable material" as including "(i) previously published material; (ii) previously registered material; (iii) material that is in the public domain; and/or (iv) copyrightable material that is not owned by the claimant named in the application"). Notably, this does not distinguish between previously published material owned by the author or by a third party.

works and dividing them up line by line, it is evident that the amount of lines used in the books is not significant. However, it is also evident that the first two stories in the *Sneetches* book are really an expansion and elaboration of two *Redbook* stories.

At the time Dr. Seuss filled out the copyright registration for *Sneetches*, the application asked whether "any substantial part of this work has been previously published." (*See* ECF No. 57-7.) The Court finds that the *Redbook* stories, which although formed the idea behind part of the *Sneetches* book, were not a "substantial part" of the work. Although the stories are the basis for two out of four stories in the *Sneetches* book, the book elaborated on the stories and included a great amount of new and different material. It cannot be said that the two short stories composed a "substantial" part of the book and therefore the copyright application for *Sneetches* is not based on inaccurate information. The Court **DENIES** Defendants' Motion as it relates to the copyright registration of *Sneetches*.

### B. Oh, The Places You'll Go!

As to *Go!*, Plaintiff states the book contains 25 illustrations,[7] only one of which "is claimed by [Defendants] to be derivative of the illustration of Economic Situation'" and Dr. Seuss was not required to disclose this incorporation. (*Id.* at 18.)[8]

When Dr. Seuss registered the copyright for *Go!*, Section 5 of the application asked the applicant: "Has registration for this work, or for an earlier version of this work, already been made to the Copyright Office?" (ECF No. 57-13, at 2.) Dr. Seuss checked no. The Court finds this was not erroneous; simply because one illustration from *Go!* was previously published does not mean there is an "earlier version" of the work.[9] Section 6

---

[7] Defendants dispute this and argue there are 22 illustrations.

[8] In 1990, the Geisels assigned rights to Tri-Star Pictures, Inc. to produce a motion picture based on *Go!* (Opp'n 10.) Defendants argue Plaintiff intentionally failed to disclose "Economic Situation" in the copyright application for *Go!* because disclosure of the prior work would have "complicated and made less valuable, if not threatened altogether" this deal with Tri-Star. (MTN 24.)

[9] Similarly, the Court finds no error in the two other sections of the application referenced by Defendants. (MTN 16.) Section 1 of the form asked: "If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared." Dr.

of the application titled "Derivative Works or Compilation" asks the applicant to "[i]dentify any preexisting work or works that this work is based on or incorporates." (*Id.*) Dr. Seuss left this section blank.

Plaintiff does not appear to argue that *Go!* is not a derivative work, but argues that under the law at the time, Dr. Seuss only was required to disclose the prior work if a substantial amount of the prior work was incorporated in the derivative work. (Opp'n 18.) A "derivative work" is defined as "a work based upon one or more preexisting works, such as [an] art reproduction, abridgment . . . or any other form in which a work may be recast, transformed, or adapted [or] [a] work consisting of editorial revisions, annotations, elaborations, or other modifications, which, as a whole, represent an original work of authorship." 17 U.S.C. § 101. The registration for a derivative work does not cover any "preexisting material" employed in the work. 17 U.S.C. § 103b. Thus, in the registration application for a derivative work, the applicant must disclaim such material. Compendium, §§ 503.5, 507.2; *see* 17 U.S.C. § 409(9) ("The application for copyright registration . . . shall include . . . in the case of a compilation or derivative work, an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered."). Assuming *Go!* is a derivative work, its registration should identify any preexisting work that it is based on or incorporates.

Plaintiff argues that the amount of preexisting work in *Go!* is not substantial and therefore did not need to be disclosed. Indeed, "[t]he incorporation of insubstantial amounts of preexisting material or of noncopyrightable material need not be disclosed." Pantry, § 17:112. The Court agrees with Plaintiff. The Court finds that *Go!* did not incorporate a substantial amount of preexisting material from "Economic Situation." "Economic Situation" was a poem published on a background artwork consisting of images

---

Seuss left this line blank and the Court finds no inaccuracy in this answer. Section 2 of the form asked: "Was this contribution to the work a 'work made for hire'?" Dr. Seuss checked no and the Court finds no inaccuracy in this answer.

of walking figures. (*See* MTN 12.) This background artwork, without the poem, and with small changes made, is used on one page of *Go!*. (*See id.* at 14.). The use of the prior work does not constitute an "appreciable" or "substantial" amount.[10] *See* Pantry, § 17:112 ("If the work does not contain an appreciable amount of unclaimable material, spaces 6(a) and 6(b) of the application may be left blank."); *see also* Compendium, § 621.8(B) (same).

The Court finds that because *Go!* does not contain an appreciable nor a substantial amount of unclaimable material, the publication of the "Economic Situation" was not required to be disclosed by Dr. Seuss in *Go!*'s copyright application. The Court **DENIES** Defendants' Motion as it relates to the copyright registration of *Go!*

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion.

**IT IS SO ORDERED.**

Dated: May 21, 2018

*/s/ Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

---

[10] The words "substantial amount" and "appreciable amount" are both used by the Copyright Office, and "substantial amount" was used in the second edition of the Compendium. *See* U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 108.04 (2d ed. 1984). As the Copyright Office recently noted:

> Applicants should add a disclaimer if the work contains an "appreciable" amount of previously published material. This requirement was stated throughout the 2014 version of the Compendium. But in a few places the Office inadvertently used the word "substantial" in place of the word "appreciable." The Public Draft corrected these oversights, and . . . these corrections do not represent a change in the Office's current policy.

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices, 82 Fed. Reg. 45,625, 45,626 n.2 (Sept. 29, 2017) (citations omitted).