GINA L. DURHAM (Bar No. 295910)
gina.durham@dlapiper.com
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
Tel: 415.836.2500
Fax: 415.836.2501

STANLEY J. PANIKOWSKI (Bar No. 224232)
stanley.panikowski@dlapiper.com
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101
Tel: 619.699.2700
Fax: 619.699.2701

ANDREW L. DEUTSCH (Bar No. 319286)
andrew.deutsch@dlapiper.com
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400, North Tower
Los Angeles, CA 90067-4704
Tel: 310.595.3000
Fax: 310.595.3300

Tamar Y. Duvdevani (admitted *pro hac vice*)
tamar.duvdevani@dlapiper.com
Marc E. Miller (admitted *pro hac vice*)
marc.miller@dlapiper.com
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel: 212.335.4500
Fax: 212.335.4501

Ryan Compton (admitted *pro hac vice*)
ryan.compton@dlapiper.com
James Stewart (admitted *pro hac vice*)
james.stewart@dlapiper.com
DLA PIPER LLP (US)
500 Eight Street, NW
Washington, D.C. 20004
Tel: 202.799.4000
Fax: 202.799.5000

*Attorneys for Plaintiff*
*Dr. Seuss Enterprises, L.P.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. SEUSS ENTERPRISES, L.P., a California limited partnership,<br><br>Plaintiff,<br><br>v.<br><br>COMICMIX LLC, a Connecticut limited liability company; MR. GLENN HAUMAN, an individual; MR. DAVID JERROLD FRIEDMAN A/K/A DAVID GERROLD, an individual; and MR. TY TEMPLETON, an individual,<br><br>Defendants. | CASE NO.: 3:16-cv-02779-JLS-BGS<br><br>**PLAINTIFF DR. SEUSS ENTERPRISES L.P.'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

## I.   INTRODUCTION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7.1.f.1, plaintiff Dr. Seuss Enterprises, L.P. ("DSE") hereby submits the following Separate Statement of Undisputed Material Facts in Support of DSE's Motion For Summary Judgment. These undisputed material facts establish that DSE is entitled to summary judgment as to its claims of copyright infringement of DSE's registered copyrights in *How the Grinch Stole Christmas!*, *The Sneetches and Other Stories*, and *Oh, the Places You'll Go!* pursuant to the Copyright Act (17 U.S.C. § 101 *et seq.*), against defendants ComicMix LLC, Glenn Hauman, David Gerrold, and Ty Templeton (collectively, the "Defendants").

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 1.      DSE is a California limited partnership | Duvdevani Decl., Ex. 5 |
| 2.      DSE is the owner of the copyright in the book titled *How the Grinch Stole Christmas!* ("*Grinch*"), which has been duly registered with the Copyright Office. | Duvdevani Decl., Ex. 6; Brandt Decl., ¶¶ 2-3, 6-11, 13-20, Exs. 1-2, 5-9, 11-18 |
| 3.      DSE is the owner of the copyright in the book titled *The Sneetches and Other Stories* ("*The Sneetches*"), which has been duly registered with the Copyright Office. | Duvdevani Decl., Ex. 4 (Brandt Tr. at 32:17-33:19); Duvdevani Decl., Ex. 7; Brandt Decl. ¶¶ 4-6, 11, 13-20, Exs. 3-5, 9, 11-18 |
| 4.      DSE is the owner of the copyright in the book titled *Oh, the Places You'll Go!* ("*Go!*"), which has been duly registered with the Copyright Office. | Duvdevani Decl., Ex. 4 (Brandt Tr. at 32:17-33:19); Duvdevani Decl., Ex. 8; Brandt Decl. ¶ 12-20, Exs. |

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| | 10-11, 18 |
| 5.     *Go!* by Dr. Seuss. | Duvdevani Decl., Ex. 9 |
| 6.     *Grinch* by Dr. Seuss. | Duvdevani Decl., Ex. 10 |
| 7.     *The Sneetches* by Dr. Seuss | Duvdevani Decl., Ex. 11 |
| 8.     On or around May 27, 2016, Defendant Gerrold wrote Defendant Hauman an e-mail stating "If we could get a license, we should do a Star Trek Primer." Gerrold and Hauman further discussed creating a Star Trek "50th Anniversary reprinting of a classic children's book, as if it had existed in the past." | Duvdevani Decl., Exs. 12-13 |
| 9.     On or around May 28, 2016 Hauman said to Gerrold that if they make a parody of "TWO things (Pat The Bunny and Trek) we're on safer ground, I think.  Still, a license may be available.  Let me think on it." | Duvdevani Decl., Ex. 2 (Gerrold Tr. 37:11-38:23); Duvdevani Decl., Ex. 12 |
| 10.     Defendants never contacted CBS to determine whether a license would be available from CBS for their use of *Star-Trek* intellectual property.  Likewise, Defendants never contacted DSE prior to the instant action to determine whether a license would be available from DSE for their use of DSE's intellectual property. | Duvdevani Decl., Ex. 2 (Gerrold Tr. at 97:21-98:9; 161:15-163:6); Duvdevani Decl., Ex. 3 (Hauman Tr. at 85:8-15; 93:14-25) Duvdevani Decl., Ex. 32 (Defs. Supp. Resp. Rog Nos. 4) |

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
|  | Duvdevani Decl., Ex. 33 (Defs. Resp. to RFA Nos. 2-3; 8-9) |
| 11.    Hauman suggested that he and Gerrold check on "what we can do as a parody, which is pretty dang broad as long as we aren't doing too much trademark violation." | Duvdevani Decl., Ex. 13 |
| 12.    Hauman suggested that they "go with 'Pat The Tribble,'" because he believed they were "less likely to be sued thanks to [Gerrold's] 'arrangement' with Paramount." | Duvdevani Decl. Ex. 3 (Hauman Tr. at 65:5-74:17) Duvdevani Decl., Ex. 13 |
| 13.    Gerrold had neither an "arrangement" with, nor a "blanket license" from Paramount to use *Star Trek* intellectual property without authorization. | Duvdevani Decl., Ex. 2 (Gerrold Tr. at 51:12-53:9; 18:20-19:16; 21:5-15) Duvdevani Decl., Ex. 13 |
| 14.    As of at least May 29, 2016, Defendants Gerrold and Hauman were aware that "*Fun With Kirk and Spock – A Parody*" was a licensed *Star Trek* work. | Duvdevani Decl. Ex. 2 (Gerrold Tr. at 55:16-56:9; 212:20-213:18); Duvdevani Decl. Ex. 3 (Hauman Tr. at 133:20-135:12; 142:15-143:4) Duvdevani Decl. Exs. 13-14, 16 |

