1  Dan Booth (MA Bar No. 672090)
   BOOTH SWEET LLP
2  32R Essex Street
   Cambridge, MA 02139
3  dbooth@boothsweet.com
   (617) 250-8602
4  *Admitted Pro Hac Vice*

5  Michael A. Licari (SBN 265241)
   SPRINKLE LLOYD & LICARI LLP
6  2801 B Street, Unit 556
   San Diego, CA 92102
7  mike@SL2Law.com
   (858) 717-0013
8

9  *Attorneys for Defendants*

10            **UNITED STATES DISTRICT COURT**
              **SOUTHERN DISTRICT OF CALIFORNIA**
11

12 **DR. SEUSS ENTERPRISES, L.P.,**        Case No. 3:16-cv-02779-JLS-BGS

13            Plaintiff,                    **MEMORANDUM OF PONTS &**
                                           **AUTHORITIES IN SUPPORT OF**
14      v.                                 **DEFENDANTS' MOTION FOR**
                                           **SUMMARY JUDGMENT**
15 **COMICMIX LLC**; **GLENN**
16 **HAUMAN**; **DAVID JERROLD**           Assigned to Hon. Janis L. Sammartino
   **FRIEDMAN** a/k/a **DAVID**            United States District Judge
17 **GERROLD**; and **TY TEMPLETON**,
                                           Hearing Date: January 31, 2019
18            Defendants.                   Hearing Time: 1:30 p.m.
                                           Hearing Place: Schwartz Courthouse,
19                                                         Courtroom 4A

20

21

22

23

24

25

26

27

28

## I.   Introduction

Plaintiff Dr. Seuss Enterprises, L.P. ("DSE") filed the instant lawsuit against Defendants ComicMix LLC, Glenn Hauman, David Gerrold, and Ty Templeton (collectively "Defendants"), asserting that their unpublished book *Oh, the Places You'll Boldly Go!* ("*Boldly*") infringes the copyright in five "Dr. Seuss" books, and in DSE's alleged trademarks in matters deriving from those books. But *Boldly* is a mash-up—a highly transformative, creative work, as the Court found. Because of that unique nature, the standard analysis and burdens of proof in copyright and trademark cases do not apply. Even if DSE could make out a prima facie case on its infringement claims, fair use and the First Amendment prevail.

Under copyright law, transformative works are not presumed to harm copyrighted works. To defeat the fair use defense, DSE must identify a market in which *Boldly* could cause some cognizable, substantial harm to DSE's licensing opportunities, and bring forward evidence that it would do so. DSE fails to identify, and to substantiate, any cognizable harms. And DSE's claims sounding in trademark face a heightened burden because *Boldly* is a creative work protected by the First Amendment. Under Ninth Circuit precedent, DSE must show that the use of its alleged marks in *Boldly* has *no artistic relevance*, or that the use is *explicitly misleading* as the source or content of *Boldly*. DSE has introduced no evidence that would suffice.

*Boldly* constitutes fair use and protected First Amendment speech. The interests of Defendants and the public, favoring publication and free expression, outweigh the unsupported, theoretical harms that DSE has claimed. DSE has not placed in dispute any issue germane to the defenses raised by Defendants.

## II.   Factual Background.

Theodor S. Geisel wrote and illustrated children's books under the pseudonym Dr. Seuss. Declaration of Dan Booth ("Booth Decl.") ¶ 4. *Star Trek* was a 1960's television series that spawned an entertainment franchise. *Id.* ¶ 5. No licensed product has combined elements from their two discrete creative worlds. *Id.* ¶ 6.

- 1 -

*Boldly* does. It "is most appropriately termed a literary and pictorial mash-up." Order Granting in Part and Denying in Part Motion to Dismiss ("First MTD Order"), ECF No. 38 p. 7. "[I]t is no doubt transformative. In particular, it combines into a completely unique work the two disparate worlds of Dr. Seuss and *Star Trek*." *Id.* p. 8. Of the Dr. Seuss books, *Boldly* draws from several Dr. Seuss books, primarily from *Oh, the Places You'll Go!* ("*Go!*"). Booth Decl. ¶ 7.

> *Boldly* tells the tale of the … strange beings and circumstances encountered during the voyages of the Star Trek Enterprise, and it does so through *Go!*'s communicative style and method. *Go!*'s rhyming lines and striking images, as well as other Dr. Seuss works, are often copied by *Boldly*, but the copied elements are always interspersed with original writing and illustrations that transform *Go!*'s pages into repurposed, *Star-Trek*–centric ones.

First MTD Order p. 8.

> In the present case, there is no dispute that *Boldly* copies many aspects of *Go!*'s and other Dr. Seuss illustrations. However *Boldly* does not copy them in their entirety; each is infused with new meaning and additional illustrations that reframe the Seuss images from a unique *Star-Trek* viewpoint. Nor does *Boldly* copy more than is necessary to accomplish its transformative purpose.

