Dan Booth (MA Bar No. 672090)
BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
dbooth@boothsweet.com
(617) 250-8602
*Admitted Pro Hac Vice*

Michael Licari (SBN 265241)
SPRINKLE LLOYD & LICARI LLP
2801 B Street, Unit 556
San Diego, CA 92102
mike@SL2Law.com
(858) 717-0013
*Local Counsel*

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DR. SEUSS ENTERPRISES, L.P.**,<br><br>Plaintiff,<br><br>v.<br><br>**COMICMIX LLC**; **GLENN HAUMAN**; **DAVID JERROLD FRIEDMAN** a/k/a **DAVID GERROLD**; and **TY TEMPLETON**,<br><br>Defendants. | Case No.: 3:16-cv-02779-JLS-BGS<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; REQUEST FOR RELIEF PURSUANT TO FED. R. CIV. P. 56(f)(1)**<br><br>Assigned to Hon. Janis L. Sammartino United States District Judge<br><br>Hearing Date: January 31, 2019<br>Hearing Time: 1:30 p.m.<br>Hearing Place: Schwartz Courthouse, Courtroom 4A |

Pursuant to Fed. R. Civ. P. 56 and CivLR 7.1(f), defendants ComicMix LLC ("ComicMix"), Glenn Hauman ("Hauman"), David Gerrold ("Gerrold"), and Ty Templeton ("Templeton") hereby oppose Plaintiff Dr. Seuss Enterprises, L.P.'s ("DSE") motion for summary judgment (ECF No. 107; the "Motion"). In

1

opposition thereto; in support of Defendants' request for summary judgment

pursuant to Fed. R. Civ. P. 56(f)(1) herein; and in further support of Defendants'

motion for summary judgment (ECF No. 108), ComicMix states as follows.

## I.     Introduction

In 2016, Defendants prepared for publication a transformative mash-up book

to be called *Oh, the Places You'll Boldly Go!* ("*Boldly*"), which combined elements

of certain books by Dr. Seuss with elements of the original *Star Trek* series. But

Boldly remains unpublished. Defendants were stymied by DSE's demands that they

cease any steps toward publication. In short order, DSE sent Kickstarter a takedown

notice for the campaign for *Boldly*'s printing and distribution costs; scared off

Andrews McMeel Publishing ("AMP"), which had agreed to publish *Boldly* by

December 2016; and scared off ThinkGeek, which cancelled the only order

ComicMix had received for the book. DSE acted sight unseen, somehow deciding

long before *Boldly* was completed that it would not be a fair use of DSE's works.

DSE moves for summary judgment on its claims that Defendants infringed

its copyrights, willfully, and that fair use does not apply, continuing to misjudge

both *Boldly* and Defendants. See ECF No. 107-1, Memorandum of Points and

Authorities ("Mem.") in support of the Motion. It jumps to conclude that unlicensed

third-party uses of its copyrighted works must be infringing, misreading the right of

fair use. It confuses transformative works like *Boldly* with licensed derivative

works based on DSE products, and confuses mash-ups with licensed collaborations,

without showing that any relevant licensed works share a market with *Boldly*. And

it mistakes Defendants' intentional use of DSE works with willful infringement,

though Defendants acted on a well-founded, good-faith belief that *Boldly* is fair use.

Those fatal analytical mistakes, and failure to support the Motion with proper

evidence, doom the Motion. DSE does not show that no material fact is in genuine

dispute or that it is entitled to judgment as a matter of law. Instead, by failing to

properly support its Motion, DSE shows that Defendants are entitled to judgment

2

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;
REQUEST FOR RELIEF PURSUANT TO FED. R. CIV. P. 56(f)(1)          Case No. 16-cv-2779-JLS-BGS

on all copyright claims, and on the affirmative defenses of No Willful Infringement, No Character Infringement, and Fair Use. See Answer (ECF No. 53), Affirmative Defenses No. 10, 12, & 13.

**II.    Statement of Additional Facts Not in Dispute**

In addition to the largely undisputed, material facts that DSE identified in support of the Motion, the following material facts are also not in dispute.

DSE alleges that it owns the copyrights in books written and illustrated by Theodor S. Geisel, better known by the pseudonym Dr. Seuss. ECF No. 39 ("First Amended Complaint" or "FAC") ¶¶ 1, 3, 17. It alleges that Defendants infringed the copyrights in five Dr. Seuss books: *How the Grinch Stole Christmas* ("*Grinch*"), *The Sneetches and Other Stories* ("*Sneetches*"), *Oh, the Places You'll Boldly Go!* ("*Go!*"), *The Lorax* and *Horton Hears a Who!*. *Id.* ¶ 35 & p. 31. DSE moves for summary judgment as to only the first three. Mem. ¶¶ 7-8.

From the first emails germinating the idea of *Boldly*, Defendants contemplated making it a fair use work. The first communication leading to *Boldly*, Gerrold's May 27, 2016 email, proposed a "Star Trek Primer" (effectively, a "Dick and Jane"/*Star Trek* mashup) and discussed either getting a license or "doing it as a parody." ECF No. 107-31 (Tamar Duvdevani's Declaration in Support of the Motion ("TD Decl.") Ex. 13). Hauman responded the same day that "If we're parodying two things … we're on safer ground, I think." *Id.* Later that day, Hauman first proposed a work entitled "Oh, the Places You'll Boldly Go!" as a potential *Star Trek*/children's book parody. *Id.* He sent Gerrold a sketch of a possible cover for *Boldly* on May 28, 2016. *Id.* Gerrold agreed to work on *Boldly* the same day. ECF No. 107-2, DSE's Statement of Undisputed Material Facts ("SOF") ¶ 22; see TD Decl. Ex. 18 (under seal). That evening, Hauman told Gerrold, "we're pretty well protected by parody. (Of course, IANAL, but I feel pretty secure on the point. It helps that we're using Trek to parody Seuss and Seuss to parody Trek.)" *Id.*

Templeton, Gerrold, and Hauman all testified that they consider *Boldly* a parody, a mash-up, and a transformative work. Templeton testified that he did not think it possible that anyone would think *Boldly* was an authorized work "because it's so clearly parody … it's got the *Enterprise* and Captain Kirk on it. Those are not things that show up in a Dr. Seuss book." TD Decl. Ex. 1, ECF No. 107-23 ("Templeton Transcript") at 120:14-23. Gerrold testified that asking what makes *Boldly* a parody is like asking "what makes *Gone with the Wind* an epic." TD Decl. Ex. 2, ECF No. 107-24 ("Gerrold Transcript") at 77:19-78; see also *id.* at 68:7-8 ("It is fairly obvious that [*Boldly*] is a parody of the Seuss style."). Hauman testified, "We were specifically making fun of, and parodying, and transforming the work, *Oh, the Places You'll Go!*. … We believe that since we were commenting directly on *Oh, the Places You'll Go!*, that it was a fair use." TD Decl. Ex. 3, ECF No. 107-25 ("Hauman Transcript") at 75:23-76:11.

