Dan Booth (MA Bar No. 672090)
BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
dbooth@boothsweet.com
(617) 250-8602
*Admitted Pro Hac Vice*

Michael Licari (SBN 265241)
SPRINKLE LLOYD & LICARI LLP
2801 B Street, Unit 556
San Diego, CA 92102
mike@SL2Law.com
(858) 717-0013
*Local Counsel*

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DR. SEUSS ENTERPRISES, L.P.**, <br><br> Plaintiff, <br><br> v. <br><br> **COMICMIX LLC**; **GLENN HAUMAN**; **DAVID JERROLD FRIEDMAN** a/k/a **DAVID GERROLD**; and **TY TEMPLETON**, <br><br> Defendants. | Case No.: 3:16-cv-02779-JLS-BGS <br><br> **DEFNDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT [ECF No. 108]** <br><br> Assigned to Hon. Janis L. Sammartino United States District Judge <br><br> Hearing Date:  February 7, 2019 <br> Hearing Time:  1:30 p.m. <br> Hearing Place:  Schwartz Courthouse, <br> Courtroom 4D |

Pursuant to CivLR 7.1(e)(3) and the Court's Order Setting Briefing Schedule on Motions for Summary Judgment and *Daubert* Motions (ECF No. 111), Defendants ComicMix LLC ("ComicMix"), Glenn Hauman ("Hauman"), David Gerrold ("Gerrold"), and Ty Templeton ("Templeton") (collectively "Defendants") hereby file this reply in further support of their Motion for Summary Judgment ("MSJ"; ECF No. 108), to address Plaintiff Dr. Seuss Enterprises, L.P.'s ("DSE") memorandum in opposition thereto (ECF No. 119; "Opposition" or "Opp.").

**A.  The Court should grant judgment to Defendants on the copyright claims.**

DSE contends that because the MSJ focuses on the fair use defense, "Defendants effectively concede DSE's *prima facie* case of infringement." Opp. p. 16. Defendants do not contest that their unpublished book *Oh, the Places You'll Boldly Go!* ("*Boldly*") makes use of elements of Dr. Seuss works. But as a matter of law, "fair use is not an infringement." *Lenz v. Univ. Music Corp.*, 815 F.3d 1145, 1153 (9th Cir. 2016); 17 U.S.C. § 107. And as Defendants have shown, at least one of the allegedly infringed works, the *Sneetches* illustration and story "The Zax," derives from work in *Redbook* that has entered the public domain. See ECF No. 120 pp. 8-9. The 1961 registration and 1989 renewal of the copyright for the *Sneetches* book, ECF No. 107-6 & 107-7, did not cure the failure to timely renew the *Redbook* copyrights, which cast the original versions of those works into the public domain. DSE cannot make out a *prima facie* infringement claim based on public domain elements of works like "The Zax." See *Cooling Sys. & Flexibles v. Stuart Radiator, Inc.*, 777 F.2d 485, 490-91 (9th Cir. 1985) (citing 17 U.S.C. § 103(b)).

DSE gives the Court no reason to disturb its findings as to the first three fair use factors, and no reason to doubt that the fourth factor favors fair use.

DSE asserts that under the first factor, its summary judgment motion showed that *Boldly* is commercial, "not transformative," developed "in bad faith," and "violates DSE's right to created derivative works." Opp. p. 17. While *Boldly* is commercial, DSE adduced no evidence to undermine the Court's finding that it is

1

1   highly transformative. DSE's flat assertion that *Boldly* and *Go!* share "the same

2   purpose and function" because both are entertaining, illustrated, and uplifting

3   books, is not evidence. ECF No. 107-1 pp. 21-22. Upon reviewing *Boldly*, the

4   Court rightly found that it "serves a different market function" than *Go!*, appealing

5   to people who have already read Dr. Seuss. *ComicMix I*, at 1108. DSE's assertion

6   of bad faith, based on Defendants making use of Dr. Seuss elements and seeking to

7   publish their mashup, "does not hint at any fact that would support a finding that

8   Defendants believed *Boldly* was anything but a fair use." ECF No. 120 pp. 17-18.

9   And DSE's contention that *Boldly* is simply a derivative work, not transformative,

10  because it (1) exists and (2) "substantially incorporates protected material from

11  DSE Works," would disqualify any third-party work from fair use. *Id.* p. 17

12  (quoting ECF No. 107-1 p. 24).

