GINA L. DURHAM (Bar No. 295910)
gina.durham@dlapiper.com
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
Tel: 415.836.2500
Fax: 415.836.2501

STANLEY J. PANIKOWSKI (Bar No. 224232)
stanley.panikowski@dlapiper.com
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101
Tel: 619.699.2700
Fax: 619.699.2701

ANDREW L. DEUTSCH (Bar No. 319286)
andrew.deutsch@dlapiper.com
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400, North Tower
Los Angeles, CA 90067-4704
Tel: 310.595.3000
Fax: 310.595.3300

Tamar Y. Duvdevani (admitted *pro hac vice*)
tamar.duvdevani@dlapiper.com
Marc E. Miller (admitted *pro hac vice*)
marc.miller@dlapiper.com
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel: 212.335.4500
Fax: 212.335.4501

Ryan Compton (admitted *pro hac vice*)
ryan.compton@dlapiper.com
James Stewart (admitted *pro hac vice*)
james.stewart@dlapiper.com
DLA PIPER LLP (US)
500 Eight Street, NW
Washington, D.C. 20004
Tel: 202.799.4000
Fax: 202.799.5000

*Attorneys for Plaintiff*
*Dr. Seuss Enterprises, L.P.*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. SEUSS ENTERPRISES, L.P., a California limited partnership,<br><br>Plaintiff,<br><br>v.<br><br>COMICMIX LLC, a Connecticut limited liability company; MR. GLENN HAUMAN, an individual; MR. DAVID JERROLD FRIEDMAN A/K/A DAVID GERROLD, an individual; and MR. TY TEMPLETON, an individual,<br><br>Defendants. | CASE NO.: 3:16-cv-02779-JLS-BGS<br><br>**PLAINTIFF DR. SEUSS ENTERPRISES L.P.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date: February 7, 2019<br>Time: 1:30 pm<br>Courtroom: 4D<br>Judge: The Hon. Janis L. Sammartino |

## TABLE OF CONTENTS

**Page**

I. *BOLDLY* INFRINGES DSE'S COPYRIGHTS ................................................. 1

    A. DSE Owns Valid Copyrights In The DSE Works ................................ 1

    B. Defendants Copied The DSE Works To Create *Boldly* ...................... 2

II. *BOLDLY* IS NOT A FAIR USE OF DSE'S COPYRIGHTS .......................... 2

    A. Factor One Favors DSE ........................................................................ 3

    B. Factor Two Favors DSE ....................................................................... 6

    C. Factor Three Favors DSE ..................................................................... 6

    D. Factor Four Favors DSE ....................................................................... 7

        1. *Boldly* Is Likely To Harm DSE's Market For *Go!* ...................... 8

        2. *Boldly* Is Likely To Harm DSE's Market for Derivatives .......... 9

III. CONCLUSION ............................................................................................ 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Berkla v. Corel Corp.*,
 66 F. Supp. 2d 1129 (E.D. Cal. 1999) .................................................................. 2

*Bridgeport Music, Inc. v. UMG Recordings, Inc.*,
 585 F.3d 267 (6th Cir. 2009) ................................................................................ 5

*Campbell v. Acuff-Rose Music, Inc.*,
 510 U.S. 569 (1994) ........................................................................................... 10

*Dille Family Trust v. Nowlan Family Trust*
 207 F. Supp. 3d 535 (E.D. Pa. 2016) .................................................................... 5

*DSE v. ComicMix*,
 256 F. Supp. 3d 1099 (S.D. Cal. 2017) ............................................................ 3, 7

*DSE v. ComicMix*,
 300 F. Supp. 3d 1073 (S.D. Cal. 2017) ............................................................ 2, 9

*DSE v. Penguin Books USA, Inc.*,
 109 F.3d 1394 (9th Cir. 1997) .............................................................................. 6

*Kienitz v. Sconnie Nation LLC*,
 766 F.3d 756 (7th Cir. 2014) ................................................................................ 5

