GINA L. DURHAM (Bar No. 295910)
gina.durham@dlapiper.com
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
Tel:  415.836.2500
Fax:  415.836.2501

STANLEY J. PANIKOWSKI (Bar No. 224232)
stanley.panikowski@dlapiper.com
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101
Tel:  619.699.2700
Fax:  619.699.2701

ANDREW L. DEUTSCH (Bar No. 319286)
andrew.deutsch@dlapiper.com
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400, North Tower
Los Angeles, CA 90067-4704
Tel:  310.595.3000
Fax:  310.595.3300

Tamar Y. Duvdevani (admitted *pro hac vice*)
tamar.duvdevani@dlapiper.com
Marc E. Miller (admitted *pro hac vice*)
marc.miller@dlapiper.com
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel:  212.335.4500
Fax: 212.335.4501

Ryan Compton (admitted *pro hac vice*)
ryan.compton@dlapiper.com
James Stewart (admitted *pro hac vice*)
james.stewart@dlapiper.com
DLA PIPER LLP (US)
500 Eight Street, NW
Washington, D.C. 20004
Tel:  202.799.4000
Fax: 202.799.5000

*Attorneys for Plaintiff*
*Dr. Seuss Enterprises, L.P.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. SEUSS ENTERPRISES, L.P., a California limited partnership,<br><br>Plaintiff,<br><br>v.<br><br>COMICMIX LLC, a Connecticut limited liability company; MR. GLENN HAUMAN, an individual; MR. DAVID JERROLD FRIEDMAN A/K/A DAVID GERROLD, an individual; and MR. TY TEMPLETON, an individual,<br><br>Defendants. | Case No.:  16-cv-02779-JLS-BGS<br><br>**PLAINTIFF DR. SEUSS ENTERPRISES, L.P.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS RENEWED MOTION FOR SUMMARY JUDGMENT**<br><br>Date:    June 10, 2021<br>Time:    1:30 pm<br>Ctrm:    4D<br>Judge:   Hon. Janis L. Sammartino |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   PRELIMINARY STATEMENT ................................................................... 1

II.  PROCEDURAL HISTORY .......................................................................... 3

    A.   The Prior Motions For Summary Judgment ........................................ 3

    B.   This Court's Summary Judgment Decision, the Appeal, and The Ninth Circuit's Mandate ................................................................... 3

III. ARGUMENT .............................................................................................. 4

    A.   Applicable Legal Standards ............................................................... 4

        1.   Standard For Proceedings Following A Mandate ..................... 4

        2.   Standard On A Motion For Summary Judgment........................ 7

    B.   Defendants Infringed DSE's Copyrights in the DSE Works as a Matter of Law......................................................................................... 8

    C.   Defendants Willfully Infringed the DSE Works................................. 9

    D.   The Court Should Award Increased Statutory Damages To DSE...... 15

IV.  CONCLUSION ......................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ......................................................................................... 7

*Asante v. California Dep't of Health Care Servs.*,
    330 F. Supp. 3d 1198 (N.D. Cal. 2018) ............................................................ 6

*Bridgeport Music, Inc. v. UMG Recordings, Inc.*,
    585 F.3d 267 (6th Cir. 2009) ........................................................................... 13

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994) ......................................................................................... 2

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ......................................................................................... 7

*Desire, LLC v. Manna Textiles, Inc.*,
    986 F.3d 1253 (9th Cir. 2021) .................................................................... 16, 20

*Disney Enterprises, Inc. v. San Jose Party Rental*,
    10-cv-511, 2010 WL 3894190 (N.D. Cal. Oct. 1, 2010) ................................ 19

*Dr. Seuss Enterprises L.P. v. ComicMix LLC*,
    19-cv-55348 (9th Cir. Aug. 15, 2019) .............................................................. 4

*Dr. Seuss Enterprises L.P. v. ComicMix LLC*,
    19-cv-55348 (9th Cir. Jan. 11, 2021) ............................................................... 4

*Dr. Seuss Enterprises, L.P. v. ComicMix LLC*,
    372 F. Supp. 3d 1101 (S.D. Cal. 2019), *aff'd in part, rev'd in part and*
    *remanded,* 983 F.3d 443 (9th Cir. 2020) ..................................................... 3, 8

*Dr. Seuss Enterprises L.P. v. ComicMix LLC*,
    983 F.3d 443 (9th Cir. 2020) ...................................................................passim

*Dr. Seuss Enterprises, L.P. v. ComicMix LLC*,
    No. 16-cv-2779-JLS (BGS), 2018 WL 2298197 (S.D. Cal. May 21, 2018) ....... 8

**<u>TABLE OF AUTHORITIES</u>**
**(continued)**

**Page**

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,
  109 F.3d 1394 (9th Cir. 1997) ................................................................... 11, 14, 15

*Erickson Prods., Inc. v. Kast*,
  921 F.3d 822 (9th Cir. 2019) ............................................................................... 10

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*,
  344 U.S. 228 (1952) ............................................................................................ 16

*Fabric Selection, Inc. v. NNW Import, Inc.*,
  No. 16-cv-08558, 2018 WL 1779334 (C.D. Cal. Apr. 11, 2018) ...................... 13

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 ......................................................................................................... 8

*Firth v. United States*,
  554 F.2d 990 (9th Cir. 1977) ................................................................................ 5

*Funky Films, Inc. v. Time Warner Entm't Co.*,
  462 F.3d 1072 (9th Cir. 2006) .......................................................................... 8, 9

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  131 S. Ct. 2060 (2011) ....................................................................................... 10

*Google LLC v. Oracle America, Inc.*,
  No. 18-956, 2021 WL 1240906 (Apr. 5, 2021) ................................................. 3, 5

*Hall v. City of Los Angeles*,
  697 F.3d 1059 (9th Cir. 2012) .............................................................................. 4

*Harris v. Emus Records Corp.*,
  734 F.2d 1329 (9th Cir. 1984) ............................................................................ 16

*In re Cellular 101, Inc.*,
  539 F.3d 1150 (9th Cir. 2008) .......................................................................... 6, 8

*JP Morgan Chase Bank v. Las Vegas Dev. Grp., LLC*,
  740 F. App'x 153 (9th Cir. 2018) ......................................................................... 6

*Korolshteyn v. Costco Wholesale Corp.*,
  393 F. Supp. 3d 1019 (S.D. Cal. 2019) ................................................................ 5

1

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Los Angeles News Serv. v. Reuters Television Int'l,*
   149 F.3d 987 (9th Cir. 1998) ................................................................. 16

*Luvdarts, LLC v. AT&T Mobility, LLC,*
   710 F.3d 1068 (9th Cir. 2013) ............................................................... 10

