Dan Booth (MA Bar No. 672090)
DAN BOOTH LAW LLC
60 Thoreau Street #121
Concord, MA 01742
dan@danboothlaw.com
(646) 573-6596
*Admitted Pro Hac Vice*

Michael Licari (SBN 265241)
THE LAW OFFICES OF MICHAEL LICARI
8704 Mariposa Street
La Mesa, CA 91941
mlicari@joshcogroup.com
(858) 717-0013
*Local Counsel*

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DR. SEUSS ENTERPRISES, L.P.**, <br><br> Plaintiff, <br><br> v. <br><br> **COMICMIX LLC**; **GLENN HAUMAN**; **DAVID JERROLD FRIEDMAN** a/k/a **DAVID GERROLD**; and **TY TEMPLETON**, <br><br> Defendants. | Case No.: 3:16-cv-02779-JLS (BGS) <br><br> **DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION FOR ISSUANCE OF REQUEST TO THE REGISTER OF COPYRIGHTS PURSUANT TO 17 U.S.C. § 411(b)** <br><br> Honorable Janis L. Sammartino <br><br> Hearing:  June 10, 2021, 1:30 p.m. <br> Courtroom:  4D |

1

DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER DENYING
MOTION FOR ISSUANCE OF REQUEST TO REGISTER OF COPYRIGHTS   Case No. 16-cv-2779-JLS-BGS

## I.    Introduction.

Plaintiff alleges infringement of the copyrights in five Dr. Seuss books, primarily *Oh, the Places You'll Go!* ("*Go!*") and *The Sneetches and Other Stories* ("*Sneetches*"). The copyright registrations issued for those two books were based on knowing inaccuracies. The registration certificates for both copyrights contain inaccurate information based on knowing failures to disclose, in the applications to the Copyright Office, that the books incorporate and are based on previously published and registered Dr. Seuss works.

Therefore Defendants, pursuant to 17 U.S.C. § 411(b)(2), moved this Court in 2017 to request the Register of Copyrights' advice on whether those inaccuracies would have caused the Register to refuse registration. Doc. 57-1 ("411 Motion"). The Court denied the 411 Motion in 2018, concluding that the preexisting material was not so "substantial" a part of *Sneetches* or *Go!* that the Copyright Office would have required disclosure. Doc. 88 pp. 8-10 ("411 Order").

In a change of controlling law, the Ninth Circuit has since removed the District Court's discretion and made clear that compliance with a § 411(b) request request is mandatory.

> In practice, once a defendant alleges that (1) a plaintiff's certificate of registration contains inaccurate information; (2) "the inaccurate information was included on the application for copyright registration"; and (3) the inaccurate information was included on the application "with knowledge that it was inaccurate," a district court is then required to submit a request to the Register of Copyrights "to advise the court whether the inaccurate information, if known, would have caused [it] to refuse registration."

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 959 F.3d 1194, 1198 (9th Cir. 2020) (*quoting* 17 U.S.C. § 411(b)(1)-(2)). This requirement, drawn from a literal reading of § 411, leaves no discretion for a district court to interpose its own analysis about what opinion the Register of Copyrights might form about a registrant's misrepresentations. "In other words, courts may not consider in the first

2

instance whether the Register of Copyrights would have refused registration due to the inclusion of known inaccuracies in a registration." *Id.* So any question about the materiality of inaccuracies must be submitted to the Register for her advice.

This case is on remand. No party addressed the § 411 issue on appeal and the Ninth Circuit did not decide it. *Unicolors* marks an intervening change in law that requires reconsideration of the 411 Order. Because the Ninth Circuit issued the *Unicolors* ruling only after its hearing in Plaintiff's appeal, its newly clarified requirements reasonably could not have been raised earlier. Pursuant to Fed. R. Civ. P. 54(b), Defendants move the Court to reconsider the 411 Order and renew their request for issuance of a request to the Register of Copyrights for her advice.

## II. Factual Background.

Theodor Seuss Geisel ("Geisel"), a/k/a Dr. Seuss, wrote and illustrated several stories published in *Redbook*, including "The Sneetches" in the July 1953 issue and "The Zaks" in the March 1954 issue. Doc. 69-5, Doc. 69-6. The copyright notices for those issues identified only *Redbook*'s publisher McCall Corporation ("McCall") as the copyright owner, and McCall obtained copyright registrations for both issues. Doc. 57-1 p. 9, Doc. 69 p. 8. Geisel did not independently obtain copyright registrations for either story. Doc. 57-1 p. 9. McCall assigned the copyrights for "The Sneetches" and "The Zaks" to Geisel in 1956. Doc. 69-8, Doc. 69 p. 8. The governing Copyright Act of 1909 required a timely renewal in the 28th year after first publication to maintain the copyrights. Act of March 4, 1909, ch. 320 § 23, 35 Stat. 1075, 1080; *see* Doc. 57-1 p. 8, Doc. 120 pp. 8-9. Geisel failed to timely obtain renewals of the copyrights in either "The Sneetches" and "The Zaks" 28 years after *Redbook* published them. Doc. 57-1 p. 10. As a result, the copyrights in both stories terminated and lapsed into the public domain. Doc. 120 p. 9.

