Dan Booth (MA Bar No. 672090)
DAN BOOTH LAW LLC
60 Thoreau Street #121
Concord, MA 01742
dan@danboothlaw.com
(646) 573-6596
*Admitted Pro Hac Vice*

Michael Licari (SBN 265241)
THE LAW OFFICES OF MICHAEL LICARI
8704 Mariposa Street
La Mesa, CA 91941
mlicari@joshcogroup.com
(858) 717-0013
*Local Counsel*

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DR. SEUSS ENTERPRISES, L.P.**, | Case No.: 3:16-cv-02779-JLS (BGS) |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT; REQUEST FOR RELIEF PURSUANT TO FED. R. CIV. P. 56(f)(1)** |
| v. | |
| **COMICMIX LLC**; **GLENN HAUMAN**; **DAVID JERROLD FRIEDMAN** a/k/a **DAVID GERROLD**; and **TY TEMPLETON**, | Honorable Janis L. Sammartino |
| Defendants. | Hearing:     June 10, 2021, 1:30 p.m.<br>Courtroom:  4D |

1

## I.   Introduction.

Defendants ComicMix LLC, Glenn Hauman, David Gerrold, and Ty Templeton ("Defendants") oppose Plaintiff Dr. Seuss Enterprises, L.P.'s ("DSE") renewed motion for summary judgment on three of its copyright infringement claims, which further requests a finding of willfulness and $225,000 in enhanced damages. ECF No. 175. DSE fails to establish that it is entitled to judgment on any issue or claim, as material questions of fact remain as to the extent of infringement, if any, and the scope of relief available.

Deciding any aspect of DSE's motion would be premature because viable defenses are unresolved. The Ninth Circuit's *Unicolors* decision makes the validity of two of DSE's copyright registrations a live issue that requires a referral to the Copyright Office. ECF No. 177. DSE does not establish that the use of copyright-protected material was greater than *de minimis* from each Dr. Seuss book. *See id*. p. 19. DSE also cannot establish willful infringement to justify enhanced damages because the evidence shows that Defendants sought to employ fair use, not to infringe. The Court should grant Defendants summary judgment pursuant to Rule 56(f)(1) and find that they did not infringe willfully, and that any infringement was innocent and subject to at most minimal damages.

## II.   Procedural History.

DSE alleged that Defendants' unpublished 2016 book *Oh, the Places You'll Boldly Go!* ("*Boldly*") infringed its copyrights in Dr. Seuss books including *Oh, the Places You'll Go!* ("*Go!*"), *The Sneetches and Other Stories* ("*Sneetches*") and *How the Grinch Stole Christmas* ("*Grinch*"), and certain alleged trademarks. ECF Nos. 1, 39. This Court granted summary judgment to Defendants on all claims. ECF No. 149. The Ninth Circuit affirmed the judgment on the trademark claims, but reversed and remanded the grant of summary judgment as to copyright fair use. *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443 (9th Cir. 2020) ("Opinion").

On remand, Defendants renew their request to refer the questions of invalidity for *Go!* and *Grinch* to the Register of Copyrights. ECF No. 177. DSE again moves for summary judgment of willful infringement of *Go!*, *Grinch*, and *Sneetches*, and requests enhanced damages of $75,000 per work. ECF No. 175.

## III.   Legal Standard.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "A genuine dispute of a material fact is 'one that could reasonably be resolved in favor of either party.'" *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 773 (9th Cir. 2018) (*quoting Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004)). "In addition to the defense of a genuine dispute of material fact, to successfully resist summary judgment, there must be at least one viable theory of law under the asserted facts that would, if true, entitle the opponent of the motion to judgment as a matter of law." *Arney v. United States*, 479 F.2d 653, 661 (9th Cir. 1973).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to the [nonmoving] party." *Scott. v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weight evidence or make credibility determinations, which are "jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

## IV.   Argument.

Beyond fair use, Defendants' pleaded defenses to the copyright infringement claims include invalidity as to *Go!* and *Sneetches*, and *de minimis* use as to *Sneetches* and *Grinch*. ECF No. 53 pp. 16 & 19-31 (Twelfth, Sixteenth, Nineteenth, and Twenty-Second Affirmative Defenses). Evidence supporting the well-founded defenses requires that DSE's renewed motion for summary judgment be denied. DSE fails to show willful infringement. Its showing instead supports the Court

finding that any infringement was not willful but innocent and entering summary judgment for Defendants on that issue. DSE has no actual damages and it is entitled to at most the minimum statutory damages available.

