UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. SEUSS ENTERPRISES, L.P., a California limited partnership,<br><br>                                    Plaintiff,<br><br>v.<br><br>COMICMIX LLC, a Connecticut limited liability company; GLENN HAUMAN, an individual; DAVID JERROLD FRIEDMAN a/k/a DAVID GERROLD, an individual; and TY TEMPLETON, an individual,<br><br>                                    Defendants. | Case No.:  16-CV-2779 JLS (BGS)<br><br>**ORDER (1) DENYING DEFENDANTS' MOTION FOR RECONSIDERATION AND (2) DENYING PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF Nos. 176, 177) |

Presently before the Court are Defendants ComicMix LLC, Glenn Hauman, David Jerrold Friedman, and Ty Templeton's (collectively, "ComicMix" or "Defendants") Motion for Reconsideration of Order Denying Motion for Issuance of Request to the Register of Copyrights Pursuant to 17 U.S.C. § 411(b) ("Reconsid. Mot.," ECF No. 177) and Plaintiff Dr. Seuss Enterprises, L.P.'s ("Seuss" or "Plaintiff") Renewed Motion for

/ / /

/ / /

1

Summary Judgment ("MSJ," ECF No. 176).[1]  Also before the Court are Seuss's opposition to the Reconsideration Motion ("Reconsid. Opp'n," ECF No. 178), ComicMix's reply in support of the Reconsideration Motion ("Reconsid. Reply," ECF No. 181), ComicMix's opposition to the MSJ ("MSJ Opp'n," ECF No. 179), and Seuss's reply in support of the MSJ ("MSJ Reply," ECF No. 180).  The Court took both matters under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1).  *See* ECF No. 182.  Having considered the Parties' arguments, the law, and the facts, the Court **DENIES** ComicMix's Reconsideration Motion and **DENIES** Seuss's MSJ for the reasons set forth below.

## BACKGROUND

### I.    Factual and Procedural Background

The Parties, who are intimately familiar with the facts of this case, do not submit new Statements of Fact in support of or in opposition to Seuss's MSJ.  Rather, Seuss "directs the Court to the Statement of Facts ('SOF') submitted in connection with its original motion for summary judgment," MSJ at 3 n.1 (citing ECF No. 107-2), and, other than a brief, one-paragraph summary of the procedural history, ComicMix does not provide any recitation of the facts, *see* MSJ Opp'n.  Accordingly, the Court incorporates by reference the factual and procedural background as set forth in its Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment ("MSJ Order," ECF No. 149 at 2–13) and its Order Denying Defendants' Motion for Issuance of Request to the Register of Copyrights ("Referral Order," ECF No. 88 at 2–3).

Seuss is the owner, by assignment, of the copyrights to the works of Theodor S. Geisel, the author and illustrator of the books written under the pseudonym "Dr. Seuss." Pl.'s Statement of Undisputed Material Facts in Support of Pl.'s MSJ ("SOF"), ECF No. 115-1, ¶¶ 1–4.  Mr. Geisel wrote and illustrated the works at issue here: *Oh, the Places*

---

[1] Seuss filed what appears to be a substantively identical motion earlier the same day, *see* ECF No. 175, which the Court **DENIES AS MOOT** in light of the second filing.

*You'll Go!* ("*Go!*"); *How the Grinch Stole Christmas!* ("*Grinch*"); and *The Sneetches and Other Stories* ("*Sneetches*") (collectively, the "Copyrighted Works").  SOF ¶¶ 2–7

In 2016, Defendants set out to create *Oh, the Places You'll Boldly Go!* ("*Boldly!*"). Each of Mr. Templeton, Mr. Gerrold, and Mr. Hauman testified that he considered *Boldly!* a parody, a mash-up, and a transformative work of the Copyrighted Works.  *See, e.g.*, Declaration of Tamar E. Duvdevani in Support of Pl.'s MSJ ("Duvdevani Decl.") Ex. 1, ECF No. 107-23 at 120:14–23; Duvdevani Decl. Ex. 2, ECF No. 107-24, at 68:7–8, 77:19– 78; Duvdevani Decl. Ex. 3, ECF No. 107-25, at 75:23–76:11.  However, each Defendant also testified that he copied the Copyrighted Works to create *Boldly!*.  SOF ¶¶ 33, 51–54, 56, 64.

After learning about *Boldly!*, Seuss sent ComicMix three letters, dated September 28, October 7, and October 25, 2016, demanding that ComicMix immediately cease all use of the Copyrighted Works.  SOF ¶¶ 103–05.  Seuss also sent a DMCA takedown notice to Kickstarter on October 7, 2016.  *Id.* ¶ 68.  ComicMix sent Seuss a responsive letter on October 28, 2016, which refused Seuss's demands.  SOF ¶¶ 106–08.  Seuss filed this infringement action on November 10, 2016.  ECF No. 1.

As relevant to the present motions, on December 22, 2017, ComicMix filed a motion for issuance of a request to the Register of Copyrights pursuant to 17 U.S.C. § 411(b)(2), on the basis that Mr. Geisel's copyright registration applications for *Go!* and *Sneetches* were knowingly and materially inaccurate and incomplete.  *See* ECF No. 57.  On May 21, 2018, the Court denied ComicMix's motion.  *See generally* Referral Order.  In the Referral Order, the Court concluded that neither of the copyright applications was based on inaccurate information, as neither of the works in question contained a "substantial" amount of the undisclosed previously published material, and accordingly the Court declined to issue a request to the Register of Copyrights.  *See id.* at 8–10.