DLA Piper LLP (US)
San Francisco

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 15.    On or around May 28, 2016, Hauman proposed to Gerrold several titles for their project, including "Oh, The Places You'll Boldly Go!", "Goodnight Khan", "Goodnight That's No Moon" for Star Wars, and "The Very Hungry Sandworm". | Duvdevani Decl., Ex. 13 |
| 16.    Hauman was "slightly concerned" that "*Fun With Kirk and Spock – A Parody*," was licensed, but concluded that *Boldly* was "well-protected by parody" – "of course, IANAL" (which is shorthand for "I Am Not a Lawyer.") | Duvdevani Decl., Ex. 2 (Gerrold Tr. at 97:3-98:9) Duvdevani Decl. 16 |
| 17.    Without consulting an attorney before *Boldly* was completed, Hauman, who is not an attorney, felt "pretty secure" that *Boldly* would be and ultimately was a parody. | Duvdevani Decl., Ex. 3 (Hauman Tr. at 48:17-23; 74:18-83:5; 189:9-191:2) Duvdevani Decl., Ex. 16 |
| 18.    Gerrold did not consult an attorney regarding the creation of *Boldly* and at least as of December 3, 2016, had not retained an attorney. | Duvdevani Decl., Ex. 2 (Gerrold Tr. at 46:12-47:1; 97:21-99:8;         167:9-23; 169:14-15) |
| 19.    Templeton did not consult an attorney regarding the creation *Boldly* and at least as of November 17, 2016, had not retained an attorney. | Duvdevani Decl., Ex 1 (Templeton Tr. 184:16-24; 233:10-16) Duvdevani Decl., Ex. 17 |

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 20.    On May 28, 2016, Hauman wrote Gerrold an e-mail, including a mock-up of *Boldly's* cover art, and stating: "Well, if you're not doing this [referring to *Boldly*], I am." | Duvdevani Decl., Ex. 13 |
| 21.    On May 28, 2016, Hauman wrote Gerrold an e-mail recreating the entire text of *Go!*, and providing "Fast photos of the images," of *Go!*'s artwork. | Duvdevani Decl., Ex. 15 |
| 22.    Gerrold and Hauman agreed to create *Boldly* on May 28, 2018. | Duvdevani Decl., Ex. 16 |
| 23.    Hauman and Gerrold were "worried" about DSE's reaction to their unauthorized use of Dr. Seuss's works in *Go!* | Duvdevani Decl., Ex. 3 (Hauman Tr. at 74:18-83:5); Dudevani Decl., Ex. 18 |
| 24.    While creating *Boldly*, Hauman and Gerrold discussed the legal risks for "maybe 30 seconds" or "45 seconds" before concluding it would be "okay" because it "was going to be a parody." | Duvdevani Decl., Ex. 2 (Gerrold Tr. at 30:9-33:20) |
| 25.    After Hauman and Gerrold decided to create *Boldly*, and before engaging Templeton, ComicMix reached out to two artists, attaching a cover mock-up of the concept, to "work in a style reminiscent of Ted Geisel" for an "illustrated fiction." | Duvdevani Decl., Ex. 19 |

DLA Piper LLP (US)
San Francisco

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 26.    Hauman and Gerrold planned for *Boldly* to include "24 spread illustrations", "just as you'd see in a Seuss book." | Duvdevani Decl., Ex. 20 |
| 27.    Hauman intended for *Boldly* to be "family-friendly", and safe enough "for 5 year olds." | Duvdevani Decl., Ex. 20 |
| 28.    On June 14, 2016, Hauman wrote an e-mail to Defendant Ty Templeton sending him a mock-up of the cover art for *Boldly* and inviting him to join the project as an "illustrator" and possibly "contributing" to the script. | Duvdevani Decl., Ex. 25 |
| 29.    Hauman's e-mail to Templeton on June 14, 2016, also stated, in part:<br>    "If we're going to do a crowdfunding campaign, we're going to want the cover and at least a background art piece for promotions, as well as be able to use the cover for posters, mugs, and all the merchandise that will push this thing over the top." | Duvdevani Decl., Ex. 25 |
| 30.    Templeton accepted Hauman's invitation to participate in *Boldly*, writing:  "Holy CRAP that's a cool idea.  The title is like printing money. I'm totally in."<br>31. | Duvdevani Decl., Ex. 25 |

DLA Piper LLP (US)
San Francisco

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 32.    Hauman selected Templeton to illustrate *Boldly*, in part, because of his skill "evoking" the styles of other preexisting properties. | Duvdevani Decl., Ex. 3 (Hauman Tr. at 101:5-103:13) |
| 33.    Defendants had access to *Go!* when creating *Boldly*. | Duvdevani Decl., Ex. 1 (Templeton Tr. 176:3-177:24); Duvdevani Decl., Ex. 2 (Gerrold Tr. at 89:20-90:7; 91:5-22; 92:3-17); Duvdevani Decl., Ex. 21, 22 |
| 34.    Before writing *Boldly*, Gerrold ordered a copy of *Go!* in order to "parallel it as close as [he could]." | Duvdevani Decl., Ex. 2 (Gerrold Tr. at 94:9-95:20); Duvdevani Decl., Ex. 21 |
| 35.    On June 20, 2016, Gerrold completed a first draft of *Boldly* "from scratch", which "focus[ed] on the *Star Trek* aspect more than the specific parallels with anything in the Seuss book."  Gerrold's first draft was "full of references that would be R- or even X-rated and eventually we toned those down a little bit," when writing *Boldly*. | Duvdevani Decl., Ex. 2 (Gerrold Tr. at 112:3-19); Duvdevani Decl., Ex. 23 |