*Id.* p. 9. *Boldly* was written by David Gerrold, illustrated by Ty Templeton, and edited by Glenn Hauman of comics publisher ComicMix LLC in 2016. Booth Decl. ¶ 8. ComicMix ran a Kickstarter campaign for *Boldly* through September 2016 to crowdfund the initial printing and distribution costs. *Id.* ¶ 9. The Kickstarter page called Boldly "a parody mash-up." *Id.* ¶ 10. It told potential donors:

> While we firmly believe that our parody, created with love and affection, fully falls within the boundary of fair use, there may be some people who believe that this might be in violation of their intellectual property rights. And we may have to spend time and money proving it to people in black robes. And we may even lose that.

*Id.* ¶ 11. The campaign goal was to raise $20,000 toward a scheduled December 2016 publication for *Boldly*. *Id.* ¶ 12. It raised $29,575 in pledges. *Id.* During the

MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

campaign, Andrews McMeel Publishing contacted Defendants and agreed to partner with ComicMix to publish *Boldly* by December. *Id.* ¶ 13. On September 28, 2016, two days before the campaign ended, DSE sent Defendants a cease-and-desist letter asserting ownership of the intellectual property rights in the Dr. Seuss books. *Id.* ¶ 14. Andrews McMeel quickly withdrew from the project. *Id.* ¶ 15. On October 7, 2016, DSE sent a second letter to Defendants and sent a DMCA takedown notice to Kickstarter, which disabled public access to the campaign. *Id.* ¶ 16. DSE sent Defendants a third letter on October 25, 2016, and they responded on October 28, 2016. *Id.* ¶ 17. ComicMix sent Kickstarter a counternotice on October 31, 2016. *Id.* ¶ 18. DSE filed suit ten days later. *Id.* ¶ 19. Kickstarter returned all pledges to the donors. *Id.* ¶ 20.

## III.  Legal Standard.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A genuine dispute of a material fact is 'one that could reasonably be resolved in favor of either party.'" *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 773 (9th Cir. 2018) (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004)). "[C]onclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment." *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 345 (9th Cir. 1995).

For issues "on which the nonmoving party bears the burden of proof … the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

- 3 -

### A.    Copyright Claims and Fair Use

DSE's first cause of action is for copyright infringement. "[T]he fair use of a copyrighted work … is not an infringement of copyright." 17 U.S.C. § 107.

> In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
> (1)    the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2)    the nature of the copyrighted work;
> (3)    the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4)    the effect of the use upon the potential market for or value of the copyrighted work.

*Id*. Fair use doctrine "calls for case-by-case analysis," and the statutory factors are not exclusive, and are considered "together, in light of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577-78 (1994). "The fair use doctrine thus 'permits [and requires] courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Id*. at 577 (alteration in original) (quoting *Stewart v. Abend*, 495 U.S. 207, 236 (1990)).

On a summary judgment motion, the Court may decide the issue of fair use when "no material, historical facts are at issue and the parties dispute only the ultimate conclusions to be drawn from those facts." *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1175 (9th Cir. 2013) (citing *Fisher v. Dees*, 794 F.2d 432, 436 (9th Cir. 1986)).

The Court has analyzed fair use twice in this case, upon Defendants' motions to dismiss the Complaint (ECF No. 1), and the First Amended Complaint ("FAC"; ECF No. 39). In light of the transformative nature of *Boldly*, the Court found that the first fair use factor "weighs in favor of finding Defendants' use to be fair." First MTD Order pp. 7-8. The second factor weighed only slightly in DSE's favor. *Id*. p. 9. The Court found the third factor "is neutral" and "does not weigh against Defendants." *Id*. pp. 10 & 13. As for the fourth factor—the market effect of the use on the

copyrighted work—the Court found Defendants could not demonstrate fair use at the motion to dismiss stage, with no record evidence on point, and when "Plaintiff's allegations are takes as true, and therefore a potential harm to licensing opportunities is presumed." *Id.* p. 11 ("In the current procedural posture Defendants are at a clear disadvantage under this factor's required analysis."). Yet the Court also found,

> this presumed harm is neutralized somewhat by the fact that *Boldly* does not substitute for the original and serves a different market function than *Go! … Boldly*'s market relies on consumers who have already read and greatly appreciated *Go!* and Dr. Seuss's other works, and who simultaneously have a strong working knowledge of the *Star Trek* series. It is therefore unlikely that *Boldly* would severely impact the market for Dr. Seuss's works.

*Id.* The Court further considered the purposes of copyright, which serve to stimulate the production of new creative works by affording creators a period of exclusive rights, while also limiting those rights "'regarding works that build upon, reinterpret, and reconceive existing works.'" *Id.* p. 12 (quoting *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 799 (9th Cir. 2003). The Court recognized the implications for other mash-up works: "if fair use was not viable in a case such as this, an entire body of highly creative work would be effectively foreclosed." *Id.* Yet without relevant evidence regarding factor four, the Court denied the motion to dismiss "given the procedural posture of this motion and near-perfect balancing of the factors." *Id.* p. 13.