Defendants have a professional understanding of, and experience with, fair use projects. Templeton draws parodies for *Mad* Magazine, among several other outlets, and testified that he is "familiar with parody culture" and "very familiar with this style of creating parody." Templeton Transcript at 111:19-113:14, 121:16, 182:2-23. Gerrold testified that he had written a mashup of Sherlock Holmes and Oscar Wilde, and then had worked on the script of "a Star Trek/Dr. Who comic book mashup," whose publisher confirmed to Gerrold that "mashups are legal … It was explained to me that it was fair use to do parody in mashups." Gerrold Transcript at 28:3-22; see also *id.* at 32:5-6 ("I've had some experience with doing parodies and mashups"); TD Decl. Ex. 18 (under seal) ("Steve Davidson and I did a Dr. Who / Star Trek mashup comic. Nobody came after us."). Hauman testified that he has "35 years of publishing" experience and had "followed various fair use cases over the years," including *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394 (9th Cir. 1997) ("*Seuss v. Penguin*"), which he discussed at length. Hauman Transcript at 77:9-13, 74:18-75:15.

4

ComicMix's Kickstarter campaign for *Boldly* ran from August 31 to September 30, 2016. TD Decl. Ex. 40, ECF No. 107-50 p. 4 ("Funding period Aug 31 2016 – Sep 30 2016"). The campaign page described *Boldly* as "a parody mash-up." *Id.* p. 3. A disclaimer on the campaign page stated, under the heading "Risks and challenges": "we firmly believe that our parody, created with love and affection, fully falls within the boundary of fair use," while recognizing that some intellectual property rightsholders might disagree. *Id.* p. 6.

Defendants also included two disclaimers on the copyright page of the unpublished, "completed" draft of *Boldly* sent to DSE's counsel on October 28, 2016. TD Decl. Ex. 31 p. 4 (under seal). The first read, "This is a work of fair use, and is not associated with or endorsed by CBS Studio or Dr. Seuss Enterprises, L.P." *Id.* (The Court took judicial notice of a slightly different version of *Boldly*, which differs insofar as it used the word "parody" instead of "fair use" in the disclaimer. ECF No. 8-9 p. 4; TD Decl. Ex. 31 p. 4; see *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 256 F. Supp. 3d 1099, 1102 & 1105 n.1 (S.D. Cal. 2017) ("*ComicMix I*"). The second disclaimer read, "Copyright Disclaimer under section 107 of the Copyright Act 1976, allowance is made for 'fair use' for purposes such as criticism, comment, news reporting, teaching, scholarship, education, research, and parody." *Id.* The copyright page further attributes the copyright and trademarks in *Boldly* to Gerrold and Templeton—not to DSE. *Id.* The copyright page is a typical place for a disclaimer; as Gerrold testified, "You always put a disclaimer at the beginning of the book." Gerrold Transcript at 73:2-3.

*Boldly* is, and has always been, unpublished. ECF No. 12 p. 4. Defendants ceased any publication efforts before this lawsuit was filed. Hauman Transcript at 139:6-140:3; see also ECF No. 33-1 ¶ 21 (Hauman declaration; "ComicMix has not made any attempt to print, publish, market, sell, or otherwise distribute *Boldly* since October 7, 2016. ComicMix has no intent to attempt to print, publish, market, sell, or otherwise distribute *Boldly* pending the resolution of this action."). "ThinkGeek

5

ordered 5,000 copies of *Boldly* from AMP, if printed and delivered by November 11, 2016, in time for Christmas sales. On September 23, 2016, AMP informed ComicMix that it would need delivery of completed files ready to print by the first week of October of 2016 to fulfill the ThinkGeek order, and that it planned a first printing that would cover both the ThinkGeek order and copies for Kickstarter funders." TD Decl. Ex. 32, ECF No. 107-44 p. 9. On September 28, 2016, Defendants received DSE's first cease-and-desist letter and forwarded it to AMP, which pulled out from the project the next day. Mem. p. 14.

The Defendants testified that they did not anticipate any negative effect on the market for the DSE works used. Gerrold testified to his belief "that Dr. Seuss' demographic is everybody up to seven or eight years old," and that "[w]e're not competing with Dr. Seuss' book [*Go!*], we're doing this thing for adults who are familiar with all the episodes" of *Star Trek*. Gerrold Transcript at 43:3-45:1. Along those lines, Hauman testified that one of the parodic aspects of *Boldly* is that it points out, and pokes fun at "the incongruity of … trying to sell [*Go!*] to adults," though *Go!* "is a kid's book." Hauman Transcript at 185:18-186:3; see also ECF No. 43 p. 25 (DSE argument that *Go!* is "an illustrated children's book"). Hauman has also declared his belief that *Boldly* does not compete with or substitute for *Go!*:

> ComicMix and I, and the other Defendants, have never competed with DSE, and have no intention of doing so in the future. Our unpublished book *Oh, the Places You'll Boldly Go!*, suppressed by DSE as a result of this action, is not and would not be in competition with any DSE book, Dr. Seuss book, or derivative work because among other grounds, upon information and belief, it is a work of fair use, and it is so highly transformative that it cannot serve as a substitute for any DSE book, Dr. Seuss book, or derivative work.

ECF No. 93-14 ¶ 16.

The Court first considered the fair use doctrine to *Boldly* in June 2017, after Defendants moved to dismiss, and applied the four statutory factors set out in 17 U.S.C. § 107(1)-(4), weighing them "in light of the purposes of copyright." *Dr.*

1  *Seuss Enters., L.P. v. ComicMix LLC*, 256 F. Supp. 3d 1099, 1104-09 (S.D. Cal.

2  2017) ("*ComicMix I*"). The Court found a "near-perfect balancing of the factors,"

3  and found that the first and fourth fair use factors ("the purpose and character of the

4  use" and "the effect of the use upon the potential market for or value of the

5  copyrighted work") then stood "in equipoise." *Id.* at 1109; 17 U.S.C. § 107(1), (4).