13          As for the third factor, DSE posits that Defendants "took more than

14  necessary" to create their mashup because (again) of "the substantiality of the

15  taking from DSE," and because after they were sued, Defendants discussed whether

16  they could have taken less and achieved the same results. See ECF No. 107-1 p. 26.

17  But that does not alter the calculus. DSE's evidence shows that Defendants had

18  concluded that taking less, to make *Boldly* less visually reminiscent of *Go!* or the

19  other Seuss books, would have undermined its purposes. See, e.g., Declaration of

20  Tamar Duvdevani (ECF No. 107-22; "TD Decl.") Ex. 68, ECF No. 107-64.

21          Nothing in DSE's Opposition or DSE's own motion for summary judgment

22  would justify the Court altering its analysis of the first three fair use factors. And

23  now that evidence is in, the fourth factor analysis must be found to support fair use.

24          DSE seeks to avoid its obligation to muster some evidence of market harm.

25  Opp. p. 18. Because *Boldly* has not been published, it is insufficient for DSE to rest

26  on speculation and offer no expert testimony on market harm. See, e.g., *Universal*

27  *City Studios, Inc. v. Sony Corp. of Am.*, 480 F. Supp. 429, 439-40 (C.D. Cal. 1979)

28  (noting plaintiffs had presented, in the absence of any existing evidence of injury,

"extensive expert testimony at trial on the issue of prospective harm"); see *id.* at 451-52. In *Sony* (the "Betamax" case), the plaintiffs "were unable to prove that the practice [of 'time-shifting' TV programs by videotaping them for later viewing] has impaired the commercial value of their copyrights or has created any likelihood of future harm." *Sony Corp. of Am. v. Universal Studios, Inc.*, 464 U.S. 417, 421 (1984). "What is necessary is a showing by a preponderance of the evidence that future harm will result. If the intended use is for commercial gain, that likelihood may be presumed. But if it is for a noncommercial purpose, the likelihood must be demonstrated." *Id.* at 451. The same principle applies in the case of a highly transformative work like *Boldly*; potential market harm cannot be presumed, so it must be shown. *ComicMix II*, at 1082. And where the plaintiff offers no evidence that the defendant's use "harmed any existing market or a market that [the plaintiff] was likely to develop," any evidence that the defendant's use "did not perform the same 'market function' as the original" will tip the fourth factor in favor of fair use. *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1179 (9th Cir. 2013).

DSE contends that "*Boldly* was designed to serve the exact same market function as *Go!*." Opp. p. 18. But *Go!* is a children's book; DSE and its publisher, Random House Children's Books, agree that it is "███████████████." TD Decl. Ex. 97. *Boldly* was designed and touted on Kickstarter as "a parody mash-up … that brings together two of the most beloved creations in history … that's familiar and brand new at the same time." TD Decl. Ex. 40, ECF No. 107-50 p. 3. As *Boldly* author (and *Star Trek* scriptwriter) David Gerrold testified, "Dr. Seuss' demographic is everybody up to seven or eight years old," while *Star Trek* "is for a very adult demographic. … Now we understood that this kind of Star Trek/Dr. Seuss mashup would not work for kids who have not seen this episode. We're not competing with Dr. Seuss' book, we're doing this thing for adults who are familiar with all the episodes … it was intended as an adult parody of a kids book[.]" TD Decl. Ex. 2, ECF No. 107-24 at 43:3-45:1.