*Klinger v. Conan Doyle Estate*,
 988 F. Supp. 2d 879 (N.D. Ill. 2013), *aff'd,* 755 F.3d 496 (7th Cir.
 2014) ..................................................................................................................... 1

*Paramount Pictures, Corp. v. Axanar Productions, Inc.*,
 2017 WL 83506 (C.D. Cal. Jan. 3, 2017) ........................................................ 8, 10

*Rogers v. Koons*,
 960 F.2d 301 (2d Cir. 1992) ............................................................................. 2, 7

*Salinger v. Colting*,
 641 F. Supp. 2d 250 (S.D.N.Y. 2009), *rev'd on other grounds*, 607
 F.3d 68 (2d Cir. 2010) ........................................................................................ 10

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Seltzer v. Green Day, Inc.*,
   725 F.3d 1170 (9th Cir. 2013) .......................................................................... 3, 8

*Silverman v. CBS Inc.*,
   870 F.2d 40 (2d Cir. 1989) .................................................................................... 1

*Walt Disney Prods. v. Air Pirates*,
   581 F.2d 751 (9th Cir. 1978) ............................................................................ 6, 7

**STATUTES**

17 U.S.C. § 107 ............................................................................................................ 4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(f)(1) .............................................................................................. 10

4 Nimmer, *Nimmer on Copyright* § 13.01[B] ............................................................. 2

-iii-
MEMO OF P&A ISO MOTION TO EXCLUDE GANS TESTIMONY
USDC CASE NO. 3:16-CV-02779-JLS-BGS

DLA Piper LLP (US)
San Diego

WEST\284875063.8

## I.  *BOLDLY* INFRINGES DSE'S COPYRIGHTS

### A.  DSE Owns Valid Copyrights In The DSE Works

DSE's opening papers proved that it owns valid copyrights in the DSE Works.  (ECF No. 107-2 ("SOF") ¶¶ 2-4.)  In response, Defendants rehash an argument from their failed motion for a reference to the Register of Copyrights (ECF No. 57), but do not offer any new facts that alter the Court's finding that DSE's registrations are valid.  (ECF No. 88.)  Dr. Seuss wrote and illustrated two stories that appeared in *Redbook* magazine: "The Sneetches" (July 1953) and "The Zaks" (March 1954).  The publisher of *Redbook* registered copyright in these issues of *Redbook*, and the copyright was later assigned to Theodore Geisel.  (*See* ECF No. 69 at 3.)  Defendants contend that Geisel did not renew copyright in the two *Redbook* stories, and that under the 1909 Copyright Act the stories passed into the public domain 28 years after registration.  (ECF No. 120 ("Opp.") at 8-9.)

Even if true, this fact does not preclude summary judgment in DSE's favor.  In 1961, Dr. Seuss created *The Sneetches and Other Stories* ("*Sneetches*"), and DSE is suing for infringement of the copyright in *Sneetches*.  (ECF No. 39 at ¶ 16; SOF ¶ 3).  Two stories in *Sneetches*, "The Sneetches" and "The Zax," although partly based on the *Redbook* stories, contained new illustrations created by Dr. Seuss.[1]  The new illustrations or their new elements remain protected by the *Sneetches*' copyright even if the *Redbook* stories had fallen into the public domain.  *See Silverman v. CBS Inc.*, 870 F.2d 40, 50 (2d Cir. 1989) ("increments of expression" added to a public domain work are protectable); *Klinger v. Conan Doyle Estate*, 988 F. Supp. 2d 879, 890-93 (N.D. Ill. 2013), *aff'd,* 755 F.3d 496 (7th Cir. 2014)

---

[1] The Dr. Seuss drawing that Defendants copied from "The Sneetches" in *Sneetches* was entirely new to that book.  The drawing that they copied from "The Zax" in *Sneetches* is based on, but distinctly different from, the illustration in the *Redbook* "Zaks" story.  Dr. Seuss made non-trivial changes in creating the later work, and Defendants plainly copied his new material, as can be seen in the illustration at pp. 30-31 of *Boldly*.  (SOF ¶¶ 47, 49, 52-53; ECF No. 107-23 at 166:14-173:8.)