*Magnesystems, Inc. v. Nikken, Inc.,*
   933 F. Supp. 944 (C.D. Cal. 1996) ......................................................... 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986) ................................................................................ 7

*Microsoft Corp. v. Nop,*
   549 F. Supp. 2d 1233 (E.D. Cal. 2008) ................................................. 17

*Monge v. Maya Mags., Inc.,*
   688 F.3d 1164 (9th Cir. 2012) ................................................................. 2

*Nguyen v. United States,*
   792 F.2d 1500 (9th Cir. 1986) ................................................................. 6

*Peer Int'l Corp. v. Pausa Records, Inc.,*
   909 F.2d 1332 (9th Cir. 1990) ................................................... 12, 15, 19

*Reebok Int'l Ltd. v. Jemmett,*
   87-cv-1415, 1990 WL 261362 (S.D. Cal. Oct. 4, 1990) .................... 17, 19

*Rentmeester v. Nike, Inc.,*
   883 F.3d 1111 (9th Cir. 2018) ................................................................. 8

*Sealant Sys. Int'l, Inc. v. TEK Glob., S.R.L.,*
   No. 5:11-cv-00774-PSG, 2016 WL 7741725 (N.D. Cal. May 31, 2016) ........... 5

*Stacy v. Colvin,*
   825 F.3d 563 (9th Cir. 2016) ............................................................. 4, 5

*The Muppets Studio, LLC v. Pacheco,*
   12-cv-7303, 2013 WL 2456617 (C.D. Cal. Jun. 6, 2013) .................... 19

*Three Lakes Design v. Savala,*
   No. 17-cv-01757, 2019 WL 1979918 (E.D. Cal. May 3, 2019) .......... 17

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Twentieth Century Fox Film Corp. v. Dastar Corp.*,
No. 97-cv-7189, 2000 WL 35503106 (C.D. Cal. Aug. 29, 2000)..................... 13

*Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*,
996 F.2d 1366 (2d Cir. 1993) ........................................................................... 13

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
853 F.3d 980 (9th Cir. 2017) ........................................................................... 10

*United States v. Montgomery*,
462 F.3d 1067 (9th Cir. 2006) ...................................................................... 5, 9

*Uthe Tech. Corp v. Allen*,
No. C 95-02377 WHA, 2016 WL 1427557 (N.D. Cal. Apr. 12, 2016).............. 5

*VBConversions LLC v. Alir*,
12-cv-08265, 2013 WL 12439538 (C.D. Cal. Oct. 22, 2013)........................... 19

*VHT, Inc. v. Zillow Grp., Inc.*,
918 F.3d 723 (9th Cir. 2019) ........................................................................... 10

*Virgin Recs. Am., Inc. v. Cantos*,
No. 06-cv-915-L (CAB), 2008 WL 2326306 (S.D. Cal. June 3, 2008)............. 16

*Vizcaino v. U.S. Dist. Ct. for W. Dist. of Washington*,
173 F.3d 713 (9th Cir. 1999) ....................................................................... 5, 14

*Washington Shoe Co. v. A-Z Sporting Goods Inc.*,
704 F.3d 668 (9th Cir. 2012) ........................................................................... 10

*Wendell v. SmithKline Beecham*,
No. 09-cv-04124-CW, 2018 WL 6267855 (N.D. Cal. Aug. 15, 2018) .............. 5

*Werner v. Evolve Media, LLC*,
18-cv-7188, 2020 WL 4012784 (C.D. Cal. Jun. 22, 2020)............................... 18

**STATUTES**

17 U.S.C. §504(c)(1) ............................................................................................ 16

17 U.S.C. § 504(c)(2) ...................................................................... 1, 16, 18, 20

# TABLE OF AUTHORITIES
### (continued)

**Page**

17 U.S.C § 505.........................................................................................................19

**OTHER AUTHORITIES**

FED. R. CIV. P. 56(a) ...............................................................................................7

U.S. Const. art. I, § 8, cl. 8 ....................................................................................18

Plaintiff Dr. Seuss Enterprises, L.P. ("DSE") respectfully submits this memorandum of law in support of its renewed motion for summary judgment on its copyright claim against defendants ComicMix LLC, David Jerrold Friedman, Glenn Hauman, and Ty Templeton's ("Defendants").

## I.   PRELIMINARY STATEMENT

DSE renews its motion for summary judgment because (1) the mandate of the Ninth Circuit in *Dr. Seuss Enterprises L.P. v. ComicMix LLC,* 983 F.3d 443 (9th Cir. 2020) ("Opinion"), as well as the uncontested facts, require entry of judgment that Defendants' book, *Oh, the Places You'll Boldly Go!* ("*Boldly*") infringed DSE's copyrights, and (2) the uncontested facts show that Defendants' infringement was blatantly willful, and that the Court should therefore award increased statutory damages to DSE under 17 U.S.C. § 504(c)(2).

The central question on the Ninth Circuit appeal was "whether *Boldly's* use of Dr. Seuss's copyrighted works is fair use and thus not an infringement of copyright."  Opinion at 448.  The Ninth Circuit answered that question by decisively finding that all four statutory fair use factors favored DSE and, after weighing the factors together, holding that *Boldly* was not a fair use.  *See id.* at 451. The appellate court reversed this Court's contrary fair use holding and its grant of summary judgment to Defendants on the copyright infringement claim, affirmed the Court's judgment dismissing DSE's trademark claims, and remanded the case for proceedings "consistent with" its Opinion.  *Id.* at 463.

The Ninth Circuit based its conclusion that *Boldly* was not a fair use of DSE's works *Oh, the Places You'll Go!* ("*Go!*"), *How the Grinch Stole Christmas!* ("*Grinch*") and *The Sneetches and Other Stories* ("*Sneetches*") (the "DSE Works") on a detailed analysis of the four statutory fair use factors.  It determined that the first factor (purpose and character of the use) weighed "definitively against fair use" because *Boldly* was a non-transformative commercial work that used DSE's copyrights to "'get attention or to avoid the drudgery in working up something

DLA PIPER LLP (US)
San Francisco

WEST\293803028.1                                    -1-
MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RENEWED MSJ
USDC CASE NO. 16-CV-02779-JLS-BGS

1   fresh.'" *Id*. at 452 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 580
2   (1994)).  On the second factor (nature of DSE's works), the Ninth Circuit held that
3   while not "terribly significant," the creative and expressive nature of the DSE
4   Works tilted against fair use.  *Id*. at 456.  Next, the Ninth Circuit held that the third
5   factor (the amount and substantiality of the portion used in relation to the
6   copyrighted work as a whole) weighed "decisively against fair use." *Id*. at 458.  It
7   noted that Defendants themselves admitted that *Boldly* "could have been created
8   without wholesale copying" of the DSE Works, yet they instead chose to go
9   "closer" to the originals and to "meticulously" replicate the DSE Works down to
10  their painstaking details and their "highly expressive core[s]." *Id.* at 456-458.