Random House published *Sneetches* in 1961 and obtained a copyright registration for the book on behalf of Geisel in 1962. Doc. 57-7, Doc. 69 pp. 8-9.

Line 5 of the copyright application form instructed, "If any substantial part of this work has been previously published, give a brief general statement of the new matter in this version. New matter may consist of compilation, translation, abridgment, editorial revision, and the like, as well as additional text or pictorial matter." Doc. 57-7 p.1; Doc. 88 p. 2 n. 3. Random House left Line 5 blank. *Id.* Yet two of the four stories in *Sneetches*, "The Sneetches" and "The Zax," incorporate elements of, and are based on, the stories published in *Redbook*'s July 1953 and March 1954 issues. Doc. 57-1 p. 10; Doc. 69-3, Doc. 69-5, Doc. 69-6. Nevertheless, the copyright registration for *Sneetches* was issued on the basis of an application that omitted reference to the *Redbook* originals. Doc. 57-7, Doc. 88 p. 2.

Through his Random House agent, Geisel also applied for and obtained a 1989 renewal registration for the *Sneetches* book. Doc. 57-8, Doc. 69-2. The renewal application left the "Contribution to Periodical or Composite Work" line blank, again failing to disclose that two of the four stories derived from work previously published in *Redbook. Id.*; Doc. 74 p. 4.

Geisel also wrote and illustrated "The economic situation clarified: A prognostic re-evaluation" ("Economic Situation"), which was first published in the June 15, 1975 issue of *The New York Times Magazine*. Doc. 69-4. The publisher obtained a copyright registration for that issue in 1975 and renewed it in 2003. Doc. 57-1 pp. 12-13, Doc. 57-10, Doc. 69 p. 9. With slight alterations, the full-page Economic Situation illustration appears in *Go!*, which Random House published in 1990. Doc. 57-1 pp. 12-15. Random House applied to register the *Go!* copyright in 1990 on behalf of Geisel and his wife Audrey Geisel. Doc. 57-13, Doc. 57-1 p. 16. Random House left blank Line 6 of the application form, which required: "Identify any preexisting work or works that this work is based on or incorporates." *Id.* As that application omitted reference to Economic Situation, so did the copyright registration for *Go!* issued by the Copyright Office based on that application. *Id*.

4

In 1991, Random House filed an application to correct the *Go!* registration in part, naming the Geisels as copyright claimants not in their personal capacities but as trustees under a 1984 trust agreement. Doc. 57-1 p. 17, Doc. 57-14, Doc. 107-13. The correction, and the resulting corrected registration, did not identify the preexisting Economic Situation material in *Go!*. *Id.*

## III. Procedural History.

Plaintiff raised copyright infringement, trademark infringement, and unfair competition claims against all Defendants. Doc. 1. The Court dismissed the trademark and unfair competition claims without prejudice on June 9, 2017. Doc. 38. Plaintiff renewed all claims and added another trademark claim in the operative amended complaint. Doc. 39. The Court denied Defendants' motion to dismiss the amended complaint on December 7, 2017. Doc. 51. Defendants filed their answer and a motion for partial judgment under Rule 12(c) on December 21, 2017, and filed the 411 Motion the next day. Doc. 53, 54, 57. On May 21, 2018, the Court denied the 411 Motion and granted the Rule 12(c) motion in part. Doc. 88, 89. The Court granted Defendants summary judgment on all remaining claims on March 12, 2019. Doc. 149. Plaintiff noticed an appeal to the Ninth Circuit. Doc. 151. Defendants sought to recover their fees and costs; the Court denied the fee motion without prejudice to renewal after the appeal. Doc. 154, 155, 163.

Briefing on appeal was complete on November 25, 2019. Neither party mentioned § 411, the 411 Motion, or the 411 Order. The Ninth Circuit heard oral argument on April 27, 2020. Again, § 411 was not mentioned. The Ninth Circuit then issued its ruling in *Unicolors* a month later, on May 29, 2020.

On December 18, 2020, the Ninth Circuit affirmed this Court's decisions on Plaintiff's trademark and unfair competition claims, but it reversed and remanded the grant of summary judgment on the issue of copyright fair use. The mandate was issued on January 11, 2021.

At the appeal mandate hearing on March 5, 2021, Plaintiff outlined the issues it seeks to resolve: liability for copyright infringement, willful infringement, assessment of damages, and applications for attorneys' fees, in that order. Defendants proposed that in light of *Unicolors*, the § 411 issue should be revisited and resolved before any other issue, and gave notice of their intention to petition the Supreme Court for a writ of certiorari to review the Ninth Circuit's decision. The Court spread the mandate and set a post-appeal briefing schedule. Doc. 173, 174.