**A.     The copyright registration validity issue must be fully resolved before any determination of liability as to *Go!* and *Sneetches*.**

Valid registration is a threshold issue. 17 U.S.C. § 411(a). "[T]he Copyright Act expressly prohibits copyright owners from bringing infringement actions without first properly registering their work." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 959 F.3d 1194, 1197 (9th Cir. 2020). And "courts may not consider in the first instance whether the Register of Copyrights would have refused registration due to the inclusion of known inaccuracies in a registration application." *Id.* This Court decided the materiality of the inaccuracies in the *Go!* and *Sneetches* registrations without referring the question to the Register. ECF No. 88. Under *Unicolors*, the Court must solicit and consider the Register's opinion as a basis for a new determination on validity before deciding the infringement claims.

A copyright registration can raise at most a presumption of validity, which is "not tantamount to holding that [the plaintiff] in fact owns a valid copyright." *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1258 (9th Cir. 2011). "To rebut the presumption, an infringer must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement." *Id.* at 1257; *see* ECF No. 107-1 p. 17. Defendants have presented substantial evidence rebutting that presumption, namely the facial, apparently fatal mistakes in the *Sneetches* and *Go!* registration certificates. *See* ECF Nos. 57-1, 177.

After the Court denied Defendants' motion for referral, they did not waive or abandon the issue by not raising it again at the summary judgment stage. "Given the churning of the law" in the Ninth Circuit before the *Unicolors* decision, Defendants had not "slept on their rights." *Golden Gate Hotel Ass'n v. City &*

4

*County of San Francisco*, 18 F.3d 1482, 1487 (9th Cir. 1994) (vacating order striking a defense that new Ninth Circuit precedent had made viable).

DSE concedes that the registration issue was not taken up on appeal. Fair use was "the only copyright-related question before the Ninth Circuit." ECF No. 175-1 p. 11. DSE contends that "Defendants did not appeal from that decision [denying the referral to the Register of Copyrights] and cannot attack the validity of DSE's copyrights at the remand stage." *Id.* p. 15 (*citing In re Cellular 101, Inc.*, 539 F.3d 1150, 1155 (9th Cir. 2008)). But *In re Cellular 101* is inapposite, as it concerned a defense that was not raised in an answer to the complaint, or in the lower courts, or in an earlier appeal, when no intervening change in law was claimed. *Id.* at 1155. Here, Defendants undeniably raised invalidity in their answer and motion for referral. And though that motion was denied, the *Unicolors* decision restored the defense to viability after the appeal was briefed and argued.

Referral is both mandatory and ripe. DSE has not shown that, if the Copyright Office had known that *Go!* and *Sneetches* incorporated previously published work, it would have issued registrations despite the nondisclosure. The question must be put to the Register of Copyrights. Under *Unicolors*, until she is heard from, no reasonable trier of fact can decide the validity of registration and the merits of the *Go!* and *Sneetches* claims cannot be resolved. Therefore DSE's motion for summary judgment must be denied.

**B.      The *de minimis* defense must be fully resolved before any determination of liability as to *Sneetches* and *Grinch*.**

DSE claims that "Defendants have not contested the substantial similarity between *Boldly* and the DSE Works," namely *Go!*, *Sneetches*, and *Grinch*. ECF No. 175-1 p. 9. To the contrary, Defendants have consistently contended that *Boldly* makes no more than *de minimis* use of *Sneetches* and *Grinch*, using only the discrete elements that Defendants considered necessary to make their mashed-up references explicit. DSE fails to show that *Boldly* is substantially similar to each

5

work, as required to make out its affirmative case. *See id.* p. 15. It argues only that *Boldly* is substantially similar to "elements of the DSE Works" as a group, not each book individually. *Id.* The Ninth Circuit found that *Boldly* copied aspects of "14 of *Go!*'s 24 pages." Opinion p. 20. But its use of any other Dr. Seuss work was *de minimis.* And as DSE recognizes, fair use was "the only copyright-related question before the Ninth Circuit." ECF No. 175-1 p. 11. The Ninth Circuit did not dispose of the *de minimis* defense or even mention it. It remains subject for consideration. And DSE fails to prove that *Boldly* made substantial enough use of *Sneetches* or *Grinch*'s copyright-protected elements to amount to infringement.

"For an unauthorized use of a copyrighted work to be actionable, the use must be significant enough to constitute infringement." *Newton v. Diamond*, 388 F.3d 1189, 1192-93 (9th Cir. 2003). "This means that even where the fact of copying is conceded, no legal consequences will follow from that fact unless the copying is substantial." *Id.* at 1193. "In other words, to establish its infringement claim, Plaintiff must show that the copying was greater than de minimis." *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 877 (9th Cir. 2016). *See also Google LLC v. Oracle Am., Inc.*, No. 18-956, slip op. at 28-29 (Apr. 5, 2021) ("If a defendant had copied one sentence in a novel, that copying may well be insubstantial.").