On December 11, 2018, the Parties filed cross-motions for summary judgment.  *See* ECF Nos. 107, 108.  ComicMix sought summary judgment as to all of Seuss's surviving claims on the ground that ComicMix was entitled to summary adjudication on its

affirmative defenses for fair use and the First Amendment.  *See generally* ECF No. 108. Seuss sought summary judgment of ComicMix's willful copyright infringement.  *See generally* ECF No. 107.  On March 12, 2019, the Court granted ComicMix's motion as to the copyright infringement claims, finding ComicMix was entitled to its fair use defense. *See* MSJ Order at 33.  ComicMix also sought summary judgment of the surviving trademark infringement claims on the grounds that neither a stylized font nor an illustration style is subject to trademark protection, and, even if they were, ComicMix's use thereof merits First Amendment protection under *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). *See generally* ECF No. 108.  The Court agreed that an illustration style is not protectable, *see* MSJ Order at 34, and that the "use of Seussian typefaces, not in conjunction with an enforceable mark, cannot support a claim for violation of the Lanham Act."  *Id.* at 36–37. Accordingly, the Court granted ComicMix's motion as to the surviving trademark and unfair competition claims.  *Id.* at 35, 37.  Given this disposition, the Court declined to address the First Amendment issues.  *Id.* at 37.  Further, given the Court's determination that ComicMix was entitled to summary judgment on its fair use defense, the Court denied Seuss's cross-motion.  *Id.*

On March 26, 2019, Seuss appealed the MSJ Order.  *See* ECF No. 151.  The Ninth Circuit heard oral argument on Seuss's appeal on April 27, 2020.  *See Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 443 (9th Cir. 2020).  On December 18, 2020, the Ninth Circuit issued its opinion affirming in part and reversing in part the MSJ Order.  *See id.*  The Court held a mandate hearing on March 5, 2021, during which the Court set a briefing schedule for any motions.  *See* ECF No. 173.  The present motions followed.

## II.   The Ninth Circuit's Opinion

The Ninth Circuit reversed the Court's grant of summary judgment in favor of ComicMix on the copyright infringement claim but affirmed the Court's Rule 12(c) dismissal and grant of summary judgment in favor of ComicMix on the trademark claim. *ComicMix*, 983 F.3d at 448.

/ / /

As relevant to the present motions, the Ninth Circuit concluded that each of the four statutory fair use factors "decisively weigh[s] against ComicMix and no countervailing copyright principles counsel otherwise." *Id.* at 451. As to the first factor, the purpose and character of the use, because *Boldly!* is "indisputably commercial" and not transformative, the Ninth Circuit found that the first factor weighs against fair use. *Id.* at 451–52. The Ninth Circuit concluded *Boldly!* is not a parody because it does not critique or comment on the Copyrighted Works by, for example, holding Dr. Seuss's style up to ridicule or criticizing the "purported self-importance of [the Copyrighted Works'] characters." *Id.* at 452–53. Nor does replacing Seuss characters and elements with *Star Trek* material render the work transformative, as this replacement does not give Seuss's work new purpose or meaning. *Id.* at 453. *Boldly!* lacks the benchmarks of transformative use, instead paralleling the Copyrighted Works' purpose. *Id.* at 453–55.

As to the second factor, the nature of the copyrighted work, the Copyrighted Works are creative and expressive works, which weighs against a finding of fair use. *Id.* at 456. As to the third factor, the amount and substantiality of the portion of the copyrighted work used, the quantitative amount of the Copyrighted Works taken by *Boldly!* "was considerable," *id.*, with close replication of well-known and significant illustrations from all of the Copyrighted Works and copying of 14 of *Go!*'s 24 pages, *id*. The Ninth Circuit also found the qualitative value used by *Boldly!* to be "substantial," as *Boldly!* "took the heart of Dr. Seuss's works" by, for example, taking the machine at the heart of *Sneetches* and repurposing it as a *Star Trek* transporter. *Id.* at 457–58.

As to the fourth factor, the effect on the value or market for the copyrighted work, the Ninth Circuit found that the Court erred in shifting the burden of showing market harm to Seuss, resulting in a "skewed analysis" of this factor. *Id.* at 458. Weighing the factors, the Ninth Circuit concluded that ComicMix could not sustain its fair use defense and that this Court therefore erred in granting summary judgment in favor of ComicMix on the copyright infringement claim. *Id.* at 461.

/ / /

However, the Ninth Circuit affirmed that Seuss's trademark infringement claim fails as a matter of law.  *Id.*  Accordingly, the Ninth Circuit affirmed in part and reversed and remanded in part "for proceedings consistent with this opinion."  *Id.* at 463.

## COMICMIX'S MOTION FOR RECONSIDERATION

ComicMix argues for reconsideration of the Referral Order.  The Parties disagree as to the legal standard that applies to the motion.  ComicMix argues that the Referral Order was an interlocutory order, *see* Reconsid. Mot. at 7, and, because the Ninth Circuit reversed in part the grant of summary judgment in ComicMix's favor, the final judgment no longer has effect and the order is once more interlocutory and subject to reconsideration, *see id.* at 9 (citing *Marketquest Grp., Inc. v. BIC Corp.*, No. 11-cv-0618-BAS-JLB, 2018 U.S. Dist. LEXIS 62359, at \*9 (S.D. Cal. Apr. 12, 2018)).  Thus, ComicMix argues for reconsideration under Federal Rule of Civil Procedure 54(b) based on an alleged significant change in controlling Ninth Circuit law as articulated in *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 959 F.3d 1194 (9th Cir. 2020) [hereinafter *Unicolors*].  *See* Reconsid. Mot. at 2–3.  Seuss argues that the Referral Order merged into the Court's final judgment, and the Ninth Circuit's reversal did not affect the Referral Order; therefore, ComicMix's Reconsideration Motion must be adjudicated under Federal Rule of Civil Procedure 60(b), which governs the reopening and reconsideration of final judgments.  Reconsid. Opp'n at 6.