DLA Piper LLP (US)
San Francisco

SOF
USDC CASE NO. 3:16-CV-02779-JLS-BGS

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 36.    Templeton testified that in his "original layouts" for *Boldly* he "ignored" the layouts in *Go!* "trying for a 'Seussian'" style by "drawing based on the text", but that it "wasn't close enough to OTPYG", so he "started matching drawings from the original." | Duvdevani Decl., Ex. 1 (Templeton Tr. at 217:12-220:21; 226:10-229:21); Duvdevani Decl., Ex. 24 |
| 37.    Templeton testified that after he drew approximately "half" of the layouts for the project, Hauman told him to "go closer" to *Go!*. | Duvdevani Decl., Ex. 1 (Templeton Tr. at 226:10-229:21) |
| 38.    On July 12, 2016, Templeton wrote an email to Hauman and others stating, in part: "The point of the original story is that life is an adventure but it WILL be tough and there WILL be setbacks, and you should not despair of them.  I think its why the original resonates so much, especially as a graduation gift for folks who grew up reading Seuss. I think we have to keep to that sentiment to make the parody and spirit work." | Duvdevani Decl., Ex. 26 |
| 39.    Defendants were interested in the "commercial prospects" or "trying to make a profit" off *Boldly*. | Duvdevani Decl., Ex. 1 (Templeton Tr. 194:21-197:23); Duvdevani Decl., Ex. 2 (Gerrold Tr. at 60:14-62:4; 156:14-157:3;141:1-4); Duvdevani Decl., Exs. 25, |

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| | 27; Duvdevani Decl., Ex. 33 (Defs. Resp. to RFA No. 10) |
| 40.    Gerrold testified that *Boldly* represents a professional level of production. | Duvdevani Decl., Ex. 2 (Gerrold Tr. at 156:2-157:7) |
| 41.    On July 18 2016, Hauman contacted John Frazier at ThinkGeek, an ecommerce retailer, to see whether ThinkGeek would handle printing, distribution, and merchandising for *Boldly*. | Duvdevani Decl., Ex. 28 |
| 42.    In response to Hauman's inquiry regarding printing, distribution, and merchandising, Frazier responded "it goes without saying you've got the license though, right." | Duvdevani Decl., Ex. 29 |
| 43.    For "reassurance" Hauman represented to ThinkGeek that no license was needed because *Boldly* was a "straight parody fair use of both Seuss and Trek" and that Gerrold was "grandfathered in on Star Trek books," because of "arcane licensing issues", but understood if this "complicate[d] matters for [ThinkGeek]." | Duvdevani Decl., Ex. 3 (Hauman Tr. at 94:17-96:15); Duvdevani Decl., Ex. 29 |
| 44.    Hauman did not seek opinion of counsel whether *Boldly* was a "straight parody fair use of both Seuss and Trek" before representing to ThinkGeek that *Boldly* was a "straight parody." | Duvdevani Decl., Ex. 3 (Hauman Tr. at 92:7-22) |

DLA PIPER LLP (US)
SAN FRANCISCO

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 45.    ThinkGeek wrote to Hauman that it could "carry the book if it fell under DG's [Gerrold's] blanket license," but Hauman never corrected ThinkGeek's misguided belief. | Duvdevani Decl., Ex. 3 (Hauman Tr. at 96:16-100:12); Duvdevani Decl., Ex. 29 |
| 46.    Hauman summarized his conversation with Frazier in an email to Keiren Smith, stating, "good news": "we'll be selling [ThinkGeek][] a lot of stuff" although it was "unlikely" that ThinkGeek would handle "fulfillment on merchandise" because *Boldly* was "unlicensed." | Duvdevani Decl., Ex. 30 |
| 47.    Defendants provided to DSE a completed version of *Boldly* on or around October 27, 2016. | Duvdevani Decl., Ex. 31 |
| 48.    Gerrold testified that the cover of *Boldly* "looks like a Star Trek children's… book that has a Dr. Seuss style or you could even say it looks like it was produced by Seuss", but upon a closer inspection you "realize it is not Dr. Seuss," it "is a mashup, a parody of both Star Trek and Dr. Seuss." | Duvdevani Decl., Ex. 2 (Gerrold Tr. at 69:16-70:4) |
| 49.    Templeton testified that to copy Seuss's illustration style he would "have the original book open to what [he] was looking at."  Then, he would "study the page." After that, he would "rough out the positions the characters are in" or "rough out the layout."  Once he was "satisfied" with the positions of the characters he would "render" them and | Duvdevani Decl., Ex. 1 (Templeton Tr. at 170:23-171:11; 176:3-177:24) |

DLA PIPER LLP (US)
SAN FRANCISCO

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| "meticulously to reproduce as much of the line work as [he could]."   Templeton testified that "[t]he process was pretty well similar for every page." | |
| 50.   Templeton copied Dr. Seuss's illustration style for *Boldly* even by adopting Dr. Seuss's "physical movement state" in order to use the technique of "cross-hatching" in "a similar way". | Duvdevani   Decl.,   Ex.   1 (Templeton Tr. at 75:23-77:2;   118:5-22;   130:18-131:16;   135:22-136:22; 147:7-13; 150:21-23; 151:16-18; 156:3-25; 157:5-159:22; 161:20-162:12;   167:14-171:21; 173:16-174:7; 176:3-177:24) |
| 51.   Since Dr. Seuss's death, DSE has released anniversary editions, reissues in new formats or sizes, and updated editions or annotations of the iconic Dr. Seuss books, and posthumous releases of Dr. Seuss's previously-unpublished works. | Duvdevani   Decl.,   Ex.   4 (Brandt Tr. at 55:15-56:14; 83:4-20); Duvdevani Decl., Exs. 84 (at DSE0000945), 86 |
| 52.   Among other features typical of Dr. Seuss's illustration style, Templeton copied Dr. Seuss's: <br> • cover of "Oh, The Places You'll Go!"; <br> • Characters; | Duvdevani   Decl.,   Ex.   1 (Templeton Tr. at 110:2-12; 123:9-124:11; 127:2-128:14; 130:18-132:20;   133:9-19; |

-11-

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| • Layouts;<br>• poses of the characters;<br>• expressions of the characters faces;<br>• location of images on the page;<br>• eyes ("since Dr. Seuss draws eyes that way, I drew eyes that way");<br>• "fondness for the button nose"<br>• Trees ("Dr. Seuss often illustrated trees, with big, long, loopy circles…"); ("a dead gnarled tree…that I reproduced rather carefully");<br>• Grass (even though it was "not his signature style of drawing grass");<br>• Circles and lines with "an imprecise quality";<br>• The machinery;<br>• The walls;<br>• The archways;<br>• The coloring;<br>• The horizons; and<br>• The "spindly necks" and "boneless feet" of the monsters. | 133:20-134:15; 135:22-136:22; 137:19-138:17; 140:13-141:9; 142:3-144:7; 146:17-147:13; 148:8-24; 150:21-23; 151:4-18; 153:1-5; 153:23-154:17; 156:3-25; 157:1-7; 158:7-25; 161:8-16; 161:17-162:12; 166:14-171:21; 173:16-174:7; 175:24-177:24)<br>Duvdevani Decl., Exs. 9, 31; Duvdevani Decl., Ex. 33 (Def. Resp. to RFA Nos. 4-5) |
| 53. Templeton testified to taking a "painstakingly" long time to make his illustrations look "nearly identical" to Dr. Seuss's taking | Duvdevani Decl., Ex. 1 (Templeton Tr. at 166:14-171:13; 241:21-243:18) |