The Court also denied Defendants' motion to dismiss the copyright claims in the FAC on fair use grounds. Order Denying Motion to Dismiss ("Second MTD Order"; ECF No. 51). This time, the Court determined that market harm cannot be presumed because *Boldly* is transformative. *Id.* p. 9 (citing *Campbell*, 510 U.S. at 591; *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1168 (9th Cir. 2007)). Yet, where DSE had alleged that it licenses derivative works, the Court found a potential harm to that market based on the allegations of the FAC. *Id.*

- 5 -

## B.     Trademark Claims and the First Amendment

DSE's causes of action under the Lanham Act and California Business and Professions Code § 17200 *et seq.*, sound in trademark (the "trademark claims"). To prevail on such claims, "a plaintiff must prove … it has a valid, protectable trademark … [Such proof] is comprised of two sub-parts: the mark's protectability and the plaintiff's ownership of the mark." *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 929 (9th Cir. 2014). In addition, the plaintiff must prove that the defendant's use is likely to cause confusion as to source. *Id.*

And DSE "bears a heightened burden—the plaintiff must satisfy not only the likelihood-of-confusion test but also at least one of *Rogers*'s two prongs." *Gordon v. Drape Creative, Inc.*, No. 16-56715, 2018 U.S. App. LEXIS 32796, *12 (9th Cir. Nov. 20, 2018) (citing *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989)). Because DSE alleges use of its purported trademarks in an expressive work, its trademark claims implicate First Amendment interests. In such cases, Ninth Circuit precedent applies the *Rogers* test "to an expressive work only if the defendant's use of the mark (1) is not artistically relevant to the work or (2) explicitly misleads consumers as to the source or content of the work." *Id*.

> When, as here, the defendant moves for summary judgment and has demonstrated that its use of the plaintiff's mark is part of an expressive work, the burden shifts to the plaintiff to raise a genuine dispute as to at least one of *Rogers*'s two prongs. In other words, to evade summary judgment, the plaintiff must show a triable issue of fact as to whether the mark is artistically relevant to the underlying work or explicitly misleads consumers as to the source or content of the work.

*Id*. at *13. The Court has found that both prongs of the *Rogers* test are satisfied and dismissed each of the trademark claims, to the extent that they are based on the title of *Boldly*. Order Granting in Part Motion for Partial Judgment on the Pleadings ("MJP Order"; ECF No. 89) pp. 6-9. The remaining trademark claims concern the Defendants' use of a stylized font and an illustration style. *Id*. pp 8-9; FAC ¶ 17.

- 6 -

## IV.    Argument

### A.    Defendants are Entitled to Judgment on the Copyright Claims Raised in Count I of the Complaint on the Basis of Fair Use

The evidence leaves no genuine dispute as to any material fact related to the fair use defense. DSE has not shown that its licensed derivative works compete with *Boldly* or similar transformative works, and it has no basis to prevent publication.

The Court's analysis of three of the four statutory fair use factors is settled. The first factor favors Defendants; the second favors Plaintiff, but only slightly; the third is neutral. First MTD Order p. 13; Second MTD Order p. 6. The relevant evidence on the fourth factor tips the balance toward Defendants, showing that the market effect of *Boldly* would likely be neutral, if not positive, toward DSE's works.

The fourth factor turns on whether a substantial demonstrable harm of market substitution can be shown, for the original work or reasonably likely derivatives. *Campbell*, 510 U.S. at 590. *See* Patry on Copyright § 10:153 ("Assuming a transformative use, the fourth factor should weigh against the defendant only when the harm is substantial."). The proponent of fair use has the burden to show that it applies, because it is an affirmative defense. *Id.*; *see Perfect 10*, 508 F.3d at 1158. That burden would be difficult to carry "without favorable evidence about relevant markets." *Id.* But market harms cannot be presumed when the Defendants' work is transformative. *Campbell*, 510 U.S. at 591; Second MTD Order p. 9. So, in such cases, the plaintiff also bears an evidentiary burden under the fourth factor.

When no presumption of harm is warranted, burdens on the fourth factor shifts to the plaintiff. For example, for a noncommercial work, the plaintiff must demonstrate a likelihood of potential harm. *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984). This "requires proof either that the particular work is harmful, or that if it should become widespread, it would adversely affect the potential market for the copyrighted work." "What is necessary is a showing by a preponderance of the evidence that *some* meaningful likelihood of future harm

exists." *Id.* Likewise*,* for transformative works, because a likelihood of market harm also cannot be presumed, "the burden falls on the plaintiff to demonstrate the existence of market harm." *Righthaven, LLC v. Jama*, No. 10-cv-1322 JCM, 2011 U.S. Dist. LEXIS 43952, *12 (D. Nev. Apr. 22, 2011).