6  The Court found that *Boldly* is "a highly transformative work that takes no more

7  than necessary to accomplish its transformative purpose and will not impinge on the

8  original market for Plaintiff's underlying work." *Id.*

9      The first factor weighs in favor of finding fair use because the use is

10  transformative. *Id.* at 1106. Though not agreeing with Defendants that *Boldly* is a

11  parody, the Court found "it is no doubt transformative." *Id.* Though the use was

12  also for profit, the weight given Defendants' commercial purpose "is slight given

13  both the transformative nature of the work … and the fact that *Boldly* does not

14  supplant the market for *Go!* or the other relevant Dr. Seuss works." *Id.*

15      The second factor ("the nature of the copyrighted work," 17 U.S.C. § 107(2))

16  weighs only slightly in DSE's favor. *Id.* at 1107. The third factor ("the amount and

17  substantiality of the portion used in relation to the copyrighted work as a whole,"

18  17 U.S.C. § 107(3)) did not weigh against Defendants, as the Court found *Boldly*

19  did not take more than necessary for its transformative purpose, and did not copy

20  any aspect of the Dr. Seuss books "in their entirety; each is infused with new

21  meaning and additional illustrations that reframe the Seuss images from a unique

22  *Star-Trek* viewpoint. Nor does *Boldly* copy more than is necessary to accomplish its

23  transformative purpose." *Id.* at 1107-08.

24      Under the procedural posture of Defendants' motion to dismiss, the Court

25  could not find that the fourth factor weighed in favor of fair use because it had no

26  evidence of market effect. *Id.* at 1108; see also *id.* at 1109 ("Specifically, without

27  relevant evidence regarding factor four the Court concludes that Defendants' fair

28  use defense currently fails as a matter of law.").

7

Upon Defendants' motion to dismiss the First Amended Complaint, the Court again analyzed fair use, but found nothing in the new complaint that affected any factor of the fair use analysis other than the fourth factor. *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 300 F. Supp. 3d 1073, 1080 & n.5 (S.D. Cal. 2017) ("*ComicMix II*"). Under the fourth factor, the Court recognized that a potential market harm cannot be presumed because *Boldly* is highly transformative and is not a market replacement for the allegedly infringed Dr. Seuss books. *Id.* at 1082. Analyzing the fourth factor, the Court found that it still favored DSE, and that new allegations in the FAC, "if anything, shift[] the balance more in Plaintiff's favor due to the allegations regarding potential market harm." *Id.* In particular, considering DSE's allegations that "Plaintiff's current literary licensing program involves allowing other authors to publish books based off of Plaintiff's books and even use Plaintiff's characters," the Court found that "there is a potential market for a literary mash-up involving Plaintiff's books." *Id.* The Court has not found that DSE has licensed any books without any Dr. Seuss characters in them, or that DSE is, or could be, in a potential market for a literary mashup without Dr. Seuss characters.

## III.   Statement of Facts Subject to Genuine Dispute or Not Material

A bevy of the assertions in DSE's "Statement of Undisputed Material Facts" are not material, not facts, or are in genuine dispute.

DSE contends that it owns "duly registered" copyrights in *Sneetches* and *Go!* SOF ¶¶ 3-4. But DSE did not correctly complete the application for copyright registration for either book, neglecting to identify previously published material. See ECF No. 57-1; ECF No. 88. Most significantly, substantially similar versions of the *Sneetches*' first two stories ("The Sneetches" and "The Zax") were published by *Redbook* in 1953 and 1954. ECF Nos. 69-5 & 69-6. After securing the copyrights in those stories upon publication, *Redbook*'s publisher assigned the copyrights to Geisel in 1956. ECF No. 69 p. 8; ECF No. 69-8. Those copyrights were governed by the Copyright Act of 1909, pursuant to which copyrights had

8

only a limited term of 28 years from publication, with a second 28-year term only if the copyright owner timely applied to renew and extend the copyright in the last year of the original term. Act of March 4, 1909, ch. 320 § 23, 35 Stat. 1075, 1080; see ECF No. 57-1 pp. 7-8 & n.3. Under the 1909 Act, "in default of such application for renewal and extension, the copyright in any work shall determine at the expiration of twenty-eight years from first publication." *Id.* Geisel neglected to timely renew the *Redbook* stories' copyrights 28 years after publication, letting them lapse into the public domain. DSE never disputed Defendants' contention that Geisel "did not renew the copyright in either story in the 28th year after their publication in *Redbook*." ECF No. 57-1 p. 10. Therefore, by the time Geisel applied to renew the *Sneetches* book copyright in 1989, the copyrights for the underlying *Redbook* stories had already expired. See ECF No. 107-7, Declaration of Susan Brandt in Support of the Motion ("SB Decl.") Ex. 4. The illustrations from *Redbook*—in particular, the illustration that Geisel reworked for the derivative "The Zax" story in *Sneetches*, which DSE alleges that *Boldly* infringed—cannot support an infringement claim because it is in the public domain.

　　　　DSE contends that Gerrold had no "arrangement" with Paramount permitting him to use *Star Trek* intellectual property, and that Hauman misled ThinkGeek as to Gerrold's rights. SOF ¶¶ 13, 43, 45 & 99. But Gerrold's rights to use *Star Trek* intellectual property are not material to the Motion, which concerns the use of Dr. Seuss intellectual property. And DSE does not dispute Gerrold's extensive testimony about his "quote, unquote, 'arrangement' with Paramount": that Gerrold had "the complete rights" to his two books on *Star Trek* (*The World of Star Trek* and *The Making of The Trouble with Tribbles*) and did not need a license from Paramount; that Gerrold has sued Paramount over merchandising residuals owed for his "tribbles" creation, and won; and that the current intellectual property holder CBS has acknowledged it is the successor to Paramount's obligations to Gerrold. Gerrold Transcript at 52:23-54:2, 119:6-120:2, 54:20-55:10.

DSE contends that Defendants did not consult a lawyer before *Boldly* was completed as to whether it would constitute a fair use. SOF ¶¶ 17-19 & 115. DSE further asserts that Defendants *never* "consulted a lawyer to advise whether their use of *Go!* and the other Dr. Seuss works was a parody and a fair use." Mem. p. 10; *id.* p. 30. That is neither material nor a fact. As a matter of law, there is no need to consult an attorney to form a good-faith belief in fair use. *See Henley v. DeVore*, 733 F. Supp. 2d 1144, 1166 (C.D. Cal. 2010) ("The Court declines to hold that an infringer must, as a matter of law, consult an attorney or investigate complicated fair use doctrine to avoid a finding of willfulness."). And as a matter of fact, a draft of *Boldly* was not completed until October 27 or 28, 2016. See SOF ¶ 47. By October 25, 2016, Hauman had consulted attorney Ken White, who opined online the next day that *Boldly* "is protected by Fair Use." See Ken White, *Popehat Signal: Help Defend A Seuss-Trek Parody Under Fair Use*, POPEHAT (Oct. 26, 2016), https://www.popehat.com/2016/10/26/popehat-signal-help-defend-a-seuss-trek-parody-under-fair-use/. And Defendants' lead counsel, ComicMix retained on October 26, 2016, explained at length why *Boldly* is a fair use in an October 28, 2016 letter to DSE. SOF ¶¶ 107-108; TD Decl. Ex. 73, ECF No. 107-68.