3

As the Court determined on first viewing *Boldly*, its "market relies on consumers who have already read and greatly appreciated *Go!* and Dr. Seuss's other works, and who simultaneously have a strong working knowledge of the *Star Trek* series." *ComicMix I*, at 1108. Consumers in that incidental, secondary market have left the primary market for *Go!* (and *Sneetches* and *Grinch*) so "*Boldly* does not substitute for the original and serves a different market function that *Go!*." *Id.*

Defendant's expert economics witness Dr. Joshua Gans found evidence supporting the Court's initial finding, and further suggesting that "far from having a detrimental effect on Dr. Seuss products, *Boldly* is reasonably likely to have a positive impact on sales of Dr. Seuss books, including *Go!* and the other Seuss books." ECF No. 110-1 ("Gans Report") p. 10. He found that other books that make transformative use of Dr. Seuss books are likely complements to Dr. Seuss books, not substitutes for them. *Id.* pp. 10-12. Such transformative books are, according to Amazon, "frequently bought together" with the original Dr. Seuss books; Amazon further reports that customers who bought the later work "also bought" the original. *Id.* p. 12. Dr. Gans reasonably finds Amazon's statements of such joint purchases provides evidence "that *Go!* and the other Seuss books, and works derivative or transformative thereof [like *Boldly*], are likely to serve as complements rather than substitutes in the eyes of consumers." *Id.* at p. 13.

DSE has offered no evidence that other unlicensed complements have had any negative effect on the market for Dr. Seuss books or its derivative works. See ECF No. 108-1 pp. 10-11. The *Grinch* parody play *Who's Holiday* premiered on Broadway in late 2017 after overcoming DSE's cease-and-desist letters. DSE was nevertheless able to license *The Grinch*, a derivative film that premiered in late 2018, reportedly the highest-grossing holiday film of all time. In April 2017, DSE's own publisher made a featured title of a *Go!* parody book, *Oh, the Meetings You'll Go To!*. It has not limited DSE's ability to capitalize on *Go!* with more derivative works. See TD Decl. Ex. 108 pp. 12-13; see also ECF No. 107-2 ¶¶ 143-144.

DSE contends that "Defendants themselves sought to make *Boldly* a substitute purchase for *Go!* in the graduation gift market." Opp. p. 21. It offers no basis to ascribe the intentions of third parties to Defendants. DSE presents evidence that Defendants' intended publishing partner Andrews McMeel Publishing discussed certain publishing plans for *Boldly* in internal emails to which Defendants were not privy (and still are not, because they are designated Highly Confidential-Attorney's Eyes Only). See TD Decl. Ex. 47, 48, 49, 57, 58. Until DSE intervened, all evidence is that Defendants and Andrews McMeel sought to fulfill the Kickstarter orders, and their one purchase order from ThinkGeek, by Christmas 2016, not graduation time. See ECF No. 120 pp. 5-6 & 14. When ThinkGeek could not get the book sooner, it wanted *Boldly* in time for 2017 graduations. See *id.* p. 14; TD Decl. Ex. 3 at 184:2-16. But Hauman would only entertain the possibility of such post-complaint sales "if the ruling comes down in our favor." ECF No. 120 p. 19; TD Decl. Ex. 66, ECF No. 107-62. Evidence that he hoped to belatedly fulfill ThinkGeek's Christmas order does not show that Defendants wanted *Boldly* to compete as a graduation gift.

Any evidence DSE mustered to indicate a potential market harm does not overcome Defendants' showing that any market effects would likely be benign and limited. DSE's Opposition simply ignores the point that *Boldly* would operate in a "fair use market" for readers who enjoy the creative freedom of unlicensed mashups, unlikely to interfere with DSE's potential derivative market for a licensed "collab." ECF No. 108-1 pp. 12-13; ECF No. 120 pp. 22-25. And DSE does not address, or overcome, the broader interests that copyright and fair use serve to protect: to "promote the Progress of Science and useful Arts," as provided by the Progress Clause, U.S. Const. Art. 1, § 8, cl. 8; to "stimulate artistic creativity for the general public good," *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975); and to free up productive uses from the gauntlet of negotiating restrictive licenses, see ECF No. 120 p. 25. "[I]f fair use was not viable in a case such as this,

5

1   an entire body of highly creative work would be effectively foreclosed." *ComicMix*

2   *I*, at 1108-09. The Copyright Act "'limits the rights of a copyright owner regarding

3   works that build upon, reinterpret, and reconceive existing works.'" *Id.* (quoting

4   *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 799 (9th Cir. 2003)). To

5   serve the purposes of copyright, any close call must weigh in favor of fair use.