(copying from elements of Sherlock Holmes stories that remained under copyright deemed infringement). The illustrations at pp. 29-30 and 30-31 of *Boldly* are substantially copied from the illustrations in *Sneetches* (ECF No. 107-23 at 166:14-173:8), and therefore infringe that copyright. Defendants' validity attack thus fails.

### B. Defendants Copied The DSE Works To Create *Boldly*

"[T]his case presents the rare scenario where there is direct evidence of copying." *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992). The undisputed evidence, which includes Defendants' testimony and written communications, shows that Defendants extensively copied Dr. Seuss's original expression to create *Boldly*. (SOF ¶¶ 33, 48-49, 51-54, 56, 64.) Templeton even admitted that he "did, in fact, slavishly copy from Seuss," to illustrate *Boldly*. (*Id*. at ¶ 54.)

Defendants cannot dispute these material facts, so they make a semantic argument that they "did not admit to 'copying,' but to the use of Dr. Seuss books 'as a model.'" (Opp. at 11.) Wordsmithing cannot help Defendants: "there is no doubt that 'copying' would include using the copyright protected expression as a model or a template for one's own work even if done from memory as opposed to actual or electronic tracing." *Berkla v. Corel Corp.*, 66 F. Supp. 2d 1129, 1140 (E.D. Cal. 1999) (citing 4 Nimmer, *Nimmer on Copyright* § 13.01[B]). Also, Defendants' statement that "[n]o DSE character appears in *Boldly*" is wrong. (Opp. at 12.) Defendants did, in fact, copy *Go!*'s protagonist (the "boy") on *Boldly*'s cover and throughout *Boldly* in the same location, in the same pose, and with the same facial features as the original. (SOF ¶ 52.) DSE's <u>authorized</u> *Go!* derivative also uses of a modified "boy" in this manner. (*See* Duvdevani Reply Decl. Ex. 1.)

## II. *BOLDLY* IS NOT A FAIR USE OF DSE'S COPYRIGHTS

As shown in DSE's opening papers, and in its opposition to Defendants' motion for summary judgment, the undisputed record amply supports the Court's pre-discovery conclusion that "Defendants' fair use defense fails as a matter of law." *DSE v. ComicMix,* 300 F. Supp. 3d 1073, 1082 (S.D. Cal. 2017) ("ComicMix

II").

## A. Factor One Favors DSE

The extensive discovery record shows that *Boldly* is highly commercial, not transformative, was developed in bad faith, and violates DSE's derivative works right. (ECF No. 107-1 at 14-20.) Thus, the first factor favors DSE.

Defendants do not dispute that they were driven by profit in creating *Boldly*.[2] (Opp. at 16.) Moreover, as demonstrated in DSE's opening brief (ECF No. 107-1 at 22-24), and again below at Sec. III(D) *infra*, discovery has shown that *Boldly* is likely to harm the market for *Go!* and for derivatives of the DSE Works. Defendants cling to the Court's pre-discovery finding that *Boldly* "does not supplant the market for *Go!*" because "*Boldly*'s market relies on consumers who have already read and greatly appreciated *Go!*..., and who simultaneously have a strong working knowledge of the *Star Trek* series." (Opp. at 16 (quoting *DSE v. ComicMix,* 256 F. Supp. 3d 1099, 1108 (S.D. Cal. 2017).) Defendants have not presented any evidence that supports this early impression. To the contrary, the record facts demonstrate that *Boldly* was intended to serve the same exact market function as *Go!*. They show that *Boldly* was to be made at "a professional level of production," was intended to function as an illustrated "48 pages, 8.5x11," hardcover book (just like *Go!*), that "match[es] the look and feel of Seuss books" (like *Go!*), to be sold through online and brick and mortar bookstores (just like *Go!*), as a graduation gift (just like *Go!*), and with the same uplifting message and spirit as *Go!* (SOF ¶¶ 38, 40, 84, 86; ECF No. 119-1 ("SOAF") ¶¶ 49-54.)