11      On the final factor of market harm, the Ninth Circuit held that Defendants
12  had the burden of proving that *Boldly* did not adversely affect actual and potential
13  markets for the DSE Works and that they failed to carry that burden. *See id*. at 458-
14  461.  Indeed, the Ninth Circuit found numerous likely adverse effects from the
15  record evidence: *Boldly* would impact sales of the DSE Works themselves, would
16  "curtail" DSE's very active derivative market for works based on the Dr. Seuss
17  originals, and "the unrestricted and widespread conduct of the sort engaged in by
18  ComicMix could 'create incentives to pirate intellectual property' and
19  disincentivize the creation of illustrated books." *Id* at 461. (quoting *Monge v. Maya
20  Mags., Inc*., 688 F.3d 1164, 1182 (9th Cir. 2012)).

21      The Opinion makes plain that *Boldly* is an unexcused infringement of
22  copyright, as *Boldly* "liberally" copied from and "took the heart" of the highly
23  creative DSE Works for Defendants' commercial purposes.  Opinion at 457.
24  Because *Boldly* is not a fair use as a matter of law and because Defendants have not
25  contested the substantial similarity between *Boldly* and the DSE Works, the
26  mandate rule requires the Court to grant DSE's renewed motion for summary
27  judgment on the copyright claim, and to enter judgment that *Boldly* is an
28  infringement of copyright in the DSE Works.  In addition, as shown in DSE's

1  original summary judgment motion and summarized below, Defendants'

2  infringement was willful, a finding also consistent with and in the spirit of the

3  mandate, and the Court should award increased statutory damages to DSE.

4  **II.    PROCEDURAL HISTORY[1]**

5      **A.    The Prior Motions For Summary Judgment**

6        On December 11, 2018, DSE filed its motion for summary judgment.  (ECF

7  No. 107.)  In relevant part, DSE sought a judgment that *Boldly* infringed the

8  copyrights in the DSE Works and that Defendants' infringement was willful,

9  thereby warranting an award of heightened statutory damages.  (ECF No. 107-1. at

10  24-25.)  Defendants moved for summary judgment on December 11, 2018.  (ECF

11  No. 108.)  On copyright infringement, Defendants argued only that that *Boldly* was

12  a fair use of the DSE Works.  (ECF No. 108-1 at 7-11.)  In its opposition to DSE's

13  motion, Defendants did not dispute that *Boldly* was substantially similar to the

14  copyright-protected portions of the DSE Works; their only defense was that their

15  copying was not infringement because it was fair use.[2]  (ECF No. 120 at 15-25.)

16      **B.    This Court's Summary Judgment Decision, the Appeal, and The Ninth Circuit's Mandate**

17  

18        On March 12, 2019, this Court granted Defendants' motion for summary

19  judgment on fair use and denied DSE's motion for summary judgment "[i]n light of

20  the Court's conclusion that Defendants are entitled to summary judgment on their

21  fair use defense."  *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 372 F. Supp. 3d

22  1101, 1128 (S.D. Cal. 2019), *aff'd in part, rev'd in part and remanded,* 983 F.3d

23  443 (9th Cir. 2020).

24  

---

25  [1] For a full recitation of the facts that support summary judgment in DSE's favor,

26  DSE directs the Court to the Statement of Facts ("SOF") submitted in connection with its original motion for summary judgment.  (ECF No. 107-2.)

27  [2] Defendants' opposition brief, in asserting the tenth affirmative defense of "no willful infringement," acknowledged Defendants' "extensive copying" and "substantial use" of the DSE Works.  As discussed in Section III.C below, the

|28  defense fails because Defendants' infringement was unquestionably willful.

On March 26, 2019, DSE timely appealed the decision to the Ninth Circuit. Its appeal brief argued in relevant part that this Court had erred in its fair use analysis and holding. *Dr. Seuss Enterprises L.P. v. ComicMix LLC*, 19-cv-55348 (9th Cir. Aug. 15, 2019) at Dkt. No. 12. While Defendants filed an opposition to DSE's appeal, they did not notice an appeal from this Court's pre-judgment decision denying their motion to refer the question of whether DSE's copyrights were valid to the Copyright Office. Thus, the only copyright-related question before the Ninth Circuit was "whether *Boldly's* use of Dr. Seuss's copyrighted works is fair use and thus not an infringement of copyright." Opinion at 448.

On December 20, 2020, the Ninth Circuit issued its Opinion, reversing this Court's judgment on copyright fair use, holding that *Boldly* was not a fair use, and remanding the case for proceedings consistent with the Opinion. *See* Opinion at 461, 463. DSE assumes that the Court is familiar with the Opinion but addresses portions relevant to this motion in Section III below.

On January 11, 2021, the Ninth Circuit issued its mandate. *Dr. Seuss Enterprises L.P. v. ComicMix LLC*, 19-cv-55348 (9th Cir. Jan. 11, 2021) at Dkt. No. 94.) That same day this Court issued its Notice of Spreading the Mandate and on March 5, 2021, requested that the parties submit briefing in connection with the same. (ECF Nos. 165, 173.)

## III.   ARGUMENT

### A.   Applicable Legal Standards

#### 1.   Standard For Proceedings Following A Mandate

The rule of mandate "provides that any 'district court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it.'" *Stacy v. Colvin*, 825 F.3d 563, 567-68 (9th Cir. 2016) (quoting *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012)). While the district court may "decide anything not foreclosed by the mandate," it commits "jurisdictional error" if it takes actions that contradict the mandate. *See id*.

1    Moreover, district courts "must implement both the letter and the spirit of the

2    mandate, taking into account the appellate court's opinion and the circumstances it

3    embraces." *United States v. Montgomery,* 462 F.3d 1067, 1072 (9th Cir. 2006)

4    (internal quotations and citation omitted); *see also Vizcaino v. U.S. Dist. Ct. for W.*

5    *Dist. of Washington,* 173 F.3d 713, 719 (9th Cir. 1999) ("On remand, a trial court

6    can only consider 'any issue not expressly or impliedly disposed of on appeal.'")

7    (quoting *Firth v. United States*, 554 F.2d 990, 993 (9th Cir. 1977)).[3]

8            When an appellate mandate reverses a lower court's summary judgment and

9    remands for further proceedings, the parties are permitted to renew motions for

10   summary judgment that were denied on the basis of the district court's now-

11   reversed rulings.  *See, e.g., Sealant Sys. Int'l, Inc. v. TEK Glob., S.R.L.*, No. 5:11-

12   cv-00774-PSG, 2016 WL 7741725, at *1 (N.D. Cal. May 31, 2016) (calling parties'

13   renewed summary judgment motions "[t]he posture [] precisely what one would

14   expect" following a reversal and remand from the Ninth Circuit); *see also, e.g.,*

15   *Korolshteyn v. Costco Wholesale Corp.,* 393 F. Supp. 3d 1019, 1021 (S.D. Cal.