## IV.   Legal Standards.

A plaintiff whose "certificate of registration was invalid … fail[s] to satisfy the registration precondition under 17 U.S.C. § 411 to bring a copyright infringement claim." *Sellpoolsuppliesonline, LLC v. Ugly Pools Ariz., Inc.*, 804 Fed. Appx. 668, 670 (9th Cir. 2020). A plaintiff's "compliance with the Copyright Act's registration requirement is a threshold matter." *Unicolors*, 959 F.3d at 1200 n. 4. "[T]he Copyright Act expressly prohibits copyright owners from bringing infringement actions without first properly registering their work." *Id.* at 1197 (*citing* 17 U.S.C. § 411(a)). "[A] registration certificate does not satisfy the Copyright Act's registration requirement if the registrant secured the registration by knowingly including inaccurate information in the application for copyright registration that, if known by the Register of Copyrights, would have caused it to deny registration." *Id.* (*citing* 17 U.S.C. § 411(b)(1)).

Once such a knowing inaccuracy is alleged, the issue of whether the Register would have refused registration must be referred to the Register. "In any case in which inaccurate information described under [17 U.S.C. § 411(b)(1)] is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(2). "[C]ourts are in agreement that the provision is mandatory in nature, requiring district courts to solicit the advice of the

Copyright Office when the statutory conditions are satisfied." *Palmer/Kane LLC v. Rosen Book Works LLC*, 188 F. Supp. 3d 347, 348 (S.D.N.Y. 2016) (collecting cases). Thus, "courts may not consider in the first instance whether the Register of Copyrights would have refused registration due to the inclusion of known inaccuracies in a registration." *Unicolors*, 959 F.3d at 1198. "17 U.S.C. § 411(b)(2) was enacted because a court will not always know what information would or would not make a difference in the Register's determination whether to register a copyright." ECF No. 209, Response of the Register of Copyrights to Request Pursuant to 17 U.S.C. § 411(b)(2) p. 11, *Olem Shoe Corp. v. Washington Shoe Co.*, No. 1:09-cv-23494-PCH (S.D. Fla. filed Oct. 14, 2010), www.copyright.gov/rulings-filings/411/olem-shoe-corp-v-washington-shoe-co-no-1-09-cv-23494-sd-fla-oct-14-2010.pdf. "[I]f the issue depends even in part on interpretation or understanding of the Copyright Office's registration practices, the more prudent practice—and the practice anticipated in § 411(b)—would be to refer the question to the Register." *Id.* at 12 n.5.

An order on a motion for referral under § 411(b) is interlocutory. *Ronaldo Designer Jewelry, Inc. v. Cox*, No. 17-cv-2-DMB, 2019 U.S. Dist. LEXIS 142853, *2-3 (N.D. Miss. Aug. 22, 2019); *Palmer/Kane LLC v. Gareth Stevens Publ'g*, No. 15-cv-7404, 2016 U.S. Dist. LEXIS 147336, *9-11 (S.D.N.Y. Oct. 24, 2016). An interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). *See Ronaldo Designer Jewelry*, 2019 U.S. Dist. LEXIS 142853, *3 (reconsidering § 411(b) order under Rule 54(b)). "A district court has plenary power to reconsider interlocutory orders." *Seals-McClennan v. DreamWorks, Inc.*, 120 Fed. Appx. 3, 4 (9th Cir. 2004) (*citing City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001)). An interlocutory order "is not a conclusive, immutable determination of the issue. It can be revisited if

circumstances warrant." *Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1218 (9th Cir. 2000). It may be challenged even after a judgment is appealed and remanded, "because the district court retains the ability to modify it at any time." *Bahn v. Korean Airlines Co. (In re Korean Airlines Co.)*, 642 F.3d 685, 701-02 (9th Cir. 2011) (*citing Z-Seven Fund*, 231 F.3d at 1218-19). Thus, when the Ninth Circuit vacates and remands a judgment while "express[ing] no view as to the correctness of the interlocutory rulings of the district court," those rulings remain "subject to revision at any time before the entry of final judgment" on remand. *Dewberry v. City of Bakersfield*, No. 93-16456, 1995 U.S. App. LEXIS 89, *15-16 (9th Cir. Jan. 3, 1995) (citing Rule 54(b)). Rule 54(b) reconsideration is "both appropriate and necessary" upon a "significant change in the Ninth Circuit law." *Aceves v. Allstate Ins. Co.*, 827 F. Supp. 1473, 1476 (S.D. Cal. 1993) ("the court cannot disregard relevant Ninth Circuit authority").