*Boldly* employs elements of only two illustrations from *Sneetches* and one from *Grinch*, each in significantly different form. ECF No. 115-2 at 303:22-306:22; *see* ECF No. 39 pp. 14-16. It does not copy any text from either book.

These takings are quantitatively insignificant. *Sneetches* and *Grinch* include 33 illustrations apiece, counting their covers. ECF No. 69 p. 16; *see* ECF No. 107-22 Ex. 10. Thus, *Boldly* adapts visual aspects from 2 of 33 *Sneetches* illustrations, or 6%, and 1 of 33 *Grinch* illustrations, or 3%. DSE is estopped from arguing that takings to that extent are substantial, based on the contrary positions it took against Defendants' motion for a referral to the Register of Copyrights. According to DSE,

6

some 22 lines out of 245 in *Sneetches*, or 9%, were drawn in some measure from previously published works; and according to DSE, that was not substantial enough to require mention to the Copyright Office. ECF No. 69 p. 16. Agreeing, the Court found it "evident that the amount of lines used in [*Sneetches*] is not significant." ECF No. 88 pp. 7-8. If 9% was not a substantial use of previously published material, then 6% and 3% cannot be.

*Boldly*'s use of *Sneetches* and *Grinch* elements is also qualitatively insubstantial, because those elements were not particularly significant to the Dr. Seuss books. "Quantitatively insignificant infringement may be substantial only if the material is qualitatively important to plaintiff's work." *Apple Computer, Inc. v. Microsoft Corp.*, 821 F. Supp. 616, 624 (N.D. Cal. 1993). *Boldly* includes no Dr. Seuss characters: no Sneetches, Zax, or Whos, and no Grinch. It also does not include, use, or allude to the plots, storylines, dialogues, monologues, or narration found in *Sneetches* or *Grinch.* DSE seemed to acknowledge the point, as it alleged that *Boldly* "misappropriates" the title and "story arc" of *Go!*, but not of *Sneetches* or *Grinch*. ECF No. 39 ¶ 35. For example, the MacGuffin of the title story in *Sneetches* is a Star-On Machine that places star-shaped status symbols on the Sneetches' bellies, a function that the Ninth Circuit called the book's "heart" and "expressive core," central to its plot, character and moral. Opinion p. 23. *Boldly* depicts the machine shorn of that role, "'repurposed to remind you of the transporter in *Star Trek.*'" *Id.* The characters bear delta-like Starfleet insignia, not star symbols. *Boldly* strips the machine of its central purpose and uses only its appearance. Moreover, seven "different iterations of the machine appear in ten" of *Sneetches*' pages. *Id.* The particular view of the machine that *Boldly* repurposed appears no more significant to the story in *Sneetches* than the others. ECF No. 107-22 Ex. 11 pp. 302-06, 309-10.

Likewise, the Zax faceoff repurposed in *Boldly* was one of only four views of the same faceoff in *Sneetches*, and not the one that Dr. Seuss treated as more substantial by reproducing it on the title page.[1] *Id.* pp. 298, 312-15; Opinion p. 18. And *Boldly* draws from the layout of a *Grinch* illustration depicting the Whos in Whoville enjoying Christmas, which is just one of six such illustrations in *Grinch*, no more important than the other five—and not one of the two featured on *Grinch*'s first and last pages. ECF No. 107-22 Ex. 10 pp. 268, 271-73, 290, 293; ECF No. 107-23 at 137:1-138:18; s*ee* Opinion p. 17.

DSE has not shown that *Boldly*'s limited, fragmented use of *Sneetches* and *Grinch* would have even a *de minimis* effect on their sales. DSE offers no evidence that the few illustrations employed drive any purchasing decisions. *See Hustler Mag. v. Moral Majority, Inc.*, 796 F.2d 1148, 1156 (9th Cir. 1986) ("the effect on the marketability of back issues of the entire magazine is *de minimis* because [the amount used] is only one page of a publication which would be purchased for 'its other attractions'"). At summary judgment, DSE argued that "discovery has shown that *Boldly* is likely to supplant the market for *Go!* as well as its derivatives"—not for *Grinch* or *Sneetches*. ECF No. 107-1 p. 20; *accord* pp. 27-29. The Ninth Circuit also saw potential market consequences only for *Go!* derivatives: "Works like *Boldly* would curtail *Go!*'s potential market for derivative works." Opinion p. 28.