The Court finds it unnecessary to determine which standard applies, as ultimately, under either standard, the Court would have to find that the Ninth Circuit's decision in *Unicolors* was a change in controlling law necessitating the revisiting of the Referral Order. The Court finds that it is not, and therefore reconsideration under any basis is improper.

## I.   Summary of *Unicolors*

In *Unicolors*, a jury had decided that the defendant, a clothing retailer, had infringed the copyright of the plaintiff, a company that creates textile and garment designs, by selling clothing with designs similar to the plaintiff's copyrighted design.  959 F.3d at 1195.  The plaintiff had applied for and received the copyright registration at issue in February 2011.

*Id.* at 1196.  The registration was a "single-unit registration" of thirty-one designs, one of which was the allegedly infringed design.  *Id.*  Twenty-two of the designs covered by the registration, including the allegedly infringed design, bore the prefix "EH," which meant they had been created in January 2011; the remaining nine bore the prefix "CEH," which meant they were "confined" works designed in January 2011.  *Id.*  The plaintiff's "confined" works were created for specific customers, who would receive exclusive use for several months.  *Id.*  The copyright registration indicated that all thirty-one designs had a January 15, 2011 date of first publication.  *Id.*

The defendant appealed the judgment against it, arguing that the copyright registration covering the design in question was invalid due to the inclusion of known inaccuracies in the registration application.  *Id.* at 1197.  Specifically, the defendant argued that the designs were improperly registered as a "single unit" because they were not first sold or offered for sale in an integrated manner, given that some of the works were displayed publicly in the plaintiff's showroom and others were "confined" works sold separately and exclusively to individual customers.  *Id.* at 1197–98.  When presented with this issue, the district court had found against the defendant for two reasons.  *Id.* at 1198. First, the district court had held that invalidation required a showing that the plaintiff had intended to defraud the Copyright Office, and no evidence of such an intent had been introduced.  *Id.*  Second, the district court found that all thirty-one designs were first "published" and made available to the public on the same day.  *Id.*

The Ninth Circuit found that the district court was wrong on both counts.  *Id.*  The Ninth Circuit acknowledged that its prior case law implied an intent-to-defraud requirement but noted that its recent decision in *Gold Value International Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F.3d 1140, 1147 (9th Cir. 2019), clarified that no such requirement exists.  959 F.3d at 1198.  The Ninth Circuit further held that a "single unit" registration requires that the collection of works first first published as a single, bundled collection; because the "confined" designs were not placed in the showroom for sale at the same time as the other designs, they were not "published" on the same date.  *Id.* at 1198–

200.  The Ninth Circuit further reasoned that the plaintiff knew that some of the designs on the registration were "confined" and therefore published separately to exclusive customers, satisfying the knowledge requirement of section 411(b).  *Id.* at 1200.  The Ninth Circuit therefore reversed the district court's entry of judgment in favor of the plaintiff and remanded to the district court to submit an inquiry to the Register of Copyrights.  *Id.* at 1200–01.

## II.   Summary of the Parties' Positions

ComicMix argues that *Unicolors*, which was decided after oral argument was held on Seuss's appeal in this case, *see* Reconsid. Mot. at 3, is an intervening change in controlling law, *see id.* at 9.  ComicMix argues that *Unicolors* "changed the nature of how courts in this Circuit are required to address such § 411(b) requests" by clarifying that "§ 411 is mandatory by its express terms."  *Id.* at 9.  ComicMix relies on following language in *Unicolors* in making this argument:

> In practice, once a defendant alleges that (1) a plaintiff's certificate of registration contains inaccurate information; (2) "the inaccurate information was included on the application for copyright registration"; and (3) the inaccurate information was included on the application "with knowledge that it was inaccurate," a district court is then required to submit a request to the Register of Copyrights "to advise the court whether the inaccurate information, if known, would have caused [it] to refuse registration."  [17 U.S.C.] § 411(b)(1)–(2).  In other words, courts may not consider in the first instance whether the Register of Copyrights would have refused registration due to the inclusion of known inaccuracies in a registration application.

959 F.3d at 1197.  ComicMix further argues that the intent-to-defraud requirement was "unclear" at the time this Court issued its order on the Referral Motion, and that "*Unicolors* further clarifies" this issue.  Reconsid. Mot. at 10.  ComicMix argues that, "[b]ecause the Court exercised its discretion rather than first soliciting and obtaining the Register of Copyrights' opinion," the Referral Order must be altered under *Unicolors*.  *Id.* at 11.

/ / /

8

Seuss argues that *Unicolors* is not an intervening change in controlling law because it "did not disapprove of, much less change, long-standing precedent permitting district courts to weed out meritless 17 U.S.C. § 411(b)(2) motions by initially determining whether an [sic] copyright application actually contains an inaccuracy known to the applicant and denying motions where no such inaccuracy is present." Reconsid. Opp'n at 9. Because this Court followed that long-standing procedure in denying the Referral Motion, reconsideration is not necessary. *Id.* In support of its position, Seuss cites to *Roxana Towry Russell v. Walmart Incorporated*, No. CV 19-5495-MWF (JCX), 2020 WL 9073046, at *4 (C.D. Cal. Oct. 16, 2020), a case post-dating *Unicolors* in which "Walmart argued that because it has alleged that Plaintiff submitted inaccurate information in her copyright registration applications, the Court has no discretion to deny its Remand Motion and must refer the matter to the Register of Copyrights," but the district court disagreed. 2020 WL 9073046, at *4. The court noted that "[r]ecent Ninth Circuit case law is consistent with this gatekeeping procedure," and *Unicolors* only remanded with instructions to submit an inquiry to the Register of Copyrights "after finding that the application contained 'known inaccuracies.'" *Id.* at *5 (citation omitted).