-12-

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| between three and seven hours to match certain images up "exactly." | |
| 54.    Days after DSE filed the instant lawsuit against the Defendants, Templeton stated that he "went TOO far in copying the [Seuss] source material," and he "did, in fact, slavishly" copy from Seuss" "to make the layouts (and incidental bits of machinery, etc)"  as accurate to the originals." | Duvdevani Decl., Ex. 24 |
| 55.    Gerrold testified that the Defendants made "significant usage of the style and the poetic meter that Dr. Seuss also uses." | Duvdevani Decl., Ex. 2 (Gerrold Tr. at 157:4-7) |
| 56.    Templeton testified that he drew "Batman comic[s] for DC and Warner Brothers" but that even if he had "an idea" for a Batman comic he would not draw it, write it or find someone to publish it because publishers and distributors would "be concerned that Warner Brothers would be mad at them" for making use of a Warner Brothers "trademark."  Templeton testified, in other words, that he was aware that using an intellectual property holder's intellectual property without authorization would likely result in getting "hit" for trademark infringement. | Duvdevani Decl., Ex. 1 (Templeton Tr. at 42:23-45:24) |
| 57.    While creating *Boldly*, Hauman created a side-by-side comparison of the text of *Boldly* and *Go!*. | Duvdevani Decl., Ex. 34 |

| **UNDISPUTED MATERIAL FACT** | **SUPPORTING EVIDENCE** |
|---|---|
| 58.     Concerning whether *Boldly* commented on Dr. Seuss, Gerrold testified: "There might be, there might not be, I don't know anymore.  It is what you read into it.  Is there a comment on Dr. Seuss? Yeah, the comment is we're acknowledging he is a cultural touchstone but if there's a comment beyond that I'm not sure what it would be because I don't think in those terms[.]" | Duvdevani   Decl.,   Ex.   2 (Gerrold Tr. at 78:20-80:3) |
| 59.     Defendants had/have no plans to do a "scientifically controlled study" to test whether the public thinks *Boldly* is a parody. | Duvdevani   Decl.,   Ex.   2 (Gerrold Tr. at 131:19-22) Duvdevani   Decl.,   Ex.   32 (Defs. Supp. Resp. to Rog. No.6) |
| 60.     Hauman testified that *Boldly* is "Seussian." | Duvdevani   Decl.,   Ex.   3 (Hauman Tr. at 35:7-18) |
| 61.     In response to an inquiry from Allison Adler, Editor at Andrews McMeel Publishing ("AMP"), regarding the cover of *Boldly*, on September 26, 2018, Hauman wrote an email to Allison Adler, pasting the then-current cover of *Boldly* on top of the cover of *Go!* stating, in relevant part "Pretty close to what you see, which is pretty darn close to the original.[…] Are you looking for more color variation, to make it closer to the original?" | Duvdevani Decl., Exs. 35-36 |
| 62.     On September 28, 2016 Adler wrote an e-mail | Duvdevani Decl., Ex. 37 (at |

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| to Hauman, attaching a copy edited text of *Boldly* "for David's review" | CMX000845) |
| 63.    On September 29, 2016, Gerrold wrote an email to Hauman stating: "Most of the changes are approved.  I made one or two corrections" | Duvdevani Decl., Ex. 38 |
| 64.    In addition to the edits provided by AMP, Hauman and Gerrold changed the written format to "sentence case, even where there are line breaks, as Seuss does." | Duvdevani Decl., Ex. 38 |
| 65.    On September 29, 2016, Hauman wrote an email to Adler attaching a copy of text titled "Oh the Places _ CEd MS (gerrold approved).docx"  The attachment included a new "Global Note" stating: "I'm going back to Seuss's style in the original OTPYG, which is straight sentence case, even across stanza breaks. (References available upon request.)" | Duvdevani Decl., Ex. 39 |
| 66.    On August 31, 2016, Defendants launched a fundraising campaign on Kickstarter.com to raise money to publish *Boldly*. | Duvdevani Decl., Ex. 2 (Gerrold Tr. at 113:18-116:23); Duvdevani Decl., Ex. 40 |
| 67.    Defendants' Kickstarter campaign page stated, in part, in a section titled "Risks and challenges", "While we firmly believe that our parody, created with love and affection, fully falls within the boundary of fair use, there may be some | Duvdevani Decl., Ex. 3 (Hauman Tr. at 188:21-191:2); Duvdevani Decl., Ex. 33 (Defs. Resp. to RFA No. 13); |

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| people who believe that this might be in violation of their intellectual property rights. And we may have to spend time and money proving it to people in black robes. And we may even lose that." | Duvdevani Decl., Ex. 40 |
| 68.   Hauman testified knowing there was a "possibility" that the defendants would be sued when the Kickstarter campaign was launched. | Duvdevani Decl., Ex. 3 (Hauman Tr. at 189:20-191:2) |
| 69.   On October 7, 2016, DSE submitted to Kickstarter a DMCA takedown notice concerning Defendants' Kickstarter campaign for *Boldly*. | Duvdevani Decl., Exs. 41-42 |
| 70.   Hauman and Gerrold considered getting William Shatner, George Takei, or Nichelle Nichols to perform an audiobook reading of *Boldly*. | Duvdevani Decl., Ex. 2 (Gerrold Tr. at 191:17-193:11); Duvdevani Decl., Ex. 43 |
| 71.   Defendants intended merchandise products related to *Boldly* for a "lucrative payday for all involved" and to that end checked on "pricing for posters, shirts, iPhone cases, etc. and fulfillment for all of the same." | Duvdevani Decl., Ex. 27; Duvdevani Decl., Ex. 33 (Defs. Resp. to RFA No. 16); Duvdevani Decl., Ex. 44 |
| 72.   Defendants considered sequels to *Boldly* including "OH THE PLACES YOU'LL BOLDLY GO: THE NEXT GENERATION", "PICARD HEARS A Q", "███████████████" | Duvdevani Decl., Ex. 44; Duvdevani Decl., Ex. 45 (at AMU 6-29-2018 Production 000023) |