Plaintiffs "can reasonably be expected to have the evidence as to availability of licenses for their own works. It is therefore reasonable to place on Plaintiffs the burden of going forward with the evidence on this question [of the fourth factor]." *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1279 (11th Cir. 2014). So, while Defendants "retain[] the overall burden of persuasion on the fourth factor," *id.* at 1280, an evidentiary burden on market harm rightly falls on the plaintiff DSE. And when a plaintiff "has not identified any market for a derivative work that might be harmed by the [transformative work], … the defendant had no obligation to present evidence showing lack of harm in a market for derivative works." *Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 116 n.6 (2d Cir. 1998). The Ninth Circuit's approach is consistent. When the contested work is transformative, the plaintiff is expected to bring forward probative evidence of harm in an existing market, or "any impact on 'traditional, reasonable, or likely to be developed markets.'" *Seltzer*, 725 F.3d at 1179 (quoting *Ringgold v. Black Entm't TV, Inc.*, 126 F.3d 70, 81 (2d Cir. 1997). Absent such evidence, "[w]here the allegedly infringing use does not substitute for the original and serves a 'different market function,' such factor weighs in favor of fair use." *Id.* (quoting *Campbell*, 510 U.S. at 591).

*Boldly* "does not substitute for the original and serves a different market function than *Go!*" First MTD Order p. 11. Because direct market substitution is not at issue, the only cognizable market harm of potential concern would be any impact on licensing caused by "works of *Boldly*'s type." *Id*. Defendants have produced substantial probative evidence addressing any such concern for the market effect of their complementary work.

MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT                    Case No. 16-cv-2779-JLS-BGS

Defendants produced expert testimony from Dr. Joshua Gans, a highly qualified witness and economics professor. Booth Decl. ¶ 21. Dr. Gans' research has a particular focus on the role of intellectual property protections and competition in driving commercialization strategy by technology entrepreneurs. *Id.* ¶ 22. He is the author of several books and more than one hundred published papers, including research concerning the role of a fair use regime in licensing creative works. *Id.* ¶ 23; *see* Gans, Joshua S., "Remix rights and negotiations over the use of copy-protected works," *Journal of Industrial Organization* vol. 41(C) pp. 76-83 (2015). In his expert report, Dr. Gans' found that *Boldly* addresses a different market and market function from *Go!* and the other "Dr. Seuss" books and products, and does not impact their target market. Booth Decl. ¶ 24. Dr. Gans found a "strong prima facie case that there is unlikely to be any direct adverse impact of the publication of *Boldly* on any of Plaintiff's products." *Id.* ¶ 25. And "far from having a detrimental effect on Dr. Seuss products, *Boldly* is reasonably likely to have a positive impact on sales of Dr. Seuss books, including *Go!* and the other Seuss Books." *Id.* ¶ 26.

Random House has been DSE's publisher, and the publisher of the "Dr. Seuss" books by Theodor Geisel, since at least 1939. *Id.* ¶ 27. Dr. Gans' expert report studied third-party works published outside DSE's Random House license. Dr. Gans found available for sale on Amazon examples of third-party books that, like *Boldly*, draw from Dr. Seuss works, but are not published by Random House. *Id.* ¶ 28. He found that Amazon indicates that purchasers of those junior works also bought, and are likely to buy, other DSE-licensed "Dr. Seuss" books. *Id.* ¶ 29. By contrast, the Amazon page for *Go!* did not indicate that any of the third-party works were recommended to, or likely to be purchased by, *Go!* purchasers. *Id.* ¶ 30. Dr. Gans found this evidence strongly suggests that *Go!* and other "Dr. Seuss" books, "and works derivative or transformative thereof, are likely to serve as complements rather than substitutes in the eyes of consumers." *Id.* ¶ 31. Therefore, he found a strong indication that the availability of derivative or transformative works such as *Boldly*

- 9 -

1  "will increase purchases" of *Go!* and other "Dr. Seuss" books that they derive from
2  or transform. *Id.* ¶ 32.

3      One such complementary book, *Oh, the Meetings You'll Go To!* ("*Meetings*") by
4  the pseudonymous "Dr. Suits," was published in 2017 by an imprint of Random
5  House, DSE's publisher, but without DSE's consent or license. *Id.* ¶ 33. Meetings
6  purports to be a parody of *Go! Id.* ¶ 34. Penguin Random House's 2017 catalog
7  promoted *Meetings* as one of twenty "Featured Titles" due to be published that year.
8  *Id.* ¶ 35. DSE produced no evidence that the presence on the market of *Meetings*, or
9  any other unlicensed complementary work, has harmed the market effect or value of
10  *Go!* or any of its other licensed works. *Id.* ¶ 36.