DSE contends that, when Templeton agreed to illustrate *Boldly*, he said, "The title is like printing money." SOF ¶ 30. That is not contested, but it is not a fact material to DSE's Motion. The innocuous phrase "just means it's going to sell well." Templeton Transcript at 68:20-69:1. The title of *Boldly* is a Seuss/*Trek* mash-up, like the book itself, but is otherwise immaterial to the claims in suit. DSE moves for summary judgment on only its copyright claims; but "titles, in and of themselves, cannot claim statutory copyright." *Shaw v. Lindheim*, 919 F.2d 1353, 1362 (9th Cir. 1990). And DSE alleges only trademark rights, not copyrights, in the title of *Go!*. FAC ¶ 17; ECF No. 22 p. 6 ("DSE alleges that ComicMix's misappropriation of the title is actionable as *trademark* infringement"). DSE's alleged trademark rights in that title also cannot be germane because the Court has

1    determined that its use in *Boldly*'s title is not a trademark infringement. ECF No. 89

2    pp. 8-9.

3        DSE asserts that Defendants "readily admit access and copying of the DSE

4    Works in their responses to DSE's requests for admission." Mem. p. 18. That is not

5    accurate; while Defendants admitted access to Dr. Seuss's widely available books,

6    their Responses to DSE's Requests for Admission did not admit to "copying," but

7    to the use of Dr. Seuss books "as a model": "Defendants admit that Templeton, and

8    thereby ComicMix, followed Dr. Seuss's illustration style as a model in *Boldly*'s

9    illustrations, including in its cover art." TD Decl. Ex. 33, ECF No. 107-45 p. 7. Yet

10   DSE contends that Templeton simply and directly "copied" multiple "features

11   typical of Dr. Seuss' illustration style." SOF ¶¶ 52 & 158; Mem. p. 18. That

12   contention is partly undisputed, but largely immaterial. As the Court rightly found,

13   it is undisputed "that *Boldly* copies many aspects of *Go*'s and other Dr. Seuss

14   illustrations." *ComicMix I* at 1107. But recognizing such use is where a fair use

15   analysis begins, not where it ends; as the Court further rightly found, *Boldly* does

16   not copy any Dr. Seuss illustrations "in their entirety"; rather, each illustration used

17   is transformed, "infused with new meaning and additional illustrations that reframe

18   the Seuss images from a unique *Star-Trek* viewpoint." *Id.* Where *Boldly* did not

19   "copy more than is necessary to accomplish its transformative purpose," as the

20   Court found, the use does not weigh against fair use. *Id.* And DSE's contention that

21   aspects of Dr. Seuss's "illustration style" were copied is further immaterial to a

22   Motion for summary judgment on DSE's copyright claims, because it alleged only

23   trademark rights in Dr. Seuss's "illustration style." FAC ¶¶ 17, 23 (calling the style

24   of Dr. Seuss's books "source-indicating"), 40-41 (alleging consumer confusion due

25   to Defendants' use of "Dr. Seuss's unique illustration style"), 76 & 85 (same).

26       In particular, DSE's contentions that Dr. Seuss's illustrations are somehow

27   "distinctive" (Mem. p. 18) or "unique" (FAC ¶¶ 17, 40-41, 76, 85) are disputed. As

28   Templeton testified, "There are dozens, if not scores, of political cartoonists who

11

illustrate in a style almost identical to Seuss's." Templeton Transcript at 73:15-74:19. And DSE's assertion that "Templeton copied Dr. Seuss's … Characters" is both disputed and baseless. SOF ¶ 52. No DSE character appears in *Boldly*. Templeton further testified that *Boldly* includes dozens of characters evocative of *Star Trek*, not Dr. Seuss characters. See, e.g., Templeton Transcript at 116:4, 120:21-22; 126:2-127:17, 137:19-138:11, 150:9-23, 157:1-20, 162:13-164:2, 171:12-172:23, 175:3-23, 239:25-241:8. Indeed, one reason the layouts of *Boldly* were so closely based on original Dr. Seuss works is precisely because Templeton was not using any Dr. Seuss characters. As he told Hauman and Gerrold on September 28, 2016, in the wake of the first cease-and-desist letter, "essential to the parody is that people recognise the source material in poses since they WON'T be seeing the Grinch or the Whos or the Gox. I'm concerned if we try to completely ignore everything about the source material the gags fall apart." TD Decl. Ex. 68, ECF No. 107-64. So DSE is unable to name or identify any Dr. Seuss character who appears in *Boldly*. Its claims of character infringement (see FAC ¶ 35) should be disregarded, and summary judgment should be granted to Defendants on their Thirteenth Affirmative Defense (No Character Infringement).

DSE argues that "Defendants never thought of [*Boldly*] as a commentary, criticism, or parody of Dr. Seuss or his books." Mem. p. 6. Apparently for support, DSE cites an equivocal statement by Gerrold that he didn't think in terms of "comment," beyond acknowledging that Dr. Seuss is a "cultural touchstone." SOF ¶ 58. Yet Gerrold made that statement in the context of testifying that he simply isn't adept at such categorical artistic criticism. Gerrold Transcript at 78:20-80:3. By contrast, Hauman testified, "[w]e believe that since we were commenting directly on Oh the Places You'll Go!, that it was a fair use." Hauman Transcript at 76:6-11. Hours after receiving DSE's first cease-and-desist letter, on September 28, 2016, Hauman told Gerrold and Templeton, "The mistake that the C&D makes is that they think we're not parodying Seuss, when we very specifically are. … We're

1 obviously commenting on Dr. Seuss." TD Decl. Ex. 68, ECF No. 107-64. There can

2 be no genuine dispute that Defendants believed they were making *Boldly* as a

3 parody and a fair use work. The first emails about the project between Hauman and

4 Gerrold discussed parody, even before they settled on Dr. Seuss as a source to

5 combine with *Star Trek*, and all Defendants testified that they consider *Boldly* a

6 parody, a mash-up, and a transformative work.

7     DSE contends that in a November 13, 2016 email (three days after DSE filed

8 its original complaint), Templeton "stated that he went TOO far in copying the

9 [Seuss] source material." SOF ¶ 54. That is not what he said; he *questioned* whether

10 he had "gone too far" and explained that his purpose in hewing closely to the Dr.