6       And this is no close call. There is a paucity of evidence that *Boldly* might

7   harm a reasonably likely potential market for DSE. The first and fourth factors,

8   "generally viewed as the most important factors," *Seltzer*, 725 F.3d at 1179, both

9   weigh in favor of fair use. The second, least significant factor (*Walking Mountain*,

10  353 F.3d at 803) weighs at most slightly against, and the third is neutral. Viewing

11  all factors together in light of the purposes of copyright, the Court should find that

12  fair use supports *Boldly* and grant Defendants judgment on the copyright claims.

13  **B.  The Court should grant judgment to Defendants on the trademark claims.**

14      DSE claims trademark rights in Dr. Seuss's general "illustration style," and

15  in a "stylized font" found on the cover of Dr. Seuss books other than *Go!*. But the

16  former is not protectable, and the latter is not used by *Boldly*. The expert report,

17  grounded on the notion that the style and font are both trademarks at issue, is

18  wholly irrelevant. And the *Rogers* test protects *Boldly*. Under *Rogers*, when the

19  defendant shows that "its allegedly infringing use is part of an expressive work

20  protected by the First Amendment … then the plaintiff claiming trademark

21  infringement bears a heightened burden … [It] must show (1) that it has a valid,

22  protectable trademark, and (2) that the mark is either not artistically relevant to the

23  underlying work *or* explicitly misleading as to the source or content of the work."

24  *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 264-65 (9th Cir. 2018). DSE puts

25  forth no factual issue to meet its burden and salvage its trademark claims.

26      If DSE's claimed "illustration style of the characters and backgrounds found

27  throughout Dr. Seuss books" mark was valid, it would include everything on every

28  page of every Dr. Seuss book except their text. DSE still "does not allege trademark

rights in any specific character or background image," which is all that a trademark could plausibly protect. *ComicMix II*, at 1086. Trademarks are specific words or designs, not an overall illustration "style" protected by copyright law.

Courts routinely dismiss "endeavors to enforce what is at best a copyright claim through the mechanism of trademark protection." *Galerie Furstenburg v. Coffaro*, 697 F. Supp. 1282, 1290 (S.D.N.Y. 1988). DSE may not expand its time-limited copyrights into potentially infinite trademark rights. "To allow the first producer of such pictures to prevent others from copying them, save as he can invoke the Copyright Law, would sanction a completely indefensible monopoly." *Nat'l Comics Publs., Inc. v. Fawcett Publs., Inc.*, 191 F.2d 594, 603 (2d Cir. 1951) (affirming dismissal of unfair competition claim). "[E]xtending trademark protection to a particular style of artistic expression would improperly extend trademark law into the area of copyright protection." *Munro v. Lucy Activewear, Inc.*, Civ. No. 16-79, 2016 U.S. Dist. LEXIS 135692, *17 (D. Minn. Sept. 29, 2016), *aff'd in pertinent part*, 899 F.3d 585, 590 (8th Cir. 2018) ("copyright, not trademark, protects artistic and creative ideas and concepts").

DSE gives no good reason why the Court should be the first to find that an illustration style is proprietary under trademark law, after so many other courts and the leading treatise have determined that it cannot be. The case DSE cites for the principle, *Romm Art Creations v. Simcha Int'l, Inc.*, 786 F. Supp. 1126 (E.D.N.Y. 1992), was decided "without directly addressing the issue of whether an artist's visual style can be considered a trademark" and to the extent it is construed to stand for that proposition, *Romm Art* "is contrary to the basic tenets of trademark law." *Leigh v. Warner Bros.*, 10 F. Supp. 2d 1371, 1381 (S.D. Ga. 1998), *aff'd in pertinent part*, 212 F.3d 1210 (11th Cir. 2000). DSE mentions that McCarthy's treatise discusses the case but notably fails to convey what it says: that *Romm Art* is "a unique result that seriously impinges on the copyright law's policy that artistic style is no one's exclusive property." McCarthy on Trademarks at 8:6 n.9.