The undisputed facts below also refute Defendants' false and misleading statements that they "sought to complete the book in time for Black Friday 2016

---

[2] This is unlike *Seltzer v. Green Day, Inc*., 725 F.3d 1170 (9th Cir. 2013), cited by Defendants, where the Court found that defendant's use of plaintiff's artwork, in a background video during a concert, was "only incidentally commercial; the band never used it to market the concert, CDs, or merchandise." *Id*. at 1178.

sales," and that *Boldly* "remain[ing] on the market 'during graduation season'. . . is not evidence of intentional competition or free-riding." (Opp. at 16):

- Major publisher AMP ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (SOF ¶¶ 75, 92.)

- Hauman *knew* that AMP planned to print "an exclusive early edition," just to fill ThinkGeek's Black Friday promotion and the Kickstarter backers' copies, ***but*** that *Boldly* would be "publish[ed] fully in the Spring," *i.e.*, graduation season. (SOF ¶ 91.)

- On February 2, 2017, ThinkGeek contacted Hauman for an update, as it would "LOVE to offer *Boldly*… for Graduation." (SOF ¶ 103.) Hauman replied: "I would LOVE to offer it to you, but the lawsuit grinds on." (Opp. at 19.) Defendants quote Hauman's reply but omit that it was a response to ThinkGeek's request to offer *Boldly* for graduation. ( *Id.*.)

- Pending the outcome of this litigation, Hauman hoped to provide to ThinkGeek "new orders in time for school graduations." (SOF ¶ 121.)

In addition, Defendants' statement that "readers who have already digested *Go!* are no longer in the market for it" is simply wrong. *Go!* is a perennial best-selling graduation ***gift*** book, meaning that a single person may both read *Go!* for themselves and still buy multiple additional copies as gifts for others.

DSE also showed that *Boldly* is not "transformative" under 17 U.S.C. § 107 because it has the same intrinsic purpose and function as *Go!*. Defendants admit that they "meticulously" copied *Go!* to create an illustrated book that kept *Go!*'s "sentiment" by delivering the same uplifting message of exploration and growth— albeit by also ripping off *Star Trek*—that appeals to graduates. (SOF ¶¶ 33, 37, 38, 49, 56.) Unable to dispute these facts, Defendants again stick to the Court's pre-discovery finding that *Boldly* is "transformative." Defendants' *a priori* assertions that *Boldly* must be transformative because it is a mash-up and "mash-ups do not fulfill the same purpose as their source works," cannot change the facts: *Boldly* was conceived and designed to serve the same intrinsic purpose and function as *Go!*.

(Opp. at 17.)

DSE also showed that *Boldly* violated DSE's exclusive § 106(2) derivative rights, because it: (1) exists in a concrete form (a book, a copy of which is before the Court)[3] (SOF ¶ 47); and (2) substantially uses protected material from the DSE Works. (ECF No. 107-1 at 4-7, 13-14.) *See Kienitz v. Sconnie Nation LLC*, 766 F.3d 756, 758 (7th Cir. 2014). DSE's evidence in support of the fourth fair use factor also shows a violation of its derivative rights. *See* Sec. III(D), *infra*.