16   2019); *Wendell v. SmithKline Beecham,* No. 09-cv-04124-CW, 2018 WL 6267855,

17   at *2 (N.D. Cal. Aug. 15, 2018); *Uthe Tech. Corp v. Allen*, No. C 95-02377 WHA,

18   2016 WL 1427557, at *1 (N.D. Cal. Apr. 12, 2016) (same).  Accordingly, DSE now

19   renews its motion for summary judgment on its copyright infringement claim,

20   /////

21

22   [3] To the extent Defendants may argue that the Supreme Court's recent decision in
     *Google LLC v. Oracle America, Inc.*, No. 18-956, 2021 WL 1240906 (Apr. 5,
23   2021) has any effect on this case, the Supreme Court itself has preempted any such
     argument.  *Google* involved a very different type of work: a specific type of
24   functional computer code used to form links with other code, as opposed to a
     creative illustrated literary work like *Go!*.  The Supreme Court emphasized the
25   unusually narrow and context-specific of its decision: "The fact that computer
     programs are primarily functional makes it difficult to apply traditional copyright
26   concepts in that technological world. . . . In doing so here, we have not changed the
     nature of those concepts.  We do not overturn or modify our earlier cases involving
27   fair use—cases, for example, that involve 'knockoff' products, journalistic writings,
     and parodies."  *Id.* at *19.  The Supreme Court thus made clear that it has not
28   altered its fair use precedents applicable to literary and artistic works.  Therefore,
     *Google* does not undermine the binding Ninth Circuit ruling.

1   which was denied by this Court solely on the basis of the now-reversed fair use

2   finding.

3        Moreover, it is too late for Defendants even to contest summary judgment of

4   copyright infringement on non-fair use grounds.  To the extent a party did not

5   appeal an issue that was decided by the district court, that issue is abandoned and

6   cannot be revisited.  *See, e.g., In re Cellular 101, Inc.*, 539 F.3d 1150, 1155 (9th

7   Cir. 2008) (appealing party who failed to raise legal argument on appeal could not

8   assert that argument in later proceedings); *Asante v. California Dep't of Health*

9   *Care Servs.,* 330 F. Supp. 3d 1198, 1207 (N.D. Cal. 2018) (same, collecting cases).

10  Similarly, if a party does not raise a particular argument in opposing a motion for

11  summary judgment, that argument is waived and cannot be later asserted on appeal

12  or after remand.  *JP Morgan Chase Bank v. Las Vegas Dev. Grp., LLC,* 740 F.

13  App'x 153, 154 (9th Cir. 2018) ("Las Vegas Development also claims that JP

14  Morgan's claim is barred by the statute of limitations.  However, Las Vegas

15  Development waived this defense by not including it in its opposition to JP

16  Morgan's motion for summary judgment.").  Indeed, "[m]uch of the value of

17  summary judgment procedure in the cases for which it is appropriate…would be

18  dissipated if a party were free to rely on one theory in an attempt to defeat a motion

19  for summary judgment and then, should that theory prove unsound, come back long

20  thereafter and fight on the basis of some other theory." *Nguyen v. United States*,

21  792 F.2d 1500, 1503 (9th Cir. 1986).

22       This waiver doctrine forecloses Defendants from raising any new defense to

23  DSE's renewed motion for summary judgment.  Defendants bet everything on fair

24  use, and having lost fair use on appeal, they cannot change their theory of

25  opposition on remand.  "[W]aiver becomes law of the case." *Magnesystems, Inc. v.*

26  *Nikken, Inc.*, 933 F. Supp. 944, 949-950 (C.D. Cal. 1996).

27  /////

28  /////

## 2.       Standard On A Motion For Summary Judgment

A party may move for summary judgment as to a claim or defense or part of a claim or defense.  FED. R. CIV. P. 56(a).  Summary judgment is appropriate where the court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id*.; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are those that may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.

The moving party bears the burden on establishing the absence of a genuine issue of material fact, and may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of dispute regarding a material fact.  *Id* at 247.  The nonmoving party must then identify specific facts showing that there is a genuine dispute for trial, *Celotex*, 477 U.S. at 324, which requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).  To survive, the nonmoving party must designate specific facts that would allow a reasonable fact finder to return a verdict in its favor.  *Celotex*, 477 U.S. at 324.  "[R]est[ing] upon the mere allegations or denials of his pleadings" is insufficient to defeat summary judgment.  *Anderson*, 477 U.S. at 256.

DSE now renews its motion for summary judgment on three of its previously raised and briefed arguments: (1) Defendants are liable to DSE for copyright infringement of the DSE Works; (2) Defendants' infringement of the DSE Works was willful; and (3) as a result of Defendants' willful conduct, DSE should receive heightened statutory damages.

/////

/////

## B.     Defendants Infringed DSE's Copyrights in the DSE Works as a Matter of Law.

To prevail on copyright infringement, DSE must demonstrate two elements: "'(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'"  *Funky Films, Inc. v. Time Warner Entm't Co*., 462 F.3d 1072, 1076 (9th Cir. 2006) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361(1991)).  With regard to the first element, this Court previously denied Defendants' motion attacking the validity of DSE's copyright registrations and found that they were valid.  *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, No. 16-cv-2779-JLS (BGS), 2018 WL 2298197, at *1 (S.D. Cal. May 21, 2018). Defendants did not cross-appeal from that decision and cannot attack the validity of DSE's copyrights at the remand stage.  *In re Cellular 101, Inc.*, 539 F.3d at 1155.

On the second element, often termed "substantial similarity," "the similarities between the two works must be 'substantial' and they must involve protected elements of the plaintiff's work."  *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018), *overruled in part on other grounds*, *Skidmore as Trustee for Randy Craig Wolfe Trust v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (*en banc*).  DSE's motion showed that Defendants copied directly and extensively from the DSE Works, and that *Boldly* is substantially similar to the protected elements of the DSE Works.  (ECF No. 107-1 at 4-7, 13.)  Defendants did not deny this.  They argued only that their extensive copying was fair use and therefore not infringing.  (ECF No. 120 at 15-25.)  The Court itself noted that absent its finding of fair use, Defendants' conduct would have been found infringing.  *ComicMix*, 372 F. Supp. 3d at 1128.  Since fair use has now been removed from the case, there are no other defenses to infringement that Defendants may raise.