"Lower courts are free to decide issues on remand so long as they were not decided on a prior appeal. … Any issue not expressly or impliedly disposed of on appeal is left open for the trial court's reconsideration on remand." *Beltran v. Myers*, 701 F.2d 91, 93 (9th Cir. 1983) (citations omitted). Even an issue expressly or implicitly decided on appeal, making it "the law of the case," is subject to reconsideration if based on clear error, or "an intervening change in the law has occurred," or to avoid a manifest injustice. *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). "While a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues." *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939).

## V.  Argument.

### A.  The 411 Order is subject to reconsideration on remand.

The interlocutory 411 Order is subject to reconsideration. The parties did not brief or argue the § 411 issue on appeal, and the Ninth Circuit did not exercise

jurisdiction over the issue. It reversed this Court's grant of summary judgment on the copyright claim without addressing, either expressly or impliedly, the validity of the copyright registrations. It did not instruct the Court to enter judgment on the copyright claim, so the merits remain unsettled. The remand "for proceedings consistent with this opinion" did not restrict the consideration of issues outside the appeal. When the Ninth Circuit does not reach or assert jurisdiction over an interlocutory order, it remains subject to reconsideration on remand until final judgment. *Korean Airlines Co.*, 642 F.3d at 701-02; *Beltran*, 701 F.2d at 93; *Sprague*, 307 U.S. at 168. With summary judgment reversed in part, "the entry of that final judgment no longer has effect and the prior denials are effectively once more interlocutory in nature." *Marketquest Grp., Inc. v. BIC Corp.*, No. 11-cv-0618-BAS-JLB, 2018 U.S. Dist. LEXIS 62359, *9 (S.D. Cal. Apr. 12, 2018).

> **B.**     **The *Unicolors* decision marks an intervening change in the law.**

After this Court denied the 411 Motion, the Court of Appeals changed the nature of how courts in this Circuit are required to address such § 411(b) requests. As the *Unicolors* decision bares out, § 411 is mandatory by its express terms: "In any case in which inaccurate information … is alleged, the court *shall* request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(2) (emphasis added).

Other courts have recognized its mandatory nature: "under section 411(b)(2), a court still must request a response from the Register before coming to a conclusion as to the materiality of a particular misrepresentation." *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 624 (7th Cir. 2013). "Instead of relying solely on the court's own assessment of the Register's response to an inaccuracy, the statute obligates courts to obtain an opinion from the Register on the matter." *Id.* at 623. *See also Palmer/Kane LLC*, 188 F. Supp. 3d at 348

(collecting cases). Likewise, the Copyright Office recently advised the Ninth Circuit that "failing to follow Congress's explicit instruction" when § 411(b)(2) inaccuracies are alleged, by deciding the validity of registration "without first seeking the views of the Register of Copyrights" is erroneous. Brief of the United States as Amicus Curiae p. 11, *Univ. Dyeing & Printing, Inc. v. Topson Downs of Calif., Inc.*, No. 19-55840 (9th Cir. filed Jan. 16, 2020), https://www.copyright.gov/rulings-filings/briefs/universal-dyeing-inc-v-topson-downs-2020.pdf.

The Ninth Circuit clarified in *Unicolors* that it agrees: "courts may not consider in the first instance whether the Register of Copyrights would have refused registration due to the inclusion of known inaccuracies in a registration." *Unicolors*, 959 F.3d at 1198. This approach streamlines the process: "once a defendant alleges" that an error in the registration certificate was included in the application with knowledge that it was inaccurate, "a district court is then required to submit a request to the Register of Copyrights" soliciting her advice on the registration without speculating on what that advice may be. *Id.*

*Unicolors* further clarifies the application of § 411(b) in the Ninth Circuit by explaining "that there is [not] an intent-to-defraud requirement for registration invalidation," despite references in earlier Ninth Circuit decisions that implied such a requirement. *Id.* (*citing among others Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F.3d 1140, 1147 (9th Cir. 2019)). At the time of the 411 Order, before it affirmed *Gold Value* and remanded *Unicolors*, the Ninth Circuit's position on an intent-to-defraud requirement was also unclear. *See* Doc. 57-1 p. 23 (Defendants citing lower court's decision in *Gold Value* as supporting a "knowing errors" standard), Doc. 69 p. 13 n. 4 (Plaintiff arguing, before it was affirmed, that the same decision was "plainly incorrect").

The Ninth Circuit has also made explicit that *Unicolors* marked a material change in the law. In 2019 another district court reached conclusions about the significance of inaccuracies in a copyright registration, without the Register of Copyrights' input, and issued judgment. *Univ. Dyeing*, No. 17-cv-03879-DDP, 2019 U.S. Dist. LEXIS 1669 (C.D. Cal. Feb. 1, 2019). But after *Unicolors*, the Ninth Circuit vacated that judgment and remanded with instructions "to seek the views of the Register of Copyrights." Order, *Univ. Dyeing*, No. 19-55840, 2020 U.S. App. LEXIS 30300 (9th Cir. Sept. 22, 2020). *Unicolors* had established the Ninth Circuit's position that the Register's input is mandatory: "The district court did not have the benefit of this court's opinion in *Unicolors* … when it issued its February 1, 2019 judgment." *Id.*