The Court may find *de minimis* use at the summary judgment stage. *See Newton*, 388 F.3d 1189; *VMG*, 824 F.3d 871. If the Court does not so find, then summary judgment should still be denied. Typically, "[w]hether Defendants' use is considered de minimis is a question of fact for the jury." *Lanard Toys v. Anker Play*

---

[1] The Zax faceoff repurposed in *Boldly* was itself a derivative work, based on an earlier published story that went undisclosed when the copyright for *Sneetches* was registered and renewed. ECF Nos. 69-2, 69-3 p. 28, 69-6 p. 5. DSE also failed to inform the Copyright Office that the story has entered the public domain. ECF No. 120 pp. 8-9. The Register of Copyrights must address the dubious validity of the *Sneetches* registration before the Court can properly measure the *de minimis* issue.

8

*Prods.*, No. 19-4350-RSWL-AFMx, 2020 U.S. Dist. LEXIS 221783, *67 (C.D. Cal. Nov. 12, 2020). The factfinder must determine whether the substantiality of the few uses of *Sneetches* and *Grinch* in *Boldly* exceed the *de minimis* threshold.

**C.**   **The Court should not reach damages at this stage, but if it does, the evidence supports a finding of not willful but innocent infringement.**

The case cannot proceed to judgment until all defenses are resolved. Each work allegedly infringed is subject to a viable defense, so assessing damages as to any work would be premature. The Court should not reach damages at this stage.

Any judgment assessing statutory damages beyond the statutory minimum would be not just premature but unconstitutional. *Feltner v. Columbia Pictures TV*, 523 U.S. 340, 355 (1998). "'[T]here is no right to a jury trial when a judge awards the minimum statutory damages.'" *Reed v. Ezelle Inv. Props.*, 353 F. Supp. 3d 1025, 1027 n. 4 (D. Or. 2018) (*quoting GoPets Ltd. v. Hise*, 657 F.3d 1024, 1034 (9th Cir. 2011)). DSE seeks an award that is 100 times greater than the statutory minimum of $750 per infringed work and 375 times greater than the minimum for works innocently infringed. 17 U.S.C. § 504(c)(2). DSE demanded a jury trial "on all issues and claims so triable." ECF No. 39 at 30. Defendants are entitled to rely on that demand. *Fuller v. City of Oakland*, 47 F.3d 1522, 1530-31 (9th Cir. 1995).

Further, DSE's claim for enhanced damages based on "willful infringement" is not supported by the evidence and must be denied. If the Court reaches the issue, it should grant summary judgment for Defendants pursuant to Rule 56(f)(1), find that any infringement was not willful but innocent, and award no more than the $750 per work, or $200 per work innocently infringed. 17 U.S.C. § 504(c)(2).

**a.  Defendants did not commit willful infringement.**

DSE fails to meet the plaintiff's burden to prove willful infringement. 17 U.S.C. § 504(c)(2); H.R. Rep. No. 1476, 94th Cong., 2d Sess. 163 (1976) ("the burden of proving willfulness rests on the copyright owner"). DSE still "mistakes Defendants' intentional use of DSE works with willful infringement, though

9

1  Defendants acted on a well-founded, good-faith belief that *Boldly* is fair use." ECF
2  No. 120 p. 2.

3      Willfulness may be found when "there can be no argument that defendants
4  believed that their use was privileged in any way." *Getaped.com, Inc. v. Cangemi*,
5  188 F. Supp. 2d 398, 403 (S.D.N.Y. 2002). That is not the case here. Defendants
6  who believe their work is a fair use are not willful infringers unless "the copyright
7  law supported the plaintiffs' position so clearly that the defendants must be deemed
8  as a matter of law to have exhibited a reckless disregard of the plaintiffs' property
9  rights." *Princeton Univ. Press v. Mich. Document Servs.*, 99 F.3d 1381, 1392 (6th
10  Cir. 1996).

11      Copyright precedent did not clearly support DSE's position when Defendants
12  conceived and developed *Boldly* in 2016. To the contrary, as the Ninth Circuit had
13  recently acknowledged, the fair use factors are "porous," and other courts
14  sometimes "threw up their hands because the doctrine is 'so flexible as virtually to
15  defy definition.'" *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1171 (9th Cir.
16  2012) (*quoting Princeton*, 99 F.3d at 1392). No court had considered how fair use
17  applies to a mash-up before DSE filed suit. And at first measure, the Court found a
18  "near-perfect balancing of the factors," in which "'the most important factors'
19  …stand in equipoise" and, "although it would appear that the purposes of copyright
20  favor Defendants, that determination is also a close and unsettled call." ECF No. 38
21  p. 13. After discovery, the Court granted summary judgment on the fair use
22  defense. ECF No. 149. The Ninth Circuit's different view in 2020 did not convert
23  Defendants' good-faith intentions in 2016 into willful infringement, willful
24  blindness, or reckless disregard.