On reply, ComicMix contends that there was no Ninth Circuit law interpreting section 411(b) until *Gold Value* in 2019, which held that a showing of fraud is not required, and that *Unicolors* subsequently made clear that a defendant need only "allege" inaccuracies in the application, not "prove" them. Reconsid. Reply at 4–5 (citations omitted). ComicMix cites to two post-*Unicolors* district court cases for its position: *Yellowcake, Inc. v. Morena Music, Inc.*, No. 1:20-cv-0787 AWI BAM, 2021 WL 795823 (E.D. Cal. May 5, 2021); and *Fashion Ave. Sweater Kniths, LLC v. Poof Apparel Corp.*, No. 2:19-cv-06302-CJC-JEM, 2020 WL 7861970 (C.D. Cal. Dec. 3, 2020). *Id.* at 5.

## III.   Analysis

The Court agrees with Seuss's interpretation of *Unicolors* and the extent to which it changed—or rather, failed to change—Ninth Circuit law. Although *Unicolors* would have been an intervening change in controlling law were the question of "what it means to

publish multiple works as a 'single unit'" at issue, 959 F.3d at 1199 (footnote omitted) (noting that "this court has never previously addressed [this question]"), there was no change in controlling law with regard to the issues raised by ComicMix, *see Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 282 F.R.D. 216, 224 (D. Ariz. 2012) (explaining that, in the context of Rule 59(e), "cases which generally or substantively alter existing law, such as by overruling it, or creating a significant shift in a court's analysis," are intervening changes in law warranting relief, whereas "cases which merely confirm, clarify or explain existing case law do not provide a basis for relief").

The section of *Unicolors* ComicMix contends is a change in how courts are required to address section 411(b) requests is nothing more than a brief summary of the already existing law in the Ninth Circuit. Further, *Unicolors* does not itself change the law concerning intent-to-defraud, but merely confirms the prior clarification of the standard contained in *Gold Value*. At any rate, this Court's Referral Order never addressed the intent-to-defraud issue in light of its finding that there were no known inaccuracies in Seuss's copyright applications and registrations. *See generally* Referral Order. Thus, the alleged statements of new controlling law cited by ComicMix are merely restatements or clarifications of existing law that neither necessitate nor permit this Court's revisiting of the Referral Order.

The cases on which ComicMix relies on reply are not persuasive in arguing the contrary. In *Yellowcake*, the court cited to the same statement of the legal standard from *Unicolors* on which ComicMix relies, but ultimately the court ended up seeking supplemental briefing on the invalidity issue where the authorship information in judicially noticed registration documents was inconsistent with the ownership interest claimed in a counterclaim, in which case "[t]he Counterclaim therefore indicates that the registrations contain incorrect information in terms of authorship." 2021 WL 795823, at *19. That the court ordered supplemental briefing, rather than simply accepting the allegation of inaccurate information, supports the view that *Unicolors* does not mandate that a court refer all requests made under section 411(b) to the Register of Copyrights. Indeed, the

Court was explicit that, "[i]f, after reviewing the supplemental information, the Court is satisfied that there is inaccurate information that is part of the registrations and that was included in the applications to the Copyright Office, the Court will send an inquiry as required by § 411/*Unicolors*." *Id.*

Similarly, the court in *Fashion Avenue* did not simply accept at face value allegations of inaccurate information in referring a validity issue to the Register of Copyrights. As the earlier decision actually electing to refer the issue to the Register of Copyrights makes clear, both allegations in the complaint and evidence presented by the defendants tended to show that the designs at issue were published before registration, raising a genuine issue as to the copyright's validity. *See Fashion Ave. Sweater Knits, LLC v. Poof Apparel Corp.*, No. CV1906302CJCJEMX, 2020 WL 7862132, at *3 (C.D. Cal. Oct. 28, 2020). Thus, both *Yellowcake* and *Fashion Avenue* suggest that the district court's gatekeeping function under section 411(b) remains intact post-*Unicolors*, as the district court in *Russell* explicitly held. Accordingly, the Court **DENIES** ComicMix's Reconsideration Motion.

## SEUSS'S RENEWED MOTION FOR SUMMARY JUDGMENT

### I. Legal Standards

#### A. *Summary Judgment*

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or defense or part of a claim or defense. Summary judgment is appropriate where the Court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

/ / /

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The moving party may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of dispute regarding a material fact. *Id.* When a plaintiff seeks summary judgment as to an element for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.

### B.    Copyright Infringement

"A plaintiff bringing a claim for copyright infringement must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006) (quoting *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

A "copyright registration creates a presumption of ownership." *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1110 (9th Cir. 1998) (citing *Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1335 (9th Cir. 1995)). "To rebut the presumption [of validity], an infringement defendant must simply offer some evidence or proof to dispute or deny the

plaintiff's prima facie case of infringement." *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011) (quoting *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1144 (9th Cir. 2003)) (internal quotation marks omitted).