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 73.   On September 6, 2016, Adler wrote an e-mail to her fellow editors ███████████ ████████████████████ ███████. | Duvdevani Decl., Ex. 46 |
| 74.   On September 12, 2016, Adler wrote an e-mail to herself, ███████████████ ██████████████████████ ██████████████████████ █████████. | Duvdevani Decl., Ex. 48 (at AMU 6-29-2018 Production 000003) |
| 75.   ███████████████████ ██████████████████████ ██████████████████████ ████████. | Duvdevani Decl., Ex. 48 (at AMU 6-29-2018 Production 000004-000005) |
| 76.   ███████████████████ ██████████████████████ ██████████████████████ ██████████. | Duvdevani Decl., Ex. 47 |
| 77.   ███████████████████ ██████████████████████ █████████. | Duvdevani Decl., Ex. 47 |
| 78.   On September 13, 2016, ██████████ ██████████████████████ ██████████████████████ ███████████████. | Duvdevani Decl., Ex. 49 |

-17-

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 79. ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████ | Duvdevani Decl., Ex. 49 |
| 80.   On September 15, 2016, AMP contacted Gerrold and Templeton to gauge their interest in having "traditional publishing partner." | Duvdevani Decl., Ex. 50 |
| 81.   Templeton forwarded AMP's introductory e-mail to Hauman. | Duvdevani Decl., Ex. 50 |
| 82.   On September 15, 2016, Adler wrote an e-mail to Hauman requesting additional information about "who the retail order is from, how many copies you've discussed with them, as well as your exact print specs so we can run a p&l and make you an offer." | Duvdevani Decl., Ex. 51 |
| 83.   Later on September 15, 2016, ████████ ████████████████████████ ████████████████████████ ████████████ | Duvdevani Decl., Ex. 45 (at AMU 6-29-2018 Production 000023) |

-18-

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 84.    Hauman wrote to Adler, the ██████ ████████████████████████ ██████████████████ | Duvdevani Decl., Ex. 45 (at AMU 6-29-2018 Production 000023) |
| 85.    Hauman wrote to Adler ██████████ ████████████████████████ ██████████████████ ████████████████████████ ██████ | Duvdevani Decl., Ex. 45 (at AMU 6-29-2018 Production 000023) |
| 86.    On September 16, 2016, ██████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████ | Duvdevani Decl., Ex. 52 (at AMU 6-29-2018 Production 000025) |
| 87.    On September 19, 2016, AMP extended an e-mail offer to the defendants of $5,000. | Duvdevani Decl., Ex. 53 |
| 88.    Between September 19, 2016 and September 21, 2016, Adler and Hauman negotiated the terms of AMP's offer. | Duvdevani Decl., Ex. 54 |
| 89.    Gerrold approved of AMP's offer. | Duvdevani Decl., Ex. 55 |
| 90.    Hauman accepted AMP's offer stating "Let's have some fun and make some money![…] but requested in "the final contract" payment terms for "dramatic, merchandise, motion picture, tv, radio, | Duvdevani Decl., Ex. 54 |

-19-

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| etc." | |
| 91.     On September 23, 2018, Adler wrote an e-mail to telling Hauman, stating, in relevant part: "So the plan is to do a first printing big enough for the ThinkGeek promotion [for Black Friday] and your backers' copies, which we're thinking of as like an "exclusive early edition" and then we'll publish fully in the Spring.  Sound good?" | Duvdevani Decl., Ex. 56 |
| 92.     ███████████████████ ███████████████████████ ███████████████████████ ███████████████████████ ███████ | Duvdevani Decl., Exs. 57-58 |
| 93.     ███████████████████ ███████████████████████ ███████████████████████ | Duvdevani Decl., Exs. 59-60 |
| 94.     On September 28, 2016, Hauman forwarded Adler the DSE cease and desist letter dated September 28, 2016, stating "Just got this in from the Seuss lawyers." | Duvdevani Decl., Ex. 61 |
| 95.     On September 28, 2016, Adler wrote an e-mail to Hauman stating: "Just sent right over to legal. Will let you know what I hear." | Duvdevani Decl., Ex. 61 |

DLA Piper LLP (US)
San Francisco

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 96.   On September 29, 2016, ███████ ████████████████████████ ████████████████████████ ██████████████ | Duvdevani Decl., Ex. 62 |
| 97.   On or around September 29, 2016, ████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ █████ | Duvdevani Decl., Ex. 63 |
| 98.   After DSE initiated the instant suit against the Defendants, ████████████████ ████████████████████████ ████████████████████████ ████████████████ | Duvdevani Decl., Ex. 64 |
| 99.   Hauman testified that he "did not believe Gerrold had a blanket license", from CBS or Paramount, but never bothered to "correct[]" ThinkGeek's misunderstanding. | Duvdevani Decl., Ex. 3 (Hauman Tr. at 99:17-100:12) |
| 100.   Hauman testified that *Boldly* was intended to be marketed, in part, to graduates or as a gift for graduates. | Duvdevani Decl., Ex. 3 (Hauman Tr. at 184:2-25; 186:4-188:15); Duvdevani Decl., Exs. 40, 65 |

DLA PIPER LLP (US)
SAN FRANCISCO

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 101.   Defendants ComicMix and Hauman testified that *Go!* is a book marketed for and sold around school graduations. | Duvdevani Decl., Ex. 3 (Hauman Tr. at 185:2-186:3; 188:11-15) |
| 102.   Defendant Templeton knew that *Go!* is often given as a graduation gift. | Duvdevani Decl., Ex. 26 |
| 103.   After DSE initiated the instant action, Hauman represented to ThinkGeek that he would "LOVE" to offer *Boldly* to ThinkGeek to meet their request to offer *Boldly* "for graduation on the site[.]" | Duvdevani Decl., Ex. 66 |
| 104.   On September 28, 2016 Ryan Compton and James Stewart of DLA Piper LLP (US) sent a cease and desist letter to Gerrold, Templeton, and Hauman, who each admitted to receiving the letter. | Duvdevani Decl., Ex. 1 (Templeton Tr. at 201:5-16; 202:22-25); Duvdevani Decl., Ex. 2 (Gerrold Tr. at 132:5-19); Duvdevani Decl., Ex. 3 (Hauman Tr. at 200:22-202:7); Duvdevani Decl., Exs. 61, 67-69 |
| 105.   On October 7, 2016 Ryan Compton and James Stewart of DLA Piper LLP (US) sent a second cease and desist letter to Gerrold, Templeton, and | Duvdevani Decl., Ex. 1 (Templeton Tr. at 202:22-25); |