11      Dr. Gans not only found evidence that *Boldly* and other transformative works are
12  not substitutes for the Dr. Seuss works. He further found that publication of *Boldly* is
13  not likely to impede DSE from striking licensing deals. *Id.* ¶ 37. DSE's licensed
14  goods, he found, would likely "outcompete unofficial transformative works." *Id.* ¶
15  38. DSE has not produced evidence that contradicts or raises a genuine dispute as to
16  any material fact material to Dr. Gans' expert report or his testimony. *Id.* ¶ 39.

17      Further, the highly transformative nature of *Boldly* prevents any cognizable harm
18  to DSE's licensed, non-transformative works. DSE has presented no evidence that it
19  has licensed mash-ups, "where artists combine two independent works in a new and
20  unique way." First MTD Order p. 12; *see id.* pp. 7-8; Booth Decl. ¶ 40. DSE has
21  presented no evidence that it has licensed transformative works of any more
22  traditional variety, such as parodies like *Meetings*. And DSE has produced no
23  evidence that unlicensed transformative works, when made available to the public,
24  cause it any cognizable market harm. For another example, DSE sent cease-and-
25  desist letters to the playwright and producer of *Who's Holiday*, a play that parodies
26  the "Dr. Seuss" book *How the Grinch Stole Christmas. Lombardo v. Dr. Seuss*
27  *Enters., L.P.*, 279 F. 3d 497, 502-04 (S.D.N.Y. 2017), *aff'd*, 729 Fed. App'x 131 (2d
28  Cir. 2018); Booth Decl. ¶ 41. The playwright and producer won a declaratory

judgment of non-infringement and the play has had a theatrical run. *Id.*; Booth Decl.
¶ 42. DSE has not shown any harm arising from that unlicensed transformative use.
Just as the parody *Who's Holiday* would not be a plausible substitute for a DSE
"authorized derivative work," *Lombardo v. Dr. Seuss Enters., L.P.*, 279 F. Supp. 3d at
512, *Boldly* poses no risk of substitution to any DSE-licensed derivative.

No cognizable loss has been shown. "A loss in the value of the copyrighted work
resulting from transformative use is irrelevant to this [fourth] factor." *Sedgwick
Claims Mgmt. Servs. v. Delsman*, No. C 09-1468 SBA, 2009 US Dist. LEXIS 61825,
*18 (N.D. Cal. July 16, 2009) (citing *Walking Mt. Prods.*, 353 F.3d at 805). This
factor favors fair use "when the only possible adverse effect occasioned by the
secondary use would be to a potential market or value that the copyright holder has
not typically sought to, or reasonably been able to, obtain or capture." *Am.
Geophysical Union v. Texaco*, 60 F.3d 913, 930 (2d Cir. 1994). DSE's allegation that
*Boldly* may usurp a reasonably likely derivative or licensing market is not plausible
because the use is transformative, and exists in a transformative market. "A market
harm for licensing revenues will only be recognized 'if the market is traditional,
reasonable, or likely to be developed,' *and is not a protected transformative use*."
*Bill Graham Archives, LLC v. Dorling Kindersley Ltd.*, 386 F. Supp. 2d 324, 333
(S.D.N.Y. 2005) (emphasis added), *aff'd*, 448 F.3d 605 (2d Cir 2006). To be
cognizable as market harm, any impairment to DSE licensing opportunities must be
in "a traditional, as opposed to a transformative market." *Id.*, 448 F.3d at 614. "A use
that 'falls within a transformative market' *does not* cause the copyright holder to
'suffer market harm due to the loss of license fees.'" *Authors Guild, Inc. v.
HathiTrust*, 902 F. Supp. 2d 445, 463 (S.D.N.Y. 2012) (quoting *Bill Graham
Archives*, 448 F.3d at 615) (emphasis added), *aff'd in pertinent part*, 755 F.3d 87 (2d
Cir. 2014). Conversely, when the Defendants' use is clearly transformative, "plaintiff
cannot prevent defendants from entering this fair use market." *Arrow Prods. v.
Weinstein Co. LLC*, 44 F. Supp. 3d 359, 372 (S.D.N.Y. 2014).

- 11 -

In particular, *Boldly* is a mash-up that combines existing elements from two discrete properties into a unique whole. Booth Decl. ¶ 43. DSE has pointed to no comparable licensed hybrid work of its own. *Id.* ¶ 44. DSE, formed in 1994, has had ample time to develop or license such works. *Id.* ¶ 45. Its extensive and growing line of licensed derivative works is undisputed. *Id.* ¶ 46. But the magnitude of DSE's licensing efforts, and the absence from the marketplace of DSE-licensed hybrids like *Boldly*, is evidence that *Boldly* is not in a market that DSE traditionally or reasonably would enter, or is likely to develop on its own. *Id.* ¶ 47. "If a publisher makes licenses available for some uses but not for others, this indicates that the publisher has likely made a reasoned decision not to enter the licensing market for those uses, which implies that the value of that market is minimal." *Patton*, 769 F.3d at 1278. Absent evidence of licenses for similar hybrid works, or competitive harms from such works, any market harm alleged is theoretical, and neither substantial nor cognizable under the fourth factor.