11 Seuss works had been "to maintain the parody element." TD Decl. Ex. 24, ECF No.

12 107-38. That explanation is entirely consistent with Templeton's pre-litigation

13 statement, on July 12, 2016, that Defendants "have to keep to that sentiment [in

14 *Go!*] to make the parody and spirit [of *Boldly*] work." SOF ¶ 38; TD Decl. Ex. 26,

15 ECF No. 107-40. DSE also contends that in his post-complaint, November 13, 2016

16 email, Templeton offered to revert the layouts of *Boldly*'s completed draft to his

17 original layouts, "if it helped." Mem. p. 26; SOF ¶ 124. He did not use those words.

18 See TD Decl. Ex. 24, ECF No. 107-38.

19     DSE further contends that Templeton's November 13, 2016 email (and the

20 Gerrold email of the same date, to which Templeton was responding; see *id.*)

21 amount to admissions that Defendants "took more from the DSE works than was

22 necessary." Mem. pp. 25-26. That contention is both incorrect and directly contrary

23 to the Court's finding that DSE does not "copy more than is necessary to

24 accomplish its transformative purpose. *ComicMix I* at 1107. These post-complaint

25 discussions considered modifications to *Boldly* that might have ameliorated DSE's

26 concerns; but they give no indication that Defendants' original completed draft of

27 *Boldly* took more than necessary, or that they ever so believed.

28

13

DSE's contentions about AMP's plans for publication of *Boldly*, based on internal AMP emails to which Defendants were not privy, are not material to any issue related to fair use. See SOF ¶¶ 73-79, 86, 92, 96-98. Those internal emails have no bearing on Defendants' intentions for *Boldly*'s potential publication.

DSE contends that "*Boldly* was designed to target the same market" as *Go!* because "Hauman testified that *Boldly* was intended to be marketed, in part, to graduates or as a gift for graduates." Mem. p. 27, SOF ¶ 100. That is disputed. Hauman did not testify that Defendants wanted to market *Boldly* to graduates, as distinct from any other paying customers. See Hauman Transcript at 184:18-21 ("I am happy to sell books to whoever is happy to buy them."). He acknowledged that ThinkGeek ultimately "wanted to market this book for graduations." *Id.* at 184:2-16; see also TD Decl. Ex. 66, ECF No. 107-62 (ThinkGeek post-complaint inquiry about offering *Boldly* "for Graduation"). But until DSE interfered, Defendants, and AMP and ThinkGeek, were targeting *Boldly* for Christmas season sales. Hauman Transcript at 86:9-89:13. ThinkGeek's initial order sought delivery by November 11, 2016, "in time for Christmas sales." TD Decl. Ex. 32, ECF No. 107-44 p. 9. Defendants and AMP strove to fulfill the order; AMP told Hauman on September 26, 2016, "We're firing on all cylinders on our end to make it in time for the [ThinkGeek] Black Friday promotion[.]" TD Decl. Ex. 36, ECF No. 107-47. The Kickstarter campaign likewise offered to provide *Boldly* to backers by December 2016. TD Decl. Ex. 40, ECF No. 107-50. But then came DSE's September 28, 2016 letter, October 7, 2016 takedown, and November 10, 2016 complaint. As Hauman informed ThinkGeek on November 15, 2016, "Due to legal action from Dr. Seuss Enterprises, we are not going to be able to provide *Oh, the Places You'll Boldly Go!* to you in time for the 2016 holiday season." TD Decl. Ex. 82, ECF No. 107-77. Defendants designed *Boldly* to reach Christmas shoppers in 2016, not graduates.

DSE contends that it "is 'very specific' in selecting licensing partners and projects and has 'very high standards' for licensing[.]" *Id.* ¶ 130. Those assertions

are disputed, as Defendants have alleged that DSE has abandoned its alleged trademarks through excessive licensing without adequate quality controls. Answer, ECF No. 53, Thirty-Sixth Affirmative Defense.

DSE contends that it licenses collaborations (or "collabs") with other intellectual property holders. SOF ¶¶ 150-156. That is not material, where every licensed collaboration identified by DSE prominently features at least one Dr. Seuss character, though DSE has never identified any Dr. Seuss character who appears in *Boldly*. See SOF ¶ 156; FAC ¶¶ 24, 45 & 46. DSE does not contend that it has licensed or would ever license a collaborative book that uses Dr. Seuss's style as a model but that does not use any Dr. Seuss character. Indeed, it does not even contend, or set forth a basis for finding, that it has the legal right to require a license for such a work. DSE has done nothing to show that *Boldly* is, or is in the same market as, any DSE-licensed "collab."

## IV.   Argument

DSE claims that *Boldly* would infringe its copyrights. But "the fair use of a copyrighted work … is not an infringement of copyright." 17 U.S.C. § 107. The Court's initial copyright fair use analysis found a "near-perfect balancing" of the four statutory factors: the first favored Defendants because *Boldly* is highly transformative, the second slightly favored DSE, the third was neutral and, in the absence of relevant evidence about market effects, the fourth favored DSE. The Court also found that the purposes of copyright appeared to favor Defendants.

DSE argues that all four factors weigh against fair use. But it fails to support the argument, as it must. Transformative use means market harm is not presumed, and DSE bears a burden of bringing forward probative evidence of market effect. See ECF No. 108-1 pp. 8-9. DSE shows only that it has a market for its works, not that *Boldly* would affect that market. DSE gives no basis to find *Boldly* anything less than a fair use. The Court should grant summary judgment to Defendants on the copyright claims and on their Twelfth Affirmative Defense (Fair Use).

### A.   First Factor (Purpose and Character of the Use)

DSE asks the Court to reconsider its first-factor analysis in light of *Oracle America, Inc. v. Google LLC*, 886 F.3d 1179 (Fed. Cir. 2018); Mem p. 19. The three issues in *Oracle* that DSE identifies as germane to the first factor (commercial use, transformative use, and bad faith) do not alter the legal landscape. The Court already weighed the first two, finding that *Boldly* "is no doubt transformative," that "there is no question that Defendants created their work for profit," and that the weight given Defendants' commercial purpose "is slight given both the transformative nature of the work … and the fact that *Boldly* does not supplant the market for *Go!* or the other relevant Dr. Seuss works." *ComicMix I* at 1106. The third issue, bad faith, has long been a potential consideration: "courts may weigh 'the propriety of a defendant's conduct' in the equitable balance of a fair use determination." *Fisher v. Dees*, 794 F.2d 432, 436-37 (9th Cir. 1986) (citing 3 M. Nimmer, *Nimmer on Copyright* § 13.05[A], at 13-72 to -73 (rev. ed. 1985)).