1    A style is part and parcel of the goods; an inseparable element of the content

2    that exists "not as a separate and distinct mark *on the good*, but, rather, as the good

3    itself." *Leigh*, 212 F.3d at 1218 (quoting *Rock & Roll Hall of Fame & Museum, Inc.*

4    *v. Gentile Prods.*, 134 F.3d 749, 754 (6th Cir. 1998)). The copyrightable content of

5    Dr. Seuss books is not a set of DSE trademarks, any more than footage of Larry

6    Fine and Curly and Moe Howard is cognizable as "a collection of trademarks of

7    The Three Stooges." *Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593,

8    596 (9th Cir. 2000). "The Lanham Act "'does not protect the content of a creative

9    work of artistic expression' because an 'artist's right in an abstract design or other

10   creative work' is protected by copyright law.'" *Ward v. Andrews McMeel Publ'g,*

11   *LLC*, 963 F. Supp. 2d 222, 235 (S.D.N.Y. 2013) (quoting *EMI Catalogue P'ship v.*

12   *Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 63 (2d Cir. 2000)).

13   DSE claims a multitude of "elements that comprise the style" of Dr. Seuss:

14   his pencil and ink work, and the appearances of his characters, buildings, machines,

15   backgrounds, and landscapes. Opp. p. 11. Those are all elements of the copyrighted

16   illustrations; calling them elements of a trademark "style" does not extend DSE's

17   proprietary rights past what copyright protects. See *Leigh*, 10 F. Supp. 2d at 1381-

18   82. Much of Dr. Seuss's illustration work with those copyrighted elements is in the

19   public domain or is otherwise not DSE property. See ECF No. 120 p. 9; *Geisel v.*

20   *Poynter Prods.*, 295 F. Supp. 331, 354 (S.D.N.Y. 1968) ("Despite the fantastic and

21   imaginary character of [Dr. Seuss's] cartoon animals … some of their 'component

22   parts' exist in nature[.]"). Dr. Seuss's style, as displayed in public domain *Redbook*

23   works like "The Zaks," is not a proper basis for DSE's trademark claims. See

24   *Chamberlain v. Columbia Pictures Corp.*, 186 F.2d 923 (9th Cir. 1951) (affirming

25   dismissal of claim of unfair competition over public domain Mark Twain story).

26   The alleged "stylized font" trademark claim fails for the same reason—and

27   because *Boldly* does not use that "Seuss font." DSE alleges that *Boldly* infringes on

28   a "font used consistently on the front and back covers, spine, and title page of Dr.

Seuss books." ECF No. 39 ¶ 17. DSE's Style Guide undercuts that. DSE claims it created proprietary, source-indicative fonts as replicas of Dr. Seuss's lettering style. Opp. p. 11; ECF No. 119-1, DSE Statement of Additional Facts ("DSE SOAF") ¶¶ 4-7 & 11-13. DSE's president and Rule 30(b)(6) designee Susan Brandt testified, "████████████████████████████████████████████████████████████████ ████████████████████████████████." TD Decl. Ex. 4 ("Brandt Transcript") at 256:10-16, 258:3-16. The Style Guide provides several "custom fonts" and identifies when to use them. DSE SOAF ¶¶ 11-12. ██████████████████████ ████████████████████████████████████████████████████████ ██████ TD Decl. Ex. 85 ("Style Guide") p. 13. ████████████████████ ████████████████████████████████████████ Brandt Transcript at 319:19-320:8; see DSE003599 (Style Guide p. 11). But ██████████████ the font in which the title of *Go!* appears on its cover is not that "Seuss font," which is thinner and blockier. ██ ████████████████████████████████████████████████████████████████ ████████████████████████████████████ So the font on the cover of *Go!* is not the allegedly infringed font used "consistently" on Dr. Seuss books. The "Seuss font"██████████████████████████████████████████████████ is on the cover, spine, and title page of, for example, *Grinch* and *Sneetches* (TD Decl. Ex. 10 & 11; see also ECF No. 69-3); and some DSE-licensed derivative works (see TD Decl. Ex. 109, 111, 115-117). But it is not used on the cover, spine, or title page of *Go!*, licensed derivatives of *Go!*, or, critically, *Boldly*. See TD Decl. Ex. 9, 31, 100-106.