Finally, most of the evidence demonstrating that Defendants acted in bad faith was unavailable to the Court in its earlier considerations of fair use. (SOF ¶¶ 8-12, 16-17, 23-24, 41, 114.) The cases cited by Defendants do not rebut a conclusion of bad faith: they involved implied licenses, where acts by a plaintiff gave a defendant a reasonable basis for believing that it had the right to use a work. (Opp. at 19.) But Defendants have not raised an implied license defense (*see* ECF No. 53), and have proffered zero evidence that DSE's conduct permitted an inference that DSE would acquiesce in *Boldly*'s publication. To the contrary, Defendants *knew*, well before receiving DSE's first letter, that DSE resolutely enforces its rights in its intellectual property and would object to *Boldly*. (SOF ¶¶ 23, 76.) And, as explained in DSE's opening brief (ECF No. 107-1 at 24-25), Defendants' claim that they "genuinely" believed *Boldly* was a fair use without consulting counsel was unreasonable in light of the evidence and does not show good faith. *See Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 279 (6th Cir. 2009) (to show a good-faith belief in fair use, a defendant must take "reasonable steps to assure fair use before infringement.").

---

[3] Defendants' contention that an "unpublished draft" is neither "tangible" nor a "discrete product" is beyond the pale. *Boldly* is in "final" form (SOF ¶ 47) and would have been published had DSE not intervened to enforce its rights. Defendants' contention finds no support in their cited *Dille Family Trust v. Nowlan Family Trust* case, a Lanham Act case concerning possible future uses of plaintiff's BUCK ROGERS trademark. 207 F. Supp. 3d 535, 545 (E.D. Pa. 2016).

In light of the evidentiary record that was previously unavailable, the Court should revise its earlier conclusion and find that the first factor weighs heavily against fair use.

### B. Factor Two Favors DSE

Defendants concede that the DSE Works are highly creative (Opp. at 20), which "tilts the scale against fair use." *DSE v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1402 (9th Cir. 1997). They point to no new law or facts that would alter the Court's prior finding that this factor favors DSE.[4]

### C. Factor Three Favors DSE

Defendants contend that their substantial copying was "essential" because "[l]esser, or less discriminate, use of the Dr. Seuss works would have led to a less aesthetically satisfying mash-up" and that "extensive copying is routine in a fair use case." (Opp. at 18, 20.) The Ninth Circuit has flatly rejected these arguments. The defendant in *Walt Disney Prods. v. Air Pirates*, 581 F.2d 751, 758 (9th Cir. 1978), asserted that it copied from plaintiff no more than necessary because parody is "best achieved when at first glance the material appears convincingly to be the original, and upon closer examination is discovered to be quite something else." *Id.* The Ninth Circuit disagreed:

> The short answer to this assertion, which would also justify substantially verbatim copying, is that when persons are parodying a copyrighted work, the constraints of the existing precedent do not permit them to take as much of a component part as they need to make the 'best parody.' Instead, their desire to make the 'best parody' is balanced against the rights of the copyright owner in his original expressions. That balance has been struck at giving the parodist what is necessary to conjure up the original, and in the absence of a special need for accuracy . . . that standard was exceeded here. By copying the images in their entirety, defendants took more than was necessary to place firmly in the reader's mind the parodied work and those specific attributes that are to be

---

[4] This case does not involve "intermediate copying" of video games or any facts similar to the Ninth Circuit cases cited by Defendants. (Opp. at 20.)

> satirized. . . . Because the amount of defendant's copying exceeded permissible levels, summary judgment was proper.

581 F.2d at 758.

Here, Defendants copied the DSE Works down to "incidental bits" of minutiae, to make *Boldly* look "nearly identical" to the DSE Works. (SOF ¶¶ 52-54.) This copying is far more than what would have been necessary to "conjure up" Seuss even if *Boldly* were a parody, which it is not. *ComicMix*, 256 F. Supp. 3d at 1106. That Defendants partially drafted an alternative version to "take[] away" their infringement problem shows that Defendants' extensive takings went well beyond their "needs."[5] "In short, it is not really the parody flag that [Defendants] are sailing under, but rather the flag of piracy. Moreover, because [the Court has] already determined that [*Boldly*] is not a parody of [DSE's] work, [Defendants] cannot avail themselves of this heightened tolerance under a parody defense." *Koons*, 960 F.2d at 310-11.