Moreover, the mandate rule requires a finding that *Boldly* infringes DSE's copyrights.  The Ninth Circuit dedicated several passages of its Opinion to detail

1  the quantity of Defendants' use of the DSE Works, finding that Defendants

2  "meticulously copied from *Go!*" including "copy[ing of] the exact composition of

3  the famous 'waiting place' in *Go!*, down to the placements of the couch and the

4  fishing spot." Opinion at 454.  According to the Ninth Circuit, Defendants'

5  "copying was considerable—[they] copied '14 of *Go!*'s 24 pages,' close to 60% of

6  the book, and significant 'illustrations from *Grinch* and two stories in *Sneetches*."

7  *Id.* at 456.  The appellate court continued that "[f]or each of the highly imaginative

8  illustrations copied by ComicMix, it replicated, as much and as closely as possible

9  from *Go!*, the exact composition, the particular arrangements of visual components,

10  and the swatches of well-known illustrations." *Id.*  It also highlighted Defendants'

11  copying of *Sneetches*, "down to the exact shape of the sandy hills in the background

12  and the placement of footprints that collide in the middle of the page." *Id.* at 455.

13  With regard to Defendants' "qualitative" copying, the it found that *Boldly* "took the

14  heart of Dr. Seuss's works," that is, "the most valuable and pertinent portion[s],"

15  and, by way of example, the "highly expressive core" of *Sneetches*. *Id.* at 457.

16  Because these findings are an essential part of the Ninth Circuit's ruling, the "spirit

17  of the mandate" requires the Court to rule that DSE has also proven the second

18  element of copyright infringement, substantial similarity, as a matter of law.

19      Because *Boldly* infringes the copyrights in the DSE Works as a matter of law,

20  DSE's renewed motion for summary judgment on copyright liability should be

21  granted.

22      **C.   Defendants Willfully Infringed the DSE Works.**

23      DSE also renews its argument made in its previous motion for summary

24  judgment that Defendants' infringement of the DSE Works was willful.  This

25  conclusion is consistent with and in the "spirit" of the Ninth Circuit mandate,

26  particularly given the lower court's requirement to implement the "appellate court's

27  opinion *and the circumstances it embraces*." *Montgomery,* 462 F.3d at 1072

28  (emphasis added).

1    Willful infringement is present here because Defendants were either actually

2    aware of their infringing activity, or their actions were the result of "reckless

3    disregard" for, or "willful blindness" to, DSE's copyrights.  *Washington Shoe Co.*

4    *v. A-Z Sporting Goods Inc.,* 704 F.3d 668, 674 (9th Cir. 2012); *see also VHT, Inc. v.*

5    *Zillow Grp., Inc.*, 918 F.3d 723, 748 (9th Cir. 2019) ("The test for willfulness is in

6    the alternative: *either* actual notice *or* recklessness shown by reckless disregard or

7    turning a blind eye to infringement") (emphasis in original); *Unicolors, Inc. v.*

8    *Urban Outfitters, Inc.*, 853 F.3d 980, 992 (9th Cir. 2017) (finding of willful

9    infringement "does not require a showing of actual knowledge.")  Willful blindness

10   is shown where the infringing party (1) subjectively believed that infringement was

11   likely occurring, and (2) deliberately avoided steps that could have determined

12   whether its conduct was infringing.  *Luvdarts, LLC v. AT&T Mobility, LLC*, 710

13   F.3d 1068, 1073 (9th Cir. 2013) (citing *Global-Tech Appliances, Inc. v. SEB S.A.,*

14   131 S. Ct. 2060, 2070 (2011)).  "'[A] reckless defendant is one who merely knows

15   of a substantial and unjustified risk of such wrongdoing.'"  *Erickson Prods., Inc. v.*

16   *Kast*, 921 F.3d 822, 833 (9th Cir. 2019) (quoting *Global-Tech Appliances*, 563 U.S.

17   at 769-70)).  Reckless disregard can be demonstrated, for example, when a party

18   "refus[es]…to even investigate or attempt to determine whether [an allegedly

19   infringed work is] subject to copyright protections."  *Unicolors, Inc.*, 853 F.3d at

20   992.  Where the relevant facts are undisputed—as they are here—willfulness can be

21   appropriately resolved on summary judgment.  *Id.*

22   Here, Defendants at the very least acted with a reckless disregard—if not

23   willful blindness or even actual knowledge—that *Boldly* infringed the DSE Works.

24   First, there is no dispute that Defendants knew that the DSE Works were protected

25   by copyright.  DSE's copyright notices are printed in the Dr. Seuss books that

26   Defendants acquired and "slavishly" copied.  Opinion at 450.  Moreover,

27   Defendants also expressed concern to one another and to the public at large that

28   DSE would file suit against them for infringement.  (ECF No. 107-2 at ¶¶ 23, 67,

112.)  In their initial Kickstarter page to crowdfund the printing and distribution costs for *Boldly,* Defendants admitted that "there may be some people who believe that this might be in violation of their intellectual property rights.  And we may have to spend time and money proving it to people in black robes.  And we may even lose that."  (*Id*. at ¶ 67.)  The Ninth Circuit thought this was a telling admission, writing, "The creators thought their '*Star Trek* primer' would be 'pretty well protected by parody,' but acknowledged that 'people in black robes' may disagree. Indeed, we do."  Opinion at 448.  Additionally, soon after Defendants' Kickstarter page went "live," DSE sent Defendants multiple cease-and-desist letters, which Defendants ignored, hoping that they were a "bluff," and never responded until Kickstarter froze their crowdfunding campaign.  (ECF No. 107-2 at ¶¶ 104-106, 113, 115, 121.)

Second, Despite DSE's cease-and-desist letters, and their own public admission that they might lose an infringement lawsuit, Defendants did not even bother to consult an attorney about whether *Boldly* was a parody until after DSE sent its takedown notice to Kickstarter.[4]  (*Id*. at ¶¶ 8-10, 14, 16-19, 44, 115, 123.)  The evidence of their reckless disregard for DSE's rights is astounding.  Defendants (1) recognized that they needed a license to use Dr. Seuss works yet developed *Boldly* without attempting to contract with DSE  (*Id*. at ¶¶ 8-11, 14, 23)[5]; (2) opted for a version of *Boldly* that "meticulously" copied *Go!* despite discussing alternatives after being told by Mr. Hauman to "go closer" to *Go!* (*Id*. at ¶¶ 21, 34-

---

[4] Since then, Defendants have advanced a revolving door of fair use justifications, from parody to mash-up to satire and back to parody.  The Ninth Circuit methodically rejected each of those theories, including finding "completely unconvincing" Defendants' "'post-hoc characterization of the work' as criticizing the theme of banal narcissism in *Go!*"  Opinion at 453 (quoting *Penguin Books*, 109 F.3d at 1403).  The Ninth Circuit also noted that "[t]he effort to treat *Boldly* as lampooning *Go!* or mocking the purported self-importance of its characters falls flat."  *Id*.