### C. *Unicolors* requires a different result in this case.

As in *Universal Dyeing*, this Court did not have the benefit of the 2020 *Unicolors* opinion when it issued the 411 Order in 2018. In that order, the Court determined that the previously published materials that Geisel incorporated into *Sneetches* and *Go!* was not a substantial enough part of either book that disclosure would have been required. Doc. 88 pp. 8-10. Because the Court exercised its discretion rather than first soliciting and obtaining the Register of Copyrights' opinion, the 411 Order contravened both the text of § 411(b) and its application under *Unicolors*. The 411 Order remains subject to reconsideration on remand. Under *Unicolors*, it must be altered.

### D. Defendants sufficiently alleged the predicates for a § 411 request.

The defendants have made the proper showing that triggers the statutory mandate that the Court must seek the Register of Copyrights' advice as to whether the registration inaccuracies would have been material to the Register.

> In practice, once a defendant alleges that (1) a plaintiff's certificate of registration contains inaccurate information; (2) "the inaccurate information was included on the application for copyright registration"; and (3) the inaccurate information was included on the

11

application "with knowledge that it was inaccurate," a district court is then required to submit a request to the Register of Copyrights "to advise the court whether the inaccurate information, if known, would have caused [it] to refuse registration."

*Unicolors*, 959 F.3d at 1198. As this Court recognized in the 411 Order, Defendants alleged that the *Go!* and *Sneetches* copyright applications "are based on inaccurate information." Doc. 88 p. 1. Specifically, Defendants alleged that the registration certificates for those books are invalid because, as Defendants showed in the 411 Motion, they contain inaccurate information that was included in the registration applications with knowledge that it was inaccurate. *See* Doc. 53 pp. 19-26 & 27-30 (Sixteenth and Nineteenth Affirmative Defenses), Doc. 57, Doc. 57-1. Two of the four *Sneetches* stories are derivative works based on Dr. Seuss stories published in *Redbook*, and an illustration in *Go!* is almost identical to one he published in *The New York Times Magazine*. *Id*. The applications and registrations do not disclose their derivative nature or their previously published and previously registered source material. *Id*.

Here, "the statutory criteria for a mandatory referral have been satisfied." *Palmer/Kane LLC*, 188 F. Supp. 3d at 351. Defendants have both alleged and shown that the registration applications "contained inaccurate information. Whether that inaccurate information is material to the Copyright Office is precisely what the procedure codified at § 411(b)(2) is designed to clarify." *Id.* at 352. Pursuant to 17 U.S.C. § 411(b) and *Unicolors*, the Register of Copyrights must be asked to opine on whether registration would have been refused were the errors known.

### 1.     The applications for *Sneetches* and *Go!* contain inaccuracies.

The applications to register the copyrights for *Sneetches* and *Go!* contain inaccuracies because they failed to disclose that both books are based on and incorporate previously published and registered material.

When contesting the 411 Motion, Plaintiff argued that what "determines whether there was a material inaccuracy in the 1961 copyright application for the

12

*Sneetches* Book" was not the application form but the text of the Copyright Act of 1909, and that the 1909 Act did not require applicants "to disclose that preexisting works had been used in a new work sought to be registered." Doc. 69 p. 14. Plaintiff's argument is misguided, however, because by 1961, the Copyright Office had found the disclosures mandated by statute were inadequate, so it issued application forms that required much more:

> Section 209 was designed to enumerate the facts to be shown in the certificate, but this enumeration has been proved to be incomplete. … The Copyright Office has sought to fill these gaps by calling for information in the applications beyond that enumerated in section 209, and by including this additional information in its records and in the certificates.

Copyright Law Revision, Report of the Register of Copyrights on the General Revision of the U.S. Copyright Law, 87th Cong., 1st Sess., 142 (House Judiciary Comm. Print 1961), https://www.copyright.gov/history/1961_registers_report.pdf. The "additional information" required included "[t]he limitation of the claim to the new material only, where a work contains both preexisting and new material," as well as "[d]ata distinguishing the particular work from other editions or versions." *Id.* Those requirements were specified on the face of the form itself, which required a disclaimer identifying previously published work: "If any substantial part of this work has been previously published, give a brief general statement of the new matter in this version. New matter may consist of compilation, translation, abridgment, editorial revision, and the like, as well as additional text or pictorial matter." Doc. 57-7 § 5. Yet the application for *Sneetches* did not make the required claim limitation or identify and distinguish the prior works published in *Redbook*.

A 1944 manual from the Copyright Office's Examining Section further explains the Office procedures and registration requirements under the 1909 Act, before the first Compendium of U.S. Copyright Office Practices issued in 1967.