25      Defendants believed in good faith, at all material times, that their use of any
26  DSE copyright would be a fair use. Their "internal communications during the
27  production of [the allegedly infringing book] clearly demonstrate their belief" that

28

their work would not constitute infringement. *Schiffer Publ'g Ltd, v. Chronicle Books, LLC*, No. 03-4962, 2005 U.S. Dist. LEXIS 416, *18 (E.D. Pa. Jan. 11, 2005) (finding no willful infringement). They first formulated the mash-up concept of *Boldly* when Hauman said, "If we're parodying TWO things (Pat the Bunny and Trek) we're on safer ground, I think." ECF No. 107-30. Though phrased in terms of "parody," Hauman was anticipating how fair use might apply to mash-ups. He said he was "slightly concerned, although we're pretty well protected by parody. (Of course, IANAl, but I feel pretty secure on the point. It helps that we're using Trek to parody Seuss and Seuss to parody Trek.)" ECF No. 107-22 Ex. 18 p. 2. As the Ninth Circuit has now held, "mash-ups can be fair use." Opinion p. 12.

Discussing the earlier DSE lawsuit *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394 (9th Cir. 1997), Hauman further noted that the case had "helped define the distinction between parody and satire," while adding, "Luckily, we come down well on the side of parody here." *Id.* Again referencing *Penguin*, he said: "this is a parody of [DSE's] work, which legally allows for reuse, vs. satire, which doesn't. Ironically it was a Seuss lawsuit that helped define the legal distinction." ECF No. 107-43 p. 2. DSE calls Hauman's knowledge of *Penguin* "convincing" evidence of willful blindness. ECF No. 175-1 p. 21. But evidence that defendants know of third-party infringers like Penguin "does not show that the [defendants] understood their own actions to be culpable." *RCA/Ariola, Int'l, Inc. v. Thomas & Graystron Co.*, 845 F.2d 773, 779 (8th Cir. 1988) (affirming finding that infringements were not willful). When infringement depends on unsettled questions of law, summary judgment on willfulness is not proper. *See id.* (*citing Hearst Corp. v. Stark*, 639 F. Supp. 970, 980 (N.D. Cal. 1986)). And reliance on legal precedent, even erroneously, can negate a finding of willfulness. In *Schiffer*, during a book's pre-production review, a non-attorney cited *Bridgeman Art Library Ltd. v. Corel Corp.*, 25 F. Supp. 2d 421 (S.D.N.Y. 1998), as

11

support for her belief that the plaintiffs' works were not copyrightable: "'there is no © in the photography of a flat piece (ruling against Bridgheman [sic] in 2000) as there is no creativity in it so we are OK on that score.'" 2005 U.S. Dist. LEXIS 416, *18. The *Schiffer* court found her belief supported a finding that the infringement was not willful, *id.*, although it had found the defendants' reliance on *Bridgeman* was "misplaced." *Id.*, 2004 U.S. Dist. LEXIS 23052, *26 (E. D. Pa. Nov. 12, 2004). Similarly, Hauman's discussion of *Penguin* evidences good-faith belief in fair use.

Hauman's public position was consistent. He told a ThinkGeek buyer who asked if the work was licensed, "No license, this is straight parody fair use of both Seuss and Trek." ECF No. 107-42 p. 2. The Kickstarter campaign page called *Boldly* "a parody mash-up." ECF No. 107-50 p. 3. It noted that some might disagree: "While we firmly believe that our parody, created with love and affection, fully falls within the boundary of fair use, there may be some people who believe that this might be in violation of their intellectual property rights." *Id.* p. 6. Foreseeing DSE's standard anti-fair use stance did not make the Defendants' belief in fair use reckless or willful. Awareness of "risk" does not suffice. A court's finding "that the defendants knew or should have known that they were not certain about whether title was clear" is consistent with negligence, not willfulness. *Grateful Dead Prods. v. Auditory Odyssey*, No. 94-56258, 1996 U.S. App. LEXIS 1626, *4-5 (9th Cir. Jan. 18, 1996). Mere negligence is not willfulness. *Erickson Prods. v. Kast*, 921 F.3d 822, 833 (9th Cir. 2019).

Their good faith was reasonably based on decades in the publishing industry and work on other fair use parodies and mashups. Gerrold had written a Sherlock Holmes/Oscar Wilde mashup story and *A Doctor for the Enterprise*, a Dr. Who/Star Trek mashup comic. ECF No. 107-22 Ex. 18 p. 2, ECF No. 107-24 at 27:24-30:8, ECF No. 107-25 at 68:16-69:4. Templeton had worked on many fair use parodies, including at *Mad* and *National Lampoon*, and was "familiar with parody culture" in

1  such works as *Bored of the Rings*, *Goodnight Keith Moon*, and *Goodnight Batcave*.