"The second prong of the infringement analysis contains two separate components: 'copying' and 'unlawful appropriation.'" *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (citation omitted). To establish copying, the plaintiff can rely on direct evidence of copying or can show either: "(1) the two works in question are substantially similar and the defendant had access to the subject work; or (2) that the works are strikingly similar." *Corbello v. Valli*, 974 F.3d 965, 973 (9th Cir. 2020) (citation omitted); *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 952 (9th Cir. 2019) (citations omitted). "On the other hand, the hallmark of 'unlawful appropriation' is that the works share *substantial* similarities." *Skidmore*, 952 F.3d at 1064 (citing *Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2004)) (emphasis in original).

"In assessing whether particular works are substantially similar, or strikingly similar, this Circuit applies a two-part analysis: the extrinsic test and the intrinsic test." *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 985 (9th Cir. 2017). "The extrinsic test requires plaintiffs to show overlap of concrete elements based on objective criteria." *Id.* (internal quotation marks and citations omitted). "The extrinsic test requires a three-step analysis: (1) the plaintiff identifies similarities between the copyrighted work and the accused work; (2) of those similarities, the court disregards any that are based on unprotectable material or authorized use; and (3) the court must determine the scope of protection ("thick" or "thin") to which the remainder is entitled 'as a whole.'" *Corbello*, 974 F.3d at 974 (citation omitted).

"Only if the extrinsic analysis succeeds does the so-called 'intrinsic' analysis takes place." *Id.* (citation omitted). "[T]he intrinsic test is subjective and asks whether the ordinary, reasonable person would find the total concept and feel of the works to be substantially similar." *Urban Outfitters*, 853 F.3d at 985 (internal quotation marks and citations omitted). When it comes to applying the intrinsic test, "a district court may grant

summary judgment for plaintiffs on the issue of copying when the works are so overwhelmingly similar that the possibility of independent creation is precluded." *Id.* at 987.

## II.   Analysis

### A.   Summary of the Parties' Positions

Seuss seeks summary judgment of willful copyright infringement against ComicMix and an award of heightened statutory damages.  MSJ at 7.  As to the first element of copyright infringement, Seuss argues that the Court previously determined that Seuss's copyright registrations were valid, and ComicMix did not cross-appeal that decision; accordingly, ComicMix cannot now attack the validity of Seuss's copyrights.  *Id.* at 8.  As to the second element, Seuss claims that ComicMix "did not deny" that *Boldly!* copied directly and extensively from the copyrighted works in question and is substantially similar to protected elements in those works; rather, "[ComicMix] argued only that their extensive copying was fair use and therefore not infringing."  *Id.* (citing ECF No. 120 at 15–25). Given that the Ninth Circuit's opinion eliminated the issue of fair use, no other defenses remain.  *Id.*  Seuss further argues that the Ninth Circuit's ruling, which found substantial and significant copying, requires the Court to find that substantial similarity has been established as a matter of law.  *Id.* at 8–9.  Seuss further claims that the undisputed evidence establishes that ComicMix acted with at least reckless disregard to *Boldly!*'s infringement, and therefore the Court should find ComicMix's infringement willful.  *Id.* at 9–15.  Seuss argues that increased statutory damages of $75,000 per work is appropriate as a result.  *Id.* at 15–20.

ComicMix opposes, claiming that its pleaded defenses of invalidity as to the copyrights for *Go!* and *Sneetches* and *de minimis* use as to *Sneetches* and *Grinch* require denial of Seuss's MSJ.  MSJ Opp'n at 3.  ComicMix reiterates the arguments made in its Reconsideration Motion in arguing that the copyright registrations at issue are invalid, thus requiring referral to the Register of Copyrights before the merits of the claims related to *Go!* and *Sneetches* can be resolved.  *Id.* at 4–5.  ComicMix further argues that Seuss fails

14

to meet its burden to establish that *Boldly!* is substantially similar to each of the Copyrighted Works, arguing that *Boldly!*'s use of only two illustrations from *Sneetches* and one from *Grinch*, without copying any text from either book, is *de minimis*. *Id.* at 5–9. ComicMix argues that, because each Copyrighted Work is subject to a viable defense, assessing damages at this point is premature. *Id.* at 9. To the extent the Court finds otherwise, ComicMix argues that Seuss fails to meet its burden of proving willfulness and that factual disputes preclude summary judgment. *Id.* at 9–15. Should the Court reach the issue of damages, ComicMix urges the Court to find that any infringement was innocent, *id.* at 15–16, and to award only the statutory minimum in damages, *id.* at 16–18.

On reply, Seuss argues that ComicMix's *de minimis* use defense was abandoned by ComicMix's failure to raise it at summary judgment; at summary judgment, ComicMix instead contradicted its *de minimis* use defense by conceding that there could not be fair use unless there was a substantial use. MSJ Reply at 2–3 (citations omitted). Further, Seuss claims that "the Ninth Circuit's findings that Defendants' takings of copyrighted material were substantial are incorporated in its mandate and foreclose any argument that Defendants' infringement of *Sneetches* and *Grinch* was *de minimis*" under the "spirit of the mandate." *Id.* at 3–4 (citing *United States v. Montgomery*, 462 F.3d 1067, 1072 (9th Cir. 2006)). Even if the Court were to consider the defense, Seuss claims it lacks merit, as "[a]n average viewer undoubtedly would recognize the appropriation." *Id.* at 4. Seuss further urges that ComicMix's infringement is clearly willful. First, given that the Copyrighted Works carry clear copyright notices, Seuss argues that ComicMix is precluded from claiming innocent infringement. *Id.* at 6 (citation omitted). Further, Seuss claims that the evidence clearly establishes "[ComicMix's] reckless conduct," *id.* at 7, and ComicMix's failure to seek legal counsel, while "highly probative of willfulness," "is only one of many indications of willful conduct," *id.* at 8. Finally, Seuss concedes to a jury trial on the amount of statutory damages to be awarded. *Id.* at 10.