-22-

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| Hauman, who each testified to receiving the letter. | Duvdevani Decl., Ex. 2 (Gerrold Tr. at 135:21-136:10); Duvdevani Decl., Ex. 3 (Hauman Tr. at 216:9-16) Duvdevani Decl., Ex. 70 |
| 106.   On October, 25 2016, Ryan Compton and James Stewart of DLA Piper LLP (US) sent a third cease and desist letter to Gerrold, Templeton, and Hauman, who each testified to receiving the letter. | Duvdevani Decl., Ex. 1 (Templeton Tr. 202:22-25); Duvdevani Decl., Ex. 2 (Gerrold Tr. at 139:18-141:4); Duvdevani Decl., Ex. 3 (Hauman Tr. at 250:14-23) Duvdevani Decl., Ex. 71 |
| 107.   On October 26, 2018, Hauman retained a lawyer, Dan Booth of Booth Sweet LLP, to represent ComicMix. | Duvdevani Decl., Ex. 72 |
| 108.   On October 28, 2016, Booth sent a letter to DLA Piper LLP (US) on behalf of ComicMix only, responding to the three cease and desist letters sent by DLA Piper to the Defendants and the DMCA takedown notice sent by DLA Piper on behalf of DSE to Kickstarter on October 7, 2016. | Duvdevani Decl., Ex. 2 (Gerrold Tr. 141:9-142:19) Duvdevani Decl., Ex. 73; |
| 109.   On October 28, 2016, Hauman sent a DMCA counter-notice to Kickstarter, copying Booth. | Duvdevani Decl., Ex. 74 |

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 110. CBS objected to Defendants' use of *Star Trek* intellectual property in *Boldly*. | Duvdevani Decl., Ex. 75 |
| 111. In an e-mail dated July 12, 2016, Keiren Smith, Defendant Templeton's wife, and "office manager" wrote an e-mail to Hauman, expressing Templeton's concern that *Boldly* was unlicensed. | Duvdevani Decl., Ex. 2 (Templeton Tr. at 65:15-21) Duvdevani Decl., Ex. 76 |
| 112. Hauman was "more worried about the Dr. Seuss people" than CBS, but because *Boldly* was a "parody," Hauman suspected that it was "more likely that they'll see the product and want to publish it themselves." | Duvdevani Decl., Ex. 76 |
| 113. On September 28, 2016, Templeton e-mailed Hauman, stating in part: "Are we ignoring the cease and desist letter to keep the schedule?" | Duvdevani Decl., Ex. 2 (Templeton Tr. 202:8-21) Duvdevani Decl., Ex. 68 |
| 114. The same day DLA Piper LLP (US) sent Defendants the first cease and desist letter on September 28, 2017, Templeton testified to "basing some of, but not all of, the layouts on Seuss layouts. The crew in the above shot, for instances is supposed to feel like the Whos singing at the end of Grinch. And the Gorn and Kirk are posed like the Boxing Gox from Hop on Pop. The Weird Arches above are intentionally similar to a set of weird arches the character walks under in Oh The Places | Duvdevani Decl., Ex. 68 |

DLA PIPER LLP (US)
SAN FRANCISCO

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| You'll Go." | |
| 115.  Hauman did not consult an attorney after receiving the September 28 cease and desist letter, but told Templeton that the letter was "running a bluff" and that the "mistake" in the letter was expressing that *Boldly* was not a parody when the defendants "very specifically" were "obviously commenting on Dr. Seuss." | Duvdevani Decl., Ex. 3 (Hauman Tr. at 219:7-220:13)  Duvdevani Decl., Ex. 68 |
| 116.   After AMP withdrew from its agreement to publish *Boldly*, Defendants asked ThinkGeek to move forward on a direct sale publication. Defendants did not tell ThinkGeek about DSE's cease-and-desist letter or the reason for AMP's withdrawal.  Hauman, on behalf of the Defendants, tried to fulfill ThinkGeek's purchase order by: (1) requesting shipping details and timing on October 4; (2) expressing that Defendants "should be able to hit 2nd week for full order" on October 7; (3) providing ThinkGeek a "complete" version of *Boldly* on October 13. | Duvdevani Decl., Ex. 3 (Hauman Tr. 206:10-208:23; 216:22-219:6);  Duvdevani Decl., Ex. 65, 77-78 |
| 117.   Defendants never sent ThinkGeek any of DSE's three cease and desist letters. | Duvdevani Decl., Ex. 3 (Hauman Tr. at 216:22-219:6) |
| 118.  Defendants did not inform ThinkGeek of "legal issues" with DSE until October 17, 2016, | Duvdevani Decl., Ex. 3 (Hauman Tr. at 216:22- |

-25-

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| nineteen days after informing AMP. | 219:6)<br>Duvdevani Decl., Ex. 79 |
| 119.   After informing ThinkGeek that Dr. Seuss sent a cease and desist to the Defendants, Hauman, on behalf of the Defendants, still tried to meet ThinkGeek's purchase order for 5,000 copies of *Boldly* by November 15, 2016, asking "What's the drop dead date for delivery to your warehouse? November 11?" | Duvdevani Decl., Ex. 79 |
| 120.   On or around October 14, 2016, Hauman, on behalf of ComicMix, signed a ThinkGeek Product Quality Agreement, which included a representation that *Boldly* "[did] not violate or infringe any patent, trademark, trade dress, copyright or other intellectual property or third party right" and a provision whereby ComicMix would indemnify ThinkGeek for all third party claims arising out of the "the infringement or alleged infringement of any patent, trademark, copyright or other intellectual property or third party right[…]". | Duvdevani Decl., Ex. 80 (at CMX004385-CMX004386);<br>Duvdevani Decl., Ex.  81 |