There is no genuine dispute over any material fact as to Defendants' thorough showing of fair use, and they are entitled to judgment as a matter of law.

## B.  Defendants are Entitled to Judgment on Count II of the Complaint Related to the Title of *Boldly* on the Basis of the *Rogers* Test

DSE alleged that it has protectable trademark rights in the title of *Go!*, a stylized font used on or in Dr. Seuss books, and "the unique illustration style of the characters and backgrounds found throughout Dr. Seuss books." FAC ¶ 17. Upon "finding that the title of *Boldly* does not violate the Lanham Act," the Court granted Defendants' motion for judgment on the pleadings as to each trademark claim "as they relate to the title of *Boldly*." Order Granting in Part Motion for Partial Judgment on the Pleadings ("MJP Order"), ECF No. 89 pp. 8 & 9. So narrowed, the trademark claims are limited to those based on the alleged "stylized font" and generalized "illustration style." That eliminates DSE's second cause of action.

- 12 -

Count II of the FAC alleges a violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, based on DSE's registered mark for the title of *Go!*: United States Trademark Registration No. 5,099,531, the "OTPYG E-Book Mark." FAC ¶¶ 66-72; *see id.* ¶ 18 & ECF No. 61-3 (registration certificate). In Count II, DSE does not claim any infringement or use of its purported, unregistered font and style marks, which are the only remaining basis for the trademark claims. Because the Court granted partial judgment on the pleadings on all claims based on the title of *Boldly*, Defendants are entitled to judgment on Count II as a matter of law.

### C. Defendants are Entitled to Judgment on Counts III and IV of the Complaint Based On Trademark Claims in an Insufficiently Pleaded "Illustration Style" and "Stylized Font"

DSE contends that it owns, and *Boldly* infringes on, trademarks in a "stylized font" that appears on or in Dr. Seuss books, and a generalized "illustration style" found in the books. FAC ¶ 17. Neither allegation is sufficiently pleaded, specified, or supported to withstand summary judgment.

Trademark law does not protect an artist's overall style, rather than discrete manifestations of that style. "Is there such a thing as trademark protection for the 'style' of an artist? Most courts have said no." *McCarthy on Trademarks* § 6.14 at n. 21 (4th ed. 2017) (collecting cases). Trademark law, like copyright law, may protect a "specific artistic expression" like a specified design or logo, but not an "artistic style." *Hartford House Ltd. v. Hallmark Cards, Inc.*, 846 F. 2d 1268, 1274 (10th Cir. 1988). "If the law protected style at such a level of abstraction, Braque might have prevented Picasso from selling cubist paintings in the United States." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 382 (2d Cir. 1997). DSE has cited no cases holding that an artist's style, *per se*, may be exclusive or proprietary.

Based on the information before the Court at that stage of the proceedings, the Court found that DSE's "claimed general 'illustration style' is not protectable." Second MTD Order p. 15; see also ECF No. 52 (November 28, 2017 hearing

transcript) at 4:11-13 (tentatively finding that DSE's "claimed illustration style is not a protectable trademark"). Those findings should be made conclusive, because DSE has done nothing to alter them. Booth Decl. ¶ 48. DSE has not identified the elements of its alleged illustration style with enough specificity that trademark significance could be claimed. *Id.* And DSE has cited no precedent supporting cognizable trademark rights in a mutable artistic style *qua* style. *Id.*

There is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law on the trademark claims, to the extent that they are based on DSE's asserted rights in an unregistered trademark for an amorphous illustration style. No such rights exist.

DSE also alleged trademark rights in, and misappropriation of, an unspecified "stylized font used consistently in the front and back covers, spine, and title page of the Dr. Seuss books." FAC ¶¶ 17 & 40; *see also id.* ¶¶ 76 & 85 (alleging "willful misappropriation of the stylized font that DSE uses consistently throughout the Dr. Seuss books"). This simply asserts DSE's unsustainably broad claim of trademark rights in an illustration style, as applied to unspecified letterforms instead of unspecified "characters and backgrounds found throughout Dr. Seuss books." *Id.* ¶ 17. A mutable font is no more susceptible of trademark rights than a general style.