DSE continues to argue that *Boldly* had a commercial nature. Mem. pp. 20-21. That is not disputed. But in that context, DSE argues, "discovery has shown that *Boldly* is likely to supplant the market for *Go!* as well as its derivatives," and contends that Defendants planned to sell *Boldly* "during graduation season" in order "to compete with *Go!* and free-ride on *Go!*'s perennial success." *Id.* p. 20. Defendants certainly dispute that. They sought to complete the book in time for Black Friday 2016 sales; that *Boldly* could then remain on the market "during graduation season" like *Go!* (and every other book in print) is not evidence of intentional competition or free-riding. Defendants have expressly disclaimed any intent to compete with any DSE book or derivate work. ECF No. 93-14 ¶ 16. And as the Court has recognized, "*Boldly*'s market relies on consumers who have already read and greatly appreciated *Go!* and Dr. Seuss's other works, and who simultaneously have a strong working knowledge of the *Star Trek* series."

*ComicMix I*, at 1108. Readers who have already digested *Go!* are no longer in the market for it, so "*Boldly* does not supplant the market for *Go!*." *Id.* at 1106.

DSE argues that *Boldly* is not transformative because it made extensive use of, and hewed closely to, *Go!*. Mem. p. 21. But as the Court has found, *Boldly* did not copy any illustration in its entirety, and took no more than necessary for its transformative purpose. *ComicMix I* at 1107. DSE also argues that *Boldly* is not transformative because it "has the same intrinsic purpose and function as *Go!*," in that both are entertaining illustrated books with uplifting messages. Mem. pp. 21-22. This barely expands on DSE's earlier argument that *Boldly* "serves the same purpose" as *Go!* because each is "an illustrated children's book." ECF No. 43 p. 25. DSE's overly general comparisons overlook the basis on which the Court found transformative use: that *Boldly* "combines into a completely unique work the two disparate worlds of Dr. Seuss and *Star Trek*." *ComicMix I* at 1106. "*Boldly* is designed as a mash-up of two creative worlds." *Id.* at 1111 (discussing "*Boldly*'s artistic purpose"). In general, mash-ups do not fulfill the same purpose as their source works; and in particular, "*Boldly* does not substitute for the original and serves a different market function than *Go!*." *Id.* at 1108.

DSE also seeks to obfuscate the difference between a copyright holder's derivative work right and a fair use creator's transformative use. Mem. pp. 23-25. It contends that *Boldly* is not transformative but a derivative work, simply because "[i]t exists in concrete form (an illustrated book) and substantially incorporates protected material from the DSE Works." *Id.* p. 24. Those absurdly broad terms, if accepted, would effectively nullify fair use as a defense in any copyright case. After all, works of authorship only come within the scope of copyright when "concrete" (that is, when they are "fixed in any tangible medium of expression," 17 U.S.C. § 102(a)), and copyright infringement is only at issue when works incorporate substantial (more than de minimis) protected material. And even those broad terms do not apply to *Boldly*, which remains an unpublished draft, not yet a concrete

book. Unpublished, "future entertainment products … are neither 'tangible,' nor 'sold in the marketplace' because they do not yet exist as discrete products." *Dille Family Trust v. Nowlan Family Trust*, 207 F. Supp. 3d 535, 544 (E.D. Penn. 2016).

DSE argues that Defendants acted in bad faith, so the fair use defense is not available. Mem. pp. 22-23. Its grounds for asserting bad faith are meager. DSE contends that "Defendants did act in bad faith, extensively copying from *Go!* and working with partners to publish *Boldly* while knowing that they needed and did not have a license." *Id.* p. 23. The contentions cannot withstand any scrutiny. Extensive copying is routine in a fair use case; neither fair use nor infringement is at issue unless there is substantial use. And while DSE points to Defendants' belief that Gerrold was authorized to make certain *Star Trek*-derivative works, it identifies no evidence that they needed (much less *knew* they needed) a license from DSE.

DSE does not hint at any fact that would support a finding that Defendants believed *Boldly* was anything but a fair use, while preparing *Boldly* or since, or otherwise acted in bad faith toward DSE. Defendants had parody and fair use in mind from the outset, and reasonably relied on their lay understanding of the relevant precedents. On May 29, 2016, the morning after Gerrold agreed to work on *Boldly*, Hauman discussed *Seuss v. Penguin* with Gerrold, noting that DSE had "initiated a lawsuit about 20 years back that helped define the difference between parody and satire. Which, if nothing else, shows they can be litigious. Luckily, we come down well on the side of parody here – at least as I envision this thing going." TD Decl. Ex. 18 (under seal). On July 20, 2016, acknowledging that *Boldly* was unlicensed (and again citing to *Seuss v. Penguin*), Hauman told Templeton's wife/office manager Keirin Smith that he suspected DSE would want to publish *Boldly* upon seeing the finished product. TD Decl. Ex. 30, ECF No. 107-43 p. 2. Defendants did not ignore DSE's cease-and-desist letters; on September 28, 2018, the same afternoon that the first letter was sent and received, Hauman forwarded it to AMP, which promptly pulled out from the project as a result. Mem. p. 14 (citing

18

SOF ¶¶ 93-96). And on October 17, 2016, after DSE's second cease-and-desist letter and takedown notice to Kickstarter, Hauman told ThinkGeek of the "cease & desist" and the hold placed on Kickstarter funds pledged for *Boldly*. SOF ¶¶ 118-119; TD Decl. Ex. 79, ECF No. 107-74. On October 26, 2016, the day after DSE's third cease-and-desist letter, ComicMix retained counsel, which responded to DSE just two days later, on October 28, 2016, detailing the basis for ComicMix's assertion of fair use; Hauman sent Kickstarter a counternotice that same day, explaining that the *Boldly* project had been "misidentified as infringing." TD Decl. Ex. 74, ECF No. 107-69; SOF ¶¶ 107-109. DSE filed suit on November 10, 2016. On February 2, 2017, ThinkGeek inquired if there were any updates on *Boldly*, and Hauman responded, "I would LOVE to offer it to you, but the lawsuit grinds on." TD Decl. Ex. 66, ECF No. 107-62. Defendant's initial motion to dismiss was then pending, and Hauman told ThinkGeek he would "get the book on press," but only "if the ruling comes down in our favor." *Id.* This underscores Defendants' consistent good faith toward DSE. They have kept *Boldly* unpublished pending a "favorable ruling," even though DSE never moved for a preliminary injunction. *Id.* DSE alleges no facts inconsistent with Defendants' genuinely believing they had fair use rights to create and move forward with *Boldly*. (By contrast, DSE came to Defendants in bad faith. It recklessly insisted that *Boldly* was not a fair use sight unseen, before a draft was even completed. And it systematically cut Defendants off from their backers, their publishing partner, and their only purchase order.)