     DSE's trademark claim relies on an expert witness report premised on the presumption that "DSE could potentially establish trademark rights in the Dr. Seuss illustration style and font." ECF No. 119-3 p. 4. "The survey was specifically designed to scientifically assess the extent to which the <u>illustration style and font</u> of *Boldly* causes consumers to mistakenly believe that *Boldly* is created or published by, or is sponsored or endorsed by, Seuss." *Id.* p. 7 (emphasis in original). But Seussian style is not protectable per se as a mark, and the "Seuss font" is not used

on or in *Boldly*. DSE's mistakes of law and fact infect DSE's expert report, leaving it too fatally flawed to pose any obstacle to summary judgment for Defendants.[1]

And the trademark claims are absolutely subject to dismissal under *Rogers*. The test is simple: trademarks used in an expressive work like *Boldly* do not violate the Lanham Act if they have at least some artistic relevance, unless they explicitly mislead as to their source or content. *Mattel, Inc. v. MCA Records*, 296 F.3d 894, 902 (9th Cir. 2002); see *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008) (extending *Rogers* to the body of expressive works). Seussian style and a Seussian font are artistically relevant to a Seuss/*Star Trek* mashup. *Boldly* does not explicitly mislead; it explicitly disclaims any association with or endorsement from DSE). And it does not use DSE's alleged marks "in the same way" as DSE. *Gordon*, 909 F.3d at 270. *Boldly* uses no Dr. Seuss characters, unlike any Dr. Seuss book or DSE-licensed derivative book that DSE has identified. It uses Seussian style to illustrate *Star Trek* tropes and riff on the interplay between the two creative universes (e.g., "boldly go"), themes not found in *Go!* or other Dr. Seuss books and DSE works. The alleged marks are "used as only one component of [Defendants'] larger expressive creation," *id.* at 271, in connection with *Star Trek* references and original text and artwork; as DSE put it, "combining the DSE Works with *Star Trek* intellectual property." ECF No. 107-1 p. 28. DSE concedes it has made no such use in collaboration with CBS Studios. *Id.* Under *Rogers*, *Mattel*, and *Gordon*, DSE's dubious trademarks cannot prevent Defendants' First Amendment right to create *Boldly* and go where no DSE collab has gone before.

The Court should enter summary judgment for Defendants on all claims.

---

[1] The expert report's other fatal flaws would render its probative value too minimal to overcome its prejudicial effect. It relies on a "Control Group" version of *Boldly*, redrawn "by an artist associated with DSE," Opp. p. 9, with exaggerated stylistic quirks, in a disingenuously naïve, rough-edged, outsider-art style that survey respondents, unsurprisingly, were less likely to think DSE sponsored.

1  Dated:  January 14, 2019          BOOTH SWEET LLP

2                                    *s/ Dan Booth*

3                                    Dan Booth (admitted *pro hac vice*)
                                     32R Essex Street, Suite 1A
4                                    Cambridge, MA 02139
                                     Tel:  617.250.8602
5                                    Fax:  617.250.8629

6

7                                    SPRINKLE LLOYD & LICARI LLP

8
                                     Michael Licari
9                                    2801 B Street, Unit 556
                                     San Diego, CA 92102
10                                   Tel:  858.717.0013

11

12                                   *Attorneys for Defendants*
                                     *ComicMix LLC, Glenn Hauman,*
13                                   *David Gerrold, and Ty Templeton*

14

15                      **CERTIFICATE OF SERVICE**

16          I hereby certify that on this January 14, 2019 I electronically filed the

17  foregoing document by using the Court's ECF system, thereby causing a true copy

18  thereof to be served upon counsel of record for Plaintiff Dr. Seuss Enterprises, L.P.,

19  as identified on the Notice of Electronic Filing.

20                                             /s/ Dan Booth

21

22

23

24

25

26

27

28