Defendants' incorrect view that they may steal extensively from Dr. Seuss to make the most "aesthetically satisfying mash-up," along with the undisputed evidence demonstrating that they could have taken far less from the DSE Works, shows that factor three weighs against a finding of fair use.

### D. Factor Four Favors DSE

On July 12, 2016, Hauman, who masterminded *Boldly*, wrote that while he was worried about "the Dr. Seuss people," "**it's more likely that [DSE will] see the product and want to publish it themselves and give us a nice payday for doing so**." (ECF No. 107-43 at 2 (emph. added).) This striking admission contradicts Defendants' conclusory assertions regarding the fourth factor, including

---

[5] Defendants correctly note that DSE misquoted its Exhibit 24 as Templeton offering to revert to his other layouts "if it helped." (Opp. at 13.) Templeton actually wrote that he was "not averse" to reverting to his "new" layouts (as opposed to the ones he created by "slavishly" copying Seuss) if "it takes away our problems" and "solves problems." (SOF ¶ 54, 124; ECF No. 107-38, Ex. 30.)

-7-

that DSE is "not reasonably likely to face competitive harms or miss 'collab' derivative licensing opportunities because of *Boldly*" or that *Boldly* is not in a "traditional, reasonable, or likely to be developed market" for DSE.[6]  (Opp. at 24.)

The factual record proves DSE's allegations that *Boldly* is likely to harm the market for *Go!* and derivatives of the DSE Works.  Defendants fill their brief with rhetoric and criticism of DSE's position (*e.g.*, "Doomsday scenarios"), but fail to proffer a shred of admissible evidence, or raise a triable issue of fact, to dispute it.

### 1. *Boldly* Is Likely To Harm DSE's Market For *Go!*

Whether or not this Court views *Boldly* as transformative in the sense relevant to fair use, the undisputed facts developed in discovery show that market substitution is likely.  Defendants designed *Boldly* as a market substitute for *Go!*, knowing that *Go!* is a best-selling graduation gift, and knowing that their publishing partner and first wholesale purchaser both intended to market *Boldly* as a graduation gift.  (SOF ¶¶ 75, 91-92, 102.)  Defendants made extensive use of the DSE intellectual property to convey the same message as *Go!* and to reach the same audience of graduates and graduation gift-buyers, while selling through the same channels as *Go!*.  (SOF ¶¶ 36-38, 49-50, 52, 55, 60, 75, 84, 86, 92, 100-101, 103, 121, 124, 141, 143-144, 148; SOAF ¶¶ 26, 28, 36, 39, 41-44, 49-54.)  "Under these facts, Defendants evidently intend[ed] for their work to effectively function as a market substitution to [*Go!*]." *Paramount Pictures, Corp. v. Axanar Productions, Inc.*, 2017 WL 83506, at *9 (C.D. Cal. Jan. 3, 2017).  Indeed, had Defendants and their publisher and wholesalers acted on this plan to target "fans of Seuss" and "Trek" in the Spring, a substantial number of purchasers would have bought *Boldly*, rather than *Go!*, as a graduation gift.

---

[6] In *Seltzer*, plaintiff failed to show that his art was previously licensed for use in a music video, the allegedly infringing use made by defendant. *Seltzer*, 725 F.3d at 1179.  DSE, however, has provided voluminous evidence that it licenses the DSE Works for the creation of other illustrated works.

In their opposition, Defendants offer zero evidence to support their conclusion that "*Boldly* is not a primary replacement for Dr. Seuss books." (Opp. at 21.) This is because all of the evidence before the Court supports DSE's position.

### 2. *Boldly* Is Likely To Harm DSE's Market for Derivatives

In *ComicMix II*, the Court found for DSE on the fourth factor and held that DSE's allegations of harm to the market for its derivative works "shifts the balance more in [DSE]'s favor." 300 F. Supp. 3d at 1082. DSE has now proven those allegations with facts, and Defendants fail to offer any evidence to the contrary.