[5] *See also* Opinion at 461 ("ComicMix only infers, from Seuss's style guide for its licensees, that Seuss will not license a Seuss–Star *Trek* mash-up. But, of course, that claim is speculative because ComicMix never asked for a license or permission.").

37, 49-50, 52-55); (3) prior to litigation received an inquiry from a third party retailer stating "it goes without saying you've got the license though right" and in response acknowledged that not having a license could "complicate matters" (*Id*. at ¶¶ 42-43); (4) could not get a third-party to handle "fulfillment on merchandise" because *Boldly* was "unlicensed" (*Id*. at ¶ 46); (5) were aware that ThinkGeek wanted copies of *Boldly* "in time for high school graduations" to compete with DSE's primary market for *Go!* (*Id*. at ¶¶ 91-92, 100-103, 121); (6) acknowledged concern that DSE may file suit but instead of seeking a license decided that "the Dr. Seuss people" would "see the product and want to publish it themselves" (*Id*. at ¶¶ 23, 111-112.) (7) lost a third-party distributor because "the [legal] risk of moving forward is not something [the publisher] could take on" (Id. at ¶¶ 97-98); (8) ignored DSE's first demand letter in order "to keep the [publishing] schedule" and because they claimed the letter was a "bluff" (*Id*. at ¶¶ 113-115); (9) tried to fulfill the ThinkGeek order even after the publisher pulled out of the project due to legal risks (*Id*. at ¶¶ 116, 119, 121); (10) chose not to share DSE's cease-and-desist letters with ThinkGeek so as not to jeopardize order fulfillment (*Id*. at ¶¶ 117-119); (11) On October 14, 2016, after receiving two cease and desist letters from DSE and without consulting an attorney Hauman signed an agreement with ThinkGeek representing that Defendants did "not violate or infringe any…copyright or other intellectual property"; (*Id*. at ¶¶ 17-19, 107, 115, 120); and, last but not least (12) after the lawsuit was commenced, admitted that they may have gone "TOO far in copying the [Seuss] source material" (*Id*. at ¶ 54).

Construing these undisputed facts in the light most favorable to Defendants, this Court can at best conclude that Defendants knew of the risks that they were infringing, and that even though they may have may have wanted to believe that *Boldly* was fair use, they took no steps at all to check the reasonableness of this belief with a lawyer. *See Peer Int'l Corp. v. Pausa Records, Inc.,* 909 F.2d 1332, 1336 (9th Cir. 1990) ("To refute evidence of willful infringement, Pausa must not

only establish its good faith belief in the innocence of its conduct, it must also show that it was reasonable in holding such a belief.")  Defendants' continuing with their book after both retailers and merchandisers refused to deal with an unlicensed work, and after receiving DSE's cease and desist letters, is conclusive evidence of willfulness.  *See, e.g., Fabric Selection, Inc. v. NNW Import, Inc.,* No. 16-cv-08558, 2018 WL 1779334, at *10 (C.D. Cal. Apr. 11, 2018) ("[R]ecklessness or willful blindness is typically demonstrated … when a defendant ignores a warning letter sent by plaintiff's counsel.") (citing NIMMER ON COPYRIGHT § 1404[B][3][a]); *Twentieth Century Fox Film Corp. v. Dastar Corp.,* No. 97-cv-7189, 2000 WL 35503106, at *10 (C.D. Cal. Aug. 29, 2000) (Defendants acted willfully as they "did not consult with a lawyer to determine whether the release … would infringe anyone's rights—although they falsely represented to plaintiffs that they had.")

Indeed, Defendants did nothing other than rely on Mr. Hauman's uninformed analysis of fair use[6] and discuss the legal risks for "maybe 30 seconds" or "45 seconds" before concluding that stealing the intellectual property of two copyright holders would somehow put Defendants "on safer ground." (ECF No. 107-2 at ¶¶ 9, 11, 16, 24, 43-44, 115.)  Defendants admitted that they remained "concerned about their project's legal risks," yet relied on their own uninformed judgment that *Boldly* would be a parody fair use.  (ECF No. 149 at 5.)   Such conduct constitutes reckless disregard of, and likely willful blindness to, DSE's rights.  *See Bridgeport Music, Inc. v. UMG Recordings, Inc.,* 585 F.3d 267, 279 (6th Cir. 2009) (upholding a finding of willfulness where the defendants never investigated whether their use was fair by, for example, consulting an attorney or researching the law); *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.,* 996 F.2d 1366, 1382 (2d Cir. 1993)

---

[6] Mr. Hauman in particular showed that he knew the risks.  In discussing the project with co-defendant Mr. Gerrold he stated that he was "slightly concerned" about violating DSE's copyrights but proclaimed that "we're pretty well protected by parody."  (ECF No. 107-2 at ¶ 16).  Mr. Hauman caveated this legal conclusion with "of course, IANAL"—which is shorthand for "I Am Not A Lawyer." (*Id.*)

1  (affirming willfulness finding even though defendant contended that it knowingly

2  copied in the belief that it was engaging in fair use).

3      Moreover, while the Ninth Circuit did not expressly rule that Defendants'

4  conduct was willful, such a finding is consistent with and in the spirit of the

5  mandate. *Vizcaino,* 173 F.3d at 719.  First, the Ninth Circuit "decisively"

6  determined that fair use did not shield Defendants from DSE's copyright

7  infringement claim.  Opinion at 451.  It soundly rejected each and every

8  justification advanced by Defendants, for example calling their claims that they

9  "judiciously incorporated just enough of the original to be identifiable" as "flatly

10  contradicted by looking at the books." *Id* at 456.  It also accused Defendants of

11  "fake math" for their argument that the amount taken from the DSE Works is not

12  substantial because *Boldly* used five out of almost sixty Dr. Seuss books, noting

13  that under that "theory, the more prolific the creator, the greater license a copyist

14  would have to copy and imitate the original works. Nothing supports that

15  argument." Opinion at 458.  Second, the Ninth Circuit embraced several of the

16  undisputed facts that speak directly to Defendants' willfulness, including that (1)

17  "ComicMix does not dispute that it tried to copy portions of *Go!* as accurately as

18  possible"; (2) "Despite being 'slightly concerned,' ComicMix did not consult a

19  lawyer or pursue the option of a license. This failure led to this lawsuit"; and (3)

20  ComicMix hoped to get to one of the potential markets for Seuss's derivative works

21  before Seuss, believing that Seuss would "want to publish it themselves and give

22  [ComicMix] a nice payday."  Opinion at 450, 460.