13

United States Copyright Office Examining Section, Section Manual, https://archive.org/details/copyrightexamprocedures1944/.[1] The 1944 examination manual described the Examining Section as "the only fact-finding body which passes upon applications for registration of copyright." *Id*. p. 1. Among the examiners' principal duties, then as now, was "[t]o examine the copy and application with the purpose of determining whether the applicant has provided all data necessary to recordation of the claim." *Id*. p. 4; *see also id*. p. 1. "The data necessary to such recordation," then as now, included "[a] comprehensive statement to establish the new matter claimed in a work previously published or registered or both." *Id*. pp. 4-5. Thus, the application forms solicited such "comprehensive" statements about any prior work because the Copyright Office considered it "necessary." *Id*.; *see* Copyright Law Revision at 142. The *Sneetches* application failed to provide it. Doc. 57-7.

Similarly, the copyright renewal form filed for *Sneetches* in 1989 required identification of material that had been a "Contribution to Periodical," with the volume, issue number, and date. Doc. 57-8 § 2, Doc. 69-2. And the application form filed for *Go!* in 1990 required disclosure of prior work: "Identify *any* preexisting work or works that this work is based on or incorporates." Doc. 57-13 § 6 (emphasis added). The requirement follows from the text of the Copyright Act of 1976, which requires applications for derivative works to include "an identification of *any* preexisting work or works that it is based on or incorporates, and a brief general statement of the additional material covered by the copyright claim being registered." 17 U.S.C. § 409(9) (emphasis added). Despite these requirements the applications failed to disclose and disclaim the original "The Sneetches" and "The Zaks" stories and illustrations published in *Redbook* and adapted in *Sneetches*, and

---

[1] Professor Zvi Rosen discovered the manual in the Copyright Office's files while serving as the Abraham L. Kaminstein Scholar in Residence.

the "Economic Situation" illustration published in the *New York Times Magazine* and incorporated in *Go!*.

Sneetches* and *Go!* are both derivative works because they are "based upon one or more preexisting works." 17 U.S.C. § 101. Their copyright registrations do not extend to "any copyright protection in the preexisting material." 17 U.S.C. § 103(b); *accord* 17 U.S.C. § 7 (1909 Act). "A typical derivative work registered in the Copyright Office is a primarily new work but incorporates some previously published material. The previously published material makes the work a derivative work under copyright law." U.S. Copyright Office, Circular No. 14: Copyright Registration for Derivative Works (rev. ed. May 2010). There is no dispute that *Sneetches* and *Go!*, while primarily new, incorporate *some* previously published material. And Plaintiff has not disputed that *Sneetches* and *Go!* are derivative works. *See* Doc. 57-1 pp. 4 & 12, Doc. 74 p. 6, Doc. 88 p. 9.

Nor could it. Plaintiff must be estopped from denying that the "Economic Situation" illustration became a "substantial part" of *Go!*, or that the single illustration and text adapted from *Redbook* was a "substantial part" of *Sneetches*, because it maintains that Defendants' use of the same or lesser amounts of Dr. Seuss books was substantial enough to constitute infringement. Plaintiff alleged that the unpublished book *Oh, the Places You'll Boldly Go!* ("*Boldly*") infringed its copyrights in not just *Go!* and *Sneetches*, but also *How the Grinch Stole Christmas!*, *The Lorax*, and *Horton Hears a Who*. Doc. 39 p. 30. Plaintiff has never identified more than a single illustration in *Boldly* as drawn from elements of *Grinch*, and claimed that the other two books were the basis for only a second illustration in *Boldly*. *See id.* p. 14 (top, *Grinch*), ECF No. 115-2 at 300:1-307:22 (describing a page in *Boldly* as "a combination of 'Horton Hears a Who!' and Truffula Trees from The Lorax"). Relying on its claim that Defendants used just one illustration from *Grinch* was enough to overcome summary judgment on

15

appeal, despite the third fair use factor: "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107; *see Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 456 (9th Cir. 2020) (quoting Plaintiff's misleading plural phrasing, "illustrations from *Grinch* and two stories in *Sneetches*"). *Go!* includes almost wholesale "Economic Situation," a single Dr. Seuss illustration, with only insubstantial changes. Doc. 57-1 pp. 12-15.

Plaintiff cannot maintain that *Boldly*'s takings from *Grinch*, *Lorax*, and *Horton* were substantial enough to infringe unless it concedes that Geisel's taking of the same or greater quantum for *Go!* was substantial enough to have required disclosure. Yet the applications did not disclose that *Go!* and *Sneetches* were derivative works, as the Copyright Office would have required had it known.

Plaintiff does not dispute that the applications did not provide the facts about the periodical publications. While Plaintiff has argued that those misstatements were immaterial, under the new governing precedent of *Unicolors*, materiality is an issue for the Register of Copyrights to address once the Court issues the request as mandated. Whether the Register would have considered the preexisting works a "substantial" part of *Sneetches* and *Go!*, and whether the Register would have considered the nondisclosures material, are questions that the Register is uniquely qualified to answer.