2  ECF No. 107-23 at 111:19-115:2, 121:16-122:8, 180:11-184:10, 222:9-225:10. As

3  he put it, it is "a commonality in parody publishing that you try to match the thing

4  you are parodying." *Id.* at 123:22-124:11, 131:4-6, 184:11-15. Their reliance on

5  their extensive experience was reasonable, not reckless or blind.

6       DSE argues that Defendants either ignored its cease-and-desist letters or

7  failed to consult a lawyer in response. ECF No. 175-1 pp. 18-20. The evidence

8  shows that Defendants promptly engaged counsel and responded. The day that DSE

9  sent the first cease-and-desist letter, Hauman told Templeton, "The mistake that the

10 C&D makes is that they think we're not parodying Seuss, when we very

11 specifically are. … We're obviously commenting on Dr. Seuss." ECF No. 107-64.

12 He concluded that DSE had no basis to oppose a book it had not read, while it was

13 still being drafted, so the letter was "running a bluff." *Id.* Yet the same day,

14 Hauman forwarded the letter to Andrews McMeel Publishing, which had agreed to

15 print and distribute *Boldly*, precipitating AMP's withdrawal. ECF Nos. 107-56,

16 107-63, 107-60, 107-68 p. 2. Within a month of that first letter, Hauman also

17 consulted a free-speech attorney in California who opined that *Boldly* would be

18 protected by fair use, Defendants' lead counsel sent DSE a letter offering the same

19 opinion, and Hauman told Kickstarter of his "good faith belief" that the project had

20 been "misidentified as infringing." ECF Nos. 107-68, 107-69, 120 p. 10. A month

21 was a reasonable time to respond. *See United Fabrics Int'l, Inc. v. G-III Apparel

22 Grp., Ltd.*, Case No. CV13-00803-ODW, 2013 U.S. Dist. LEXIS 180839, *16

23 (C.D. Cal. Dec. 27, 2013) ("a jury could find that three months was a reasonable

24 time for Defendants to investigate the infringement claims"); *cf. Guess?, Inc. v.

25 Tres Hermanos*, 993 F. Supp. 1277, 1286 (C.D. Cal. 1997) ("The nine month delay

26 from the cease-and-desist letter to the filing of suit is a reasonable time for Plaintiff

27 to have allowed Defendants to respond to its request and pursue settlement

28

13

avenues."). And a determination that use is not infringing, even if inaccurate, "does not necessarily constitute knowing or reckless copyright infringement." *Shapkin/Crossroads Prods. v. Legacy Home Video*, No. 96-55650, 1997 U.S. App. LEXIS 23175, *9 (9th Cir. Aug. 29, 1997).

DSE's arguments about its cease-and-desist letters fail to show willfulness, given Defendants' good-faith beliefs. "'[A] party accused of infringement, who reasonably and in good faith believes the contrary, is not willful.'" *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 695 F.3d 946, 956 n. 4 (9th Cir. 2012) (*quoting* 3 Nimmer on Copyright § 12.06[B][5]), *rev'd on other grounds*, 572 U.S. 663 (2014). Accordingly, "[c]ontinued use of a work even after one has been notified of his or her alleged infringement does not constitute willfulness so long as one believes reasonably, and in good faith, that he or she is not infringing." *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1228 (9th Cir. 2012) (*citing Princeton Univ. Press*, 99 F.3d at 1381). DSE cites no court holding that a finding of non-willfulness is unavailable to parties who act without conferring with counsel. *See Henley v. Devore*, 733 F. Supp. 2d 1144, 1166 (C.D. Cal. 2010) (denying fair use defense while "declin[ing] to hold that an infringer must, as a matter of law, consult an attorney or investigate complicated fair use doctrine to avoid a finding of willfulness"). Even if it perhaps "showed poor judgment in moving forward … without seeking legal advice …the record on summary judgment does not support a finding of willfulness." *Idearc Media Corp. v. Northwest Directories, Inc.*, 623 F. Supp. 2d 1223, 1233 (D. Or. 2008). "Defendants' behavior after receiving notice of plaintiffs' claims of copyright infringement did not rise to the level of reckless disregard – one who, after receiving notice of a possible infringement either 'sneers in the face of the copyright owner' or 'hides its head in the sand like an ostrich.'" *Schiffer*, 2004 U.S. Dist. LEXIS 23052, *20-21 (*quoting Video Views v. Studio 21*, 925 F.2d 1010, 1021 (7th Cir. 1991)).