/ / /

/ / /

15

### B.    Copyright Infringement

As to the issue of ownership of valid copyrights, Seuss has submitted copies of the copyright registrations for each of the Copyrighted Works as well as the documentation establishing the assignment of the relevant copyrights to Seuss.  *See* Declaration of Susan Brandt in Support of Pl.'s MSJ ("Brandt Decl.") Exs. 1–18, ECF Nos. 107-4–21. Accordingly, "Plaintiff has 'shift[ed] to defendant the burden to prove the invalidity of the copyright[].'" *L.A. Printex Indus., Inc. v. Lia Lee, Inc.*, No. CV 08-1836ODW(PJWX), 2009 WL 789877, at *3 (C.D. Cal. Mar. 23, 2009) (quoting *Entm't Research Grp. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997)).  ComicMix, however, has failed to carry its burden.  Although ComicMix argues that the copyright registrations for *Sneetches* and *Go!* are invalid, and therefore fail to satisfy the Copyright Act's registration requirement, due to the inclusion of knowingly inaccurate information in the copyright applications, *see generally* Reconsid. Mot., for the reasons provided *supra* at 5–11, the Court declines to revisit this issue.  Thus, "the presumption of validity afforded to [Seuss]'s copyright certificates remains intact," and "[Seuss] is therefore deemed to own valid copyrights in the designs at issue." *L.A. Printex Indus., Inc.*, 2009 WL 789877, at *3.

As to the issue of copying, Plaintiffs have introduced evidence of direct copying of each of the Copyrighted Works.  Specifically, Mr. Hauman sent Mr. Gerrold the text and a PDF scan of *Go!*, Duvdevani Decl. Ex. 2, ECF No. 107-24, at 90:8–95:30, and Mr. Gerrold acknowledged that he had a copy of *Go!* that he "flipped through . . . to see what the style of the mood was" "[s]omewhere in the process of writing the verses" of *Boldly!*, *id.* at 89:20–90:7.  Similarly, Mr. Templeton testified that he had a copy of *Go!* in front of him from which he copied while working on the illustrations for *Boldly!*, including *Boldly!*'s cover and many pages throughout the book. *See, e.g.*, Duvdevani Decl. Ex. 1, ECF No. 107-23, at 110:2–12, 123:9–124:11, 125:10–126:1, 133:20–134:18, 141:10–144:7, 146:12–25, 150:24–152:2, 152:23–154:7, 155:23–157:25, 161:17–165:12, 173:9–174:7, 175:24–176:24; *compare* Duvdevani Decl. Ex. 9, ECF No. 115-3, at 240–41, 243, 245–46, 248, 251–53, 255, 257–58, *with* Duvdevani Decl. Ex. 31, ECF No. 115-11, at 452–53, 455,

16

457, 459, 461–62, 464–66, 469–70.  Mr. Templeton admitted that he "painstakingly" copied from page 11 of *Sneetches* when illustrating a page of *Boldly!*, from the shape of and crosshatching and lettering on the machine to the poses of the characters.  Duvdevani Decl. Ex. 1 at 166:13–170:13; *compare* Duvdevani Decl. Ex. 11, ECF No. 115-5, at 303, *with* Duvdevani Decl. Ex. 31 at 467.  For one page of *Boldly!*, Mr. Templeton explained that "the characters from the Star Trek universe are posed in the positions that the Whos from Whoville are posed in How the Grinch Stole Christmas" and "there is a set of red lines emanating from above them that are meant to feel similar to the red lines in the drawing" from *Grinch*.  Duvdevani Decl. Ex. 1 at 137:19–138:3; *compare* Duvdevani Decl. Ex. 10, ECF No. 115-4, at 273, *with* Duvdevani Decl. Ex. 31 at 456.  Indeed, the Ninth Circuit's Opinion notes that "ComicMix does not dispute that it tried to copy portions of *Go!* as accurately as possible."  983 F.3d at 450.  Given this evidence, it is clear that Defendants directly copied protected elements from Plaintiff's copyrighted works.  *See, e.g.*, *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 924 F. Supp. 1559, 1564–65 (S.D. Cal. 1996), *aff'd*, 109 F.3d 1394 (9th Cir. 1997) (finding admissions that illustrations "were inspired by" and text "dr[awn] from" copyrighted texts "probably sufficient to permit a jury finding that protected elements of Dr. Seuss's text and illustrations found in Penguin's book got there through copying and not coincidence") (footnote omitted).

The Court therefore turns to the question of unlawful appropriation—in other words, whether *Boldly!* and the Copyrighted Works share "substantial similarities."  As an initial matter, the Court notes that it is somewhat rare for the plaintiff copyright holder affirmatively to move for summary judgment of infringement and for such a motion to be granted.  The Ninth Circuit has held that "a district court may grant summary judgment for plaintiffs on the issue of copying when the works are so overwhelmingly similar that the possibility of independent creation is precluded."  *Urban Outfitters*, 853 F.3d at 987.  However, historically, the cases in which such "overwhelming similarity" has been found are exceedingly limited.