DLA Piper LLP (US)
San Francisco

SOF
USDC CASE NO. 3:16-CV-02779-JLS-BGS

| **UNDISPUTED MATERIAL FACT** | **SUPPORTING EVIDENCE** |
|---|---|
| 121.   On October 8, 2016, Hauman wrote an e-mail to Gerrold, Templeton, and others stating, in part: "I am still rushing to get the print order ready", but the "larger problem" was Kickstarter withholding the campaign funds based on DSE's DMCA takedown notice.  Hauman further stated "[i]f we have to pull the order from TG, we can smooth things over with them by explaining that we're dealing with legal matters and didn't want to expose them to it, which I'm sure they'll appreciate, and they'll have new orders in time for school graduations. (And of course, Seuss screwing up our order will be added to their bill.)" | Duvdevani Decl., Ex. 65 |
| 122.   On October 26, 2018, Keiren Smith, Templeton's wife, wrote an e-mail to Hauman stating: "Given the content of the letter [from DSE], doesn't seem like you can proceed with any ThinkGeek deal in good faith. And if they don't hear from someone, they're basically saying they're continuing onto a lawsuit." | Duvdevani Decl., Ex. 69 |
| 123.   As of October 28, 2016, Gerrold had neither responded to DSE's cease and desist letters, nor consulted with an attorney. | Duvdevani Decl., Ex. 2 (Gerrold Tr. at 163:20-167:23) |
| 124.   On November 13, 2016, Gerrold wrote an e-mail to the other Defendants stating: "You know, | Duvdevani Decl., Ex. 24; Duvdevani Decl., Ex. 1 |

| **UNDISPUTED MATERIAL FACT** | **SUPPORTING EVIDENCE** |
|---|---|
| there is a way out of this [lawsuit.]"  Gerrold noted that "A lot of our artwork is based on Suess' artwork."  Gerrold suggested "new artwork" that was "not specifically based on any individual drawing by Suess, but close enough to his style to match the text. If we replace the stuff that's too dead-on, yes it's extra work for Ty, but it really weakens their case."  Templeton offered to revert to those layouts if it "helped."  But those  revisions were never made. | (Templeton Tr. at 218:12-219:8) |
| 125.   On November 15, 2016, Hauman wrote an e-mail to Frazier, with the subject line "Delay on 'Oh, The Places You'll Boldly Go!," stating, in part: "Due to legal action from Dr. Seuss Enterprises, we are not going to be able to provide 'Oh, The Places You'll Boldly Go!' to you in time for the 2016 holiday season." | Duvdevani Decl., Ex. 82 |
| 126.   On November 15, 2016, Frazier wrote an e-mail to Hauman stating, in part: "It was a risk, to be sure, but one I thought was worthy of the attempt." | Duvdevani Decl., Ex. 83 |
| 127.   Defendants started a GoFundMe page to supplement the costs of litigation. | Duvdevani  Decl.,  Ex.  3 (Hauman Tr. at 246:5-18) |
| 128.   DSE licenses publishers, like Random House, the right to use DSE's intellectual property. | Duvdevani  Decl.,  Ex.  4 (Brandt Tr. at 36:8-37:17) |
| 129.   DSE   is   "intimately   involved"   in   the | Duvdevani  Decl.,  Ex.  4 |

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| developing and publishing of books and other projects by working closely with its licensees. | (Brandt Tr. 36:8-38:4; 182:8-184:7) |
| 130.   DSE is "very specific" in selecting licensing partners and projects and has "very high standards" for licensing standards. | Duvdevani   Decl.,   Ex.   4 (Brandt Tr. at 109:17-110:5) |
| 131.   ███████████████████ ███████████████████ ███████████████████ ███████████████████ | Duvdevani   Decl.,   Ex.   4 (Brandt Tr. at 181:3-185:17; 256:5-257:22;   310:8-314:9; 316:3-321:17); Duvdevani Decl., Ex. 85 |
| 132.    DSE licenses authors and illustrators up to 30 new books a year, depending on the "marketing efforts" of DSE in a given year. | Duvdevani   Decl.,   Ex.   4 (Brandt   Tr.   at   39:11-19) |
| 133.   DSE has a publishing schedule with Random House that identifies book releases, planned strategically up to 10 quarters in advance of a book release. | Duvdevani   Decl.,   Ex.   4 (Brandt Tr. at 41:11-43:15); Duvdevani Decl., Ex. 86 |
| 134.   DSE has licensed ghost writers and ghost illustrators to release books based upon and incorporate Geisel's works, including "The Cat In The Hat's Learning Library" series and "The Cat In The Hat Know's A Lot About That" series. | Duvdevani   Decl.,   Ex.   4 (Brandt Tr. at 55:15-56:14) |

DLA PIPER LLP (US)
SAN FRANCISCO

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 135.   The Cat In The Hat's Learning Library series includes titles such as *Oh, The Things You Can Do That Are Good For You!*, *There's No Place Like Space!*, *Oh, Say Can You Say What's The Weather Today?*, and *Oh, The Pets You Can Get!*, all of which are written by ghost writers and ghost illustrators. | Duvdevani Decl., Exs. 87-91 |
| 136.   Books are the "foundation" of DSE's business. | Duvdevani Decl., Ex. 4 (Brandt Tr. at 56:25-57:15; 109:17-110:5) |
| 137.   Dr. Seuss is one of the best-selling children's book authors in the world. | Duvdevani Decl., Ex. 84 (at DSE0000941); Duvdevani Decl., Ex. 92 (at DSE0002305-2306) |
| 138.   DSE is in multiple businesses, including entertainment (*i.e.*, films, television, and stage productions),  "exhibitions", the "ancillary license products business" (*i.e.*, apparel, school supplies, houseware, baby items"), digital media, and education, which "protect[] and support[]" DSE's book business. | Duvdevani Decl., Ex. 4 (Brandt Tr. at 56:25-57:15; 57:19-59:5); Duvdevani Decl., Exs. 84, 93-94, 107 |
| 139.   ███████████████████████████ ███████████████████████████ ███████████████████████████ ███ | Duvdevani Decl., Ex. 4 (Brandt Tr. at 59:8-60:2); Duvdevani Decl., Ex. 126 |
| 140.   ███████████████████████████ | Duvdevani Decl., Ex. 4 |