At oral argument, DSE rested its broadly claimed "trademark rights on all fonts on all covers of Dr. Seuss's books or Dr. Seuss Enterprises books … and the font throughout all the books," on the narrow basis that "distinctive writing can be protectable." ECF No. 52 at 10:20-12:1; *see* Second MTD Order p. 14. Particular letters written in a consistent, distinctive form may be protectable, but the FAC does not claim such rights. DSE contends that the overall font, not any particular manifestation thereof, has gained secondary meaning as "Dr. Seuss's distinctive font, it's not just some fancy way of just doing letters." ECF No. 52 at 10:6-7. This claim is as unsupported as the claim that "the illustrative style of Dr. Seuss," rather than "a particular piece of artwork," has attained secondary meaning in the marketplace. *Id.*

- 14 -

at 10:5-8. Both claims unduly stretch what DSE recognizes as "the basic premise of secondary meaning"—that it attaches to a particular "word or phrase or symbol out in the public sphere." *Id.* at 9:18-23. It was insufficient for DSE to argue, "I don't know of any jurisprudence that says that distinctive lettering is not protectable." *Id.* at 11:25-12:1. Distinctive lettering of particular letters is protectable as a word-plus-design mark, just as particular letters in no particular design may be protected as a standard character mark. But DSE's concocted rights to "lettering" *per se*, in no specific form, do not support a trademark claim. To the extent that DSE's trademark claims are based on an alleged "stylized font," no material fact is genuinely disputed and Defendants are entitled to summary judgment.

**D. Defendants are Entitled to Judgment on Counts III and IV of the Complaint on the Basis of the *Rogers* Test and the First Amendment**

In addition, all trademark claims alleged in the FAC cannot proceed on the basis of the *Rogers* test, which protects First Amendment interests in expressive work. The First Amendment limits the application of trademark law against artistic works like *Boldly* that use the plaintiff's trademarks to describe or comment on the plaintiff's goods or services. "When unauthorized use of another's mark is part of a communicative message and not a source identifier, the First Amendment is implicated in opposition to the trademark right." *Mattel, Inc. v. MCA Records*, 296 F. 3d 894, 900 (9th Cir. 2002) (*quoting Yankee Publ'g, Inc. v. News Am. Publ'g, Inc.*, 809 F. Supp. 267, 276 (S.D.N.Y. 1992)).

To balance trademark law and the First Amendment, the Ninth Circuit has adopted the approach taken by the Second Circuit in *Rogers v. Grimaldi*, 875 F.2d, 994, 999 (2d Cir. 1989). *See Walking Mt. Prods.*, 353 F.3d at 807. Under the *Rogers* test, an artistic or creative work does not violate the Lanham Act by using a mark unless the use "has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless [it] explicitly misleads as to the source or the

1  content of the work." *MCA Records*, 296 F.3d at 902 (*quoting Rogers*, 875 F.2d at
2  999). Though the Ninth Circuit first applied the *Rogers* test to the use of a trademark
3  in a work's title in *MCA Records*, 296 F.3d at 902, it has found "no principled reason
4  why it ought not also apply to the use of a trademark in the body of the work." *E.S.S.*
5  *Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008). In
6  particular, defendants' use of a plaintiff's alleged marks on the cover of their book,
7  replicating distinctive visual elements that appear on the covers of the plaintiff's
8  books, including the lettering, is subject to the *Rogers* test. *See Cliffs Notes, Inc. v.*
9  *Bantam Doubleday Dell Publ'g Grp., Inc.*, 886 F.2d 490, 492-95 (2d Cir. 1989).

10     The use of DSE's alleged marks in *Boldly* merits First Amendment protection
11  under *Rogers*. First, it has "at least 'some artistic relevance.'" *E.S.S. Entm't 2000*,
12  547 F.3d at 1100 (*quoting MCA Records*, 296 F.3d at 902). Under *Rogers*, the
13  quantum of "artistic relevance" required must merely be "above zero." *Brown v.*
14  *Elec. Arts, Inc.*, 724 F.3d 1235, 1243 (9th Cir. 2013). The use of fonts and
15  illustrations that recall Dr. Seuss's style is directly relevant to a creative work that
16  addresses the relationship between *Go!* and other Dr. Seuss works and the *Star Trek*
17  universe. Booth Decl. ¶ 49. "This Court previously found that Defendants'
18  invocation of Plaintiff's alleged trademarks is relevant to *Boldly*'s artistic purpose."
19  MJP Order p. 6 (citing First MTD Order p. 15). What the Court found true of *Boldly*
20  as to its use of *Go!*'s title is equally incontestable as to its use of DSE's alleged
21  trademark "stylized font" and "illustration style."

22     When analyzing the second *Rogers* prong upon Defendants' motion for judgment
23  on the pleadings, the Court began: "The second prong of the *Rogers* test requires a
24  junior user to show that its work does not explicitly mislead as to the source or
25  content of the work." *Id.* p. 7 (citing *MCA Records*, 296 F.3d at 902). The Ninth
26  Circuit has since "clarif[ied] the burden of proof under the *Rogers* test." *Gordon*,
27  2018 U.S. App. LEXIS 32796, *12. When the allegedly infringing use is expressive,
28  the burden shifts to the plaintiff seeking to impinge on the defendants' First

- 16 -

Amendment rights. "[T]o evade summary judgment, the plaintiff must show a triable issue of fact as to whether the mark is artistically relevant to the underlying work or explicitly misleads consumers as to the source or content of the work." *Id.* \*13.