For much the same reasons that bad faith cannot be found, the Court should deny DSE's motion for summary judgment on the issue of willfulness, and grant summary judgment to Defendants on their Tenth Affirmative Defense (No Willful Infringement) as to the copyright claims. "Continued use of a work even after one has been notified of his or her alleged infringement does not constitute willfulness so long as one believes reasonably, and in good faith, that he or she is not infringing." *Evergreen Safety Council v. RSA Network, Inc.*, 697 F.3d 1221, 1228

19

(9th Cir. 2012). "'[O]ne who has been notified that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not 'willful' for these purposes.'" *Id.* (quoting 4 M. & D. Nimmer, *Nimmer on Copyright* § 14.04 (rev. ed. 2012). Defendants genuinely believe in their fair use right to use Dr. Seuss, to the extent used in *Boldly*, and they acted on that belief. Nothing about that merits the heightened damages of a willful infringement award.

### B.   Second Factor (Nature of the Copyrighted Work)

DSE asserts that *Grinch*, *Sneetches*, and *Go!* are "highly creative." Mem. p. 25. That is undisputed. But "this factor typically has not been terribly significant in the overall fair use balancing," *Seuss v. Penguin* at 1402, and it is never determinative. The little weight accorded to the second factor should be treated as neutral in this case; where a defendant "could not create [its work] without necessarily making some copies of the [plaintiff's work] … this factor 'neither supports nor hurts [defendant's] claim that a fair use defense is appropriate here.'" *Sony Computer Entm't Am., Inc. v. Bleem, LLC*, 214 F.3d 1022, 1028 (9th Cir. 2000) (quoting *Triangle Publ'ns, Inc. v. Knight-Ridder Newspapers, Inc.*, 626 F.2d 1171, 1176 (5th Cir. 1980)).

### C.   Third Factor (Amount and Substantiality of the Portion Used)

The Court has found that the third factor does not weigh against fair use. *ComicMix I* at 1107-08. DSE's argument for changing that assessment rests on a false claim that Defendants admitted they used too much. Mem. pp. 25-26. What really happened: after they were sued, Hauman and Templeton briefly batted around the idea of modifying *Boldly*'s artwork to make it less directly linked to particular Dr. Seuss illustrations. But as Templeton had maintained, those links are essential to Defendants' transformative purpose. Lesser, or less discriminate, use of Dr. Seuss works would have led to a less aesthetically satisfying mash-up. Requiring such changes would not serve the purposes of copyright or fair use.

20

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;
REQUEST FOR RELIEF PURSUANT TO FED. R. CIV. P. 56(f)(1)          Case No. 16-cv-2779-JLS-BGS

Defendants' use of Dr. Seuss was not "as much as possible," *id.* p. 26; it was "no more than necessary," *ComicMix I* at 1109.

### D.     Fourth Factor (Effect on the Potential Market for the Work)

The fourth factor remained largely unresolved at the motion to dismiss stage in *ComicMix I* and *ComicMix II* before evidence was produced. After two years of litigation, DSE musters only a brief, unsustainable argument that the fourth factor should still weigh in its favor. Mem. pp. 27-29. DSE contends that *Boldly* is a market substitute that would directly supplant sales of *Go!*, "usurp" DSE's opportunity to license a hypothetical "collab" with CBS/Paramount, and threaten "the entire market for authorized collaborative works." *Id.* DSE's suppositions are not a valid basis to accept its Doomsday scenarios, or to further delay Defendants' opportunity to publish their creative mashup. The Court should now find that the fourth factor weighs in favor of Defendants and grant them summary judgment on the copyright claims and their Twelfth Affirmative Defense of Fair Use.

First, *Boldly* is not a direct market substitute for *Go!*, *Grinch*, or *Sneetches*, as the Court found at first view; it does not "supplant the market for *Go!* or the other relevant Dr. Seuss works" and "does not substitute for the original and serves a different market function than *Go!*." *ComicMix I* at 1106 & 1108.

DSE's contentions to the contrary are all immaterial, baseless, or both. It claims that *Boldly* "was designed to target" the market it claims for *Go!*: a "gift for graduating students." Mem. p. 27. Defendants did not "design" *Boldly* for that market; until DSE derailed the production schedule, ComicMix aimed to get *Boldly* to AMP, and then to ThinkGeek, in time for Black Friday 2016, not graduation season. And it is immaterial that *Boldly* could someday join that graduation market, because it would not supplant *Go!* there. By its nature, *Boldly* is not a primary replacement for Dr. Seuss books, but a complementary work. See *ComicMix I* at 1108 ("*Boldly*'s market relies on consumers who have *already* read and greatly appreciated *Go!* and Dr. Seuss's other works[.]").

21

DSE notes that *Boldly* was to be a 48-page, 8.5x11 inch, hardcover book. Mem. p. 28. DSE has no copyright or other exclusive right over those common production specifications.[1] DSE points to testimony by Gerrold that the cover of *Boldly* "looks like a Star Trek children's book" (implicating at most a CBS market in which DSE does not compete) or "looks like it was produced by Dr. Seuss" (implicating at most trademark concerns immaterial to the Motion and to copyright fair use). *Id.* His descriptions of the cover add nothing to the Court's assessment, especially because he "had no input on the artwork." Gerrold Transcript at 69:4-15; see *id.* at 83:3-84:25 (Gerrold did not discuss "what the illustration should look like" with Hauman or Templeton; was not the "art director"; and "wasn't given cover approval"). DSE's last stab at claiming direct market substitution in the "market for graduation gifts" is not probative evidence but a hypothetical: "it is reasonable to assume that some prospective *Go!* buyers would instead buy *Boldly.*" Mem. p. 28. It is not reasonable to assume that DSE has any right to prevent that.

Next, DSE mentions that it "has also published several books that are derivative of the DSE Works, including derivatives of *Go!.*" *Id.* As explained above, *Boldly* is not derivative but transformative. It does not substitute for or compete with any existing, DSE-licensed, derivative book or other product, e.g., "merchandise and apparel based on *Go!.*" SOF ¶ 144; see TD Decl. Ex. 107. DSE raises no contention to the contrary; it does not identify any current derivative book or product that *Boldly* might harm.