Defendants conclude that because *Boldly* is "transformative," "[i]t does not substitute for or compete with any existing, DSE-licensed, derivative book or other product, *e.g.*, 'merchandise of apparel based on *Go!*.'" (Opp. at 22.) The Court rejected this conclusory assertion at the pleading stage,[7] and the undisputed facts support DSE's allegations that it: (1) has published books derivative of the DSE Works, many of which are written and illustrated by authors and artists other than Dr. Seuss (SOF ¶¶ 141-143); (2) oversees a robust licensing program for the DSE Works (SOF ¶¶ 129-130; SOAF ¶ 2); (3) has partnered, and will partner, with other rights holders on licensed "collaborations" that combine Dr. Seuss's works with another property to create new works (SOF ¶¶ 153-157); and that (4) *Boldly* is *exactly* the type of derivative collaboration that DSE might license. (*Id*.) The Court also rejected Defendants' prior efforts to distinguish *Boldly* from DSE's licensed derivatives, finding that "[a]lthough these books may not be mash-ups like *Boldly*, there is a potential market for a literary mash-up involving Plaintiff's books; such a market would not be unlikely based on Plaintiff's past licensing programs." *ComicMix II*, 300 F. Supp. 3d at 1082.

Finally, Defendants' last-ditch attempts to avoid liability fail. First, *Boldly*

---

[7] *ComicMix II*, 300 F. Supp. 3d at 1082 ("Defendant's production of *Boldly* may result in an adverse impact on Plaintiff's derivative market and the Court therefore finds there is potential harm to the market for Plaintiff's derivative works.").

*does* use a Dr. Seuss character—a derivation of *Go!*'s protagonist—just like authorized *Go!* derivatives do. (SOF ¶¶ 52, 142.) In fact, *Oh, Baby! Go, Baby!* does not include any other Dr. Seuss characters than its modified "boy" and copies the same imagery from *Go!* that Defendants stole for *Boldly*. (Duvdevani Reply Decl. Ex. 1.) Second, that *Boldly* "draws on other elements" of Dr. Seuss books besides characters is not a defense; indeed, DSE has licensed non-character "creative elements" of its works, including to Jim Henson to create *The Wubbulous World of Dr. Seuss*. (ECF No. 107-22, Exs. 118-120.) Third, DSE's president—and defendant Hauman, for that matter—believed it likely that DSE would want to publish a work like *Boldly*. (SOF ¶¶ 153-157.) The DSE Style Guide could be modified by contract with such a collaborator. (SOAF ¶ 22.) Fourth, DSE has created works that appeal to mature audiences: indeed, *Go!* itself is marketed to adults. (SOF ¶ 147.) Fifth, should DSE chose not to create a work like *Boldly*, it nevertheless has the right to bar others from doing so. *See Salinger v. Colting*, 641 F. Supp. 2d 250, 267-68 (S.D.N.Y. 2009), *rev'd on other grounds*, 607 F.3d 68 (2d Cir. 2010); *Paramount*, 2017 WL 83506, at *9.

Overall, Defendants' view that DSE must prove market harm by showing that it had plans to publish something akin to *Boldly* is legal fallacy, and necessarily ignores that this factor "consider[s] not only the extent of market harm caused by … the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant" would harm DSE's licensing program. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 587, 590 (1994).

### III. CONCLUSION

Defendants have infringed the DSE Works and cannot carry their burden on fair use. The Court therefore should grant DSE summary judgment on its copyright claims and deny Defendants' requests for relief pursuant to Fed. R. Civ. P. 56(f)(1).

| | | |
|---|---|---|
| 1 | Dated:  January 18, 2019 | Respectfully submitted, |
| 2 | | By */s/ Tamar Duvdevani* |
| 3 | | TAMAR DUVDEVANI<br>DLA Piper LLP (US) |
| 4 | | *Attorneys for Plaintiff*<br>*Dr. Seuss Enterprises, L.P.* |