23      One of the most convincing facts showing that Defendants acted with willful

24  blindness to *Boldly*'s likely infringement was Defendant Hauman's admission that

25  he had read *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.,* 109 F.3d 1394,

26  1399 (9th Cir. 1997), while he was working on *Boldly*.  (ECF No. 107-25 at 74:18-

27  76:5, 146:17-148:10.)  Defendants' justification for claiming that *Boldly* was fair

28  use was that because it simulated the "violent, sexual, sophisticated adult

entertainment" of *Star Trek* "in the context of [Dr. Seuss]" to create a "funny" book, it was a parody.  Opinion at 452.  However, as the Ninth Circuit explains in the Opinion and as Hauman must have known, "we considered and rejected **this very claim** in an appeal involving another well-known book by Dr. Seuss—*The Cat in the Hat* (*Cat*).  The retelling of the O.J. Simpson double murder trial in the world of *Cat*—in a book titled *The Cat NOT in the Hat! A Parody by Dr. Juice* (*Not*)—was not a parody of *Cat . . . . Boldly*'s claim to a parody fares no better." *Id.* (citing *Penguin Books*, 109 F.3d at 1396, 1401) (emphasis added).  Indeed, *Penguin Books* is cited twelve times in the Opinion.  Defendant Hauman either purposefully ignored the holding of *Penguin Books* while he was working on *Boldly* because recognizing it would have killed the *Boldly* project, or, if he did not understand the decision, deliberately failed to consult an attorney to explain its consequences.

While a good faith belief that copying is a fair use may be a defense to willfulness, the proponent must show that it took reasonable steps to confirm the belief before infringing.  *Peer Int'l Corp.,* 909 F.2d at 1336.  Defendants did not act in good faith.  They were on notice from multiple sources that *Boldly* likely infringed DSE's copyrights.  They were hardly naïve: they knew that a lawyer was needed to provide an informed opinion on good faith, as Hauman's "IANAL" comment shows.  (ECF No. 107-2 ¶ 16.)  But they took no steps at all to confirm their belief.

Accordingly, this Court should find that Defendants willfully infringed DSE's copyrights.

### D.    The Court Should Award Increased Statutory Damages To DSE.

DSE also renews its request for an award of increased statutory damages for Defendants' infringement.  (ECF No. 108 at 24.)  Because there are three separate Dr. Seuss copyrighted works that were infringed by *Boldly,* namely *Go!*, *Sneetches*, and *Grinch*, DSE is entitled to three separate awards of statutory damages.  *Desire,*

DLA PIPER LLP (US)
SAN FRANCISCO

WEST\293803028.1                                    -15-
MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RENEWED MSJ
USDC CASE NO. 16-CV-02779-JLS-BGS

1  *LLC v. Manna Textiles, Inc.,* 986 F.3d 1253, 1267-68 (9th Cir. 2021) (discussing

2  *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc*., 259

3  F.3d 1186, 1190 (9th Cir. 2001)).  DSE believes that a total award of $225,000 (that

4  is, $75,000 per work) would be appropriate on the facts of this case and would act

5  as a deterrent to would-be infringers.

6      "The court has wide discretion in determining the amount of statutory

7  damages to be awarded, constrained only by the specified maxima and minima."

8  *Harris v. Emus Records Corp.,* 734 F.2d 1329, 1335 (9th Cir. 1984).

9  Statutory damages range from $750 to $30,000 with respect to any one copyrighted

10  work, as the court considers just.  17 U.S.C. §504(c)(1); *Virgin Recs. Am., Inc. v.*

11  *Cantos*, No. 06-cv-915-L (CAB), 2008 WL 2326306, at *2 (S.D. Cal. June 3,

12  2008).  In addition, a court may increase an award of statutory damages for

13  copyright infringement up to $150,000 per work infringed upon a showing of

14  willfulness.  17 U.S.C. § 504(c)(2).  "Because awards of statutory damages serve

15  both compensatory and punitive purposes, a plaintiff may recover statutory

16  damages whether or not there is adequate evidence of the actual damages suffered

17  by plaintiff or of the profits reaped by defendant, in order to sanction and vindicate

18  the statutory policy of discouraging infringement."  *Virgin Recs. Am., Inc.,* 2008

19  WL 2326306, at *2 (citing *Los Angeles News Serv. v. Reuters Television Int'l,* 149

20  F.3d 987, 996 (9th Cir. 1998).)  The Supreme Court has stated that "[e]ven for

21  uninjurious and unprofitable invasions of copyright the court may, if it deems it

22  just, impose a liability within [the] statutory limits to sanction and vindicate the

23  statutory policy" of discouraging infringement.  *F.W. Woolworth Co. v.*

24  *Contemporary Arts, Inc.,* 344 U.S. 228, 233 (1952).

25      To determine the amount of an award of statutory damages, courts consider

26  such factors as (1) the expenses saved and the profits reaped; (2) the revenues lost

27  by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others

28  besides the defendant; (5) whether the defendant's conduct was innocent or willful;

(6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.  *Three Lakes Design v. Savala,* No. 17-cv-01757, 2019 WL 1979918, at *5 (E.D. Cal. May 3, 2019), *report and recommendation adopted*, 2019 WL 3564051 (E.D. Cal. Aug. 6, 2019); *see also Microsoft Corp. v. Nop,* 549 F. Supp. 2d 1233, 1237 (E.D. Cal. 2008).  A court in its discretion may focus on only a subset of these factors and award significant damages even where the infringing work was not profitable.  *See, e.g., Reebok Int'l Ltd. v. Jemmett*, 87-cv-1415, 1990 WL 261362, at *3, 5 (S.D. Cal. Oct. 4, 1990).

Here, this Court should impose significant statutory damages in light of the third, fourth, fifth and seventh factors set forth above, even though *Boldly* was never commercially distributed or sold.

Regarding the third factor (value of the copyright) Dr. Seuss is one of the best-selling children's book authors in the world and *Go!* is DSE's best-selling book of all-time, appearing perennially on *The New York Times* Best Sellers list each spring during graduation season.  (ECF No. 107-2 at ¶¶ 137, 141, 148; Opinion at 449.)  "The other Dr. Seuss works that are at issue … also remain well recognized."  Opinion at 449.  The bulk of DSE's revenues come from licensing agreements, which resulted in DSE being named the "top licensed book brand in 2017."  (*Id*.; ECF No. 107-2 at ¶ 139.)  There is no question that Defendants chose the DSE Works to create their *Star Trek* primer due to the commercial success of the DSE Works, noting that the Seuss-inspired title of *Boldly* "is like printing money."  (ECF No. 107-2 at ¶ 30.)  As the Ninth Circuit said, Defendants "intentionally targeted and aimed to capitalize on the same graduation market as *Go!*" and thus, "hoped to get to one of the potential markets for Seuss's derivative works before Seuss, believing that Seuss would 'want to publish it themselves and give [ComicMix] a nice payday.'"  Opinion at 460-61.  Accordingly, the "value of the copyright" factor weighs in favor of a significant statutory award.