**2.      The registration certificates bear the same inaccurate information.**

The Copyright Office accepted the misrepresentations and issued registration certificates for *Sneetches* and *Go!* which contain inaccuracies that reflect the inaccuracies in the applications. The *Sneetches* certificate does not identify the previously published material incorporated from *Redbook*. Doc. 57-7. The renewal certificate does not limit the renewable matter claimed and does not identify any matter that had been a contribution to a periodical. Doc. 57-8. The *Go!* certificate

also does not identify the material previously published in a periodical or "any preexisting work or works that this work is based on or incorporates." Doc. 57-13.

### 3. The inaccurate statements in the registration applications were made with knowledge of their inaccuracy.

There is no "intent-to-defraud requirement." *Unicolors*, 959 F.3d at 1198. The "plain language of § 411(b) … does not require a showing of fraud, but only that the claimant included inaccurate information on the application 'with knowledge that it was inaccurate.'" *Gold Value*, 925 F.3d at 1147 (*quoting* 17 U.S.C. § 411(b)). And as the Ninth Circuit has further clarified, the "knowledge that it was inaccurate" pertains to whether the claimant's assertions in the application were accurate as a factual matter, not as a legal matter: "the term 'knowingly' does not necessarily have any reference to a culpable state of mind or to knowledge of the law. As Justice Jackson correctly observed, 'the knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law.'" *Id.* (*quoting Bryan v. United States*, 524 U.S. 184, 192 (1998) (internal citation omitted)). For example, as explained in *Unicolors*,

> the knowledge inquiry is not whether Unicolors knew that including a mixture of confined and non-confined designs would run afoul of the single-unit registration requirements [under Copyright Office regulations]; the inquiry is merely whether Unicolors knew that certain designs included in the registration were confined and, therefore, were each published separately to exclusive customers.

*Unicolors*, 959 F.3d at 1200 (*citing Gold Value*, 925 F.3d at 1147). Any pre-*Unicolors* precedent that construed § 411(b) to require a showing of culpable intent is, to that extent, overruled by *Unicolors* and invalid.

A § 411(b) request requires compliance when knowing inaccuracies are duly alleged, even with no supporting evidence. *See Fashion Ave. Sweater Knits, LLC v. Poof Apparel Corp.*, No. 2:19-cv-06302-CJC-JEM, 2020 U.S. Dist. LEXIS 245889, *3-4 (C.D. Cal. Dec. 3, 2020). But here, evidence of knowing inaccuracies is ample. Plaintiff has not denied that the applications were filed with knowledge of

17

the facts, and that the applications misstated those facts. Geisel wrote and illustrated "The Sneetches" and "The Zaks," and plainly knew that they had been published in *Redbook*, and that their copyrights had been registered years before the 1962 *Sneetches* registration and its 1989 renewal. As Plaintiff showed, when *Redbook*'s publisher assigned the copyrights back to Geisel in 1956, it provided him a list with the publication dates and registration numbers for both stories. Doc. 69-8 pp. 4-5. Geisel also plainly knew when he wrote and illustrated *Go!* that it incorporated his previously published illustration. A Dr. Seuss scholar explains that when preparing his final book Geisel literally "used a photocopy of 'The economic situation,' and simply pasted in his main character," then added color. Doc. 57-1 p. 15 (*quoting* Philip Nel, *Dr. Seuss: American Icon* p. 80 (Continuum Books 2004)).

Geisel also knew that the Copyright Office expected disclosure of previously published work. His applications to register the copyright in *Yertle the Turtle and Other Stories* in 1958, and to renew it in 1986, disclosed that *Redbook* had published earlier versions of its stories. *See* Doc. 57-9. Yet when he applied to register *Sneetches* in 1962, to renew the registration in 1989, and to register *Go!* in 1990, he omitted the expected disclosures. Such knowledge about the law is not necessary; "the knowledge inquiry is not whether [the applicant] knew that [the work] would run afoul of the … registration requirements." *Unicolors*, 959 F.3d at 1200. But were that higher standard necessary, Defendants' showing would meet it.

### E.    Issuing a § 411(b) request is proper at this juncture.

Defendants have shown that both *Sneetches* and *Go!* copied from prior works that were not disclosed on the Copyright Office applications or registration certificates, with knowledge of the inaccuracies. Pursuant to § 411(b) and *Unicolors*, no more need be shown. Defendants have met the statutory requirements and a request for the Register of Copyrights' opinion is in order. "Instead of relying solely on the court's own assessment of the Register's response to an inaccuracy,

the statute obligates courts to obtain an opinion from the Register on the matter." *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 623 (7th Cir. 2013). *Accord Study Edge, LLC v. Skoolers Tutoring Ctr., LLC*, 2018 U.S. Dist. LEXIS 227915, *18 (N.D. Fla. May 7, 2018) ("This Court declines to analyze the materiality of these inaccuracies until the Register of Copyrights has offered advice pursuant to 17 U.S.C. § 411(b)(2).").