14

"The fact that *Boldly* was never published" is compelling evidence that Defendants are not willful infringers. ECF No. 175-1 p. 26. They pledged not to publish or sell it "unless and until they should be prevail in this action." ECF No. 53 p. 15. They kept true to their word even after they were cleared of all claims, forgoing reliance on this Court's fair use finding for nearly two years over the course of the appeal. Their fastidious good faith was the opposite of recklessness. *Cf. Zomba Enters. v. Panorama Records, Inc.*, 491 F.3d 574, 584-85 (6th Cir. 2007) (affirming willfulness finding; defendant "exhibited a reckless disregard" for plaintiff's rights by selling infringing works in reliance on a claim of fair use after the court entered a consent order forbidding further sales).

If any dispute of fact remains as to whether any infringement was willful, the issue cannot be disposed by summary judgment. When the "salient issue [is] whether Defendants had a reasonable, good faith belief that their conduct did not infringe Plaintiff's copyrights. … Questions of 'good faith' and 'reasonableness' generally are reserved for the jury." *Clinton v. Adams*, Case No. CV 10-9746 ODW, 2012 U.S. Dist. LEXIS 196209, *11-12 (C.D. Cal. May 7, 2012), *rev'd in part on other grounds*, 555 Fed. Appx. 737 (9th Cir. 2014). *See also Erickson Prods. v. Kast*, 921 F.3d 822, 833 (9th Cir. 2019), *Henley*, 733 F. Supp. 2d at 1166. If the Court does not grant Defendants summary judgment on the issue it should present the issue to the jury.

### b. Any infringement should be found innocent.

The Court should instead find that any infringement was innocent because Defendants were "not aware and had no reason to believe that [their] … acts constituted an infringement of copyright." 17 U.S.C. § 504(c)(2). Innocence is established where a defendant reasonably believed its "acts did not constitute infringement" or "that he was not engaging in the acts constituting infringement." *Rosen v. Netfronts, Inc.*, No. CV 12-658 CAS, 2013 U.S. Dist. LEXIS 96532, *11 (C.D. Cal. July 9, 2013).

The evidence shows that Defendants believed they were "acting within the dictates of copyright law." *Peker v. Master Collection*, No. CV-98-672, 2001 U.S. Dist. LEXIS 25371, *4 (E.D.N.Y. Sept. 18, 2001) recommending $200 damages award in accordance with Section 504(c)(2)), *adopted and aff'd in pertinent part*, 47 Fed. Appx. 597 (2d Cir. 2002). That belief was reasonable, as borne out by in this action. They were not aware in 2016 that *Boldly* would be found an infringement on appeal in 2020, and they reasonably believed that it would not be. This Court found the issue of fair use close and unsettled at the pleadings stage, and found fair use at summary judgment. The Ninth Circuit's different opinion on *de novo* review does not make those decisions unreasonable. The statutory minimum is appropriate "where the defendant's defense was based on a non-frivolous but ultimately unsuccessful legal argument." *NFL v. Primetime 24 Joint Venture*, 131 F. Supp. 2d 458, 478 (S.D.N.Y. 2001) (collecting cases).

### c. No damages award should exceed the statutory minimum.

DSE's request for $225,000 in damages shocks the conscience. Boldly was not published, brought Defendants no sales and no profits, and caused DSE no actual damages or other losses. "While a plaintiff in a trademark or copyright infringement suit is entitled to damages that will serve as a deterrent, it is not entitled to a windfall." *Daimler AG v. A-Z Wheels LLC*, No. 16-cv-875-JLS, 2020 U.S. Dist. LEXIS 204301, *6-7 (S.D. Cal. Nov. 2, 2020) (*quoting Adobe Sys. v. Tilley*, No. 09-01085-PJH, 2010 WL 309249, *5 (N.D. Cal. Jan. 19, 2010)). "Courts should ensure that statutory damages awards … 'bear[] a plausible relationship to Plaintiff's actual damages.'" *Adobe Sys. v. Nwubah*, No. 18-CV-06063-LHK, 2020 U.S. Dist. LEXIS 109922, *41 (N.D. Cal. June 23, 2020) (*quoting Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1102 (N.D. Cal. 2014)). DSE has none.

While statutory damages need not correspond directly with actual damages, the total absence of actual damages supports only the minimum award. "'[T]he legislative history of the Copyrights Act, while not entirely clear on this point,

16

1   seems to contemplate that when a plaintiff does not establish that any damage has

2   resulted from an infringement, the minimum amount of $250 will be awarded.'"

3   *Mon Cheri Bridals, LLC v. Cloudflare, Inc.*, No. 19-cv-01356-VC (TSH), 2021

4   U.S. Dist. LEXIS 65446, *6 (N.D. Cal. Apr. 1, 2021) (*quoting Bly v. Banbury*

5   *Books, Inc.*, 638 F. Supp. 983, 987 (E.D. Pa. 1986)). That Congressional history

6   states that "the plaintiff in an infringement suit is not obliged to submit proof of

7   damages and profits and may choose to rely on the provision for minimum statutory

8   damages." *Id.* (*quoting* H.R. Rep. No. 1476 at 161). Congress deems the statutory

9   minimum a sufficient deterrent for good-faith users. As the House Report further

10  explains, "by establishing a realistic floor for liability, the [innocent infringer]

11  provision preserves its intended deterrent effect." H.R. Rep. No. 1476, at 163.