/ / /

*Urban Outfitters*, for instance, involved textile designs that were "nearly identical." *Id.* at 985–87.  So, too, with *Neman Brothers & Associates, Inc. v. One Step Up Limited*, No. CV184297DMGAGRX, 2019 WL 8129616, at *10 (C.D. Cal. Nov. 25, 2019); *Texkhan, Incorporated v. One Step Up, Limited*, No. CV 16-606 DMG (FFMX), 2017 WL 8231368, at *6 (C.D. Cal. July 19, 2017); *Gracing Incorporated v. E.K. Blue, Incorporated*, No. CV 16-5107 MWF (SS), 2017 WL 5640516, at *2–3 (C.D. Cal. June 28, 2017); and *Spectravest, Incorporated v. Mervyn's Incorporated*, 673 F. Supp. 1486, 1491–92 (N.D. Cal. 1987), all dealing with fabric or apparel designs that were overwhelmingly similar with "minimal" differences.  In *Marcus v. Rowley*, the Ninth Circuit reversed a district court's determination of fair use and ordered entry of summary judgment in favor of the plaintiff with regard to a copyrighted booklet about cake design where "[d]efendant's [infringing work] could have been a photocopy of plaintiff's booklet but for the fact that defendant retyped plaintiff's material."  695 F.2d 1171, 1177–79 (9th Cir. 1983).  In so doing, the Ninth Circuit concluded that "[t]his case presents a clear example of both substantial quantitative and qualitative copying."  *Id.* at 1177.  And, in *Applied Business Software, Incorporated v. Citadel Servicing Corporation*, No. SACV1701627CJCJDEX, 2019 WL 1949455, at *11 (C.D. Cal. Mar. 26, 2019), the district court granted partial summary judgment on the issue of copyright infringement and found the copying in question "substantial" where the defendant copied the entirety of the copyrighted program onto more than twenty computers in contravention of the explicit terms of a license agreement.  Accordingly, as summarized by one commentator:

> A plaintiff seeking summary judgment for substantial similarity will have to show, in most cases, that the defendant's work is nearly identical to his or that some unusual circumstance conclusively demonstrates copying.  Summary judgment is infrequently granted to plaintiffs on this issue.  Most cases involve non-literary works: toys, cartoon characters, wall plaques, video games, maps, fabrics, designs on clothing, magazine covers, auto parts containers, photographs, and computer software.  In each instance, the defendant had either substantially appropriated the plaintiff's work or had reproduced

> it with minor alterations, such as the removal of the plaintiff's name and copyright notice.

Julie J. Bisceglia, *Summary Judgment on Substantial Similarity in Copyright Actions*, 16 Hastings Comm. & Ent L.J. 51, 56–57 (1993) (footnotes omitted).

### 1. Objective Extrinsic Test (Overlap of Concrete Elements)

As noted above, "[t]he extrinsic test requires a three-step analysis: (1) the plaintiff identifies similarities between the copyrighted work and the accused work; (2) of those similarities, the court disregards any that are based on unprotectable material or authorized use; and (3) the court must determine the scope of protection ('thick' or 'thin') to which the remainder is entitled 'as a whole.'" *Corbello*, 974 F.3d at 974 (citation omitted).

Here, the Ninth Circuit's opinion remanding this action was clear that "[t]he issue in this appeal is not whether *Boldly!* infringed [the Copyrighted Works], but whether *Boldly!* was a fair use of [the Copyrighted Works]." 983 F.3d at 450 (footnote omitted). Although the Ninth Circuit's analysis did not directly address infringement, portions of the Ninth Circuit's opinion make clear that, extrinsically, *Boldly!* overlaps concrete elements in the Copyrighted Works, particularly in its exacting replication of iconic illustrations from each of the Copyrighted Works.

In total, the Ninth Circuit noted that "[ComicMix] copied '14 of *Go!*'s 24 pages,' close to 60% of the book, and significant 'illustrations from *Grinch* and two stories in *Sneetches*,'" rendering ComicMix's copying "considerable." *Id.* at 456. The Ninth Circuit noted that, "[c]rucially, ComicMix did not merely take a set of unprotectable visual units, a shape here and a color patch there." *Id.* (footnote omitted). Rather, "[f]or each of the highly imaginative illustrations copied by ComicMix, it replicated, as much and as closely as possible . . . , the exact composition, the particular arrangements of visual components, and the swatches of well-known illustrations." *Id.*

For example, with regard to *Boldly!*'s depiction of "*Grinch*'s iconic finale scene," the Ninth Circuit noted that "ComicMix captured the placements and poses of the

/ / /

characters, as well as every red hatch mark arching over the handholding characters," simply "plugg[ing] in the *Star Trek* characters." *Id.* at 454.



*Id.* Likewise, "ComicMix copied the exact composition of the famous 'waiting place' in *Go!*, down to the placements of the couch and the fishing spot," simply "add[ing] *Star Trek* characters who line up, sit on the couch, and fish exactly like the waiting place visitors they replaced." *Id.*



*Id.* at 455. The Ninth Circuit noted that *Boldly!* also "replicated the overall composition and placement of the shapes, colors and detailed linework" of the following illustration from *Go!*:

/ / /

/ / /

/ / /

/ / /

/ / /

 

*Id.* at 457.  Similarly, "ComicMix also took the overall composition of [the following] Seuss illustration [from *Go!*]—the placement of the tree, the hills, and the white space surrounding these elements," even giving "[t]he tress in both versions . . . the same exact number, bends, and lengths of branches, with the same branch in both versions hoisting a dangling figure":

 

*Id.*

As to *Sneetches*, the Ninth Circuit noted that one of *Boldly!*'s illustrations "copie[s] a scene . . . down to the exact shape of the sandy hills in the background and the placement of footprints that collide in the middle of the page.  Seussian characters were replaced with Spocks playing chess, making sure they 'ha[d] similar poses' as the original, but all ComicMix really added was 'the background of a weird basketball court.'"  *Id.* at 455.