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| ███████████████████████ | (Brandt Tr. at 61:8-62:24) |
| 141.   *Go!* is DSE's best-selling book. | Duvdevani Decl., Ex. 4 (Brandt Tr. at 71:2-11); Duvdevani Decl., Ex. 84 (at DSE0000941-DSE0000942) Duvdevani Decl., Ex. 93 (at DSE0001018) Duvdevani Decl., Ex. 108 (at DSE0000956) |
| 142.   DSE has licensed derivative *Go!* books including, a 2015 25th Anniversary special edition "*Go!*", *Go!*: *Oh, Baby! Go, Baby!*; *Oh, the Places I'll Go! By ME, Myself*; *Oh, Baby, the Places You'll Go!*; and *Oh, the Places I've Been! Journal*; *Oh, The Places You'll Go (Pop-Up)*. | Duvdevani Decl., Ex. 4 (Brandt Tr. at 75:7-79:22; 80:4-7); Duvdevani Decl., Ex. 33 (Defs. Resp. RFA. No. 12) Duvdevani Decl., Ex. 95-101, 103-104, 106 |
| 143.   ███████████████████ ██████████████████████ █████████████████ | Duvdevani Decl., Ex. 4 (Brandt Tr. at 80:19-81:20; 83:4-20) Duvdevani Decl., Ex. 33 (Defs. Resp. RFA No. 12) |
| 144.   DSE licenses merchandise and apparel based on *Go!* | Duvdevani Decl., Ex. 93-94, 107-108 |

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 145.   Part of DSE's mission is to support and complement Seuss books and protect the legacy of Ted Geisel. | Duvdevani   Decl.,   Ex.   4 (Brandt Tr. at 109:7-17) |
| 146.   DSE produces books for children and books for adults. | Duvdevani   Decl.,   Ex.   4 (Brandt Tr. at 110:7-11) |
| 147.   DSE markets its works to children and adults, even where the intended reader of those works are children. | Duvdevani   Decl.,   Ex.   4 (Brandt Tr. at 160:12-161:11) |
| 148.   Some of DSE's works are intended for both children and adult audiences.   For example, *The Lorax*, for example, was the first children's book to appear on *The New York Times* Best Sellers list for both children and adult books.   And *Go!*, is perennially the number-one selling book on *The New York Times* Best Sellers list each spring during graduation season. | Duvdevani Decl., Ex. 84 (at DSE0000941-DSE0000942) DSE0002302 DSE0003386 DSE0003512 DSE0000956 |
| 149.   Other than *Go!*, *Seussisms!*, *Green Eggs and Ham Cookbook*, *The Seuss, the Whole Seuss, and Nothing But the Seuss*, *My Many Color Days*, *Oh, Baby The Places You'll Go!* are examples of books licensed by DSE marketed for a young adult audience, or older. | Brandt Tr. 110:13-116:24; Duvdevani Decl., Ex. 106, 109-112 |
| 150.   DSE licenses "collaborations" also known as "collabs." | Duvdevani   Decl.,   Ex.   4 (Brandt Tr. at 142:19-146:19; 151:8-157:12) |

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 151.   Brandt testified that a "collab" is "when you combine two different entities, characters, IP, copyright, trademark and create another work." | Duvdevani Decl., Ex. 4 (Brandt Tr. at 142:19-146:19; 151:8-157:12) |
| 152.   For DSE, a "collab" might include combining two different Seuss works together to form a new work, but, "in licensing traditionally," [DSE] considers a "true collab" to combine   DSE's intellectual property with the intellectual property of another entity. | Duvdevani Decl., Ex. 4 (Brandt Tr. at 142:19-146:19; 151:8-157:12) |
| 153.   DSE's "collabs" are "not necessarily" limited to DSE's preexisting work — with another person's preexisting work; rather a "collab" would be any use of DSE's intellectual property collaborating with another person's intellectual property "to create a new work." | Duvdevani Decl., Ex. 4 (Brandt Tr. 155:7-19) |
| 154.   DSE has licensed book "collabs" including the "*Wubbulous World of Dr. Seuss*" books and is ███████████████████████████ ████ | Duvdevani Decl., Ex. 4 (Brandt Tr. at 125:2-129:2; 135:25-137:3;       146:2-19; 151:8-157:12; 166:4-168:12; 284:19-286:3) |
| 155.   *The Wubbulous World Of Dr. Seuss*, a television and book series with The Jim Henson Company featuring Dr. Seuss's characters through the lens of Jim Henson. | Duvdevani Decl., Exs. 113-120 |
| 156.   DSE has also licensed other "collabs" | Duvdevani Decl., Ex. 4 |

DLA Piper LLP (US)
San Francisco

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| combining DSE's preexisting works with the preexisting works of other parties, including Grinch Panda Pop, a digital game that combines Jam City's Panda character with Seuss's Grinch character, a line of Comme des Garçons clothing combining Comme des Garçons' heart design with *Grinch* artwork, Dr. Seuss Funko figurines, which combine Funko Inc.'s toy designs with Dr. Seuss characters numerous, film-related books, PBS-related books based on *The Cat In The Hat Knows A Lot About That* series, and other projects currently planned for future release. | (Brandt Tr. at 135:25-137:3; 157:7-160:5; 166:4-168:12; 284:19-286:3); Duvdevani Decl., Ex. 93 (at DSE0001006–DSE0001007); Duvdevani Decl., Ex. 94 (at DSE0003878-DSE0003879); Duvdevani Decl., Ex. 121-125 |
| 157.   DSE has been approached by comic book companies for licensing deals and although DSE was not interested "at that time" it regularly evaluates all different markets" and comic book licensing is "in the realm of possibility." | Duvdevani Decl., Ex. 4 (Brandt Tr. at 187:5-189:15; 284:19-286:3) |
| 158.   Brandt testified that *Boldly* "copies directly page by page a number of our books" including "Oh, The Places You'll Go!," "The Sneetches," "The Zaks," and "How the Grinch Stole Christmas." | Duvdevani Decl., Ex. 4 (Brandt Tr. at 300:2-306:18); Duvdevani Decl., Ex. 9-11, 31 |

DLA Piper LLP (US)
San Francisco

| UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 159.   In 2017, DSE was named the top licensed book brand according to NPD, a market industry research firm. | Duvdevani Decl., Ex. 126 |

Dated:  December 11, 2018            Respectfully submitted,

By  */s/ Tamar Duvdevani*
       TAMAR DUVDEVANI
       DLA Piper LLP (US)

       *Attorneys for Plaintiff*
       *Dr. Seuss Enterprises, L.P.*