DSE cannot sustain that burden. There is nothing explicitly misleading about the use of any alleged DSE mark in *Boldly*. "[T]he mere use of a trademark alone cannot suffice to make such use explicitly misleading." *E.S.S. Entm't 2000*, 547 F.3d at 1100 (*citing MCA Records*, 296 F.3d at 902). And the book expressly disclaims DSE's sponsorship or endorsement: "This is a work of parody, and is not associated with or endorsed by CBS Studios or Dr. Seuss Enterprises, L.P." ECF No. 8-9 p. 2. The disclaimer is one of two that appear on the copyright page, a typical place for disclaimers and legal notices. *Id.*; Booth Decl. ¶ 50. The contested uses are on the spine and title page of *Boldly*, which display the title and its use of the famous *Star Trek* "boldly go" split infinitive; on the cover, which depicts the same usage above a Captain figure and the U.S.S. Enterprise from the same TV series; and throughout the book's contents, which are rife with *Star Trek* allusions. *Id.* p. 1 & *passim*; Booth Decl. ¶ 51. Those many points of reference steer consumers clear of any confusion by guiding them to the defining characteristics of *Boldly*'s creative combination.

These explicit disclaimers and implicit points of distinction between *Boldly* and the "Dr. Seuss" books ensure that Defendants' use of the alleged marks is not explicitly misleading as to source or content. The Ninth Circuit's latest opinion under *Rogers* considers "the degree to which the junior user uses the mark in the same way as the senior user." *Gordon*, 2018 U.S. App. LEXIS 32796, \*26. Concern over consumers being explicitly misled "is generally allayed when the mark is used as only one component of a junior user's larger expressive creation, such that the use of the mark at most 'implicitly suggest[s]' that the product is associated with the mark's owner." *Id.* \*28 (quoting *Rogers*, 875 F.2d at 998-99). By contrast, "using a mark as the centerpiece of an expressive work itself, unadorned with any artistic contribution by the junior user, may reflect nothing more than an effort to 'induce

- 17 -

1  the sale of goods or services' by confusion or 'lessen[] the distinctiveness and thus
2  the commercial value of' a competitor's mark." *Id.* *28-29 (quoting *S.F. Arts &*
3  *Athletics, Inc.v. U.S. Olympic Comm.*, 483 U.S. 522, 539 (1987)).

4  In *Boldly*, Defendants' use of the alleged trademarks decidedly fits in the former
5  type of use that allays concerns about misled consumers. There is no genuine dispute
6  that DSE's alleged marks are only one component of Defendants' larger expressive
7  creation. And DSE cannot credibly contend that *Boldly* is unadorned with any
8  artistic contribution from its author and illustrator.

9  The *Gordon* court found "a triable issue of fact as to whether defendants simply
10 used Gordon's mark with minimal artistic expression of their own, and used it in the
11 same way that Gordon was using it—to identify the source of humorous greeting
12 cards in which the bottom line is 'Honey Badger don't care.'" *Id.* *30. No such issue
13 arises from *Boldly.* Defendants' extensive, creative contributions developed over the
14 course of multiple drafts and revisions. Booth Decl. ¶ 52. And this is not a case over
15 interchangeable greeting cards. Any use of a legitimate DSE trademark in the *Boldly*
16 mash-up is both in a different manner, and with a different function, than DSE's
17 uses. *Boldly* serves a different market function than the "Dr. Seuss" books, and it is
18 rigorously distinguished from its source material, building on that material while
19 incorporating new material of the creators' making. *Id.* Under the Ninth Circuit
20 precedent applying the *Rogers* test, no material fact is reasonably subject to dispute.
21 Defendants are entitled to judgment as a matter of law on the trademark claims.

22 **VI.   Conclusion**

23 Defendants are entitled to judgment as a matter of law on all claims, and no
24 material facts are in genuine dispute. Therefore, Defendants respectfully requests
25 that the Court grant them summary judgment pursuant to Fed. R. Civ. P. 56(a).

- 18 -

Respectfully submitted,

DATED: December 11, 2018


BOOTH SWEET LLP                          SPRINKLE LLOYD & LICARI LLP


/s/ Dan Booth                            /s/ Michael Licari


Dan Booth                                Michael Licari
*Admitted Pro Hac Vice*                  *Local Counsel*

*Attorneys for Defendants ComicMix LLC, Glenn Hauman,*

*David Gerrold and Ty Templeton*


## CERTIFICATE OF SERVICE

I hereby certify that on this December 11, 2018 I electronically filed the foregoing document by using the Court's ECF system, thereby causing a true copy thereof to be served upon counsel of record for each party to have appeared to date, as identified on the Notice of Electronic Filing.


/s/      Dan Booth


- 19 -