DSE's argument under the fourth factor instead focuses on its theoretical, future opportunities for "collabs," which is DSE-speak for joint-licensing projects using DSE intellectual property and another party's intellectual property to create a

---

[1] Page counts in multiples of eight are a publishing industry standard because of the use of "signatures" in the printing process. "A signature is a group of consecutive pages (usually thity-two, but sometimes sixty-four, sixteen, eight, etc.) formed by folding a large single sheet of paper bearing printed pages on both sides." The Chicago Manual of Style ¶ 15.193 (14th ed. 1993). For example, *Go!* has 48 pages, while *Grinch* and *Sneetches* have 64. See TD Decl. Exs. 9-9, 9-10 & 9-11.

new work. See TD Decl. Ex. 4 ("Brandt Transcript"; under seal) at 155:14-21; SOF ¶ 153. The licensed "collabs" identified by DSE are:

- *The Wubbulous World of Dr. Seuss*, a late 1990's children's television series produced by the Jim Henson Company, and a series of books adapted from the television series published by Random House, SOF ¶¶ 154-155, TD Decl. Exs. 113-117, Brandt Transcript at 125:1-129:18, FAC ¶ 24;

- "*Grinch Panda Pop*, a digital game that combines Jam City's Panda character with Seuss's Grinch character," SOF ¶ 156, Brandt Transcript at 157:15-25, TD Decl. Ex. 93 p. 6 & Exs. 124-125;

- "a line of Comme des Garçons clothing combining Comme des Garçons' heart design with *Grinch* artwork," SOF ¶ 156, TD Decl. Ex. 93 p. 5;

- "Dr. Seuss Funko figurines, which combine Funko Inc.'s toy designs with Dr. Seuss characters," SOF ¶ 156, TD Decl. Ex. 94 p. 5 & Exs. 121-23;

- "numerous, film-related books," SOF ¶ 156, Brandt Transcript at 136:5-137:8;

- "PBS-related books based on *The Cat In The Hat Knows A Lot About That* [television] series," SOF ¶ 156, Brandt Transcript at 158:1-160:10; and

- "other projects currently planned for future release." SOF ¶ 156.

DSE's licensed "collabs" are not remotely similar to *Boldly*. First, as noted, they all prominently feature Dr. Seuss characters. *Boldly* does not. It draws on other elements of Dr. Seuss books as a model for new illustrations set in the *Star Trek* universe. With more than 100 *Star Trek* characters, *Boldly* features original text in Seuss-like anapestic tetrameter, laced with knowing *Star Trek* references and mature, decidedly non-Seuss-like topics, such as: "You'll encounter lovers of every hue (though they'll never be back for an episode two)." TD Decl. Ex. 31 p. 8. A free-wheeling, recombinant mash-up like *Boldly*, created without the quality controls and close monitoring DSE claims to employ for licensed uses, would be inherently taboo for DSE. SOF ¶¶ 129-131; Mem. p. 8.

DSE claims that "[c]ombining the DSE Works with *Star Trek* intellectual property to create a new illustrated work is exactly the type of 'collab' project that DSE might license." Mem. p. 23. But DSE tells its collab partners a very different story. ███████████████████████████████████████████

DSE is not reasonably likely to face competitive harms or miss "collab" derivative licensing opportunities because of *Boldly*, or any other works of *Boldly*'s hybrid nature, which occupy a market it will not let any licensee enter. That market for transformative mashups is not a "traditional, reasonable, or likely to be developed market" for DSE. *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1179 (9th Cir. 2013). *See also Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 592 (1994) ("The market for potential derivative uses includes only those that creators of original works would in general develop or license others to develop.").

Instead of probative evidence of potential market effects, DSE offers up a Doomsday scenario in which allowing fair use mashup creators to "freely create collaborative mash-ups without permission of the affected copyright holders" somehow threatens to destabilize the market for licensed works altogether. Mem. p. 24. No such threat is credible. Copyrights are essentially time-limited monopolies over specific creative works, and copyright holders, like any other monopolists, have market power. DSE, which was "named the top licensed book brand" of 2017, has more than most. SOF ¶ 159; see *id.* ¶ 137 ("Dr. Seuss is one of the best-selling children's book authors in the world."). By contrast, Defendants required a

Kickstarter campaign to raise $20,000 needed for *Boldly*'s initial print run, TD Decl. Ex. 40, ECF No. 107-50; and "Defendants started a GoFundMe page to supplement the costs of litigation" (which DSE, oddly, sees as a "material fact"). SOF ¶ 127. DSE has market share and market power beyond the dreams of Defendants and fair use creators like them. *Boldly* and similar mashups are unlikely to have any appreciable effect on DSE. And due to DSE's competitive advantages, *Boldly* could not preclude or hinder a hypothetical, licensed "collab" with CBS, which would succeed or fail on its own merits regardless of Defendants. As a complementary work, *Boldly* could add to consumer interest in Dr. Seuss, creating a market benefit for DSE; otherwise, as a book relying on readers who have already made their way through Dr. Seuss books, *ComicMix I* at 1108, no negative market effect can be reasonably expected. DSE does not show otherwise.

### E.    Additional Considerations (The Purposes of Copyright)

The four factors must be "weighed together, in light of the purposes of copyright." *Campbell*, 510 U.S. at 578; ECF No. 40-1 pp. 21-22. Copyright law's "ultimate aim is … to stimulate artistic creativity for the general public good." *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975). And the goal of fair use "is to facilitate a class of uses that would not be possible if users always had to negotiate with copyright proprietors." *Kienitz v. Sconnie Nation LLC*, 766 F.3d 756, 759 (7th Cir. 2014). Those purposes favor finding *Boldly* a fair use. This innovative mashup will never reach the public if Defendants need permission from adverse parties. DSE should not have the power to "stifle the very creativity which [copyright] law is designed to foster." *Seuss v. Penguin*, at 1399.

### V.    Conclusion

Wherefore, and for the reasons stated in their motion for summary judgment, Defendants respectfully request that the Court deny DSE's Motion, and grant them summary judgment on the copyright claims and their Tenth, Twelfth, and Thirteenth Affirmative Defenses.

Respectfully submitted,

/s/ Dan Booth
Dan Booth (admitted *pro hac vice*)
Booth Sweet LLP

Michael Licari (SBN 265241)
Sprinkle Lloyd & Licari LLP
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this January 3, 2019 I electronically filed the
foregoing document by using the Court's ECF system, thereby causing a true copy
thereof to be served upon counsel of record for Plaintiff Dr. Seuss Enterprises, L.P.,
as identified on the Notice of Electronic Filing.

/s/ Dan Booth

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;
REQUEST FOR RELIEF PURSUANT TO FED. R. CIV. P. 56(f)(1)          Case No. 16-cv-2779-JLS-BGS