DLA PIPER LLP (US)
SAN FRANCISCO

WEST\293803028.1                                    -17-
MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RENEWED MSJ
USDC CASE NO. 16-CV-02779-JLS-BGS

1    The fourth factor (deterrent effect on others) also counsels towards a

2  significant statutory award.  In its Opinion, the Ninth Circuit highlighted not only

3  the injury that Defendants' conduct poses to DSE, but the fact that Defendants'

4  conduct would induce others to produce unlicensed mash-ups, injuring not just

5  DSE, but other copyright holders:

6         [T]he unrestricted and widespread conduct of the sort ComicMix is
        engaged in could result in anyone being able to produce, without
7        Seuss's permission, *Oh the Places Yoda'll Go!*, *Oh the Places You'll
        Pokemon Go!*, *Oh the Places You'll Yada, Yada Yada!*, and countless
8        other mashups.  Thus, the unrestricted and widespread conduct of the
        sort engaged in by ComicMix could 'create incentives to pirate
9        intellectual property' and disincentivize the creation of illustrated
        books.  This is contrary to the goal of copyright '[t]o promote the
10       Progress of Science.'  U.S. Const. art. I, § 8, cl. 8.

11  Opinion at 461 (internal citations omitted.)  Substantial statutory damages are

12  needed here to deter others from boldly going where Defendants have gone.  *See,*

13  *e.g.*, *Werner v. Evolve Media, LLC,* 18-cv-7188, 2020 WL 4012784, at *3 (C.D.

14  Cal. Jun. 22, 2020) ("The statutory rule, formulated after long experience, not

15  merely compels restitution of profit and reparation for injury but also is designed to

16  discourage wrongful conduct.").

17    Defendants' conduct was certainly willful, not innocent, and the fifth factor

18  supports not just statutory damages, but an award of increased statutory damages as

19  authorized by 17 U.S.C. § 504(c)(2).

20    Finally, the seventh factor (discouraging the defendant from future

21  infringements) supports a substantial award here.  *Boldly* was just the first of

22  several rip-offs of Dr. Seuss that Defendants had planned.  They actively discussed

23  such future titles as "OH THE PLACES YOU'LL BOLDLY GO: THE NEXT

24  GENERATION" and "PICARD HEARS A Q," noting that when *Boldly* "is a big

25  success we're all set for the sequel."  (ECF No. 107-2 at ¶ 72.)  Mr. Hauman also

26  sent *Boldly's* prospective publisher an e-mail stating that "[w]e'd already started

27  noodling with 'Picard Hears A Q' and 'One Kirk, Two Kirk, Red Shirt, Blue Shirt',

28  and we'd be happy to do a Tribble one to tie in with the 50th Anniversary of the

DLA PIPER LLP (US)
SAN FRANCISCO

WEST\293803028.1                                  -18-
                    MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RENEWED MSJ
                    USDC CASE NO. 16-CV-02779-JLS-BGS

debut of 'The Trouble With Tribbles.'" (*Id.*)  Given these plans, statutory damages must be substantial and deterrent so that DSE is not forced to spend additional time, effort, and money in fighting Defendants' next infringement.[7]

The fact that *Boldly* was never published should not lead the Court to lower the amount of damage it awards.  Many courts have awarded significant statutory damages even where infringers were unable to profit from their unlawful conduct. *Peer Int's Corp.,* 909 F.2d at 1336-1337 (affirming award of maximum statutory damages award where there had only been nominal damages).  For example, in *Disney Enterprises, Inc. v. San Jose Party Rental*, 10-cv-511, 2010 WL 3894190, at *2 (N.D. Cal. Oct. 1, 2010), the court awarded $220,000 in copyright statutory damages despite the fact that defendants "run their family business out of a garage" and had no material sales of their infringing "moonwalk" inflatable trampolines which bore the likenesses of Bugs Bunny, Superman, Mickey Mouse, Winnie the Pooh, Scooby Doo and other well-known Disney characters.  *Id.*  The court found the award justified because Disney (as DSE also does) reaps substantial profits from its valuable copyrights. *Id.*; *see also, Reebok Int'l* , 1990 WL 2161362, at *4 (awarding $5,000 per infringement plus attorneys' fees to "effect enforcement of copyright laws", where "[plaintiff] has not lost any profits nor has [defendant] profited by use of the catalog. [… but needing to] take into account that [defendant] saved time and expense by copying … and … acted indifferently towards [plaintiff's] copyright.");  *VBConversions LLC v. Alir*, 12-cv-08265, 2013 WL 12439538, at *2 (C.D. Cal. Oct. 22, 2013) (awarding $50,000 for a willful infringement even where "Defendants made little to no profit from their infringement"); *The Muppets Studio, LLC v. Pacheco*, 12-cv-7303, 2013 WL 2456617, at *1-2 (C.D. Cal. Jun. 6, 2013) (awarding $15,000 for a willful copyright infringement without any evidence of profits or damages, and where "Defendant is

---

[7] Once this Court enters judgment for DSE, it plans to file an application for its attorneys' fees as the prevailing party pursuant to 17 U.S.C § 505.

an individual who has a small business").

Given the willfulness of Defendants' conduct and the need to deter both their future infringements and those of copycats, an award of $75,000 per work infringed is justified.  This amount is midway to $150,000, the maximum per-work amount allowed for statutory damages where willful infringement is found.  17 U.S.C. § 504(c)(2).  The Court should therefore enter a total statutory damages award of $225,000.  It should be noted that this is a reduction from the amount of statutory damages originally sought in DSE's summary judgment motion.   Because all Defendants contributed to *Boldly*, which is a single infringement of the copyright in each of the DSE Works, Defendants are jointly and severally liable for all infringement damages.  *Desire, LLC,* 986 F.3d at 1263.

## IV.   CONCLUSION

For the foregoing reasons, this Court should grant DSE's renewed motion for summary judgment, enter judgment for DSE on its copyright infringement claim, determine that Defendants' infringement was willful, and award to DSE and jointly and severally against Defendants, statutory damages of $75,000 for each of the three infringed DSE Works, or $225,000 in total.  Upon entry of judgment, DSE will also seek issuance of a permanent injunction order that enjoins Defendants and those acting in concert with Defendants from further infringement of DSE's copyrights.

Dated:  April 9, 2021                                    **DLA PIPER LLP (US)**

*/s/ Tamar Duvdevani*
Tamar Y. Duvdevani
*Attorneys for Plaintiff*
*Dr. Seuss Enterprises, L.P.*

DLA PIPER LLP (US)
SAN FRANCISCO

WEST\293803028.1                                     -20-
MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RENEWED MSJ
USDC CASE NO. 16-CV-02779-JLS-BGS