The time for that request is now. The sole claim pending is copyright infringement and the validity of Plaintiff's copyright registrations is "a threshold issue." *Unicolors*, 959 F.3d at 1195-96. Plaintiff alleged copyright infringement of five books and claimed that *Boldly* used fourteen illustrations from *Go!*, two from *Sneetches*, and one apiece from *Grinch*, *Lorax*, and *Horton*. *See Dr. Seuss Enters.*, 983 F.3d at 456, ECF No. 115-2 at 300:1-307:22. Plaintiff cannot prevail on its remaining copyright claim without proving valid copyright registration. Resolving the merits of the claim will first require a determination as to whether the registrations for the derivative works *Go!* and *Sneetches* are valid in light of Geisel's numerous failures to disclose. Under *Unicolors*, that determination requires the Register of Copyrights' opinion as an initial matter.

The Register's response to the § 411 request is also likely to aid the resolution of Plaintiffs' copyright claims as to *Sneetches*, *Grinch*, *Lorax*, or *Horton*. Plaintiff cannot prevail on those claims without a determination that the use of any copyright-protected elements of those books is greater than *de minimis* as pleaded. Doc. 53 p. 31 (Twenty-Second Affirmative Defense). Again, Plaintiff's stated position is that "'Economic Situation' plainly is not a 'substantial amount of the material incorporated in' *Go.*" Doc. 69 p. 18. That cannot be reconciled with any claim that Defendants' use of lesser amounts of graphic elements from other Dr. Seuss books in *Boldly* rises to infringement. The Register's construction of

"substantial amount" under the Copyright Act of 1976, as to *Go!*, is likely to inform the Court's analysis of the substantiality of Defendants' uses.

In short, this threshold issue will determine the scope of every substantive issue left to resolve. The § 411 request must be fulfilled before any finding of liability for infringement can be considered, and liability is logically precedent to any claim for willful infringement, damages, or fees. Any damages award under the Copyright Act would also hinge on first ascertaining the number of infringed works with valid registrations at issue, because the Copyright Act provides that statutory damages are assessed on a per-work basis. 17 U.S.C. § 504(c); *see Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1189-90 (9th Cir. 2016). While Plaintiff prayed in the alternative for actual damages and Defendants' profits, Doc. 39 pp. 27-28, such relief is not viable because *Boldly* was never published. 17 U.S.C. § 504(b). Doc. 149 p. 9.

Upon issuing the request to the Register of Copyrights, the Court should stay all proceedings pending her response. Such a stay will likely be brief. The Register typically responds to § 411(b) requests with dispatch, often within a month of receipt. *See, e.g.,* Response of the Register of Copyrights, ECF No. 129-1 at 1 n. 1, *Fashion Ave. Sweater Knits, LLC v. Poof Apparel Corp.*, No. 2:19-cv-06302-CJC-JEM (C.D. Cal. filed Feb. 8, 2021), https://www.copyright.gov/rulings-filings/411/fashion-avenue-sweater-knits-llc-v-poof-apparel-corp.pdf (responding to request submitted via email on January 8, 2021). Because *Boldly* remains unpublished, Plaintiff will not be injured or prejudiced by a brief stay, which should facilitate a prompt resolution of the remaining issues.

Therefore, and for the reasons previously given by Defendants in the 411 Motion, Doc. 57-1, and their reply in support thereof, Doc. 74, Defendants respectfully request that the Court:

1.    Reconsider the 411 Order, Doc. 88, and grant the 411 Motion, Doc. 57-1, based on the intervening change in law effected by *Unicolors*;

2.    Submit a request to the Register of Copyrights to advise the Court whether the inaccurate information included in the applications for *Go!* and *Sneetches*, if known, would have caused it to refuse registration pursuant to 17 U.S.C. § 411(b)(2);[2] and

3.    Stay the proceedings pending the Register's response.

April 9, 2021

Respectfully submitted,

*/s/ Dan Booth*
Dan Booth
DAN BOOTH LAW LLC

Michael Licari
THE LAW OFFICES OF MICHAEL LICARI

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on this April 9, 2021 I electronically filed the foregoing document by using the Court's ECF system, thereby causing a true copy thereof to be served upon counsel of record for Plaintiff Dr. Seuss Enterprises, L.P., as identified on the Notice of Electronic Filing.

/s/ Dan Booth

---

[2] "The request should be sent to the General Counsel of the Copyright Office via email to *411filings@copyright.gov*." 37 C.F.R. § 205.14; *see* Copyright Office, Email Rule for Statutory Litigation Notices, 85 Fed. Reg. 10,603, 10,605 (Feb. 25, 2020); ECF No. 129-1 at 1 n. 1, *Fashion Ave. Sweater Knits*, No. 2:19-cv-06302-CJC-JEM (C.D. Cal. filed Feb. 8, 2021).

21