12        So DSE is incorrect when contending that an award must be substantial to

13  have a "deterrent effect on others" or to "discourag[e] the defendant[s] from future

14  infringements." Doc. 175-1 p. 25. It is telling that what DSE wants to discourage

15  and deter are unwritten works like "*Oh the Places Yoda'll Go!*, *Oh the Places*

16  *You'll Pokemon Go!*, *Oh the Places You'll Yada Yada Yada!* … '*Picard Hears A*

17  *Q*' and '*One Kirk, Two Kirk, Red Shirt, Blue Shirt.*'" *Id.* Sight unseen, DSE judges

18  these hypothetical, potential fair use works to be future infringements, just as it

19  insisted that *Boldly* was not a fair use work without asking to review a copy. Doc.

20  No. 53 pp. 17-18 (Fifteenth Affirmative Defense ¶¶ 17-18). Its apparent goal is "a

21  chilling effect on creativity insofar as [it] discourage[s] the fair use of existing

22  works in the creation of new ones." *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709

23  F.3d 1273, 1280 (9th Cir. 2013). DSE never saw a fair use that it didn't dislike. *See*

24  *Lombardo v. Dr. Seuss Enters., L.P.*, 729 Fed. Appx. 131 (2d Cir. 2018). But "a

25  copyright holder cannot prevent another person from making a 'fair use' of

26  copyrighted material." *Google*, No. 18-956, slip op. at 13. The chilling effect that

27  DSE seeks is contrary to public policy, not a basis for an enhanced award.

28

DSE's disproportionate request for $225,000 further justifies the most minimal award allowed. *See Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983 (9th Cir. 2009) ("the decisionmaker may consider plaintiff's conduct during litigation" when setting an award of statutory damages); *McNamara v. Univ. Commer. Servs.*, Civ. No. 07-6079-TC,  2008 U.S. Dist. LEXIS 69961, *12 (D. Or. Sept. 16, 2008) (awarding $1,000 in statutory damages to copyright plaintiff who had demanded $300,000); *UN4 Prods. v. Primozich*, 372 F. Supp. 3d 1129, 1135 (W.D. Wash. 2019) (finding $750 "adequate to deter defendants" and not "imposing draconian penalties that are out of proportion to the harm caused by Defendants' actions or any benefits derived therefrom"). Any award under 17 U.S.C. § 504(c)(2) should be limited to $750 per work, or $200 per work upon a finding of innocent infringement.

## V.   Conclusion.

Therefore, and upon the record evidence previously filed, Defendants respectfully request that the Court:

1.   Deny DSE's renewed motion for summary judgment in all respects;

2.   Submit a request to the Register of Copyrights to advise the Court whether the inaccurate information included in the applications for *Go!* and *Sneetches*, if known, would have caused it to refuse registration pursuant to 17 U.S.C. § 411(b)(2);

3.   Stay the proceedings pending the Register's response;

4.   Upon the Register's response, find that the copyright registrations for *Go!* and *Sneetches* are invalid and dismiss the infringement claims as to those works;

5.   Find that Defendants made *de minimis* use of *Sneetches* and *Grinch* and dismiss the infringement claims as to those works;

6.      Find that any infringement was not willful and grant Defendants summary judgment on that issue pursuant to Fed. R. Civ. P. 56(f)(1);

7.      Find that any infringement was innocent and grant Defendants summary judgment on that issue pursuant to Fed. R. Civ. P. 56(f)(1);

8.      Award the minimum statutory damages available per work for any infringement; and

9.      Submit any remaining triable issues to the jury.


April 30, 2021                                      Respectfully submitted,

                                                    */s/ Dan Booth*
                                                    Dan Booth
                                                    DAN BOOTH LAW LLC

                                                    Michael Licari
                                                    THE LAW OFFICES OF MICHAEL LICARI

                                                    Attorneys for Defendants


## CERTIFICATE OF SERVICE

I hereby certify that on this April 30, 2021 I electronically filed the foregoing document by using the Court's ECF system, thereby causing a true copy thereof to be served upon counsel of record for Plaintiff Dr. Seuss Enterprises, L.P., as identified on the Notice of Electronic Filing.


                                                    /s/ Dan Booth

DEFENDANTS' OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT;
REQUEST FOR RELIEF PURSUANT TO FED. R. CIV. P. 56(f)(1)          Case No. 16-cv-2779-JLS-BGS