/ / /

/ / /



*Id.* Further, the Ninth Circuit noted that the plot, character, and moral of *Sneetches* "center on a highly imaginative and intricately drawn machine that can take the star-shaped status symbol on and off the bellies of the Sneetches," with "[d]ifferent iterations of the machine, the heart of *Sneetches*, appear[ing] in ten out of twenty-two pages of the book." *Id.* at 457 (citation omitted). The Ninth Circuit concluded that, in "repurpos[ing]" the machine from *Sneetches* "painstakingly," "ComicMix took this 'highly expressive core' of *Sneetches*." *Id.* And not only was *Boldly!*'s representation of the machines "identical," *id.* at 457–58, ComicMix also "took 'the poses that the Sneetches are in' so that '[t]he poses of commander Scott and the Enterprise crew getting into the machine are similar.' *Boldly* also captured the particular 'crosshatch' in how Dr. Seuss rendered the machine, the 'puffs of smoke coming out of the machine,' and the 'entire layout.'" *Id.* at 458.



*Id.*

/ / /

Accordingly, Seuss, and the Ninth Circuit, clearly have identified similarities between each Copyrighted Work and *Boldly!* based on protectable material.  Further, the scope of protection to which the Copyrighted Works, all of which are illustrated books, are entitled is broad.  *See, e.g.*, *Fleener v. Trinity Broad. Network*, 203 F. Supp. 2d 1142, 1149 (C.D. Cal. 2001) ("Capable of infinite expression, [books] are accorded 'thick' copyright protection.") (citation omitted); *Mod. Dog Design Co. v. Target Corp.*, No. C11-1816 TSZ, 2013 WL 12315516, at *3 (W.D. Wash. Aug. 23, 2013) (finding level of copyright protection afforded to stylized "headshot" drawings of dogs broad); *Kevin Barry Fine Art Assocs. v. Ken Gangbar Studio, Inc.*, 391 F. Supp. 3d 959, 967 (N.D. Cal. 2019) (finding copyright protection of three-dimensional wall sculpture broad where "'there [wa]s a wide range of expression for selecting, coordinating, and arranging' the constituent elements"). Accordingly, the Court finds that concrete, protectible elements of Seuss's Copyrighted Works entitled to broad protection overlap with *Boldly!*, thus satisfying the extrinsic test.

2.      *Subjective Intrinsic Test (Substantial Similarity: Total Concept & Feel)*

As to the intrinsic test, in light of the rarity of courts granting summary judgment in favor of copyright holders on the issue of copying in this Circuit—*see supra* at 17–19—and the lack of any authorities doing so with regard to subject matter comparable to that at issue here—*i.e.*, illustrated books of rhyming prose—the Court finds, on the record presently before it and viewing the facts and evidence in the light most favorable to ComicMix as the nonmovant, that *Boldly!* "[is] not so similar to the protected [works] that no triable issue exists with respect to whether the total concept and feel of the works are substantially similar.  Therefore, the issue of intrinsic similarity must be left for the jury." *HIT Ent., Inc. v. Nat'l Disc. Costume Co.*, 552 F. Supp. 2d 1099, 1107 (S.D. Cal. 2008). Accordingly, the Court **DENIES** Seuss's Motion for Summary Judgment.

/ / /

/ / /

/ / /

/ / /

23

In light of the foregoing, the Court finds it unnecessary to rule at this time on the ComicMix's de minimis use argument.[2]  *See* MSJ Opp'n at 6.  Similarly, because the Court cannot decide the issue of liability for copyright infringement as a matter of law, the Court declines to address the issue of willfulness, *see, e.g.*, *Classical Silk, Inc. v. Dolan Grp., Inc.*, No. CV1409224ABMRWX, 2016 WL 7638113, at *11 (C.D. Cal. Feb. 2, 2016) (citations omitted) (declining to address issue of willfulness on summary judgment where issues of fact precluded summary judgment of infringement), or reach the matter of damages.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** ComicMix's Motion for Reconsideration (ECF No. 177) and **DENIES** Plaintiff's Renewed Motion for Summary Judgment (ECF No. 176).

**IT IS SO ORDERED.**

Dated:  August 9, 2021

Hon. Janis L. Sammartino
United States District Judge

---

[2] "The Ninth Circuit has been unclear about whether the de minimis use doctrine serves as an affirmative defense under the Copyright Act's fair use exceptions or whether the doctrine merely highlights plaintiffs' obligation to show that 'the use must be significant enough to constitute infringement.'"  *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. C 10-3428 PSG, 2013 WL 831528, at *8 (N.D. Cal. Jan. 10, 2013).  The Ninth Circuit has stated, for instance, that "[t]o say that a use is de minimis because no audience would recognize the appropriation is thus to say that the use is not sufficiently significant" to meet the "substantial similarity" requirement for infringement.  *Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2004).  Either way, "the *de minimis* use doctrine is either subsumed into the affirmative defense of fair use or into negating Plaintiff's prima facie case of copyright infringement."  *Amini Innovation Corp. v. McFerran Home Furnishings Inc.*, No. CV 13-6496 RSWL SSX, 2014 WL 360048, at *4 (C.D. Cal. Jan. 31, 2014).  If the former, the issue of fair use is no longer before the Court in light of the Ninth Circuit's ruling, and the de minimis use defense is therefore also foreclosed.  If the latter, the matter would appear to still be in play, but subsumed in the "substantial similarity" analysis *supra*.

24